## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRETT SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

## DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS TO <u>INTERROGATORIES</u>

# TABLE OF CONTENTS

Page

ARGUMENT ....................................................................................................................3

I.      The Court Should Deny Plaintiffs' Motion In Full Because Plaintiffs Were Not
        Permitted To Serve More Than 25 Interrogatories .............................................................3

II.     Regardless Of The Number Of Interrogatories Plaintiffs Are Entitled To Serve,
        The Remainder Of Plaintiffs' Motion Is Moot Or Unripe ...................................................7

        A.      The Issue Of Whether DFA Should Answer Any More Interrogatories Is
                Not Ripe Because Plaintiffs Refused To Meet And Confer About DFA's
                Valid Objections ................................................................................................7

        B.      DFA Has Identified The Individual Signing Its Interrogatory Responses
                And Provided Signed Verifications So This Issue Is Moot ..................................11

        C.      DFA Has Agreed To Supplement Certain Of Its Interrogatory Responses
                But Explained That It Needs Time To Do So Given The Discovery Burden
                That Plaintiffs Have Imposed ...............................................................................12

        D.      Plaintiffs' Complaints Regarding Rule 33(d) Are Unfounded And Unripe .........13

III.    If Any Party Is Entitled To Its Fees And Costs Associated With This Motion, It Is
        DFA, Not Plaintiffs ..............................................................................................................15

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allen v. School Bd. for Santa Rosa Cty.*,
  2011 WL 1831764 (N.D. Fl. May 12, 2011) ...........................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .....................................................................................6

*Auther v. Oshkosh Corp.*,
  2010 WL 1404125 (W.D.N.Y. Mar. 30, 2010) ...................................................5, 6

*Black v. Buffalo Meat Serv., Inc.*,
  2016 WL 4363506 (W.D.N.Y. Aug. 16, 2016) ......................................................8

*Cole v. AADCO Med., Inc.*,
  2016 WL 9526677 (D. Vt. Aug. 23, 2016) ............................................................7

*Duncan v. Paragon Pub., Inc.*,
  204 F.R.D. 127 (S.D. Ind. 2001) ........................................................................4

*Fernandez v. North Dakota*,
  2013 WL 6491387 (D.N.D. Dec. 9, 2013) .............................................................5

*Forauer v. Vt. Country Store, Inc.*,
  2014 WL 2612044 (D. Vt. June 11, 2014) .......................................................7, 15

*Gucci Am., Inc. v. Exclusive Imports Int'l*,
  2002 WL 1870293 (S.D.N.Y. Aug. 13, 2002) ....................................................2, 3

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) .....................................................................................7

*Jacoby v. Hartford Life & Accident Ins. Co.*,
  254 F.R.D. 477 (S.D.N.Y. 2009) ......................................................................10

*Levin v. Johnson & Johnson*,
  2017 WL 5592684 (E.D.N.Y. Nov. 20, 2017) .......................................................9

*Madison v. Nesmith*,
  2008 WL 619171 (N.D.N.Y. Mar. 3, 2008) ..........................................................5

*McCarthy v. Paine Webber Grp., Inc.*,
   168 F.R.D. 448 (D. Conn. 1996) ............................................................2, 3

*McMichael v. Pallito*,
   2010 WL 1740820 (D. Vt. Mar. 31, 2010) ...............................................8

*Myers v. Andzel*,
   2007 WL 3256865 (S.D.N.Y. Oct. 15, 2007) ...........................................8

*Norton-Griffiths v. Wells Fargo Home Mortg.*,
   2011 WL 884456 (D. Vt. Mar. 11, 2011) ...................................................7

*Saliga v. Chemtura Corp.*,
   2015 WL 851849 (D. Conn. Feb. 26, 2015) .............................................15

*Shahzad v. Cty. of Nassau*,
   2014 WL 4805022 (E.D.N.Y. Sept. 26, 2014) .........................................10

*Sibley v. Choice Hotels Int'l*,
   2015 WL 9413101 (E.D.N.Y. Dec. 22, 2015) ...........................................9

*St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*,
   217 F.R.D. 288 (D. Mass. 2003) ...............................................................5

*Strauss v. Credit Lyonnais, S.A.*,
   242 F.R.D. 199 (E.D.N.Y. 2007) .............................................................12

*Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*,
   262 F.R.D. 365 (D. Vt. 2009) .................................................................10

*Tracy v. NVR, Inc.*,
   250 F.R.D. 130 (W.D.N.Y. 2008) ............................................................12

*Vinton v. Adam Aircraft Indus.*,
   232 F.R.D. 650 (D. Colo. 2005) ...............................................................5

*Weiss v. Nat'l Westminster Bank, PLC*,
   242 F.R.D. 33 (E.D.N.Y. 2007) ...............................................................12

*Zito v. Leasecomm Corp.*,
   233 F.R.D. 395 (S.D.N.Y. 2006) ...........................................................2, 3

## FEDERAL & LOCAL RULES

Fed. R. Civ. P. 26(b) ....................................................................................8

Fed. R. Civ. P. 33(a) .......................................................................3, 4, 5, 7

Fed. R. Civ. P. 37(a) .............................................................................7, 15

L.R. 7(a)(7) ...................................................................................................................7

L.R. 26(c) ..............................................................................................................7, 8, 13

Plaintiffs have served Dairy Farmers of America, Inc., and Dairy Marketing Services, LLC (collectively, "DFA"), with an avalanche of discovery in this case. Plaintiffs have stated, repeatedly, that they are bringing the *same* antitrust claims as the plaintiffs in the *Allen* case, and DFA has already produced to them the voluminous discovery record from that six-year litigation.[1] Nonetheless, plaintiffs served DFA with 87 sweeping document requests (343 including subparts) and an astonishing **99** separate interrogatories (114 including subparts).[2] These discovery requests, which nearly triple the volume of discovery that the *Allen* plaintiffs served in their much larger case, appear designed solely for the purpose of imposing undue cost and burden on DFA.

DFA could have objected outright to this extraordinary volume of discovery and immediately moved for a protective order, but it did not do that. Instead, consistent with the Federal and Local Rules, DFA responded to (or agreed to respond to) certain requests (including **50** of plaintiffs' 99 interrogatories), served specific objections to other requests, and, to date, has devoted more than ten hours to meeting and conferring with plaintiffs to try to resolve those objections.[3] In large part, these efforts have paid off. The parties have resolved numerous issues related to plaintiffs' 87 document requests and are working towards resolving more.[4] However, plaintiffs' 99 interrogatories, which are the only subject of this motion, are a different story.[5]

During each of the parties' meet and confers, plaintiffs steadfastly refused to discuss any of DFA's responses or objections to any of plaintiffs' individual interrogatories, despite DFA's

---

[1]   Pls.' Mot. to Compel Answers to Interrogs., ECF No. 46 ("Mot."), at 2; Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, ECF No. 21, at 1; *see also* Jan. 17, 2018 Decl. of Jennifer L. Giordano in Supp. of DFA's Opp'n to Pls.' Mot. to Compel ("Giordano Decl.") ¶¶ 2-3.

[2]   Giordano Decl. ¶¶ 5-7. Plaintiffs have also served 18 third-party subpoenas. *Id.* ¶ 8.

[3]   *Id.* ¶¶ 10, 14.

[4]   *Id.* ¶¶ 14-17.

[5]   *See id.* ¶¶ 18-28.

repeated invitations to do so.[6]  Thus, the parties have never made any effort to resolve any disputes about any individual interrogatory.[7]  Contrary to plaintiffs' claim, to date, DFA has never outright refused to supplement its answer to any interrogatory.[8]

The sole interrogatory-related dispute that the parties have discussed substantively is whether plaintiffs, who admittedly are litigating this case collectively through the same lawyers, are permitted to serve more than 25 interrogatories on DFA, without leave from this Court.[9] Because this is the only dispute that plaintiffs have been willing to discuss meaningfully, DFA was surprised when, without any advance notice, plaintiffs filed this motion to compel directed at a number of other issues that are either already moot (because DFA provided the information sought) or demonstrably unripe (because plaintiffs refused to meet and confer with DFA).[10]

As to the single ripe issue in plaintiffs' motion—*i.e.,* whether, without leave, they were entitled to serve 99 interrogatories on DFA—the answer is clearly no.  Courts in this Circuit have consistently applied Rule 33(a)(1)'s 25-interrogatory limit on a per-side basis (as opposed to per-party) where, as here, nominally separate parties on the same side are represented by the same counsel and are litigating their case jointly.  *See Gucci Am., Inc. v. Exclusive Imports Int'l*, 2002 WL 1870293, at *5 (S.D.N.Y. Aug. 13, 2002); *McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 449-50 (D. Conn. 1996); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006).

---

[6]     *Id. ¶* 23.

[7]     *Id. ¶¶* 23-28.

[8]     *Id. ¶¶* 12-13, 19.

[9]     *Id. ¶* 22.

[10]    *Id. ¶¶* 22-27, 29.

Because all other issues beyond the number of interrogatories plaintiffs raise in their motion are either moot or unripe, DFA requests that the Court deny plaintiffs' motion in its entirety.  If, despite the **50** interrogatory responses and voluminous document discovery that DFA has already agreed to provide, plaintiffs have a legitimate, good faith argument that they still need certain additional information through interrogatories, then plaintiffs should identify that specific information to DFA so that the parties can meet and confer about it.  Unless and until that happens, there are no ripe disputes on plaintiffs' interrogatories for this Court to resolve.

## ARGUMENT

## I.   THE COURT SHOULD DENY PLAINTIFFS' MOTION IN FULL BECAUSE PLAINTIFFS WERE NOT PERMITTED TO SERVE MORE THAN 25 INTERROGATORIES

While Fed. R. Civ. P. 33(a)(1) states that "a party may serve on any other party" up to 25 interrogatories, courts within the Second Circuit have applied Rule 33's 25-interrogatory limit per side (as opposed to per party) where parties on the same side are only "nominally separate" because they are "represented by the same counsel" and "act[ing] in unison."  *Gucci*, 2002 WL 1870293, at *5 (finding that Rule 33 did not allow six defendants to serve 150 interrogatories on plaintiff because, where "parties are acting in unison and are represented by the same counsel, they may be treated as one party for purposes of the interrogatory limits"); *McCarthy*, 168 F.R.D. at 449-50 (rejecting argument that a defendant could serve more than 25 interrogatories on plaintiff without first seeking leave, even where there were three defendants, because defendants were "represented by the same law firm . . . and have jointly filed and responded to all motions"); *see also Zito*, 233 F.R.D. at 399 (holding that defendants' attempt to propound 169 interrogatories on plaintiffs was abusive and that the "more sensible approach" was to impose the 25-interrogatory limit per side where "parties on the same side" are "represented by a single attorney and in that sense act in unison") (internal quotations and citations omitted).

3

The 116 plaintiffs at issue here are only "nominally separate" parties who are acting in unison to prosecute their individual claims. The plaintiffs allege the same claims against DFA, are represented by the same counsel, and have jointly filed and responded to all motions in this case as a single unit. Indeed, the 116 plaintiffs refused to provide individual responses to DFA's document requests and interrogatories and instead provided a single, consolidated response to each of DFA's discovery requests. Giordano Decl. ¶ 21 n.4, Exs. 8 and 9. Thus, for the purposes of applying Rule 33(a)(1)'s 25-interrogatory limit to plaintiffs' interrogatories, plaintiffs should be treated as a single party and limited to serving a total of 25 interrogatories on DFA.

This sensible result is consistent with the reason that Rule 33(a)(1) imposes a numerical limit in the first place. As the 1993 Advisory Committee Notes explain, Rule 33 was revised to impose a limit of 25 interrogatories to reduce the "frequency" of interrogatory practice because "the device can be costly and may be used as a means of harassment." *See also Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127, 128 (S.D. Ind. 2001) (denying plaintiffs' motion for leave to serve 99 interrogatories on defendants and noting that "[r]esponding to interrogatories is inherently expensive and burdensome" and the 25-interrogatory limit was imposed "to reduce the frequency and efficiency of interrogatory practice since the device can be costly and may be used as a means of harassment") (internal quotations and citations omitted).

DFA is not aware of a single case within this Circuit that supports plaintiffs' position that parties who are represented by the same counsel and are admittedly litigating their claims collectively, are permitted to serve more than 25 interrogatories without the Court's advanced permission.[11]    The only two in-Circuit district court cases that plaintiffs cite are factually

---

[11]    While the out-of-circuit case *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288 (D. Mass. 2003), does support plaintiffs' position (Mot. at 14), it is contrary to the weight of authority from within this Circuit. Moreover, there are numerous other

inapposite.  *See* Mot. at 14.

In *Madison v. Nesmith*, 2008 WL 619171, at *3 (N.D.N.Y. Mar. 3, 2008), the court merely stated that a single plaintiff was entitled to ask three separate defendants to answer no more than 25 interrogatories each.  That passing statement is only dicta because the court ordered one defendant to answer 10 interrogatories and a second defendant to answer 7 interrogatories and thus did not actually decide whether the plaintiff was entitled to serve more than 25 interrogatories.  *Id.* at *4.  The court in no way addressed the issue presented here, *i.e.,* whether nominally separate plaintiffs have the right to force a single defendant to answer 99 interrogatories.

Plaintiffs' second case, *Auther v. Oshkosh Corp.*, 2010 WL 1404125 (W.D.N.Y. Mar. 30, 2010), also does not support plaintiffs' argument, and if anything, supports DFA's position. Plaintiff Richard Auther brought products liability and negligence claims against a single defendant for injuries arising from a tire explosion.  *Id.* at *1.  Richard's wife, plaintiff Jennifer Auther, brought her own separate claim against that same defendant for loss of consortium.  *Id.* The court addressed two separate discovery motions.  *Id.*  First, consistent with Rule 33(a)(1), the two plaintiffs sought permission from the court to serve four extra, non-duplicative interrogatories on the one defendant (for a total of 29 interrogatories), which the court granted.  *Id.*  By seeking the court's permission, the *Auther* plaintiffs acknowledged they could not each serve 25 interrogatories on a single defendant.  Plaintiffs here failed to seek this Court's permission to serve more than 25 interrogatories.  Instead, they served 99 interrogatories, demanded that DFA respond

---

out-of-circuit cases that support DFA's position.  *See, e.g., Fernandez v. North Dakota,* 2013 WL 6491387, at *4 (D.N.D. Dec. 9, 2013); *Allen v. School Bd. for Santa Rosa Cty.*, 2011 WL 1831764, at *2-3 (N.D. Fl. May 12, 2011); *Vinton v. Adam Aircraft Indus.*, 232 F.R.D. 650, 664 (D. Colo. 2005).

to all 99 as drafted, refused to discuss ways to potentially limit the number of interrogatories, and then moved to compel DFA to answer all 99 of them.

The *Auther* court also addressed the defendant's separate motion to compel Jennifer to answer an additional 23 interrogatories, after plaintiffs had already answered 26 interrogatories directed "only" at Richard's claims. *Id.* at *3. The court acknowledged that "in some instances" courts have applied the 25-interrogatory limit "to each side, as opposed to each party," *id.* at *3, but concluded that "even applying [that] approach," Richard and Jennifer were "more than nominally separate parties" and their claims were "sufficiently distinct . . . to permit 25 interrogatories directed at each plaintiff." *Id.* at *4. Here, plaintiffs' antitrust claims are nearly identical and are not "sufficiently distinct" to justify allowing each plaintiff to serve 25 interrogatories on DFA. Although each plaintiff is prosecuting its own claim for damages, none of the five sets of interrogatories seeks information uniquely related to any particular plaintiff's theory of injury. Rather, all five sets seek information that all 116 plaintiffs (represented by the same counsel) intend to use to prosecute their claims jointly.

Plaintiffs are wrong that DFA is estopped from objecting to the number of plaintiffs' interrogatories because of the number of interrogatories that DFA served on plaintiffs (to which plaintiffs did not object). Mot. at 14-15. Plaintiffs' own authority undermines their position. Just like the defendant in *Auther*, DFA properly asked each plaintiff to answer 16 interrogatories about its own "distinct" claims. These interrogatories seek individualized information that each plaintiff uniquely possesses. For example, DFA asked each plaintiff to state whether it has any direct relationship with DFA or DMS, which is directly relevant to whether each plaintiff has standing to maintain its claims. Giordano Decl. Ex. 8 at 2, 12 (Interrogatories Nos. 1 and 7); *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983);

6

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  No plaintiff can answer this question for any other plaintiff because each plaintiff's answer is unique.  Plaintiffs have no similar justification or explanation for their 99 interrogatories.  Thus, DFA's request that each plaintiff answer 16 interrogatories fails to provide any factual or legal justification for plaintiffs to compel DFA to answer 99 interrogatories that all plaintiffs intend to use to jointly prosecute their virtually identical claims.  *Cf. Forauer v. Vt. Country Store, Inc.*, 2014 WL 2612044, at *2 (D. Vt. June 11, 2014) (Reiss, J.) ("[W]hen an individual voluntarily chooses to participate in a lawsuit, he or she takes on the obligation to provide discovery about his or her claim.") (internal quotations, citations, and brackets omitted).

## II.    Regardless Of The Number Of Interrogatories Plaintiffs Are Entitled To Serve, The Remainder Of Plaintiffs' Motion Is Moot Or Unripe

### A.    The Issue Of Whether DFA Should Answer Any More Interrogatories Is Not Ripe Because Plaintiffs Refused To Meet And Confer About DFA's Valid Objections

Even if this Court were to conclude that plaintiffs are entitled, in theory, to *serve* more than 25 interrogatories (or even 99 interrogatories) under Rule 33(a)(1), that still would not justify an order that compels DFA to *answer* the 99 interrogatories at issue.  That is because DFA has raised specific, valid objections to numerous interrogatories about which the parties have not met and conferred because plaintiffs refused to do so, in direct violation of L.R. 26(c)(1) and Fed. R. Civ. P. 37(a)(1).[12]  Thus, those objections are not ripe for this Court to resolve.  *See Cole v. AADCO*

---

[12]    Plaintiffs also did not, and could not, provide the certification required by L.R. 7(a)(7) because they never informed DFA that they would be moving to compel before filing their motion nor made any effort to discuss the relief that they would be seeking through their motion.  Giordano Decl. ¶¶ 19, 29.  *See also Norton-Griffiths v. Wells Fargo Home Mortg.*, 2011 WL 884456, at *5 (D. Vt. Mar. 11, 2011) (J. Reiss) (denying motion to amend complaint and noting that L.R. 7(a)(7)'s meet and confer requirement "is not a meaningless gesture" as "[i]t allows the parties through the consent process to narrow the scope of any dispute . . . prior to seeking judicial involvement").

*Med., Inc.*, 2016 WL 9526677, at *5 (D. Vt. Aug. 23, 2016) (denying motion for protective order for failure to comply with L.R. 26(c), including its requirement that moving party "first confer with opposing counsel in a good faith effort to reduce or eliminate the controversy or arrive at a mutually satisfactory resolution") (internal quotations and citations omitted); *McMichael v. Pallito*, 2010 WL 1740820, at *2 (D. Vt. Mar. 31, 2010) (denying motion to compel on the same basis); *see also Myers v. Andzel*, 2007 WL 3256865, at *1 (S.D.N.Y. Oct. 15, 2007) (denying motion to compel for failure to meaningfully meet and confer, as required by Federal Rule 37(a)). Indeed, plaintiffs have not even addressed any of DFA's specific objections in their motion, or provided the Court any legal or factual reason to overrule them.

Although plaintiffs' motion misleadingly implies that DFA served *only* "boilerplate General Objections," Mot. at 9-10, this is simply false. In response to each of plaintiffs' five sets of interrogatories, DFA provided individual responses to each interrogatory that explain the specific basis for any objections, as Rule 33 requires. *See generally* Zakarian Decl. Exs. A-E. To be sure, certain of DFA's objections are "general" in the sense that they apply to all (or most) of the interrogatories, but that is not a legal basis for the Court to strike them.

As an example, given the overall avalanche of discovery plaintiffs served, DFA objected generally and individually to a number of interrogatories on the basis that, as written, they are disproportionate to the needs of this case. *See, e.g.*, Zakarian Decl. Ex. A at 2-3, 20-21, 27-28 and Ex. C at 2-3, 11-14, 16. Under the 2015 amendments to Federal Rule 26(b)(1), plaintiffs are no longer entitled to discovery simply because it is relevant to their claims; rather, the scope of permissible discovery is limited to matter that is relevant and ***proportional*** to the needs of the case. Fed. Civ. P. 26(b)(1); *Black v. Buffalo Meat Serv., Inc.*, 2016 WL 4363506, at *6 (W.D.N.Y. Aug. 16, 2016) ("Relevance under Rule 26(b)(1) is now tempered by proportionality; particular items

may be relevant but discovery to obtain them may not be proportionate for th[e] case."); *see also Levin v. Johnson & Johnson*, 2017 WL 5592684, at *2 (E.D.N.Y. Nov. 20, 2017) ("[P]roportionality" is now "incorpor[ated] into the very definition of permissible discovery."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101, at *5 (E.D.N.Y. Dec. 22, 2015) (holding that even if plaintiffs' 250 interrogatories did not violate Rule 33, "the number of interrogatories posed is . . . certainly disproportional to the discovery" demanded by the case).

The size of this case is a small fraction of the *Allen* case, and yet the amount of discovery plaintiffs seek vastly exceeds the amount that the *Allen* plaintiffs sought over their entire six-year litigation. Giordano Decl. ¶¶ 5-7, 9. Whereas the more than 7,000 *Allen* plaintiffs, who sought to recover hundreds of millions of dollars in damages, served DFA with 47 document requests and zero interrogatories, these 116 plaintiffs, who have already received all of the discovery from *Allen*, have propounded an additional 87 document requests and 99 interrogatories. *Id.* ¶¶ 3, 5-7, 9. While plaintiffs are entitled to certain limited discovery that post-dates *Allen* (which DFA has agreed to provide), the needs of this case simply do not justify double or triple the discovery effort that occurred for the near identical claims in *Allen*. Plaintiffs should have met and conferred to try to agree on a reasonable scope before involving this Court, but they refused. *Id.* ¶¶ 23-25.

As another example, DFA objected to plaintiffs' "general" instruction that every interrogatory provide information back to 2005 because that timeframe is overly broad, unduly burdensome, and duplicative of the discovery from the *Allen* litigation, which DFA has already provided to plaintiffs.[13]  *See, e.g.*, Zakarian Decl. Ex. A at 17-18. DFA raised a similar timeframe

---

[13]      Instead, DFA offered to provide information beginning January 1, 2010, which was after the close of discovery in the *Allen* case. *See, e.g.*, Zakarian Decl. Ex. A at 18. As a result, DFA's answers to the Swantak interrogatories are limited to the time-period after January 1, 2010. *See* Zakarian Decl. Ex. B at 5. This explains why those answers do not address any of the allegations from the *Allen* time-period. *See* Mot. at 9.

objection to plaintiffs' document requests, and, after several rounds of meet and confers, DFA believes that the parties are close to resolving that objection.  Giordano Decl. ¶ 16.  But plaintiffs refused even to discuss the timeframe objection in the context of their interrogatories, *see id.* ¶ 26, and instead unfairly characterize it, *sub silentio,* as a "general objection" and ask the Court to strike it for no legal reason.

The cases that plaintiffs cite about general objections merely hold that a party may not use "boilerplate" general objections as a "blanket refusal" to answer *any* interrogatories.  *See* Mot. 9-10 (citing *Shahzad v. Cty. of Nassau*, 2014 WL 4805022, at *3 (E.D.N.Y. Sept. 26, 2014) and *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009)).[14]  But that is not what DFA has done.  DFA did not refuse to respond to a single interrogatory on the basis of any general objection; instead, DFA fully responded to, or agreed to respond in some fashion to, 50 of plaintiffs' interrogatories, Giordano Decl. ¶ 10, well beyond the number that it was required to answer.  DFA also repeatedly offered to meet and confer with plaintiffs regarding its specific objections to any interrogatory, but plaintiffs refused.  *Id*. ¶ 23.

Because the parties have not met and conferred about either of these objections or any of DFA's other valid objections, and because plaintiffs did not even address any of those objections in their motion, it is not ripe for this to Court to decide whether DFA should have to answer any interrogatory beyond the 50 it has already agreed to answer.

---

[14]    In *Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, 262 F.R.D. 365 (D. Vt. 2009) (Mot. at 1-2, 10 n.4), the court did not strike any "general objections."  Rather, in dicta, the court criticized plaintiff's repeated use of inapplicable and "nonsensical" objections but found they were not relevant to any of the specific interrogatories upon which the defendant had moved to compel.  262 F.R.D. at 376.  Plaintiffs do not make such an argument here.

**B.      DFA Has Identified The Individual Signing Its Interrogatory Responses And Provided Signed Verifications So This Issue Is Moot**

Plaintiffs complain that DFA failed to "sign" its interrogatories or identify who is answering its interrogatories.  Mot. at 8-9.  This issue is moot because, on January 16, 2018, DFA provided plaintiffs with verifications for the interrogatories that it answered on December 11, 2017, as it told plaintiffs it would do.  Giordano Decl. ¶ 20.  Plaintiffs' suggestion that DFA did something wrong by serving responses within the 30-day deadline imposed by Rule 33(b)(2) and subsequently following up with the signed verification of those responses is perplexing, especially considering that many plaintiffs did the exact same thing, and some plaintiffs still have not provided signed verifications.  *Id.* ¶¶ 20-21.

Plaintiffs also assert that by failing to provide supposedly "basic information" about individuals, DFA is somehow impeding their ability to obtain discovery.  Mot. at 3-4.  This too is false.  DFA identified 20 individuals in its initial disclosures.  Giordano Decl. ¶ 17, Ex. 7.  In addition, DFA provided plaintiffs with a list of 22 individuals related to the post-*Allen* time-period, including their job titles, whose files DFA intends to collect and search in order to respond to plaintiffs' voluminous discovery requests, and has offered to discuss the relevance of each of these individuals with plaintiffs.  *Id.* ¶ 17.  DFA also has agreed to further consider and discuss plaintiffs' request that it collect and search the files of 27 additional individuals, and to provide the names of individuals likely to have certain specific categories of information.  *Id.*  Moreover, plaintiffs refused to even discuss DFA's responses and objections to any of their interrogatories that seek information regarding the "most knowledgeable" individual, so it cannot claim to be prejudiced by DFA's objections.  *See id.* ¶ 23.  DFA has provided plaintiffs with more than sufficient information to efficiently conduct discovery, and as such, there is nothing for this Court to

compel.[15]   *Cf. Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132-33 (W.D.N.Y. 2008) (noting that defendant's initial disclosures provided plaintiff with sufficient information to conduct discovery).

### C.   DFA Has Agreed To Supplement Certain Of Its Interrogatory Responses But Explained That It Needs Time To Do So Given The Discovery Burden That Plaintiffs Have Imposed

Plaintiffs also complain that DFA has "failed to answer the portions of interrogatories to which there was no objection" and that, in response to some interrogatories, DFA "offered to provide some of the requested information at some undisclosed later time." Mot. at 10-11. These accusations are unjustified.

DFA answered 25 of plaintiffs' interrogatories (the Swantak Interrogatories), which is all it was required to do under Rule 33. *See* Zakarian Decl. Ex. B; *see also supra* Section I. Nonetheless, in the spirit of cooperation, DFA either responded to, or provided a proposal for responding to, an additional 25 interrogatories. Giordano Decl. ¶ 10. However, given the demands imposed by plaintiffs' 87 document requests, 99 interrogatories, and, to date, ten hours of meeting and conferring, DFA informed plaintiffs that it would take some time for DFA to supplement its responses. *See* Zakarian Decl. Ex. G at 1; Giordano Decl. ¶¶ 12-13, 19. As DFA has told plaintiffs on multiple occasions, it is working to supplement its responses where it indicated that it would do so. Giordano Decl. ¶¶ 12-13, 19. Plaintiffs never requested that DFA supplement within a certain timeframe and never notified DFA that they would be moving to compel DFA to supplement. *Id.* ¶¶ 19, 29. Thus, plaintiffs' argument on supplementation is not ripe for consideration. Moreover, there is nothing for the Court to compel because DFA has agreed to

---

[15]   To the extent plaintiffs seek to require that DFA identify "each person who assisted in preparing" DFA's answers to each of plaintiffs' 99 interrogatories, as Interrogatory No. 1 demands, they seek information that is protected work-product that need not be disclosed. *See, e.g., Tracy*, 250 F.R.D. at 132-33; *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 62 (E.D.N.Y. 2007); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 231-32 (E.D.N.Y. 2007).

supplement certain of its interrogatory responses (which it was under no obligation to answer in the first place) and is currently working to provide those supplemental responses to plaintiffs.[16]

### D.    Plaintiffs' Complaints Regarding Rule 33(d) Are Unfounded And Unripe

Lastly, plaintiffs argue that, for some unidentified interrogatory responses, DFA has failed to comply with Rule 33(d) because it supposedly failed to refer plaintiffs to specific, responsive documents.[17]  Mot. at 12.  During their multiple meet and confers, plaintiffs never raised Rule 33(d) or DFA's responses to Sitts Interrogatories Nos. 3 and 8, the only responses addressed in plaintiffs' motion.  *Id.* at 12-13; *see also* Giordano Decl. ¶ 27.

There is nothing inadequate or improper about DFA's responses to Sitts Interrogatories Nos. 3 or 8.  Sitts Interrogatory No. 3 asks DFA to identify, for each year from 2005 to the present, "processors who received rebates, 'cost-savings,' or other payments" from DFA or DMS "in exchange for outsourcing its procurement of milk to DMS and/or for the processor not competing with DFA and/or DMS for producers supplying milk." Zakarian Decl. Ex. A at 20.  In addition to raising specific, valid objections, DFA responded that it does "not provide rebates or make payments to processors 'for not competing . . . for producers supplying milk,'" and it believes that "all processors experience a cost savings through outsourcing the procurement of their milk to DMS."  *Id.*  In addition, DFA stated that it would supplement its response to "to identify by Bates number [DFA's] supply and outsourcing agreements with processors located in Order One."  *Id.*  Plaintiffs complain that this response somehow violates Rule 33(d) because in responding to

---

[16]    Plaintiffs' motion also fails to comply with L.R. 26(c)(3) because plaintiffs do not identify which specific interrogatory responses they are moving to compel DFA to supplement its answers.

[17]    Plaintiffs themselves rely on Rule 33(d) in responding to 10 of DFA's 16 interrogatories but have failed to identify any specific documents on which they are purportedly relying, nor have they stated which of the 116 plaintiffs are relying on documents to respond to any given interrogatory.  *See* Giordano Decl. Ex. 8.

plaintiffs' document request No. 4, which seeks outsourcing agreements between DFA and milk processors in Order One, DFA stated that it does not have any responsive documents.  Mot. at 12.

Had plaintiffs met and conferred with DFA, DFA would have explained that since January 2010, DFA has not entered into any outsourcing agreements with processors located in Order One. Because DFA's responses to plaintiffs' document requests are limited to the time-period from 2010 forward, DFA has no documents responsive to request No. 4.   However, DFA had outsourcing agreements with processors located in Order One between 2005 and 2009, which are included in the *Allen* materials already provided to the plaintiffs.   Thus, in responding to Sitts Interrogatory No. 3, DFA simply intended to indicate that, to the extent outsourcing agreements from the earlier time-period exist, DFA is willing to search the *Allen* production and identify those agreements by Bates number, if it locates them.   DFA has thus fully and adequately responded to Sitts Interrogatory No. 3, and there is nothing for this Court to compel.

Similarly, any concerns regarding DFA's response to Sitts Interrogatory No. 8 also could have been resolved through a meet and confer.   Giordano Decl. ¶ 28.   Sitts Interrogatory No. 8 asks DFA to describe any conversations or discussions that certain DFA employees allegedly had in the summer of 2017 regarding DFA's acquisition of Elmhurst Dairy or Elmhurst Dairy's termination of any contracts with certain producers, including Garrett or Ralph Sitts.   Zakarian Decl. Ex. A at 24.   DFA responded to this interrogatory by stating that it would search for and produce documents responsive to plaintiffs' document request No. 38, which seeks documents addressing this same topic.  *Id.*   Again, had plaintiffs met and conferred with DFA regarding this response, DFA would have explained that, at this time, it is not aware of any conversations or discussions responsive to Sitts Interrogatory No. 8 (and therefore cannot describe any), but that it

has agreed to search for documents addressing any such conversations and produce them to plaintiffs. *Id.* Thus, again, there is nothing for this Court to compel.

## III.   IF ANY PARTY IS ENTITLED TO ITS FEES AND COSTS ASSOCIATED WITH THIS MOTION, IT IS DFA, NOT PLAINTIFFS

Even if the Court were to grant some aspect of plaintiffs' motion, there would be no reason for the Court to award plaintiffs their fees or costs. Mot. at 2, 15. On the only ripe issue—*i.e.,* the appropriate numerical limit for plaintiffs' interrogatories—DFA's objection is, at a minimum, "substantially justified" because it is supported by existing law in this Circuit. Thus, Rule 37 would prohibit an award of fees. Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii) (court "may not" award fees where "opposing party's . . . objection was substantially justified" or "other circumstances make an award of expenses unjust"); *Forauer*, 2014 WL 2612044, at *8 (refusing to award fees where objecting party's position was "substantially justified" because "district courts take divergent views" on the legal question at issue). As to all other unripe and/or moot issues, Rule 37 also would prohibit the award of fees because plaintiffs refused to engage in any meaningful meet and confer before filing their motion. Fed. R. Civ. P. 37(a)(5)(A)(i) (court "may not" award fees if party moves to compel without meeting and conferring in good faith).

If any party is entitled to fees and costs related to this motion, it is DFA. *See* Fed. R. Civ. P. 37(a)(5)(B) (court may award responding party fees if motion to compel is denied); *Saliga v. Chemtura Corp.*, 2015 WL 851849, at *2 (D. Conn. Feb. 26, 2015) (awarding fees for opposing unsuccessful motion to compel where moving party failed to meet and confer in advance). DFA requested that plaintiffs withdraw this motion, without prejudice, so that neither it nor the Court would be required to address moot and unripe issues, but plaintiffs refused. Giordano Decl. ¶ 30.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to compel in full.

Dated: January 17, 2018                    Respectfully submitted by:

                                           /s/ Margaret M. Zwisler
                                           Margaret M. Zwisler (admitted *pro hac vice*)
                                           Jennifer L. Giordano (admitted *pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           555 Eleventh Street, NW, Suite 1000
                                           Washington, DC 20004
                                           Telephone: 202-637-2200
                                           Facsimile: 202-637-2201
                                           Email: margaret.zwisler@lw.com
                                           Email: jennifer.giordano@lw.com

                                           Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           505 Montgomery Street, Suite 2000
                                           San Francisco, CA 94111
                                           Telephone: 415-391-0600
                                           Facsimile: 415-395-8095
                                           Email: al.pfeiffer@lw.com

                                           W. Todd Miller (admitted *pro hac vice*)
                                           BAKER & MILLER PLLC
                                           2401 Pennsylvania Avenue, NW, Suite 300
                                           Washington, DC 20037
                                           Telephone: 202-663-7820
                                           Facsimile: 202-663-7849
                                           Email: tmiller@bakerandmiller.com

                                           Ian P. Carleton
                                           SHEEHEY FURLONG & BEHM P.C.
                                           30 Main Street
                                           P.O. Box 66
                                           Burlington, VT 05402
                                           Telephone: 802-864-9891
                                           Facsimile: 802-864-6815
                                           Email: icarleton@sheeheyvt.com

                                           *Counsel for Defendants Dairy Farmers of
                                           America, Inc. and Dairy Marketing Services,
                                           LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2018, I electronically filed with the Clerk of Court the following document:

DAIRY FARMERS OF AMERICA, INC., AND DAIRY MARKETING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL INTERROGATORIES

using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  January 17, 2018

/s/ Margaret M. Zwisler
Margaret M. Zwisler (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:  202-637-2200
Facsimile:  202-637-2201
Email: margaret.zwisler@lw.com