```
                                                    U.S. DISTRICT COURT
                                                    DISTRICT OF VERMONT
        UNITED STATES DISTRICT COURT                       FILED
                  FOR THE
           DISTRICT OF VERMONT                      2020 MAY -1  PM 4: 25

                                                          CLERK
GARRETT AND RALPH SITTS, LEON          )            BY_____ltw/_____
ATWELL, VICTOR BARRICK, DANIEL         )               DEPUTY CLERK
BAUMGARDER, WILLIAM BOARD,             )
```

GARRETT AND RALPH SITTS, LEON
ATWELL, VICTOR BARRICK, DANIEL
BAUMGARDER, WILLIAM BOARD,
GEORGE BOLLES, ROGER BOLLES, ANDY
BOLLINGER, THOMAS BOLLINGER,
LOGAN BOWER, DWIGHT
BRANDENBURG, BERNARD
BROUILLETTE, THOMAS BROUILLETTE,
AARON BUTTON, HESTER CHASE,
THOMAS CLARK, THOMAS
CLATTERBUCK, PAUL CURRIER, GERRY
DELONG, PETE AND ALICE DIEHL, MARK
DORING, MARK AND BARBARA DULKIS,
GLEN EAVES, MIKE EBY, WILLIAM
ECKLAND, DOUG ELLIOT, JAMES
ELLIOT, WENDALL ELLIOTT, MICHAEL
FAUCHER, DAVID AND ROBIN FITCH,
DUANE AND SUSAN FLINT, JOSEPH
FULTS, RICHARD GANTNER, STEFAN
AND CINDY GEIGER, WILLIAM GLOSS,
JOHN GWOZDZ, DAVID AND LAURIE
GRANT, JIM AND JOYCE GRAY, DENNIS
HALL, ROGER AND JOHN HAMILTON,
NEVIN AND MARLIN HILDEBRAND, JAKE
AND HARLEN HILLYERD, RICHARD AND
TERRI HOLDRIDGE, PAUL HORNING,
TERRY AND ROBERT HUYCK, DONALD
SCOTT HYMERS, TERRY INCH, RANDY
AND LYNETTE INMAN, THEODORE
JAYKO, JACK KAHLER, JAMES AND
TERESA KEATOR, JIM AND SHARON
KEILHOLTZ, GEORGE KEITH, LEE AND
ELLEN KLOCK, MIKE AND LISA
KRAEGER, FRED LACLAIR, TIM LALYER,
FRANK AND JOHN LAMPORT, CORRINE
LULL, CHARLES AND GRETCHEN MAINE,
THOMAS AND DEBORA MANOS, FRED
MATTHEWS, RUSSELL MAXWELL,
GERRY MCINTOSH, STEPHEN MELLOTT,
JOHN AND DAVID MITCHELL, THOMAS
MONTEITH, WALT MOORE, RICHARD
AND SHEILA MORROW, DEAN MOSER,
MELISSA MURRAY AND SEAN QUINN,
THOMAS NAUMAN, CHARLES NEFF,

Case No. 2:16-cv-287

DAVID NICHOLS, MICHAEL NISSLEY, )
LOU ANN PARISH, DANIEL PETERS, )
MARSHA PERRY, CAROLYN AND DAVE )
POST, JUDY LEE POST, SCOTT )
RASMUSEU, BRIAN REAPE, DAVID AND )
LYNETTE ROBINSON, BRIAN AND LISA )
ROBINSON, CALVIN ROES, BRADLEY )
ROHRER, PAUL AND SARAH )
ROHRBAUGH, ROBERTA RYAN, SCOTT )
AND LIN SAWYER, S. ROBERT SENSENIG, )
THOMAS AND DALE SMITH, DALE AND )
SUSAN SMITH, DENNIS SMITH, DONALD )
T. AND DONALD M. SMITH, ROGER AND )
TAMMY, SMITH, TODD SNYDER, )
RICHARD SOURWINE, DANNY )
SOURWINE, RANDY SOWERS, SHANE )
STALTER, GEORGE AND SHIRLEY )
STAMBAUGH, TRACY STANKO, STEPHEN )
SOURWINE, RICHARD SWANTAK, )
GEORGE AND PATRICIA THOMPSON, )
JEREMY THOMPSON, KEN AND JUDY )
TOMPKINS, DANIEL VAUGHN, MARK )
VISSAR, ERIC WALTS, EDWARD )
WALLDROFF, GERALD WETTERHAHN, )
JR., EUGENE WILCZEWSKI, STEVE )
WILSON, )
                                                            )
        Plaintiffs, )
                                                            )
   v. )
                                                            )
DAIRY FARMERS OF AMERICA, INC., )
and DAIRY MARKETING SERVICES, )
LLC, )
                                                            )
        Defendants. )

**OPINION AND ORDER**
**GRANTING IN PART DEFENDANTS' MOTION**
**TO SEVER CLAIMS FOR TRIAL**
(Doc. 159)

Plaintiffs allege claims pursuant to the Sherman Act, 15 U.S.C. §§ 1-2, for asserted antitrust violations committed by Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (collectively, "Defendants"). Pending before the court is Defendants' motion to sever or separate Plaintiffs' claims and try them in groups of no more than nine Plaintiffs, which Plaintiffs oppose.

Plaintiffs are represented by Dana A. Zakarian, Esq., Elizabeth A. Reidy, Esq., Gary L. Franklin, Esq., Joel G. Beckman, Esq., Michael Paris, Esq., and William C. Nystrom, Esq. Defendants are represented by Alfred C. Pfeiffer, Jr., Esq., Elyse M. Greenwald, Esq., Ian P. Carleton, Esq., Jennifer L. Giordano, Esq., Margaret M. Zwisler, Esq., and W. Todd Miller, Esq.

I.      **Factual and Procedural Background.**

Plaintiffs are 116 dairy farmers who opted out of a settlement approved by this court in a class action case, *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-cv-230. In January 2019, Defendants sought summary judgment on a number of grounds, including an argument that Plaintiffs could not establish antitrust injury on an individualized basis. Plaintiffs responded that their antitrust expert, Professor Einer Elhauge, opines that Defendants' alleged conspiracy suppressed the price of raw milk by the same amount across the relevant market, enabling Plaintiffs to assert that market-wide price suppression affected each of them in the same manner individually. The court denied Defendants' motion for summary judgment on that issue.

On January 29, 2020, Defendants moved to sever or separate Plaintiffs' claims for trial (Doc. 159), asserting that they have a due process right to present an individualized defense that will be prejudiced if they are forced to defend against 116 claims in a single trial. In addition, they claim that a trial of 116 individual claims will be rife with the potential for juror confusion and may result in spillover of the evidence as the jury struggles to focus on each claim and defense separately. Defendants point out that Plaintiffs chose to forgo class action certification and should not be permitted to present their claims as a class, with only certain representative Plaintiffs presenting evidence, at trial.

3

Plaintiffs opposed the motion on February 19, 2020, contending that severance would prejudice their case by delaying its adjudication and by unnecessarily burdening judicial economy for individual claims that rely on a common body of proof. Defendants replied on March 11, 2020. The court heard oral argument on March 27, 2020, at which time it took the motion under advisement.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Although Defendants' motion is styled as a motion to sever "pursuant to [Fed. R. Civ. P.] 21[,]" they ask that the court order severance under either Rule 21 or, alternatively, Fed. R. Civ. P. 42(b).[1] Rule 21 permits a court "at any time, on just terms" to "add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Separation of claims for trial is also authorized by Rule 42(b), which provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The Second Circuit has accorded trial courts broad discretion to employ either [Rule 21 or Rule 42(b)]" to sever claims, because both rules apply the same standard. *Lluberes v. City of Troy*, 2014 WL 1123413, at *23 (N.D.N.Y. Mar. 21, 2014) (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)).

In ruling on motions to sever claims pursuant to Rule 21 or to separate them for trial pursuant to Rule 42(b), the court must consider: "'(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5)

---

[1] District courts have "wide discretion to manage . . . litigation under either" Rule 21 or Rule 42. *Acevedo Garcia v. Vera Monroig*, 351 F.3d 547, 559 (1st Cir. 2003). However, "[t]he distinction between the[] two rules is that separate trials [under Rule 42(b)] usually will result in one judgment, but severed claims [under Rule 21] become entirely independent actions to be tried, and judgment entered thereon, independently." *Lluberes v. City of Troy*, 2014 WL 1123413, at *23 (N.D.N.Y. Mar. 21, 2014) (internal quotation marks and citation omitted).

4

whether different witnesses and documentary proof are required for the separate claims.'" *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502-03 (S.D.N.Y. 2013)). "Severance requires the presence of only one of these conditions[,]" *Lewis v. Triborough Bridge & Tunnel Auth.*, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000), and "district courts have broad discretion to sever any party or claim from an action." *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 114. Although Defendants contend that the prejudice they will suffer if severance is denied and the necessity of different proof for their individualized defenses are conclusive, the court analyzes all five factors. *See id.* at 115 (noting that while the presence of one factor alone can support severance, courts granting severance generally find more than one factor favors that result).

### B. Whether Plaintiffs' Claims Arise Out of the Same Transaction or Occurrence and Present Common Questions of Law or Fact.

Defendants identify certain individualized factual issues that may arise at trial as they defend against each Plaintiff's claim. However, Defendants appear to overstate the impact of individualized evidence they plan to present, as they deposed only seven of the Plaintiffs after representing that they would need to depose as many as thirty Plaintiffs while reserving their right to depose all 116 if necessary. (*See* Doc. 41 at 14; *id.* n.2.)

District courts in the Second Circuit "repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims.'" *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 459 (S.D.N.Y. 2011) (quoting *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008)). "Where . . . plaintiffs' claims under the same statutory framework arise from different circumstances and would require separate analyses, they are not logically related." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012). In contrast, claims may be logically related, and therefore better suited to being joined for trial, where "defendants' [alleged] wrongdoing occurred pursuant to a policy or practice." *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 115. The "common question of law or fact" severance factor often overlaps with the "transaction or occurrence" factor, such as where plaintiffs allege harm from the same

model of defective product. *See, e.g., Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 2017 WL 10718329, at *4 (D. Conn. Sept. 18, 2017) (noting that common questions of fact were identified in analysis of transaction or occurrence factor). In the related context of joinder under Fed. R. Civ. P. 20, "the same series of transactions or occurrences [inquiry] . . . essentially consumes the second requirement that there arise a question of law or fact common to all joined parties." *Fed. Trade Comm'n v. Endo Pharms., Inc.*, 2016 WL 6124376, at *4 (E.D. Pa. Oct. 20, 2016).

The severance analysis considers the presence of "*any* question of law or fact common to all[,]" *Costello*, 888 F Supp. 2d at 264 (emphasis in original) (internal quotation marks and citation omitted), and whether there is a "logical relationship between the factual backgrounds giving rise to each claim," *Agnesini*, 275 F.R.D. at 459 (internal quotation marks omitted). Plaintiffs assert Defendants' alleged anticompetitive practices caused antitrust injury to them individually as well as to the entire relevant market. They urge the court to find the vast majority of evidence is common to all Plaintiffs, each of whom pursues the same legal theories for both liability and damages.

On balance, because Plaintiffs' claims rely on a common body of proof and although individual circumstances may be important, the "same transaction or occurrence" and "common question of law or fact" factors weigh against severing Plaintiffs' claims. *See, e.g., N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 2015 WL 777248, at *11 (E.D.N.Y. Feb. 13, 2015), *report and recommendation adopted*, 2015 WL 1345814 (E.D.N.Y. March 25, 2015) (finding claims were part of same transaction or occurrence for severance purposes where they "ar[o]se from the same chain of events and [were] not simply intertwined because of an overlap in the parties"); *see also El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960 (S.D. Tex. 2001) (finding that although antitrust claims were "individualized to some extent," they involved defendant's "overarching and integrated policies and strategies" across geographic regions, which weighed against severance).

6

### C. Whether Severance Would Facilitate Settlement or Promote Judicial Economy.

A single trial will often be the most efficient way to resolve related claims, but it is not the *de facto* approach to promoting judicial economy. *See N. Jersey Media Grp. Inc.*, 312 F.R.D. at 117 ("While one trial is usually more efficient than two, this is not always the case.") (citations omitted). "[O]ne long, combined trial in which the [c]ourt must constantly caution the jury" to consider each Plaintiff on an individual basis, even if only in the context of defenses, may be less efficient than several trials presenting a more manageable number of individual claims. *Cestone v. Gen. Cigar Holdings, Inc.*, 2002 WL 424654, at *3 (S.D.N.Y. Mar. 18, 2002). In the distinct but not dissimilar context of consolidation under Fed. R. Civ. P. 42(a), the Second Circuit has observed that "[t]he benefits of efficiency can never be purchased at the cost of fairness[,]" *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993), and has cautioned courts to remain "mindful of the dangers of a streamlined trial process in which testimony must be curtailed and jurors must assimilate vast amounts of information." *Id.* (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992)).

Defendants identify several ways in which severance may yield judicial efficiency by making later trials shorter and more focused. This argument finds support in the use of "bellwether" trials in cases that involve significant numbers of claimants or defendants. "A bellwether trial . . . allows a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." *Dixon v. Scott Fetzer Co.*, 2016 WL 10514834, at *2 n.1 (D. Conn. May 31, 2016) (internal quotation marks and citation omitted). A bellwether trial may also serve as "a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of . . . questions of causation or liability." *Id.* (quoting *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015). In addition, the parties may agree at the outset that the outcome of a bellwether trial will bind parties in other cases involving common issues. Alternatively, the parties may agree that

7

the claims of a representative plaintiff or plaintiffs are tried, but the
outcome of the trial is binding only as to the parties involved in the trial
itself. The results of the trial are used in the other cases purely for
informational purposes as an aid to settlement.

*Dunson v. Cordis Corp.*, 854 F.3d 551, 555 (9th Cir. 2017).

In this case, severing Plaintiffs' claims for trial may in fact be the most efficient way to proceed because Defendants are entitled to call each Plaintiff as a witness regardless of how Plaintiffs choose to establish their claims. The evidence pertaining to all 116 Plaintiffs will be substantial, making it challenging for both the court and the jury to consider each Plaintiff and his or her claims on a truly individualized basis. Dividing Plaintiffs into smaller groups for trial will facilitate the fair consideration of Defendants' proof while respecting Plaintiffs' decision to pursue individual rather than class claims. In addition, the parties may gain useful insights that prompt resolution of contested issues or the lawsuit as a whole. Considerations of judicial economy and facilitation of settlement thus weigh slightly in favor of severing Plaintiffs' claims for trial.

### D.     Whether Severance Would Avoid Prejudice to the Parties.

Defendants' primary argument in favor of severance is that they will be severely prejudiced if Plaintiffs are permitted to proceed in a single trial because it will be virtually impossible for a jury to keep straight the individualized facts pertaining to each of the 116 Plaintiffs. They additionally assert that there is a risk that the jury will improperly generalize the circumstances applicable to one or a few Plaintiffs to the entire group as a result of either confusion or bias. In response, Plaintiffs contend that granting severance would cause them prejudice by delaying resolution of their claims.

The risk that a jury will be confused and struggle to parse the facts in a multi-plaintiff case is undeniable and increases with the number of individual parties. *See, e.g., Costello*, 888 F. Supp. 2d at 266 (finding that evidence concerning claims of thirty-nine plaintiffs "could easily confuse a jury even with the clearest of jury instructions"). [2]

---

[2] Courts have found a risk of prejudice from jury confusion in similar circumstances. *See, e.g., Ulysse v. Waste Mgmt. Inc. of Fl.*, 2013 WL 11327137, at *4 (S.D. Fla. Sept. 13, 2013), *aff'd*, 645 F. App'x 838 (11th Cir. 2016) (holding that "[c]onducting a trial with seventy-nine

8

Plaintiffs assert that "[m]ultiple trials of the same claims . . . pose a significant risk of inconsistent jury verdicts." (Doc. 172 at 6.) In contrast, Defendants argue that there is no risk of inconsistent verdicts because, as a prerequisite to finding Defendants liable to any individual Plaintiff for antitrust violations, a jury would be required to find that Defendants' anticompetitive conduct injured that specific Plaintiff. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (holding that a private plaintiff seeking antitrust damages must prove injury "attributable to an anti-competitive aspect of the practice under scrutiny"). Although Plaintiffs' market-wide theory of liability and damages creates some risk that, if separate trials are conducted, one jury might find that Defendants' conduct was anticompetitive while a second jury might reach a contrary conclusion, that risk does not outweigh the danger of prejudice due to jury confusion.

Although Plaintiffs further cite delay as a form of prejudice, they identify no support for a conclusion that the prospect of delay outweighs the importance of ensuring a fair trial. Instead, the court's paramount concern must be ensuring a properly instructed jury can perform its critical function. *See Malcolm*, 995 F.2d at 350 ("a fair and impartial trial to all litigants is the foremost concern" of courts considering joinder or separation of claims) (internal quotation marks and citation omitted); *see also Thompson v. Sanderson Farms, Inc.*, 2006 WL 2559852, at *6 (S.D. Miss. Sept. 1, 2006) (granting motion to sever and finding that "the potential for jury confusion and prejudice to the defendant

---

[p]laintiffs is inefficient, unmanageable, and would severely prejudice" defendant); *Hofmann v. EMI Resorts, Inc.*, 2010 WL 9034908, at *3 (S.D. Fla. July 21, 2010) (observing that if the case reached trial, "the potential for prejudice would be far too great to permit a single trial, as the jury would have trouble distinguishing which facts applied to each of the approximately two-hundred [p]laintiffs and forty-plus [d]efendants"); *Acevedo Garcia v. Vera Monroig*, 204 F.R.D. 26, 30 (D.P.R. 2001), *aff'd*, 351 F.3d 547 (1st Cir. 2003) (denying motion for reconsideration of order severing claims for trial and noting that "having fewer [p]laintiffs testify in each trial would provide the jury with the ability to understand and remember the evidence and witness testimony" applicable to eighty-two individual plaintiffs).

9

would offset any possible benefits of a joint trial" notwithstanding greater expense and delay for plaintiffs).

A single trial involving all 116 Plaintiffs poses a real threat of juror confusion and spillover of evidence that may prejudice Defendants and deprive them of a fair trial. This factor thus weighs heavily in favor of granting Defendants' motion to sever. *See Acevedo Garcia v. Vera Monroig*, 204 F.R.D. 26, 29 (D.P.R. 2001), *aff'd*, 351 F.3d 547 (1st Cir. 2003) (finding severance was necessary due to "the likelihood of jury confusion when subjecting one jury to the causes of action of [eighty-two] [p]laintiffs").

### E. Whether Different Witnesses and Documentary Proof Are Required for Plaintiffs' Separate Claims.

Plaintiffs plan to rely on "the same evidence" to demonstrate liability, antitrust impact, and damages with respect to each individual Plaintiff. (Doc. 172 at 6) (emphasis omitted). They therefore argue that the overlap in witness testimony and documentary proof weighs against severance. Defendants counter that they have the right to present individualized evidence and to challenge Plaintiffs' proof on that basis. They cite the deposition testimony of several Plaintiffs to illustrate the type of individualized evidence their defense requires.

"[N]early every trial involving multiple [parties] will involve some separate issues of fact that call for testimony from different witnesses on entirely unrelated matters," but "the more appropriate question is whether separate trials will require *substantial* overlap of witnesses or documentary proof." *N. Jersey Media Grp., Inc.*, 312 F.R.D. at 117 (internal brackets, quotation marks, and citation omitted) (emphasis added). In this case, there will be significant overlap of evidence presented by Plaintiffs and some overlap of evidence presented by Defendants. Consequently, "the possibility of duplicat[iv]e presentation of evidence at each trial weighs against severance." *Kirk v. Metro. Transp. Auth.*, 2001 WL 25703, at *3 (S.D.N.Y. Jan. 10, 2001).

### F. Limited Separation of Plaintiffs' Claims for Trial is Appropriate.

The Second Circuit has held that "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Malcolm*, 995 F.2d at

350 (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *see also Lluberes*, 2014 WL 1123413, at *23 (granting motion to sever and holding that prejudice of defending against multiple distinct claims in one trial was "not outweighed by the facilitation of judicial economy that would be served from trying all claims in one trial"). In this case, a single trial with 116 Plaintiffs, each seeking individual damages, would produce an unwieldly body of evidence with the real risk that the jury will not address the claims on an individual basis no matter how strenuously and carefully the court instructs them to do so, not because of juror dereliction of duty, but solely because of the difficulty of keeping 116 claims separate. Defendants are entitled to a fair trial. Plaintiffs, in contrast, have chosen not to seek class certification. If their claims are severed for trial, they will still be entitled to pursue their claims on an individualized basis, albeit with some delay.

For the foregoing reasons, the court GRANTS IN PART Defendants' motion to sever or separate claims for trial (Doc. 159).

### G. Basis for Severance.

In their motion, Defendants ask the court to sever Plaintiffs' claims for trial pursuant to Rule 21 or, in the alternative, to order separate trials pursuant to Rule 42(b). Beyond stating these alternative requests for relief, Defendants do not address whether severance resulting in independent final judgments in each proceeding or separation of claims to be resolved by a single final judgment is more appropriate. Plaintiffs have not addressed that issue in their opposition. The court therefore RESERVES JUDGMENT on the issue of whether claims will be severed pursuant to Rule 21 or separated for trial pursuant to Rule 42(b) and hereby ORDERS the parties to file supplemental memoranda of law addressing this question within thirty (30) days of the date of this Opinion and Order.

### H. The Number of Plaintiffs in the First Trial.

Defendants ask the court to limit the size of each separate trial to six to nine Plaintiffs chosen by both Defendants and Plaintiffs to reflect a fair cross-section of the Plaintiffs. If adopted, this approach would result in twelve to nineteen trials, which

11

would squander judicial and party resources. Even in the context of criminal trials, courts have found more numerous parties appropriate. *See, e.g., United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (affirming convictions following joint trial of twenty-one defendants notwithstanding denial of motion to sever); *United States v. Segura*, 2000 WL 1849723, at *5 (D. Conn. Nov. 29, 2000) (denying motion to sever based on asserted prejudice of joint trial for nineteen of thirty-six defendants charged by a single indictment); *United States v. Castellano*, 610 F. Supp. 1359, 1410-12 (S.D.N.Y. 1985) (denying motion to sever claims against twenty-one defendants charged on seventy-eight counts, finding that risks of jury confusion and prejudicial spillover were "overstated" and could be managed appropriately where alleged criminal conduct and evidence thereof was relevant to existence of overarching RICO conspiracy).

In recognition of the need to balance the preference for a single trial of related claims against fairness concerns, courts determine the appropriate degree of severance where the "case is complex enough to warrant severance, but the [evidence] is sufficiently unified to support as minimal a severance as possible." *United States v. Gray*, 173 F. Supp. 2d 1, 9 (D.D.C. 2001) (granting limited severance where trial of seventeen defendants on 158 counts was expected to last six to twelve months). Here, Plaintiffs' claims are "sufficiently unified" so that a first trial of twenty (20) Plaintiffs will preserve Defendants' right to a fair trial without needlessly prejudicing Plaintiffs' presentation of their claims or causing undue delay. Thereafter, the court may order a greater or lesser number of Plaintiffs in a subsequent trial or trials based upon its experience.

As for Defendants' suggestion that they be permitted to participate in selecting which Plaintiffs present their claims in the first trial, while this may be appropriate in a true "bellwether" trial, it is not appropriate in this case absent an agreement by the parties to treat the first trial as binding on certain aspects of the trials that take place thereafter. Defendants have asked for severance for reasons wholly unrelated to whether Plaintiffs' claims are representative of a larger class of claims. Plaintiffs, in turn, have not sought class action certification. Plaintiffs are thus entitled to select which claims they seek to

present first. If that selection results in the presentation of Plaintiffs' strongest claims first, Defendants may be deemed to have accepted that risk.

## CONCLUSION

Defendants' motion to sever or separate claims for trial (Doc. 159) is GRANTED IN PART. Plaintiffs are ORDERED to select a group of not more than twenty (20) Plaintiffs whose claims will be included in the first trial, which will begin on July 1, 2020 consistent with the court's Scheduling Order. Plaintiffs are required to make that designation within twenty (20) days of this Opinion and Order. With regard to whether severance should be granted pursuant to Rule 21 or Rule 42(b), the parties are hereby ORDERED to file supplemental memoranda of law addressing that question within thirty (30) days of the date of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1st day of May, 2020.

Christina Reiss, District Judge
United States District Court