UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND
DAIRY MARKETING SERVICES, LLC'S EMERGENCY MOTION TO RECONSIDER
AND REQUEST FOR EXPEDITED DISPOSITION**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

        **Page**

DISCUSSION ..................................................................................................................4

I.     NEW INFORMATION JUSTIFIES RECONSIDERATION OF A JULY TRIAL.............5

II.    RECONSIDERATION IS NECESSARY TO CORRECT A CLEAR ERROR
       AND/OR PREVENT MANIFEST INJUSTICE FROM A JULY TRIAL........................10

       A.     It Is Clear Error And Manifestly Unjust To Require The Parties To Incur
             The Unacceptable Health And Safety Risks Of A July Trial ................................10

       B.     The Current Trial Date Is Clear Error And Would Result In Manifest
             Injustice By Unduly Burdening Every Individual Involved In This Case.............11

       C.     The Failure To Consider The Severe Due Process Problems With A July
             Trial Constitutes Clear Error and Is Manifestly Unjust .........................................13

            1.     The Court's Proposed Approach To Seating A Jury Here Is
                   Inadequate ..................................................................................................13

            2.     A July Trial Will Not Protect Due Process................................................14

       D.     The Court's Denial Is Unreasonable Given The Nature Of DFA's Request.........15

CONCLUSION...............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Ballew v. Georgia*,
  435 U.S. 223 (1978)......................................................................................................14

*Lareau v. Nw. Med. Ctr.*,
  2019 WL 490357 (D. Vt. Oct. 8, 2019) ........................................................................5

*S.E.C. v. Amerindo Inv. Advisors, Inc.*,
  2014 WL 405339 (S.D.N.Y. Feb. 3, 2014) ...................................................................5

*United States v. LoRusso*,
  695 F.2d 45 (2d Cir. 1982) ............................................................................................5

## RULES

Fed. R. Civ. P.
  48 (b).............................................................................................................................14
  54(b)................................................................................................................................5

Local Civ. R. 7(b) ..................................................................................................................4

## ORDERS

General Order No. 90 (D. Vt. May 15, 2020)............................................................ *passim*

Government of D.C., Mayor's Order 2020-066 (May 13, 2020) .................................9

Office of the Governor, Commonwealth of Virginia, Executive Order No. 62
  (2020) (May 12, 2020) ..................................................................................................9

Standing Order, *In re: Coronavirus/Covid-19 Pandemic*, No. 20-mc-197
  (S.D.N.Y. Apr. 20, 2020), ECF No. 1 ..........................................................................1

State of Vermont, Addendum 7 to Executive Order 01-20 (Mar. 30, 2020) ..................8

State of Vermont, Addendum 14 to Executive Order 01-20 (May 15, 2020) ................8

State of Vermont Supreme Court, Administrative Order No. 49 (Mar. 16, 2020)
  (amended May 13, 2020) ......................................................................................1, 2, 6

By Court Order, trial in this case will begin on July 1, 2020 in Burlington, Vermont, in the middle of what the Supreme Court of Vermont has declared to be a "judicial emergency" caused by the novel coronavirus, Covid-19.  The warnings from public officials about the deadly dangers of this disease and the severe risks of contagion from human interaction are ubiquitous.  Given the severity of the public health emergency, we are aware of **no court that has successfully held an in-person jury trial of this complexity from start to finish since this emergency began.**

Recognizing the severe risks associated with civil jury trials, the Vermont Supreme Court has banned them in this state's courts through the end of 2020.[1]  And, more recently, the Chief Judge of this Court set a default rule that no trials *of any kind* "will be scheduled before September 1, 2020."[2]  Neighboring states have implemented similar bans:  Massachusetts cancelled state jury trials until at least September 2020;[3] and New Hampshire and the U.S. District Court for the Southern District of New York have banned them "until further notice."[4]  The latest recommendations from Vermont stakeholders make abundantly clear that civil jury trials should not happen in Vermont for the foreseeable future.

---

[1] *See* State of Vermont Supreme Court, Administrative Order No. 49 ¶ 3 (Mar. 16, 2020) (amended May 13, 2020) ("Vermont May 13 Order"), attached as Exhibit 1 to the May 18, 2020 Declaration of Alfred C. Pfeiffer Jr. ("Decl."). *See also* Decl. Ex. 2, State of Vermont Supreme Court, *Long Term Planning Committee: Ramp-Up Report* (May 13, 2020), (the "Vermont Committee Report").

[2] *See* Decl. Ex. 3, General Order No. 90, *In re: Plan for the Resumption of Certain Court Operations* (D. Vt. May 15, 2020) ("Vermont General Order No. 90").

[3] *See* Decl. Ex. 4, Letter from Ralph D. Gants et al., Chief Justice, State of Massachusetts Supreme Judicial Court, to Massachusetts Bar Leaders and Members at 2 (May 14, 2020) ("We hope that, in September, if schools reopen, we will once again begin to conduct jury trials.").

[4] *See* Decl. Ex. 5, News Release, Judicial Branch, State of New Hampshire, Notice from Superior Court Chief Justice Tina L. Nadeau:  Cancellation of Criminal and Civil Jury Trials Due to Coronavirus (COVID-19) - EXTENDED (Apr. 17, 2020) ("[T]here will be no jury trials until further notice."); Decl. Ex. 6, Standing Order at 2, *In re: Coronavirus/Covid-19 Pandemic*, No. 20-mc-197 (S.D.N.Y. Apr. 20, 2020), ECF No. 1 ("[T]he conduct of jury trials in this district be and hereby is suspended until further order of the court.").

After a special committee of Vermont judges, lawyers, court administrators, and other Vermonters convened to investigate the possibility of expanding court operations, the Supreme Court ruled that the Vermont judiciary must remain in a state of "judicial emergency" until at least September 2020 and that "**Jury trials in civil cases are suspended until January 1, 2021**."[5] The next day, this Court ordered that a four-plus-week civil antitrust jury trial should take place in Burlington, Vermont on July 1, 2020—a full six months before the Vermont Supreme Court and the committee of Vermont judiciary stakeholders deem such a proceeding to be safe. And the Court did so without any explanation as to why this particular trial, with all its complexities, should be an exception to the District of Vermont's own default rule.

Even before the recent state and federal court orders, DFA moved this Court through a letter-motion on May 8, 2020 to continue the trial "to allow for the public health situation surrounding the Covid-19 pandemic to clarify (and, we hope, sufficiently improve) so as to better protect the individuals involved in this trial and the citizens of Vermont more broadly." DFA also requested a telephonic conference "to discuss the practical, constitutional, and public health and personal safety consequences of proceeding with trial on July 1, 2020."[6] Plaintiffs opposed DFA's request for a short continuance on May 11, but did not offer any substantive response to DFA's concerns about the health and safety of the parties and witnesses, or DFA's constitutional rights.[7] Indeed, there was nothing plaintiffs could have said—DFA's arguments were irrefutable. The Court did not hold a telephonic conference.

---

[5] *See* Decl. Ex. 1, Vermont May 13 Order ¶ 3 (emphasis added).
[6] *See* Decl. Ex. 7, Letter from A. Pfeiffer to the Honorable Christina Reiss at 1 (May 8, 2020) ("May 8 letter-motion"). At the Court's invitation, the parties have utilized letter-motions and telephonic conferences to address some non-dispositive issues in this case. *See* Mots. Hr'g Tr. 10:21-24, Mar. 9, 2018, ECF No. 64.
[7] *See* Decl. Ex. 8, Letter from D. Zakarian to the Honorable Christina Reiss (May 11, 2020).

On May 14, 2020, the Court entered an order denying DFA's request to briefly continue this trial. The Court's Order stated as follows: "ORDER DENYING Defendants' informal letter request to postpone the trial. A jury of six jurors with one alternate would comport with the court's social distancing guidelines. The District of Vermont will reconvene grand jury proceedings on May 21, 2020, which will involve at least sixteen grand jurors." Order, ECF No. 192. The Court's Order did not address any of the substantive bases for DFA's letter-motion, including the dangers a July trial of this magnitude would pose to the health and safety of *all trial participants* and the Vermont public generally (not just eventually seated jurors); the undue burden on the parties (and particularly the many dairy-farmer witnesses) of proceeding with a trial of this complexity amidst local declarations-of-emergency, continuing stay-at-home orders, and non-resident quarantine requirements; and the threat to due process (and likely verdict invalidity) from advancing headlong into trial without guidance and a plan for protecting the rights and safety of *all* involved. Indeed, the Court's Order multiplied the due process problems of a July trial by limiting the jury panel to six or seven jurors—despite having previously acknowledged that a trial of this length counsels seating *12 jurors* to ensure at least six remain at the end to render a verdict and prevent a mistrial.[8]

For all of these reasons and those set forth below, the Court's order denying DFA's motion was, respectfully, clear error resulting in manifest injustice, and the Court should reconsider it. A trial date that jeopardizes the health of DFA's farmer-witnesses, employees, and attorneys; compromises DFA's constitutional rights; and forces DFA's trial team to choose between safety and defending DFA's right to a fair trial *cannot* be the correct outcome, no matter the Court's desire to get civil jury trials up and running as soon possible, to stick to a schedule established before the coronavirus pandemic changed the national landscape, or to incentivize settlement.

---

[8]   *See* Pretrial Conference Tr. 30:10-23, Nov. 14, 2019, ECF No. 141.

3

Newly discovered evidence also compels reconsideration.  The parties addressed the question of a continuance before (1) the Vermont Supreme Court ordered—on the advice of Vermont judges, lawyers, court administrators, and other Vermont stakeholders—that civil trials could not proceed until January 1, 2021 without endangering the individuals involved and risking parties' rights; (2) the U.S. District Court for the District of Vermont ordered that "no civil or criminal trials will be scheduled before September 1, 2020," unless specifically ordered by the presiding judge after "detailed planning with the attorneys" and "an order tailored to the needs of the case concerning measures to reduce the risk of infection to *all participants*;"[9] (3) the Vermont Governor entered an order on quarantine procedures that makes it illegal or impractical for non-resident trial participants to comply with the Court's Order; and (4) the District of Columbia extended its stay-at-home order until June 8 amidst enduring outbreaks, ensuring that the bulk of DFA's trial team will be unable to leave their homes until the middle of June, except for essential health and safety excursions.  This new information counsels heavily against proceeding with trial in July.  DFA thus moves for emergency reconsideration of the Court's denial of a continuance of the trial date.[10]

Because DFA must have sufficient time to seek direct relief from the U.S. Court of Appeals for the Second Circuit prior to the scheduled trial date if needed, DFA requests expedited disposition of this Motion.

## DISCUSSION

Civil jury trials are a bedrock of the American justice system, and DFA joins with members of federal and state judiciaries everywhere in hoping they will resume as soon as safely possible.

---

[9] Decl. Ex. 3, Vermont General Order No. 90 ¶ 7 (emphasis added).
[10] Pursuant to Local Rule 7(b), DFA has been notified of this Motion and the requested relief.

4

DFA recognizes that it may even be appropriate in the coming months for the District of Vermont to host certain types of jury trials. Short trials involving few individuals and solely local participants would seem the appropriate cases in which federal jury trials should resume in the first instance. This is not such a case. Trial in this case will last four weeks, require as many as 50 individuals to travel to Vermont from 12 different states,[11] and expose numerous "high risk" individuals to illness. It is hard to imagine a case *worse* suited to a jury trial in July.

The denial of DFA's motion for a continuance because of the unprecedented exigencies of Covid-19 thus warrants reconsideration under Federal Rule of Civil Procedure 54(b). For non-final orders, like this one, "Rule 54(b) allows for reconsideration in the district court's equitable discretion." *S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014). "[N]othing in the Rules limits the power of the courts to correct mistakes made in its handling of a case so long as the court's jurisdiction continues." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (quotation omitted). The bases that courts in this Circuit typically rely upon for reconsidering non-final orders include "the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Lareau v. Nw. Med. Ctr.*, 2019 WL 4960357, at *1 (D. Vt. Oct. 8, 2019) (quotation omitted). Both are satisfied here.

I.     **NEW INFORMATION JUSTIFIES RECONSIDERATION OF A JULY TRIAL**

The battle against the spread of Covid-19 has been dynamic, with guidance from public health officials, government entities, and elected leaders sometimes changing daily. The amount of guidance and regulation affecting the participants in this trial is sprawling; the estimated 50 people that would participate in this trial would be travelling to Vermont from roughly a dozen states (including the District of Columbia), all with evolving rules on travel, gathering sizes, and

---

[11]   *See* Decl. ¶¶ 3-5 (describing some of the many anticipated trial participants); *see also* Order at 13, ECF No. 191 (ordering that not more than 20 plaintiffs' claims be included in the first trial).

even whether individuals can step outside their homes. Since DFA's letter-motion, restrictions in Vermont and where trial participants live have evolved—for the worse.

Compelling new guidance and rules from the Vermont Supreme Court demonstrate that conducting a civil jury trial *of any size* in Vermont in the near future poses unacceptable risks. At the time of the parties' briefing, the Vermont Supreme Court's declaration of a judicial emergency was set to expire on May 31, 2020. The Chief Justice of the Vermont Supreme Court, however, commissioned a special Long-Term Planning Committee ("Vermont Committee") to study and recommend an approach for expanding operations in Vermont courts. The Vermont Committee consists of distinguished members of the Vermont Judiciary, including, among others, two Vermont Supreme Court Associate Justices, a Chief Superior Judge, and a State Court Administrator. The Vermont Committee published its findings on May 13, 2020, after soliciting input from the Vermont Department of Health, the Vermont Bar Association, panels of judges representing each of the Superior Court divisions, and additional Vermont stakeholders. To our knowledge, the Vermont Committee's report represents the most thorough and up-to-date fact-finding on the practicality of conducting a civil jury trial in Vermont during the on-going Covid-19 emergency. The Committee's findings were unambiguous: "[r]esumption of jury trials in the wake of COVID-19 poses one of the biggest challenges in expansion of operations."[12] And the Committee's recommendation was clear: "**No scheduling of civil jury trials should take place or notices sent to jurors prior to January 1, 2021 unless the Supreme Court further delays their resumption.**"[13] The Supreme Court adopted that recommendation, extended the judicial emergency to September 1, 2020, and suspended civil jury trials until January 1, 2021.[14]

---

[12]  *See* Decl. Ex. 2, Vermont Committee Report at 3-4, 10.
[13]  *Id.* at 10.
[14]  *See* Decl. Ex. 1, Vermont May 13 Order ¶ 3.

The guidance and ruling from Vermonters and Vermont institutions to not hold any civil jury trials in Vermont state courts in July 2020 is consistent with the newly released Plan for the Resumption of Certain Court Operations in this Court.  The Vermont Committee concluded that even a one-day civil jury trial involving only Vermonters poses an unbearable risk to the Vermont juror pool, court staff and judges, and court-proceeding participants.  Similarly, the Chief Judge's plan for reopening this Court forbids trials of any size and any length until September 1, 2020, unless the presiding judge specifically overrides that default rule.  But the presiding judge may only deviate from the trial ban after entering an "order tailored to the needs of the case concerning measures to reduce the risk of infection to *all participants*"—something that has not and could not happen here.[15]  A one-day trial with local parties and a four-week trial involving nationwide participants present drastically different risk profiles.  The trial in this case is **exponentially bigger**, and brings with it **exponentially larger risks** than most, both inside and outside of the courtroom.  Far from being a local dispute, only one of the 116 plaintiffs involved in this case resides in Vermont; neither plaintiffs' counsel nor DFA's primary counsel has an office in Vermont; and nearly all of the anticipated witnesses are located out-of-state.  Because of the length of this trial, most of the roughly 50 non-resident participants would need to lodge in Burlington hotels, many for up to four-plus weeks, while spending most of every day in the federal courthouse and public venues.  If any trial were to proceed in July despite Vermont's new state and federal trial bans, this massive and lengthy trial certainly should not be the one.

But the trial bans are not the only local directives that a July trial would run afoul of.  The Governor has now entered an addendum to Vermont's quarantine requirements that would effectively force non-residents to violate an Executive Order to participate in a July trial.  Vermont

---

[15]   *See* Decl. Ex. 3, Vermont General Order No. 90 ¶ 7 (emphasis added).

plainly (and not unreasonably) wants to restrict an influx of potentially infected outsiders. The Governor had previously ordered that any non-residents travelling into Vermont must "home-quarantine for a period of 14 days" after arriving in Vermont.[16] After the parties' briefing, the Governor issued an addendum regarding the opening of "lodging" in Vermont clarifying that non-residents arriving for non-essential purposes must "certify self-quarantine for a minimum of 14 days **prior to lodging overnight in Vermont**."[17] And guidance from the Vermont Agency of Commerce and Development ("VACD"), issued on May 15, 2020, confirms that self-quarantine must be performed "**in Vermont**."[18] That means, the roughly 50 non-residents travelling to Burlington for this trial would need to find some non-"lodging" site in Vermont to perform their two-week quarantine. That rules out all Vermont "hotels, motels, bed and breakfasts, inns, short term rentals, such as those made available through VRBO, Homeaway, AirBnb and other services," and even "parks for recreational vehicles and campgrounds."[19] Those lodging sites—which encompass any imaginable short-term commercial dwelling—can force non-residents to attest to having completed a 14-day quarantine elsewhere in Vermont before being admitted.[20]

---

[16]  *See* Decl. Ex. 9, State of Vermont, Addendum 7 to Executive Order 01-20 at 1, Quarantine Restrictions on Travelers Arriving in Vermont (Mar. 30, 2020) ("Addendum 7").

[17]  Decl. Ex. 10, State of Vermont, Addendum 14 to Executive Order 01-20 ¶ 4(d) (May 15, 2020) (emphasis added). The Court has not ordered that a July 2020 trial is "essential" within the meaning of Executive Order 01-20. Nor would that be appropriate, as "essential purpose" only encompasses work "deemed critical to public health and safety, as well as economic and national security, as set forth in Stay Home/Stay Safe." *See* Ex. 9, Addendum 7 ¶ 2.

[18]  *See* Decl. Ex. 11, *Update on New Work Safe Additions to the Be Smart, Stay Safe Order* at 4, 6, 8, State of Vt. Agency of Commerce & Cmty. Dev. (May 15, 2020) (emphasis added); *see also id.* at 5 ("Leisure travel to Vermont—either for the day or overnight—**remains prohibited unless the traveler self-quarantines for 14 days upon arrival**." (emphasis added)); *see also* Decl. Ex. 12, *COVID-19: What Is Isolation, Quarantine and Self-Observation?* at n.3, Vt. Dep't of Health (May 5, 2020) https://www.healthvermont.gov/sites/default/files/documents/pdf/COVID-19-chart-observation-isolation-quarantine_final.pdf (defining quarantine for "returning travelers" to last "**14 days since you were last outside of Vermont**").

[19]  Decl. Ex. 9, Addendum 7 ¶ 6.

[20]  *See* Decl. Ex. 11, *Update on New Work Safe Additions to the Be Smart, Stay Safe Order* at 9.

The intended purpose of these new rules is to **make it more difficult for non-residents to visit Vermont**, and to prevent exactly what this trial will ensure.

In light of additional new information about the dangerous conditions that persist where this trial's non-resident attorneys and witnesses reside, it is hard to quarrel with Vermont's strict local-quarantine requirements. As explained in DFA's May 8 letter-motion, DFA's legal team resides in San Francisco and the Washington, D.C. Metro area. These areas remain under stay-at-home orders because of deadly local conditions. Statistics published after the parties' filings with the Court shows that D.C. alone experienced over **1,120 new confirmed cases** of Covid-19 the week before the Court denied DFA's request to briefly continue trial.[21] Similarly, the Northern Virginia area, where several members of DFA's trial team live, experienced **700 new cases in twenty-four hours** just two days before the Court's Order.[22] Because of these conditions, after the parties' briefing, the District of Columbia extended its stay-at-home order until June 8, 2020.[23]

DFA has been gratified to read reports that Vermont's efforts to contain the spread of Covid-19 have thus far yielded promising results within the state. But Governor Scott has "caution[ed] that the state must also consider neighboring states where the virus is much more prevalent and outbreaks are still occurring."[24] A July trial poses an unjustifiable threat to Vermont's progress for just that reason. The new findings, recommendations, and orders that civil jury trials should not take place in Vermont in the near term, amendments to the local quarantine requirements, and the new orders and data about the spread of this disease in areas where trial

---

[21] *See* Decl. Ex. 13, *Coronavirus Situational Update*, D.C. Health, Gov't of D.C. at 2 (May 13, 2020).
[22] *See* Decl. Ex. 14, Office of the Governor, Commonwealth of Virginia, Executive Order No. 62 (2020) at 1 (May 12, 2020).
[23] *See* Decl. Ex. 15, Gov't of D.C., Mayor's Order 2020-066 § X (May 13, 2020).
[24] *See* Decl. Ex. 16, Press Release, Office of Governor Phil Scott, Governor Phil Scott Extends State of Emergency As Data-Driven Restart Continues at 1 (May 15, 2020).

participants reside should cause the Court to reconsider holding this trial in Burlington in July and to move the trial date to the fall of 2020 at the earliest.

## II. RECONSIDERATION IS NECESSARY TO CORRECT A CLEAR ERROR AND/OR PREVENT MANIFEST INJUSTICE FROM A JULY TRIAL

### A. It Is Clear Error And Manifestly Unjust To Require The Parties To Incur The Unacceptable Health And Safety Risks Of A July Trial

DFA's letter-motion attempted to explain the unacceptable risks to the health and safety of the 50-plus individuals directly involved in this trial, the members of the jury, and the Vermont public in general.[25] The number of people that would be forced into direct or very close contact with a non-Vermonter travelling from cities and states where Covid-19 continues to ravage is staggering. The Court's Order, on its face, discusses only one subset of those affected people—the eventually seated jurors—and even then only briefly. Failing even to discuss the health and safety of the many individuals directly affected by the Court's Order—some of whom are at high risk of serious health consequences from contracting Covid-19—constitutes clear error and would result in a manifest injustice. It also violates this District's new requirement for "an order tailored to the needs of the case concerning measures to reduce the risk of infection *to all participants*," before even the smallest trial can occur.[26] Respectfully, the Court should reconsider.

This trial will bring together in Burlington approximately 50 people from areas more severely affected by Covid-19. Attorneys and witnesses will be forced to travel to Vermont from Boston, Chicago, San Francisco, and the D.C. Metro, all areas experiencing thousands of deaths and still struggling to contain the spread of Covid-19. Those individuals would risk exposure at high-density choke-points like airports, hotels, and transportation hubs as they cross the country

---

[25] *See* Decl. Ex. 7, May 8 letter-motion at 1-3.
[26] *See* Decl. Ex. 3, Vermont General Order No. 90 ¶ 7 (emphasis added).

to descend on the Burlington area for up to four-plus weeks.[27] Once in Vermont, that mass of people would spend hours of every day in the federal courthouse and other public venues, and spend the remainder of their time in Burlington lodging (where not illegal) and other spaces that require contact with Vermont residents that otherwise have nothing to do with this trial. **Holding this trial will greatly increase the risk of spreading infection into Vermont**.

The concerns are even higher because many of the individuals who must appear in-person for trial are at high-risk of complications from Covid-19. Between DFA's attorneys and intended witnesses—the vast majority of whom are dairy farmers—multiple individuals who plan to attend for DFA's case are over the age of 60, have personal medical conditions that place them at high risk that they may not wish to disclose, or both. The same is presumably true for plaintiffs, who have repeatedly emphasized that many of their clients are in their 60s, 70s, and 80s. Carrying forward with a trial in July will force DFA—and its attorneys, staff, employees, and dairy-farmer witnesses—to put themselves at risk in order to avoid jeopardizing DFA's right to a fair trial. There is no countervailing interest in a July trial that would justify such extreme risks. Indeed, the Court's Order did not identify a single one. It would be a manifest injustice to force all of the individuals involved to needlessly risk their health and safety to present this case to a Vermont jury in July, and the failure to fully address that risk in the Court's Order should be reconsidered.

### B. The Current Trial Date Is Clear Error And Would Result In Manifest Injustice By Unduly Burdening Every Individual Involved In This Case

The Court's decision to continue with the trial date originally set before a single case of Covid-19 was reported in the United States would also result in a manifest injustice by unduly burdening every individual involved, especially the dairy farmers. This is particularly true in light

---

[27] Moreover, trial will occur after DFA's team and witnesses could possibly have just spent days or weeks (local stay-at-home orders permitting) crossing the country to prepare for trial, a process that will substantially increase these individuals' exposure to the virus.

11

of the recent addendum to Vermont's quarantine requirements for non-residents. Even if trial participants can find a local non-"lodging" site to legally quarantine for two weeks, that prolonged mandatory isolation would make this trial impracticable. Fifty individuals, including DFA's Chief Executive Officer, DFA's Chief Financial Officer, economic experts, and dairy-farmer witnesses with daily farm chores would be forced to hole-up in non-public lodging for **two weeks** upon arrival in Vermont before even setting foot in the federal courthouse to testify. During that time, witnesses could have *zero* personal contact with their attorneys for preparation. Trial under these circumstances is simply not practical. It would impose a particularly insurmountable burden on DFA's dairy-farmer witnesses, who cannot leave their farms unattended for days, let alone for greater than two weeks—especially during this period of crisis for the dairy industry.

The quarantine order would also impose an unreasonable burden on DFA's trial team, many of whom remain under stay-at-home orders until mid-June. DFA's attorneys would already need to arrive in Vermont at least a week before trial to argue pre-trial motions and to prepare exhibits, witnesses, and trial logistics. That means the trial team must have cleared quarantine by June 24. Of course, the team would need to arrive two weeks earlier to begin quarantine, which moves the arrival date up to June 10, at the absolute latest. That would be only two days after the expiration of orders confining many members of the trial team to their houses. That timeline leaves zero leeway for the possibility that such orders will be extended further, or for the eventuality that a team member must prolong self-confinement because of signs of illness during quarantine—a likely risk from travelling cross-country to reach Vermont. Two days or less is simply not enough time for DFA's trial team to revisit offices they have been barred from for nearly three months, retrieve and prepare copious trial-preparation materials, and relocate to Vermont. Yet that is what the Court's Order demands, without articulating why that outcome is necessary.

### C. The Failure To Consider The Severe Due Process Problems With A July Trial Constitutes Clear Error and Is Manifestly Unjust

#### 1. The Court's Proposed Approach To Seating A Jury Here Is Inadequate

The health and safety risks, and undue burden of a July 1 trial are particularly unacceptable because a trial under these circumstances likely will not protect DFA's due process rights. The Vermont Committee acknowledged as much, finding that "[r]esumption of jury trials in the wake of COVID-19 poses one of the biggest challenges" to expanding the judiciary's operations.[28] That is precisely why DFA's May 8 letter-motion emphasized that it is premature for the parties and witnesses (and Vermont public) to be ordered to incur the health risks of a July trial before the federal courts have articulated strategies for preserving the due process rights of the parties.

For example, DFA has a constitutional right to a representative venire that would be impermissibly compromised by a July trial. The Vermont Committee itself concluded that "anxiety" among potential jurors "will likely be reflected by reduced numbers of people honoring the jury summons and should be anticipated in the summoning process." To counteract that problem, the Vermont Committee recommended a "vigorous education program for potential jurors and the public at large, which includes the Judiciary's recognition of the need to keep jurors safe and the steps we are taking to do so" and that the "Judiciary should consider public outreach prior to the summoning of jurors to limit anxiety."[29] None of these efforts have taken place.

The Court's decision to seat only six to seven jurors creates additional procedural and substantive problems that warrant reconsideration. During the November 14, 2019 pre-trial conference, this Court agreed that a trial of this scale warrants seating 12 jurors.[30] Seating 12 jurors, even in pre-coronavirus times, was prudent to ensure that the jury panel never dropped

---

[28] *See* Decl. Ex. 2, Vermont Committee Report at 10.
[29] *Id*. at 12.
[30] *See* Pre-trial Conference Tr. 30:10-23, Nov. 14, 2019, ECF No. 141.

13

below six jurors who could deliberate and render a verdict. It is impossible to see how a jury of seven *during the Covid-19 emergency* could remain intact throughout the four-week trial. Nor is DFA obligated to agree to a jury panel with fewer than six jurors, and it does not do so.[31] As a result, the Court's decision to seat six jurors and one alternate exacerbates the error of its Order and poses an additional risk to DFA's due process rights.

### 2. A July Trial Will Not Protect Due Process

Of course, the risks of proceeding with a trial without a plan to protect litigants' due process rights extends beyond jury selection. As the Court is well aware, the outcome of this case will depend upon the jury's assessment of plaintiffs' allegations that DFA orchestrated a sprawling multi-faceted conspiracy to suppress farmer pay prices throughout the Northeast. Although no such conspiracy occurred, as DFA's employees and dairy farmers will show, the jury's ultimate determination of this question will depend heavily upon its assessment of the credibility of witnesses for both sides. Because a jury must be able to appropriately evaluate the credibility of the witnesses, protective measures and other social distancing initiatives cannot be implemented in a way that compromises the parties' rights to a fair jury trial. That concern is inherent in the new rule in this District that any trial follow "an order tailored to the needs of the case" that is entered after "detailed planning with the attorneys."[32] No such consultation or planning has occurred, and there is no plan that could adequately protect the parties' and trial participants' safety and rights at this time. In the absence of any plan from this Court or the federal judiciary,[33] we

---

[31] *See* Fed. R. Civ. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous and must be returned by a jury of at least 6 members."); *Cf. Ballew v. Georgia*, 435 U.S. 223 (1978) (holding that conviction based on a jury of less than six is a denial of due process).
[32] *See* Decl. Ex. 3, Vermont General Order No. 90 ¶ 7.
[33] The Administrative Office of the U.S. Courts has said that guidance for holding jury trials is forthcoming, but none has been issued. *See* Decl. Ex. 17, Mem. from James C. Duff, Administrative Office of the U.S. Courts, to All United States Judges et al. (Apr. 24, 2020).

should defer to the informed fact-finding of stakeholders such as the Vermont Committee (recommending that no civil jury trials take place at this time), the VACD (warning that non-essential travel to Vermont "remains prohibited"[34]), and the Centers for Disease Control and Prevention (advising individuals "living in higher transmission areas [not] to travel to workplaces in lower transmission areas and vice versa").[35]

### D.     The Court's Denial Is Unreasonable Given The Nature Of DFA's Request

The Court's denial is error for the additional reason that it is unreasonable in light of the request. DFA did not request an indefinite postponement of trial or a delay of trial until 2021. DFA requested that the Court continue trial until a point in time (perhaps as early as this fall) when the health and safety risks of Covid-19 have sufficiently abated. This modest request is supported by virtually all guidance on the question and the reasoning of not only Vermont's courts, but the courts in neighboring states, such as Massachusetts and New Hampshire. The Court's refusal to grant this limited request, or to articulate any compelling reason to force a July trial in a case that is not a criminal matter, but rather a non-exigent civil trial, was error that the Court should revisit to avoid a manifest injustice.

### CONCLUSION

For the foregoing reasons, DFA respectfully requests that the Court reconsider its Order requiring trial to proceed on July 1, 2020, and continue trial until at least fall of 2020, or sometime thereafter. To permit the parties to protect their rights and health, including by seeking appellate relief if necessary, DFA requests expedited disposition to this Motion.

---

[34]  *See* Decl. Ex. 11, *Update on New Work Safe Additions to the Be Smart, Stay Safe Order* at 4.
[35]  *See* Decl. Ex. 18, *Coronavirus Disease 2019, Interim Guidance for Businesses & Employers Responding to Coronavirus Disease 2019 (COVID-19)* at 5, Ctrs. for Disease Control & Prevention (last visited May 18, 2020).

Dated:  May 18, 2020   Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 18, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

      Joel G. Beckman, Esq. (jbeckman@nbparis.com)
      Gary L. Franklin, Esq. (gfranklin@primmer.com)
      William C. Nystrom, Esq. (wnystrom@nbparis.com)
      Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
      Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  May 18, 2020                              /s/ Alfred C. Pfeiffer Jr.
                                                    Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                                    LATHAM & WATKINS LLP
                                                    505 Montgomery Street, Suite 2000
                                                    San Francisco, CA 94111
                                                    Telephone: 415-391-0600
                                                    Facsimile: 415-395-8095
                                                    Email: al.pfeiffer@lw.com