UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRET SITTS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC. and<br>DAIRY MARKETING SERVICES, LLC,<br><br>    Defendants. | Civil Action No. 2:16-cv-00287-cr |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S MOTION *IN LIMINE* NO. 1: TO PRECLUDE EVIDENCE AND ARGUMENT BASED ON INADMISSIBLE HEARSAY TESTIMONY FROM GARRET SITTS AND WILLIAM SWALLOW
<u>AND MEMORANDUM OF LAW IN SUPPORT</u>**

**REDACTED VERSION FILED PUBLICLY PURSUANT TO PROTECTIVE ORDER**

Pursuant to Federal Rules of Evidence 802, 805, and 403, Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (collectively, "DFA") respectfully submit this motion *in limine* to exclude the testimony of Garret Sitts and William Swallow, set forth below.

Plaintiffs have repeatedly alleged that DFA threatened and/or retaliated against farmers who challenged DFA during the relevant years of this case. But there is not a shred of competent evidence to support this claim. Instead, plaintiffs intend to rely exclusively at trial on second and third-hand gossip regarding supposed "threats" that DFA allegedly made over the last two decades. Lead plaintiff Garret Sitts, for example, intends to testify that he heard from two of his neighbors that DFA employees made a "██████████" at some point between 2009 and 2017.[1] And plaintiffs intend to call a third-party livestock nutritionist, William Swallow, to testify to an alleged conversation he overheard at a truck stop in Milton, Pennsylvania in 2009, between three unknown individuals who allegedly made threatening comments about unidentified dairy farmers.[2]

---

[1]  Ex. 1, G. Sitts Dep. 152:20-25, Aug. 9, 2018 ("Sitts Dep."). Exhibits referenced herein refer to the concurrently filed May 20, 2020 Declaration of Alfred C. Pfeiffer Jr.

[2]  DFA reserves the right to file additional motions *in limine* after this date, given that plaintiffs have not yet identified the plaintiffs who will participate in the first trial pursuant to this Court's May 1, 2020 Order, ECF No. 191.

Such testimony from Mr. Sitts and Mr. Swallow constitutes inadmissible hearsay and would unduly prejudice DFA, and the Court should exclude it under Rules 802, 805, and 403.

## ARGUMENT

I.  **THE COURT SHOULD EXCLUDE MR. SITTS' TESTIMONY THAT DFA SUPPOSEDLY THREATENED HIM BECAUSE IT IS BASED ON INADMISSIBLE HEARSAY**

   A.  **Mr. Sitts' Testimony About Out Of Court Statements By ▓▓▓ And Ms. Hager Constitutes Inadmissible Hearsay-Within-Hearsay**

Throughout this litigation, plaintiffs have repeatedly given Garret Sitts a platform to transmit stories about DFA that Mr. Sitts admits he "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."[3] Mr. Sitts intends to make two particular incidents a centerpiece of his testimony at trial. *First*, Mr. Sitts intends to testify that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."[5]

*Second*, Mr. Sitts intends to testify that he heard from his wife, who in turn heard from a farmer named Linda Hager—who in turn allegedly heard from a DFA field representative named John Laing—that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."[6]

---

[3]   *Id.* 164:10-16.

[4]   *Id.* 150:18-24.

[5]   *Id.* 152:20-25.

[6]   *Id.* 158:9-17. Although Mr. Sitts also claims that Ms. Hager directly "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," *id.* 160:20-21, Ms. Hager denies this. *See* Ex. 2, L. Hager Dep. 35:6-7, Oct. 10, 2018 ("Hager Dep.") (stating that "[a]ll I said to Garrett was we weren't doing the lawsuit"); *id.* 25:12-16, 35:22-36:7, 37:3-17, 38:3-15, 47:8-21. Regardless, whether Mr. Sitts

2

Even putting aside that █████████████████████████████████, and that Ms. Hagar denied it under oath, none of this hearsay-within-hearsay is admissible.  When, like here, testimony involves a chain of declarants—and thus multiple out-of-court statements—the testimony must qualify for an exception to the hearsay rule *at each level* of the hearsay chain before the evidence as a whole, can be admitted.  Fed. R. Evid. 805; *see United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017) (finding that the district court abused its discretion in admitting hearsay-within-hearsay testimony about an alleged death threat because the "second statement is offered for its truth and does not satisfy any of the enumerated hearsay exceptions"); *Plaka v. Bd. of Immigration Appeals*, 139 F. App'x 334, 336 (2d Cir. 2005) (petitioner's testimony "that his father had been threatened by members of the Socialist Party, and that they told his father that they would harm Plaka and his brother" was discounted as "hearsay upon hearsay").

Plaintiffs cannot make this showing, and it is fatal to their ability to introduce this testimony at trial.  Courts across the country routinely exclude testimony involving a chain of out-of-court statements where, like here, the "outer layer" of the hearsay chain fails to qualify for an exception. *See Glaze v. Byrd*, 721 F.3d 528, 533 (8th Cir. 2013) (excluding a hearsay chain of alleged threats as "hearsay within hearsay" because "there is no exception allowing admission of Boyce's statement about what Childs told him"); *Castronovo v. Cty. of Winnebago*, No. 11 C 50046, 2012 WL 13042942, at *5 (N.D. Ill. Nov. 5, 2012) (excluding testimony where the "outer layer" of a hearsay chain was offered "for the truth of the matter—that Fiduccia told the officer to threaten Castronovo"—even though the "inner layer" was admissible).

---

learned about Mr. Laing's alleged statements from his wife or from Ms. Hager is irrelevant: Ms. Hager's statement is inadmissible hearsay either way.

3

The same outcome is appropriate here. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ constitutes an out-of-court statement offered for its truth—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—there is no exception to the hearsay rules that permits its use at trial. Consequently, the entire hearsay-within-hearsay chain involving it—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "inner layer")—is inadmissible. *See Cummings*, 858 F.3d at 773-74 (excluding testimony "even though the first statement on its own could be admissible because it was not hearsay . . . because the second statement is inadmissible hearsay not subject to an exception").

So, too, for Mr. Sitts' testimony regarding the "Hager" incident, which involves even more layers of inadmissible hearsay within hearsay. Ms. Hager's alleged statement to Mrs. Sitts (about Mr. Laing's alleged comments) and Mrs. Sitts' statements to her husband (about what she learned from Ms. Hager) are each "outer layers" of an inadmissible hearsay chain. Each are offered, respectively, to prove that Mr. Laing commented about Mr. Sitts' future with Elmhurst to Ms. Hager, and that, in turn, Ms. Hager relayed those comments to Mrs. Sitts. No hearsay exclusions apply to this testimony, and the Court should exclude the entire hearsay chain under Rule 802 and 805.[7] *See United States v. Williams*, 927 F.2d 95, 100 (2d Cir. 1991) (concluding that the "district

---

[7] In any event, the "inner layer" of each hearsay chain—namely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and John Laing's statement to Linda Hager—independently violate the hearsay rule. Neither Mr. Alger nor Mr. Laing—both of whom serve as DFA field representatives—were acting within the "scope of [the] relationship" between DFA and a "field man" when they allegedly threatened a farmer, and there is no exception to the hearsay rules that renders either statement admissible. *See* Fed. R. Evid. 801(d)(2)(D); *cf. Daughtry v. City of New York*, No. 12-CV-2655(NGG)(RER), 2015 WL 2454115, at *5 (E.D.N.Y. Feb. 23, 2015) (excluding the statement of a city employee because "the mere fact that [the declarant] was 'obviously an employee of the City of New York' does not establish that he had 'authority to take action'" and rejecting plaintiff's "expansive application of [Rule] 801(d)(2)(D)" because it would "render the City *vis-a-vis* the New York City Police Department accountable for the statements of

4

court properly excluded the hearsay within hearsay, or double hearsay, statement . . . because each part of the combined statements did not fall within an exception to the hearsay rule").

This ruling should also preclude Mr. Sitts from offering his opinion that DFA sought to interfere with his relationship with Elmhurst in retaliation for this lawsuit. Mr. Sitts has readily admitted that his (unfounded) suspicions are not based on any personal knowledge of anything DFA did; rather, they stem from what he allegedly learned from his wife or Ms. Hager.[8] Because any testimony Mr. Sitts offers on this subject necessarily relies on inadmissible hearsay, the Court should exclude it.

### B. Mr. Sitts' Testimony Is Inadmissible Because It Unduly Prejudices DFA

The Court should also exclude Mr. Sitts' proposed testimony about the Hager ▇ incidents because its prejudice to DFA vastly outweighs its minimal probative value.

Indeed, the factual record in this case illustrates why Mr. Sitts' allegations have little ability to prove anything about his Sherman Act claims. First, although plaintiffs deposed both John Laing and Linda Hager in this matter, neither one corroborated Mr. Sitts' allegations regarding the Hager incident. To the contrary, both Mr. Laing and Ms. Hager independently denied having any memory of ever discussing Elmhurst and/or Garret Sitts with the other person.[9] Ms. Hager, in fact,

---

any one of its employees who assisted in a police investigation, no matter how tangentially involved, and regardless of which agency they work for" (citation omitted)), *report and recommendation adopted*, 2015 WL 2454117 (E.D.N.Y. May 21, 2015); *Henderson v. Gen. Elec. Co.*, 469 F. Supp. 2d 2, 11 (D. Conn. 2006) (excluding hearsay statements of two executives even though "[i]t is undisputed" that both "were agents of [defendant]" because "neither statement relates to a matter within the scope of the agency relationship").

[8] See Ex. 1, Sitts Dep. 164:10-16 (conceding that everything he knows ▇ ▇ ).

[9] See Ex. 3, J. Laing Dep. 114:12-115:22, Aug. 29, 2018 ("Laing Dep."); Ex. 2, Hager Dep. 14:23-16:20, 18:9-14.

5

unequivocally denied that "anyone from DFA" had ever talked with her "about Garrett [*sic*] Sitts" or the "Sitts farm" *at all*.[10]

Mr. Sitts' claims regarding ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████.

Nor is there any dispute that DFA's alleged plots against Mr. Sitts never materialized in any way: DFA has never acquired Elmhurst or tried to cut Mr. Sitts off from his milk market and, as far as DFA knows, Mr. Sitts is still selling his milk to Elmhurst today, just as he has for the last 13 years. And it should go without saying that DFA has never sought to harm Mr. Sitts physically.

Mr. Sitts' baseless allegations thus have virtually no ability to establish DFA's Sherman Act liability. Merely accusing DFA of making death threats, however, could severely damage DFA in the eyes of the jury. Because the prejudicial effect of this testimony substantially outweighs its probative value, the Court should exclude it pursuant to Rule 403.

## II. THE COURT SHOULD EXCLUDE WILLIAM SWALLOW'S TESTIMONY REGARDING STATEMENTS FROM AN UNIDENTIFIED PARTY BECAUSE IT RELIES ON INADMISSIBLE HEARSAY AND UNDULY PREJUDICES DFA

Plaintiffs' attempt to introduce the deposition testimony of the third-party witness, William Swallow, as evidence that DFA threatened or retaliated against farmers fails for similar reasons.

---

[10] Ex. 2, Hager Dep. 37:3-10.
[11] Ex. 1, Sitts Dep. 153:1-155:11.

6

### A. Mr. Swallow's Testimony Constitutes Hearsay And Should Be Excluded

Plaintiffs have indicated that they intend to introduce Mr. Swallow's testimony regarding a conversation he allegedly overheard at a truck stop in Milton, Pennsylvania in 2009—indeed, they have included him on their preliminary witness list. Mr. Swallow testified that he stopped for lunch one day and noticed two men and a woman—none of whom he knew—eating in the booth behind him. According to Mr. Swallow, one of the men wore a shirt with a Land O'Lakes logo on it and the other wore a shirt with a DMS logo on it.[12] Although his back was to their table, Mr. Swallow testified that he heard the man wearing a shirt with a DMS logo on it say that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[13] Based on this testimony, plaintiffs apparently intend to argue that DMS, in fact, threatened or retaliated against farmers in the Northeast.

The Court should not permit this. Because Mr. Swallow's testimony relates to an out-of-court statement by an unidentified declarant—and, because plaintiffs plainly intend to offer this statement to prove its truth: namely, that the speaker ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ his organization—it is inadmissible hearsay and cannot be introduced at trial. *Id.*; Fed. R. Evid. 802.

Indeed, courts, including in this Circuit, routinely exclude this type of hallway gossip. That is particularly true where, like here, testimony involves statements by an unknown declarant and where "evidence" offered to identify the declarant lacks basic "circumstantial guarantees of trustworthiness." *See Cook v. Hoppin*, 783 F.2d 684, 691 (7th Cir. 1986) (district court abused its discretion in admitting hearsay statements where the court "could only speculate as to the identity

---

[12]   Ex. 4, W. Swallow Dep. 16:22-17:2, *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-00230 (D. Vt. Jan. 19, 2011) ("Swallow Dep.").

[13]   *Id.* 18:19-19:4, 29:16-17.

of the declarant" and was "not even in a position to begin to analyze whether the statements have the requisite 'circumstantial guarantees of trustworthiness'"); *see also Awalt v. Marketti*, No. 11 C 142, 2015 WL 4338048, at *12 (N.D. Ill. Jul 15, 2015) (excluding testimony because plaintiff failed to "establish a sufficient evidentiary foundation for admission . . . including identifying the speakers); *JAV Auto Ctr., Inc. v. Behrens*, No. 05 CIV. 6503(CS)(GAY), 2008 WL 9392107, at *4 (S.D.N.Y. Oct. 8, 2008) (hearsay statement was inadmissible where, although "[p]laintiffs speculate that the declarant must have been Behrens, there are any number of Authority personnel in Albany who could have made the observation"), *aff'd*, 360 F. App'x 176 (2d Cir. 2009); *cf. Bubar v. NorDx*, No. 2:16-cv-00201-JHR, 2017 WL 1368045, at *1 (D. Me. Apr. 7, 2017) ("'Hallway gossip'—that is, 'unattributed statements repeated by party-opponents'—is not admissible." (citation and original alteration omitted)).

As in the above cases, Mr. Swallow admits that he did not know the speaker, his back was to the conversation, and he presumably could not see who was speaking at any time. Thus, no exception to the hearsay rules applies to any statement that Mr. Swallow allegedly overheard. And to the extent Mr. Swallow speculated that the speaker worked for DMS, his conclusion—based primarily on the fact that the declarant wore a shirt with a DMS logo on it—lacks any circumstantial guarantee of trustworthiness that would enable this Court (or any jury) to rely upon it as evidence that the unknown declarant was a DMS employee.[14] The Court should thus exclude at trial any attempt by Mr. Swallow to identify the people he saw.

---

[14] Furthermore, Mr. Swallow's attempt to name, in his testimony, any of the alleged declarants at the truck stop crosses the line into inadmissible hearsay. After leaving the truck stop, Mr. Swallow apparently later told another dairy producer named Andrew Fisher what he had heard. Mr. Swallow testified that Mr. Fisher—*who was not present for the actual conversation and who has provided no sworn testimony in this case*—took a guess as to the identity of the three people at the diner and offered his view that the speaker Mr. Swallow heard worked for DMS. Ex. 4, W. Swallow Dep. 25:9-26:4, 50:12-16 (admitting that the *only* "basis for identifying the individuals

8

### B. Mr. Swallow's Testimony Is Inadmissible Because It Unduly Prejudices DFA

Mr. Swallow's testimony is also inadmissible for the independent reason that its prejudice to DFA vastly outweighs its probative value. *See* Fed. R. Evid. 403. Plaintiffs have never tried to explain how the unattributed gossip that Mr. Swallow purportedly overheard has anything to do with whether each of the 116 plaintiffs in this case received less money on their milk checks than they otherwise would have because of a conspiracy involving DFA. Indeed, there is no evidence that the farmers the unknown declarant referred to *were even in Order 1*. Nor is there evidence that anyone in 2009 *actually* threatened dairy farmers with health code violations or with hauling contract terminations if they tried to leave any organization to which they belonged. Mr. Swallow himself disclaimed any such thing happening.[15] His testimony, therefore, has at best minimal probative value for any of the individual plaintiffs' claims for injury and damages in this case.

It would, however, be deeply prejudicial to DFA. Allowing the jury to hear accusations that DMS supposedly blackmailed farmers creates a severe risk that the jury will be unable to treat DFA impartially in this case. Basic principles of fairness thus require exclusion under Rule 403.

### CONCLUSION

For the reasons set forth above, DFA respectfully requests that the Court grant its motion to exclude the above-described testimony of Mr. Sitts and Mr. Swallow at trial.

---

involved in the conversation at the Penn 80 truck stop" was the "conversation[] [he] had with Mr. Fisher"). Plaintiffs now purportedly intend to offer Mr. Fisher's statements—transmitted through Mr. Swallow—as evidence of the truck-stop-speaker's identity. They may not do so. Mr. Fisher's attempt to identify the people Mr. Swallow encountered itself constitutes inadmissible hearsay and the Court should exclude it at trial, along with any related attempt by Mr. Swallow to identify the people he saw.

15   Ex. 4, Swallow Dep. 30:4-13.

Dated: May 20, 2020

Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## **LOCAL RULE 7(A)(7) CERTIFICATION OF COUNSEL**

Pursuant to Local Rule 7(a)(7), the undersigned counsel for DFA certifies that DFA made a good faith attempt to obtain plaintiffs' agreement to the requested relief in this motion, but was not able to do so.

Dated: May 20, 2020  /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 20, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

    Joel G. Beckman, Esq. (jbeckman@nbparis.com)
    Gary L. Franklin, Esq. (gfranklin@primmer.com)
    William C. Nystrom, Esq. (wnystrom@nbparis.com)
    Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
    Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

| | |
|---|---|
| Dated:  May 20, 2020 | /s/ Alfred C. Pfeiffer Jr.<br>Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>Telephone: 415-391-0600<br>Facsimile: 415-395-8095<br>Email: al.pfeiffer@lw.com |