UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRET SITTS, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,<br><br>        Defendants. | Civil Action No. 2:16-cv-00287-cr |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S MOTION *IN LIMINE* NO. 6: TO PRECLUDE EVIDENCE AND ARGUMENT RELATING TO NATIONAL DAIRY HOLDINGS LP AND <u>MEMORANDUM OF LAW IN SUPPORT</u>**

<u>**EVIDENTIARY HEARING REQUESTED**</u>

Pursuant to Federal Rules of Evidence 402 and 403, defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC (collectively, "DFA") respectfully submit this motion *in limine* to preclude evidence and argument related to DFA's relationship to and alleged conspiracy with National Dairy Holdings LP ("NDH"), as set forth below.

Throughout this case, plaintiffs have indicated that they intend to present and emphasize evidence at trial related to the milk processor NDH—including its formation, history, and relationship to DFA. Specifically, plaintiffs questioned DFA witnesses at length about NDH during depositions; plaintiffs' preliminary exhibit list contains numerous documents concerning NDH;[1] and plaintiffs' summary judgment filings reference NDH multiple times.[2]

Plaintiffs have never explained how DFA's relationship with NDH could have harmed any of them from 2005 to 2017—the period for which they seek damages. Nor could they: NDH did not even operate in the Northeast after 2004. Plaintiffs nonetheless argue that (1) DFA conspired with NDH to reduce competition in the Northeast; (2) DFA misled the Department of Justice ("DOJ") about its relationship to NDH in 2001; and (3) in 2008, DFA allegedly paid too much for the shares of NDH owned by the individual Allen Meyer. None of these theories justifies plaintiffs' use of evidence relating to NDH at trial.

***First***, DFA could not possibly have conspired with NDH in the Northeast from 2005 to 2017—nor could such a conspiracy have suppressed farmer pay prices in the Northeast during that time—because NDH did not exist in the Northeast after 2004.[3] Evidence that DFA allegedly

---

[1]  The parties have not yet exchanged final exhibit lists, and DFA reserves the right to update this Court regarding the evidence presented on plaintiffs' final list at the appropriate time.

[2]  *See, e.g.*, Pls.' Rev. First Amend. Compl. ¶¶ 18, 117-28, 249, 261, 273, 279, ECF No. 29 ("Am. Compl."); Pls.' Statement. of Disputed Material Facts in Supp. of Opp'n to Defs.' Mot. for Summ. J. ¶¶ 44, 50, 57, 60-61, 114, 125, ECF No. 102 ("PSOF").

[3]  PSOF ¶ 125 (identifying NDH as a co-conspirator but conceding that NDH "has not owned

"conspired" with NDH at one point in time (it did not) is thus irrelevant to plaintiffs' claims for relief and should be excluded to avoid confusing the jury. *See* Fed. R. Evid. 402, 403. **Second**, DFA did not mislead the DOJ about anything. The DOJ itself has never contended any such thing. Regardless, DFA's statements to the DOJ about NDH in 2001 are irrelevant to any element of plaintiffs' claims. **Finally**, DFA's purchase of Allen Meyer's shares in NDH—a business decision made twelve years ago—is not even remotely related to, or probative of, the alleged Northeast, Order 1 focused conspiracy set forth in this action. Because plaintiffs seek to introduce evidence related to DFA's purchase of Mr. Meyer's shares solely to portray DFA's business decisions negatively and contaminate the jury's feelings about DFA, the Court should exclude that evidence under Rules 402 and 403.

## BACKGROUND

NDH was a fluid milk processor that was created in 2001 as a joint venture between DFA and three individuals—Allen Meyer, Tracy Noll, and Cletes "Tex" Beshears.[4] Pursuant to the terms of the joint venture, DFA held a 50% economic interest in the company, while Meyer, Noll, and Beshears split the remaining 50% share.[5] In 2001, Dean merged with Suiza. Pursuant to this transaction, the merged entity divested 11 plants to DFA, which were then contributed to NDH.[6] None of the divested plants were in the Northeast.[7]

---

any processing capacity in the Northeast since 2004"); *see id*. ¶ 62 (acknowledging that, by 2004, all of NDH's processing capacity in the Northeast had been sold to HP Hood, and NDH no longer had any contracts with DFA affecting the Northeast after that point).

[4]    PSOF ¶ 44.

[5]    *Id.*; *id.* ¶ 60.

[6]    PSOF ¶ 44.

[7]    *Id.*

2

NDH only held processing assets in the Northeast from 2001 to 2004.[8] During those years, DFA entered into supply and outsourcing agreements with NDH for its Crowley and Rosenberger plants.[9] In 2004, Hood acquired all of NDH's Northeast assets,[10] and NDH has not existed in the Northeast since that time (2004).[11] In 2008, DFA purchased Allen Meyer's shares in NDH.[12]

## ARGUMENT

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence can be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403.

**I.     EVIDENCE THAT DFA CONSPIRED WITH NDH IS IRRELEVANT AND UNDULY PREJUDICIAL BECAUSE NDH DID NOT EXIST IN ORDER 1 DURING THE YEARS FOR WHICH PLAINTIFFS CLAIM DAMAGES**

DFA's long-dead relationship with an entity that had no presence whatsoever in the Northeast after 2004 cannot possibly make it "more or less probable" that DFA conspired *with that entity* to suppress raw milk prices in Order 1 between 2005 and 2017. *See* Fed. R. Evid. 401. Despite this, plaintiffs have expressly identified NDH as one of DFA's alleged co-conspirators, and claimed that plaintiffs were harmed by—and suffered damages from—DFA's conspiracy with NDH from 2005 to 2017.

---

[8]     *Id.* ¶¶ 60-61.
[9]     *Id.*
[10]    *Id.* ¶ 62
[11]    *Id.* ¶ 125.
[12]    *Id.* ¶ 114.

3

Plaintiffs do not dispute that NDH no longer owned processing assets in the Northeast after 2004. Although NDH owned the assets of Crowley and Rosenberger between 2001 and 2004, it sold those assets to HP Hood in 2004. As a result, DFA's agreements with Crowley and Rosenberger from 2005 to 2017 were agreements between DFA and *HP Hood*—not between DFA and NDH.

Nor do plaintiffs assert any claims for injuries or damages in this case based on the milk checks they received from 2001 to 2004,[13] the only years in which NDH operated in Order 1 and thus, NDH could not have even theoretically "conspired" with DFA to suppress milk prices and harm plaintiffs. That is for good reason: any such claims would be time-barred. 15 U.S.C. § 15b (outlining four-year statute of limitations for private causes of action brought under the antitrust laws); Compl., *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-00230-cr (D. Vt. Oct. 8, 2009), ECF No. 1 (complaint filed in 2009).

Because it is not possible that DFA conspired with NDH to harm plaintiffs during the period at issue, evidence of NDH's alleged "conspiracy" with DFA to suppress milk prices is thus both irrelevant and inadmissible at trial. *See* Fed. R. Evid. 402; *Arlio v. Lively*, 474 F.3d 46, 52 (2d. Cir. 2007) ("Evidence that is not relevant is not admissible." (citing Fed. R. Evid. 402)); *id.* at 52 ("To open the doors of relevance so wide as to allow a plaintiff to recite facts concerning claims he is *not* making or damages he is *not* seeking would violate the spirit of the Federal Rules and 'hamper rather than advance the search for truth.'" (emphases in original) (citation omitted)).

Under similar circumstances, courts have not hesitated to exclude evidence of conduct that occurred outside of the relevant period of the case and thus, had no bearing on plaintiffs' actual claims for injury and damages. *Cf. Wharton v. State Univ. of N.Y. at Buffalo*, No. 07-CV-116A,

---

[13] Plaintiffs claim damages for the years 2005 to 2017. *See* PSOF ¶¶ 128, 145.

2011 WL 1486554, at *6-7 (W.D.N.Y. Apr. 19, 2011) (limiting witness testimony to evidence of events within the relevant time period); *United States v. Beltran-Garcia*, 338 F. App'x 765, 771-72 (10th Cir. 2009) (upholding district court's exclusion of evidence relating to officer's four-year-old disciplinary problems because they were "too old" and noting that "remoteness in time affected the probative nature of the evidence").  That reasoning applies equally here.

Even if evidence relating to NDH were minimally relevant, there is a substantial danger that such evidence will confuse the issues, mislead the jury, and unduly prejudice DFA.  Evidence of NDH's prior relationship with DFA may confuse and mislead the jury into believing that it can find liability and award damages to plaintiffs based on a relationship where any impact on the Northeast would have necessarily ended in 2004, at the latest.  This risk of confusion is particularly high here, given the plethora of dairy industry deals, contracts, and transactions over the past two decades of which the jury must keep track to follow plaintiffs' narrative in this case.  The sheer number of alleged conspirators and agreements in this trial will make it virtually impossible for any jury to separate out the deals that are related to plaintiffs' claims from those that are not, if evidence relating to NDH remains in the case.  The prejudicial effect to DFA from evidence of DFA's pre-2005 relationship with NDH substantially outweighs any minimal probative value of that evidence, and the Court should exclude it.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury").

## II. DFA DID NOT MISLEAD THE DOJ ABOUT NDH, BUT REGARDLESS, DFA'S ALLEGED STATEMENTS TO THE DOJ IN 2001 ARE IRRELEVANT AND UNDULY PREJUDICIAL TO DFA

### A. DFA's Statements To DOJ Regarding Suiza And Dean's 2001 Divestiture Of Non-Order-1 Plants To NDH Are Irrelevant To Plaintiffs' Sherman Act Claims Based On Milk Prices In Order 1 From 2005 To 2017

Plaintiffs' second attempt to insert irrelevant evidence regarding NDH into trial is even more problematic. Plaintiffs' convoluted argument seems to be that, when the DOJ reviewed Suiza's proposed merger with Dean in 2001, the DOJ elicited assurance from DFA that DFA would not control NDH before the DOJ approved Suiza and Dean's divestiture of 11 plants to NDH as a condition of the Suiza / Dean merger.[14] According to plaintiffs' filings, the DOJ elicited this reassurance from DFA because it sought to create a new source of competition *outside of the Northeast*.[15] Plaintiffs also allege that, as part of this broader transaction, the DOJ required that DFA remove most favored nation ("MFN") provisions from certain supply agreements.[16] Plaintiffs claim that DFA violated both "agreements" with the government. Of course, the DOJ itself has never contended that DFA violated any such agreements with it.

But more importantly, plaintiffs do not even try to explain how any of this is relevant to any claim in this case. The plants that NDH acquired through the Suiza / Dean merger *were not even in Order 1*.[17] That entire transaction involving NDH—including its legality, competitive effect, and DFA's alleged role in it and/or statements to the DOJ about it—thus has no bearing on plaintiffs' claims that an alleged conspiracy in the Northeast suppressed Order 1 milk prices from

---

[14] *See generally* PSOF ¶ 44.

[15] *See generally id.* (citing Ex. JJ to the Feb. 24, 2019 Aff. of Dana A. Zakarian in Supp. of Pls.' Opp'n to Defs.' Mot. for Summ. J., ECF No. 102).

[16] *See id.*

[17] *Id.* (The 11 divested plants acquired by NDH following the Suiza / Dean merger were in "Alabama, Florida, Indiana, Kentucky, Ohio, South Carolina, Utah, and Virginia").

2005 to 2017. Because NDH's acquisition of non-Order 1 plants in 2001 cannot make DFA's alleged conspiracy in the Northeast more or less probable, that evidence is inadmissible under Rule 402. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Fed. R. Evid. 402 ("Irrelevant evidence is inadmissible.").

DFA's alleged promise to remove MFN provisions from certain supply agreements as a condition of NDH's acquisition of the divested plants is likewise irrelevant to any claim in this case. That promise involved only DFA's supply agreements for certain Suiza plants *outside of the Northeast*, and was fulfilled prior to the closing of the Suiza / Dean transaction by the actual modification of DFA's contracts with Suiza. Plaintiffs have no standing to assert a claim based on DFA's representations to the DOJ in 2001, and the Court should not permit plaintiffs to mislead the jury into believing that plaintiffs are entitled to recover damages based on this incident. *See, e.g.*, *Pure Country, Inc.*, 312 F.3d at 958 (holding that a third party did not have standing to sue for a violation of any agreement when it did not have a "legally binding and enforceable right to that benefit"); *Golden v. Nat'l Fin. Adjusters*, 555 F. Supp. 42, 47 (E.D. Mich. 1982) ("Plaintiffs have failed to show how an interpretation of [an agreement] between the government and defendant, which plaintiffs cannot enforce against defendant, presents a justiciable controversy to this Court.").

Furthermore, DFA's alleged statements to the DOJ about its MFN clauses are irrelevant to the question of whether any MFN provision in this case actually violates the Sherman Act. Nothing in DFA's statements to, or various discussions with, the DOJ serve as a substitute for the applicable legal standards governing that statute or are probative as to whether any MFN clause in this case was anticompetitive. *Cf. Chalco v. Belair*, No. 3:15-CV-340 (VLB), 2019 WL 456162,

7

at *7 (D. Conn. Feb. 5, 2019) (excluding evidence that defendant violated police department polices in an excessive force case because the department policies were not an appropriate substitute for the applicable legal standard governing a Fourth Amendment violation); *id.* at *4 (excluding evidence of conclusions reached in an internal investigation because "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established" (citation omitted)); *United States v. North*, No. 3:06 CR 323(CFD), 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (excluding portions of defendant's antitrust compliance policy as misleading as to the proper scope and meaning of the Sherman Act). The Court should exclude this evidence under Rule 402.

      **B.    DFA's Alleged Statements To The DOJ Regarding NDH Are Unfairly Prejudicial To DFA And Will Confuse And Mislead The Jury**

Even if evidence of DFA's alleged statements to the DOJ about NDH back in 2001 was somehow relevant to any element of plaintiffs' claims (it is not), the marginal relevance of that evidence would be substantially outweighed by a risk of unfair prejudice to DFA and of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. It is clear that plaintiffs intend to argue that DFA violated an understanding with the DOJ regarding NDH in order to encourage the jury to view DFA unfavorably and to infer that DFA's conduct between 2005 and 2017 must *also* have violated the antitrust laws. Plaintiffs' argument will necessarily invite the jury to infer that, if DFA agreed with the DOJ to remove MFN provisions from certain agreements, that promise must be evidence that any subsequent inclusion of MFN provisions in any supply agreement violated the Sherman Act. These suggestions (which are wrong) are inherently misleading to the jury and prejudicial to DFA.

Furthermore, to ask the jury to decide whether DFA violated some supposed promise to the DOJ (something the DOJ itself has never contended), when such alleged conduct does

not provide any basis for the claims in the case, would create a side show, and require a mini-trial within the larger trial. That would serve no purpose but to confuse the jury and waste already limited trial time. *See* Fed. R. Evid. 403. The Court should exclude this "evidence" and argument accordingly.[18]

### III. DFA'S PURCHASE OF ALLEN MEYER'S NDH SHARES IN 2008 IS IRRELEVANT AND UNFAIRLY PREJUDICIAL TO DFA

Because any evidence or argument relating to DFA's relationship to NDH itself is irrelevant to plaintiffs' claims, evidence that DFA purchased Mr. Meyer's ownership stake in NDH is even more attenuated and irrelevant. Plaintiffs do not even try to explain how DFA's purchase of Allen Meyer's shares in 2008—four years after NDH last had any presence in the Northeast— proves that DFA conspired with other cooperatives and processors in Order 1 to violate the Sherman Act from 2005 to 2017. Instead, they invoke this evidence primarily to grouse that DFA overpaid for the shares, which, according to plaintiffs, were worthless. Of course, there is no authority for plaintiffs' apparent belief that they may recover under the antitrust laws if DFA's business decisions do not comport with plaintiffs' personal views about what constitutes a good

---

[18] In any event, this evidence is also inadmissible pursuant to Federal Rule of Evidence 404(b) because the sole reason plaintiffs offer the evidence is to allege that DFA somehow misled the government agency in charge of antitrust enforcement, and, as such, DFA had a propensity for violating the antitrust laws and therefore must have violated the Sherman Act as presented in this action. Such an inference is prohibited by Rule 404(b). *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996) (finding an abuse of discretion where it was clear that admitted disciplinary records "were intended to show Hynes's 'character' and to persuade the jury that because of that character, the jury should infer that Hynes was not an innocent party in these altercations"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 (RMB)(JCF), 2006 U.S. Dist. LEXIS 52870, at *52 (S.D.N.Y. Aug. 1, 2006) (excluding evidence in antitrust action of "a series of adverse judicial and administrative decisions documenting [defendants'] 'total job policy'" and noting that "Rule 404(b) bars evidence of prior misconduct to show that a defendant had a propensity to engage in the conduct charged").

deal.[19]  The fact that DFA made a business decision in 2008 that plaintiffs disagree with does not make it "any more or less probable" that DFA conspired to suppress raw milk prices in Order 1 or otherwise monopsonized the raw milk market in the Northeast.  *See* Fed. R. Evid. 401.  Evidence of a payment to an individual for his share of a company that had no presence in the Northeast after 2004 cannot possibly speak to any fact of consequence in this case and must be excluded.  *See* Fed. R. Evid. 402.

## CONCLUSION

For the foregoing reasons, DFA respectfully requests that the Court grant its motion *in limine* to exclude any evidence or argument addressed herein relating to National Dairy Holdings LP.  DFA also respectfully requests that the Court schedule an evidentiary hearing on this motion.

---

[19]  Plaintiffs should not be allowed to use their own, completely uninformed disapproval of a particular deal to bias the jury against DFA.  *Cf., e.g.*, *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703 (2d Cir. 1983) (upholding exclusion of evidence in antitrust litigation that defendant meat processor and its chairman participated in bribery of union officials as unfairly prejudicial); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, No. 94 CIV. 4725(CSH), 1999 WL 11553, at *1 (S.D.N.Y. Jan. 13, 1999) (excluding, among other things, extrinsic evidence of plaintiff company's prior "failure to detect an accounting loophole" and the matter's "aftermath" as irrelevant to defendant company's malicious prosecution claim in the instant case and unfairly prejudicial to plaintiff).  Indeed, DFA disputes plaintiffs' claim that Mr. Meyer's shares were "worthless" at the time of sale.

Dated: May 26, 2020

Respectfully submitted,

 /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## **LOCAL RULE 7(A)(7) CERTIFICATION OF COUNSEL**

Pursuant to Local Rule 7(a)(7), the undersigned counsel for DFA certifies that DFA made a good faith attempt to obtain plaintiffs' agreement to the requested relief in this motion, but was not able to do so.

Dated: May 26, 2020  /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 26, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

    Joel G. Beckman, Esq. (jbeckman@nbparis.com)
    Gary L. Franklin, Esq. (gfranklin@primmer.com)
    William C. Nystrom, Esq. (wnystrom@nbparis.com)
    Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
    Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated: May 26, 2020

      /s/ *Alfred C. Pfeiffer Jr.*
      Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
      LATHAM & WATKINS LLP
      505 Montgomery Street, Suite 2000
      San Francisco, CA 94111
      Telephone: 415-391-0600
      Facsimile: 415-395-8095
      Email: al.pfeiffer@lw.com