# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRETT SITTS, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2:16-cv-00287-cr** |
| **v.** | |
| **DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,** | |
| **Defendants.** | |

## DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S REPLY IN SUPPORT OF EMERGENCY MOTION TO RECONSIDER

Plaintiffs wholly fail to rebut any of the reasons why a jury trial cannot reasonably proceed on July 1—and they barely even try.  There is no dispute that Covid-19 spreads easily from person to person; that hot spots and resurgences continue to exist; or that Vermont, other relevant jurisdictions, and public health officials have instituted quarantine, stay-at-home, and other orders and guidance to slow the spread.  Jury trials as we know them are completely incompatible with those orders and guidelines.  This unfortunate reality is obvious even to potential jurors—who, because of the risks posed by jury trials, have expressed great reluctance to serve in the near term. Courts have not figured out how to assuage those concerns or otherwise hold jury trials in a manner that will protect the health and safety of jurors, witnesses, court staff, other trial participants, and the public.  Neither have plaintiffs.  The most they offer is a "wait and see" approach.  With a four-plus week trial only four weeks away, and with travel now imminent, that is no answer at all.  In light of the significant public health concerns, many courts have postponed even *simple* jury trials for at least the next few months.  Plaintiffs provide no reason for this complex, non-exigent civil dispute—over money, not civil rights or public safety—to proceed as a near-term experiment in holding a Covid-era jury trial.  For good reason:  there is none.

## DISCUSSION

## I.     PLAINTIFFS DO NOT—AND CANNOT—REBUT THE SERIOUS HEALTH AND SAFETY CONCERNS POSED BY A JULY 1 JURY TRIAL

DFA has explained at length the health and safety risks a July 1 jury trial poses to jurors, witnesses, court staff, other trial participants, and the public at large.  Plaintiffs' only response is to suggest (at 3) that they are "willing to discuss ways to reduce the risk of infection . . . in order to come up with . . . sufficient safety measures" before trial.  Plaintiffs miss the point:  courts have not figured how to hold a jury trial safely *at all*, especially for a trial of this magnitude.

Covid-19 continues to spread throughout the nation, with more than 100,000 deaths, and tens of thousands of new cases every day.[1] Governments continue to impose restrictions on people and businesses limiting travel, activities, and gatherings—and requiring safety measures such as face masks and social distancing. Courts have not succeeded in reconciling these guidelines with the realities of holding jury trials. In many ways, jury trials are antithetical to pandemic restrictions. Jurors, witnesses, court staff, and other trial participants must stay in close quarters for days (or, here, weeks) at a time, and court facilities are not designed to promote social distancing.[2] As jurists have recognized, courts "owe the responsibility to the jurors to ensure they're going to be safe," yet there are numerous unanswered questions about how to hold jury trials safely: How many potential jurors can be brought in at a time? Where will they go? How will jurors, witnesses, and others access upper-level courtrooms with strict limits on elevator use? What will happen if witnesses are unwilling to appear out of concern for their own health? Where will jurors deliberate that has enough room for social distancing? How and when will jurors, witnesses, and others be tested for Covid-19? What will happen to the trial if someone shows symptoms consistent with Covid-19?[3] DFA is unaware of any court or agency that has answered these questions, let alone issued the comprehensive guidance needed in a case as large and complex as this one.

---

[1]   *See* Ctrs. for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated June 1, 2020), attached as Exhibit 1 to the June 2, 2020 Declaration of Alfred C. Pfeiffer Jr. ("June 2 Decl.").

[2]   *See* June 2 Decl., Ex. 2, Max Mitchell, *Masks, Sanitizer and Measuring Tape: What Jury Trials May Look Like Post-COVID*, Legal Intelligencer (May 27, 2020), https://www.law.com/2020/05/27/masks-sanitizer-and-measuring-tape-what-jury-trials-may-look-like-post-covid/.

[3]   *Id.* (quoting Philadelphia Court of Common Pleas President Judge Idee Fox).

These uncertainties simply make the risks of a jury trial too great, as one of the only in-person jury trials attempted during the pandemic shows.  That criminal trial was "plagued with objections . . . , with the defense bar contending that many of the changes the court put in place were unconstitutional."[4]  And ultimately—despite the precautions that had been instituted—the trial "c[a]me to an abrupt halt" during jury selection due to a medical emergency suspected to be related to COVID-19.[5]  Although the trial court wanted to resume proceedings shortly thereafter, it eventually agreed to a continuance—but only after the defendant sought a writ of prohibition from the Ohio Supreme Court on the ground that a trial in the current climate would not protect his constitutional rights.[6]

The health and safety risks are obvious to potential jurors, who (sensibly) have expressed great reluctance to serve under the current circumstances.  The Western District of New York recently continued all petit and grand jury service after "the Court's Jury Administrator . . . received a significant number of communications from potential jurors expressing their reluctance or inability to serve on jury duty due to the COVID-19 Pandemic Event."[7]  And the Northern District of California recently delayed a patent jury trial until at least October, in part because "the last thing you want is a group of jurors who look at your clients and think, 'Why are you making

---

[4]  *Id.*

[5]  June 2 Decl., Ex. 3, Tracy Leturgey, *How Ashland's First Jury Trial Amid COVID-19 Pandemic Gained National Attention*, Ashland Source (May 5, 2020), https://www.ashlandsource.com/news/how-ashlands-first-jury-trial-amid-covid-19-pandemic-gained-national-attention/article_88513d4a-8efb-11ea-bd88-6feeb245668c.html.

[6]  *See id.*

[7]  June 2 Decl., Ex. 4, General Order at 1, *Court Operations and Access During COVID-19 Pandemic* (W.D.N.Y. May 13, 2020).

us do this now?'"[8]  A judge in the Eastern District of Pennsylvania echoed the thought:  "If people do not feel safe, they're not going to come in, and we're not going to get a sample of the Eastern District."[9]  The same is true here.  Potential jurors will almost certainly, and understandably, balk at the idea of being confined to a courtroom with dozens of people—most of whom have traveled from out of state to be there—for weeks on end.  That is, if they show up for jury service at all.

## II.   COURTS ACROSS THE COUNTRY HAVE DELAYED JURY TRIALS

For these reasons among others, there has been a "near total halt to jury trials."[10]  Courts in the region and across the country have concluded that jury trials must be postponed for at least a few months until proper protocols are developed.  In fact, in the short time since DFA filed its Motion to Reconsider, the ranks of such jurisdictions have grown.

Plaintiffs do not meaningfully dispute any of this.  Instead, they seek to distract the Court with three strawman arguments.  *First*, they note (at 2) that the District of Vermont's General Order gives this Court discretion to hold a jury trial on July 1—a point DFA has never disputed.  *Second*, plaintiffs suggest (at 2) that DFA thinks the Vermont Supreme Court's postponement of civil jury trials until 2021 is somehow binding on this Court.  DFA did not argue that this Court was *bound* by the Vermont Supreme Court's decision; rather, DFA argued (at 6) that this Court should follow the Vermont Supreme Court's lead since it was based on "the most thorough and up-to-date fact-finding on the practicality of conducting a civil jury trial in Vermont."  And *third*,

---

[8]   June 2 Decl., Ex. 5, Dorothy Atkins, *Cisco, Finjan IP Trial Delayed Until October Due to Pandemic*, Law360 (May 26, 2020), https://www.law360.com/articles/1276492/cisco-finjan-ip-trial-delayed-until-october-due-to-pandemic (quoting District Judge Beth Freeman).

[9]   June 2 Decl., Ex. 2 (quoting District Judge Jeffrey Schmehl).

[10]   June 2 Decl., Ex. 6, Rebecca Davis O'Brien, *Is Anywhere Safe for a Jury Trial During the Covid-19 Pandemic?  Try a School Gym*, Wall Street J. (May 19, 2020), https://www.wsj.com/articles/is-anywhere-safe-for-a-jury-trial-during-the-covid-19-pandemic-try-a-school-gym-11589893201.

plaintiffs (at 2 n.2) mention two federal courts (the Districts of Maine and New Hampshire) that, plaintiffs say, are allowing jury trials to resume on July 1.  But those courts have shown no signs of resuming jury trials on July 1.  The Chief Judge of the District of Maine recently made clear that his court has "not set a date for the resumption of jury trials."[11]  And it appears that the District of New Hampshire just has not gotten around to postponing them further.

In reality, there is a regional consensus that jury trials must be postponed across the board for at least the next few months.  The Massachusetts Supreme Judicial Court has ordered "[a]ll jury trials, in both criminal and civil cases, . . . continued to a date no earlier than September 8, 2020,"[12] and the District of Massachusetts has done the same.[13]  The New Hampshire Supreme Court has suspended "[j]ury trial and grand jury proceedings . . . until further notice,"[14] with at least one judge commenting, "I don't see (jury trials) happening for a long time, because we want to keep jurors safe" and "don't want them to be afraid to come to the courthouse."[15]  The Maine Supreme Judicial Court has ordered "[a]ll jury matters, civil and criminal, excluding grand jury proceedings, [to be] postponed to a date after September 7, 2020."[16]  New York's state courts have

---

[11]  June 2 Decl., Ex. 7, Letter from Chief Judge Jon D. Levy to Members of Maine's Federal Bar at 2 (May 22, 2020).

[12]  June 2 Decl., Ex. 8, Second Updated Order Regarding Court Operations ¶ 8, *In re COVID-19 (Coronavirus) Pandemic*, No. OE-144 (Mass. May 26, 2020).

[13]  June 2 Decl., Ex. 9, General Order 20-21 ¶ 1, *In re Coronavirus Public Emergency* (D. Mass. May 27, 2020).

[14]  June 2 Decl., Ex. 10, N.H. Supreme Court, Third Renewed and Amended Order Suspending In-Person Court Proceedings ¶ 6 (May 21, 2020).

[15]  June 2 Decl., Ex. 11, Andy Hershberger, *NH Courts Postpone Jury Trials Indefinitely*, WMUR9 (Apr. 24, 2020), https://www.wmur.com/article/nh-courts-postpone-jury-trials-indefinitely/32271820 (quoting Superior Court Chief Justice Tina Nadeau).

[16]  June 2 Decl., Ex. 12, Me. Judicial Branch, Revised Emergency Order and Notice from the Maine Supreme Judicial Court at 3 (May 28, 2020).

"suspended" jury service "until further notice."[17]   The Southern District of New York has likewise suspended jury trials "until further order of the court," with that suspension likely extending until at least September.[18]   The Connecticut state court system has cancelled "all jury trials . . . until further notice."[19]   "[O]fficials in the judicial branch [in Connecticut] are resolved it is highly likely there will be no jury trials until at least 2021."[20]   The District of Connecticut has continued "[a]ll civil and criminal jury trials (and related jury selections) scheduled to commence on or before September 1, 2020 . . . pending further order of the Court."[21]   These courts—like Vermont's—have all considered the risks of holding jury trials in the near-term, and have decided that they are too high.

Even courts in states that have been more aggressive in reopening have only tiptoed toward the resumption of jury trials.  In Texas state court, for example, jury trials are prohibited "prior to August 1,"[22] except for a small number of "experimental" trials "to determine best practices to start holding jury trials again while keeping all court participants safe from infection by COVID-

---

[17]   June 2 Decl., Ex. 13, N.Y. Commissioner of Jurors, *Notice from the Commissioner of Jurors re: Coronavirus and Flu*, http://www.nyjuror.gov/pdfs/Coronavirus-Memo.pdf (last visited June 2, 2020).

[18]   Standing Order at 2, *In re Coronavirus/Covid-19 Pandemic*, No. 20-mc-197 (S.D.N.Y. Apr. 20, 2020), attached as Exhibit 6 to the May 18, 2020 Declaration of Alfred C. Pfeiffer Jr. ("May 18 Decl."); *see* June 2 Decl., Ex. 6.

[19]   June 2 Decl., Ex. 14, Ct. Judicial Branch, *COVID-19 Information from the Connecticut Judicial Branch*, https://jud.ct.gov/COVID19.htm (last updated May 29, 2020).

[20]   June 2 Decl., Ex. 15, Ct. Law Tribune Editorial Bd., *The Danger of Disappearing Jury Trials, During and After the Pandemic*, Ct. Law Tribune (May 14, 2020), https://www.law.com/ctlaw tribune/2020/05/14/the-danger-of-disappearing-jury-trials-during-and-after-the-pandemic/.

[21]   June 2 Decl., Ex. 16, General Order at 1, *In re Court Operations Under the Exigent Circumstances Created by COVID-19* (D. Ct. May 19, 2020).

[22]   June 2 Decl., Ex. 17, Tx. Supreme Court, Seventeenth Emergency Order Regarding the COVID-19 State of Disaster ¶ 7 (May 26, 2020).

19."[23]   A July 1 trial would make this case just that—an experiment.  But it is hard to imagine a case worse suited to test out as-of-yet unknown jury trial protocols.  As one federal judge has aptly cautioned:  "[C]ourts might want to start with the shortest trials first . . . .  'Once everybody's used to how we're doing it, then you try the more complex trials.'"[24]   Starting with a large, complex trial like this one—involving dozens of out-of-state witnesses, lawyers, and others—would mean that, if it "were to be tripped up in its final days," there would be "weeks of lost trial time."[25]

## III.   GOVERNMENTAL ORDERS MAKE A TRIAL SEEMINGLY IMPOSSIBLE

While health and safety considerations are paramount, they are not the only obstacles to a July 1 trial.  Vermont's self-quarantine order and similar restrictions—which, of course, are meant to protect the health and safety of everyone—impose unreasonable burdens on the witnesses, parties, counsel, and others who will have to travel from out of state to attend the trial.  As DFA discussed at length in its Motion to Reconsider (at 7-9, 12), to comply with Vermont's self-quarantine order and be ready for trial, DFA's witnesses and trial team would need to find some as-of-yet unknown (and likely non-existent) non-public accommodation and travel to Vermont weeks in advance—as soon as eight days from now.  They would be exposed to heavily trafficked areas such as airports that increase their risk of catching Covid-19.  And during quarantine, those individuals would be prohibited from in-person contact with each other—and even from going

---

[23]   June 2 Decl., Ex. 18, Angela Morris, *Texas Jury Trials to Resume This Summer Under Experimental Program*, Tx. Lawyer (May 27, 2020), https://www.law.com/2020/05/27/texas-jury-trials-to-resume-this-summer-under-experimental-program/.

[24]   June 2 Decl., Ex. 2 (quoting District Judge Jeffrey Schmehl).

[25]   *Id.*

outside for recreation, food, and medicine.[26]  That is an unduly high price to pay for participating in a non-exigent civil jury trial.

Perhaps recognizing how devastating the quarantine order is to the possibility of a July 1 trial, plaintiffs seek to downplay it.  To start, plaintiffs contend (at 3) that the quarantine order expires on June 15, 2020 and thus "do[es] not impact the July 1, 2020 trial."  That contention both misrepresents what the article they cite actually says, and blatantly ignores the signs that the current order will be extended.  To name just three:  *First*, on Friday, May 29, the Governor of Vermont opened up overnight camps "as a pilot project to help guide what the state will do in regards to opening other lodging to out-of-staters"—a pilot that could not possibly be finished in two weeks' time.[27]  *Second*, the Governor similarly "resisted mounting calls from Vermont's tourism industry to ease restrictions on out-of-state visitors," because "we have to do it safely" and "can't lose ground on all the ground we've gained" by reopening lodging before trends in nearby states improve.[28]  And *third*, the Vermont Summer Festival was just cancelled because "the state could not say if the 14-day mandatory quarantine on visitors from outside Vermont would be lifted by the time the show kicked off at the end of June."[29]  Plaintiffs' assertion that the self-quarantine order will end on June 15 amounts to wishful thinking.  So is their claim (at 3) that DFA has

---

[26]  May 18 Decl., Ex. 12, Vt. Dep't of Health, *COVID-19: What Is Isolation, Quarantine and Self-Observation?* (May 5, 2020), https://www.healthvermont.gov/sites/default/files/documents/pdf/COVID-19-chart-observation-isolation-quarantine_final.pdf.

[27]  June 2 Decl., Ex. 19, Calvin Cutler, *Scott Expands Social Gatherings to 25, Opens "Interior Maintenance" Businesses Monday*, WCAX3 (May 29, 2020), https://www.wcax.com/content/news/Hair-salons-to-reopen-Gov-Scott-expected-to-address-timeline-570859351.html.

[28]  June 2 Decl., Ex. 20, Peter Hirschfeld, *Scott Allows Gyms, Spas to Reopen, and Announces "Pilot Project" for Tourism Industry*, Vt. Public Radio (May 29, 2020), https://www.vpr.org/post/scott-allows-gyms-spas-reopen-and-announces-pilot-project-tourism-industry.

[29]  June 2 Decl., Ex. 21, Darren Marcy, *Vermont Summer Festival Horse Show Canceled for 2020*, Manchester J. (June 1, 2020), https://www.manchesterjournal.com/stories/vermont-summer-festival-horse-show-canceled-for-2020,605949.

"booked [a] hotel in Burlington without issue."   While DFA has discussed lodging availability with a hotel in Burlington, consistent with state requirements, that hotel is requiring guests to certify that they "have completed a self-quarantine in compliance with the Vermont Department of Health's quarantine protocols before arrival to this establishment"[30]—which, as DFA previously explained (at 8-9), means quarantining *in Vermont* somewhere other than a hotel, motel, AirBNB, campground, marina, or RV park.   If the dozens of out-of-state witnesses and other trial participants on both sides cannot truthfully make that certification, they will have no place to sleep or work.

Any attempt to end-run the quarantine order would also be gravely wrong as a matter of public health wisdom and common sense.   The quarantine rules exist for a reason.   Even if all witnesses, lawyers, and others were allowed to participate in the jury trial without self-quarantining in Vermont for two weeks, doing so would only heighten the health risks to everyone.   Dozens of people from all over the country would travel from other states through airports, rental cars or taxis, and hotels—interacting with countless people along the way—to descend on the Burlington courthouse and other public spaces.   That is directly contrary to guidance from the CDC and other public authorities to "stay[] home" as much as possible,[31] and would threaten the unintentional (but undetectable) importation of contagion into Vermont.

While Vermont and some other states have begun to ease some restrictions, many others—like limits on group sizes and indoor dining—still exist.   And in any event, as far as DFA is aware,

---

[30]   June 2 Decl., Ex. 22, Vt. Agency of Commerce & Cmty. Dev., *Certificate of Compliance*, https://accd.vermont.gov/sites/accdnew/files/documents/Be%20Smart%2C%20Stay%20Safe%20-%20Certificate%20of%20Compliance.pdf (last visited June 2, 2020).

[31]   June 2 Decl., Ex. 23, Ctrs. for Disease Control & Prevention, *Coronavirus in the United States—Considerations for Travelers*, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html (last updated May 28, 2020).

no state has endorsed the kind of mass interstate travel that a jury trial here will require.  To the contrary, the Governor of Vermont—not to mention the CDC and other public health authorities—is monitoring the conditions in other states, some of which have not yet "peaked" in Covid-19 cases, because of the "ripple effect" other states' actions could have on Vermont.[32]  No one wants to be the cause of a ripple into Vermont that would undermine the substantial progress the state has made in containing Covid-19.

## IV.    DFA SEEKS A SHORT CONTINUANCE, NOT AN INDEFINITE DELAY

DFA understands the desire to resolve this case expeditiously.  In requesting a continuance, DFA does not intend to derail the work that has been done or to stay the work that is ongoing.  To the contrary, DFA urges the Court to maintain all current pretrial deadlines for motions in limine and responses thereto, deposition designations, exhibit lists, and the like, and to resolve all the disputes that the parties present in those submissions, so that the case will still be otherwise trial-ready by July 1.  Then, when adequate protocols to hold complex civil jury trials have been developed and tested, the Court can order trial to go ahead on relatively short notice; we respectfully submit that 45 days should suffice as notice for witnesses and counsel.  That course of action appropriately balances the desire for a speedy resolution of this litigation and the need to protect jurors, witnesses, court staff, litigants, other trial participants, and the public health.

## CONCLUSION

DFA respectfully requests that the Court reconsider its Order requiring trial to proceed on July 1, 2020, and continue the jury trial in this case until at least fall of 2020.

---

[32]   *Vt. Governor's Press Release Conference:  COVID-19 Update 5/22/2020*, at 00:00:00-00:00:28, https://www.youtube.com/watch?v=uOhRf7JT8Jk (last visited June 2, 2020); *see, e.g.*, June 2 Decl., Ex. 24, Cat Viglienzoni, *Vt. Social Gathering Limit to Be Loosened Friday*, WCAX3 (May 27, 2020), https://www.wcax.com/content/news/Gov-Scott-to-provide-update-on-the-states-COVID-19-response-570795541.html.

Dated:  June 2, 2020

Respectfully submitted by:

  /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of*
*America, Inc. and Dairy Marketing Services,*
*LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

> Joel G. Beckman, Esq. (jbeckman@nbparis.com)
> Gary L. Franklin, Esq. (gfranklin@primmer.com)
> William C. Nystrom, Esq. (wnystrom@nbparis.com)
> Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
> Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  June 2, 2020            /s/ *Alfred C. Pfeiffer Jr.*
           Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
           LATHAM & WATKINS LLP
           505 Montgomery Street, Suite 2000
           San Francisco, CA 94111
           Telephone: 415-391-0600
           Facsimile: 415-395-8095
           Email: al.pfeiffer@lw.com