UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRETT AND RALPH SITTS, et al.,**<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,**<br><br>**DEFENDANTS.** | **Civil Action No. 2:16-cv-00287-cr** |

# EXHIBIT 3 TO
# THE JUNE 2, 2020 DECLARATION OF
# ALFRED C. PFEIFFER JR.

https://www.ashlandsource.com/news/how-ashlands-first-jury-trial-amid-covid-19-pandemic-gained-national-attention/article_88513d4a-8efb-11ea-bd88-6feeb245668c.html

FEATURED

Local Perspective
# How Ashland's first jury trial amid COVID-19 pandemic gained national attention

Tracy Leturgey, Staff Reporter
May 5, 2020



Ashland County Common Pleas Court

ASHLAND -- It took one day into the jury trial of Seth Whited in Ashland County Common Pleas court to expose the limitations of such proceedings during a global pandemic -- drawing national attention in the process.

Whited, a Crestline man, is being tried for child endangerment among other charges before Ashland County Common Pleas Court Judge Ronald Forsthoefel. On April 28, during jury selection, Whited was taken to University Samaritan Medical Center for a medical emergency, causing the trial to come to an abrupt halt. Forsthoefel postponed the trial April 29.

Whited's defense attorney Adam Stone says the case never should have begun in the "pandemic climate" and could have impeded his client's right to a fair trial.

"I think everyone in the situation is trying to do the right thing. We just see it differently. None of us have been through anything like this before," Stone said. "We took a lot of extraordinary measures in this case to make this happen, but I hold nothing against the judge."

The situation that unfolded last week appears to be the first of its kind across the United States. The experience brought to light questions and concerns about how and if jury trials can continue while COVID-19 poses a health risk.

Opinions on whether or not the trial should have begun at all have flooded in from state and national organizations. The Ohio Association of Criminal Defense Lawyers (OACDL) denounced the judge's decision to proceed with a trial, calling it an "unnecessary risk" for a "non-essential trial.

Both Stone and his client had been exhibiting symptoms of COVID-19, according to the April 27 request to continue the trial.

"Doing so endangered the health of everyone in the courtroom and threatened the defendant's right to a fair trial," the OACDL said in a **statement** last week.

Additionally, the incident made national headlines when the Cleveland Metropolitan Bar Association's president spoke on the Court TV channel and **an article published** on **law.com**.

Whited's trial is was scheduled to begin again May 12, but has been delayed after Attorney Stone **requested another continuance**, in a motion filed Monday, May 4. The attorney also filed a complaint for writ of prohibition with the Ohio Supreme Court.

"This continuance is not made to cause undue delay, but to protect the defendant's constitutional right to due process, effective assistance of counsel and a fair trial with jurors who are not anxious, stressed or otherwise distracted during the ongoing COVID-19 pandemic,

as well as to protect the health and safety of all citizens," Stone said in the motion.

In a phone call, the Bucyrus attorney added that even if he and Whited have fully recovered by May 12, the "climate" caused by the COVID-19 pandemic is unlikely to change "significantly enough" within a week that his client could have a fair trial.

Wearing masks and abiding by social distancing hinder effective counsel, as private, confidential conversations can't happen between him and his client, according to Stone. Last week's "lesson" in how COVID-19-related precautions can impact courtroom procedure made this clear, he said.

Further, Stone's motion of continuance states his client's trial is compromised by "requiring jurors to appear during a pandemic in which the Ohio government and Department of Health have issued stay-at-home orders."

Though now called the **"Stay Safe Ohio Order,"** the text of the document still includes a provision requiring Ohioans to stay at home or their place of residence through May 29 unless they meet certain exceptions.

The court responded early Wednesday morning, granting the motion to continue the trial. The Ohio Supreme Court had ordered Forsthoefel to respond to Stone's motion of continuance no later than 9 a.m. on Wednesday, May 6.

In his response, Forsthoefel grants the request based on the following: a trial rescheduling video conference takes place Tuesday, May 12; the trial is rescheduled for one of three dates; no additional continuances should be granted; the state of Ohio should contact all witnesses to determine conflicts; and the revised conditions of Whited's bond will remain in effect until the trial begins.

On Monday, the judge granted the state's motion to modify Whited's bond to require him to stay at his house until the next trial, as to guarantee that he is quarantined. The defendant, through counsel, did not oppose this motion at that time.

Stone has until 5 p.m. Wednesday to respond to the judge, per the Ohio Supreme Court.

The proposed trial dates from Judge Forsthoefel's court are Tuesday, May 26, Tuesday, June 30, and Tuesday, July 21, 2020.

**Ashland court postpones Crestline man's trial for 5th time amid COVID-19 controversy**
Tracy Leturgey, Staff Reporter

---

Whited, 26, is charged with one third-degree felony count of endangering children, which relates to handling a small child in an inappropriate or cruel manner, and three fifth-degree felony counts of unauthorized use of a computer or telecommunications. Those charges accuse him of improperly hacking his former girlfriend's work email account.

He is not in jail and has waived his right to a speedy trial. Excluding last week's decision to postpone Whited's trial, Judge Forsthoefel previously approved three motions of continuance.

When motions to continue the April 28 trial came before Ashland County Prosecutor Chris Tunnell, his office took no position on whether or not the court should approve the request.

He took the same approach Monday when learning of the May 4 motion to continue the rescheduled trial -- then reset for May 12.

"We understand with the restrictions in place, and there's two sides. One side says we have to have a jury side at some time, but there's another side that says there's social distancing rules to follow," Tunnell said. "We didn't object, and left it to the court."

Stone's **first request to continue Whited's trial** came on April 7. It was denied April 8, prompting Stone to file an emergency motion with the Ohio Supreme Court. Again, this motion was denied, but included an order for the judge to allow any juror with concerns about partaking in the trial to be excused.

This order to excuse concerned jurors would later be closely followed, and other safety precautions implemented, Ashland County Common Pleas Court jury commissioner and court administrator Tina Carpenter said.

When the group of potential jurors was dismissed, she said, a group of maybe 25 were asked to stay, if they wanted, to talk about the procedure.

"What I found remarkable was, of that group, 18 stayed. It was all open and optional at that point," Carpenter said. "If they felt uncomfortable, they were able to leave, but they stayed."

She recalled asking the group if the court had ensured their safety.

"And the answer was, 'yes, we did,'" Carpenter said.

Stone's **second motion to continue** the April 28 trial was filed Monday, April 27. The motion asked the court to reconsider its denial of the defendant's earlier motion to continue the trial, mentioning that Whited and Stone both exhibited symptoms of COVID-19 -- specifically cough, shortness of breath/difficulty breathing, headache and muscle pain. The list did not include another tell-tale symptom -- fever.

In the document, Attorney Stone said, he had interacted with a client who tested asymptomatic positive for COVID-19, and Whited had not been tested but was asked to self-quarantine by his doctor based on symptoms and lack of tests.

On Tuesday, the trial began.

"We followed all recommended safety protocols. All aspects of the justice system need to be functional, including the ability to conduct jury trials, in order to protect the constitutional rights and civil liberties of all citizens, and to assure justice, while doing so in a reasonably safe manner," Forsthoefel said in a statement.

Both Stone and Tunnell recognized and confirmed precautions were taken.

Jurors typically sit side-by-side in the jury box, but since the public is only able to join currently via online live streamed video, the jurors were repositioned to the public seating area and spread six feet apart. Throughout the courtroom, marks on the ground indicated a six-foot distance between others.

Masks were offered for those who didn't bring their own. Many people brought their own masks, while others took advantage of the free masks, Carpenter said. Others declined a mask, although plenty were available.

Before entering the courtroom, each individual had their temperature taken.

"You screen everybody, keep them appropriately distanced, and there's not much more you can do," Tunnell said.

Stone spoke of the same precautions, but did express concerns that jurors may not have been comfortable despite the extra measures.

"One was visibly shaking. That was unfortunate to see," Stone said. "I think the judge took extraordinary precautions, but this is not the time."

Carpenter, who was also in the courtroom, did not sense this feeling of concern.

Jurors were asked a "whole series of questions, over and above what normally takes place," she said. Anyone with concerns had an opportunity to express them, and they would be excused.

"If you have a woman in her mid-40's, and she has an elderly father, and she takes his meals to him in the evenings, it normally has no impact on her, but now people are thinking about this … They're asking, do I feel comfortable about taking this risk?" Carpenter said. "We want to be respectful and cognitive of that concern."

This prospective candidate would have been excused from jury duty, Carpenter said.

---

On April 28, Whited's trial began, and within the same day, it came to a sudden pause. Whited was taken to UH Samaritan Hospital by ambulance when he experienced a "medical emergency." It was later described by the court as a "panic attack."

While hospitalized, the Crestline man was tested for COVID-19. Results came back negative, but he was instructed to self-quarantine for six days, in case of a false negative test, according to Stone.

Stone was tested for COVID-19 on Monday, May 4. His results are pending.

"If it wasn't for (the medical emergency), we would have gone to completion on a jury trial," Tunnell said.

Instead, Wednesday morning Judge Forsthoefel postponed the trial until May 12. If it had continued, it would have remained Ashland County's first jury trial while COVID-19 regulations are in place, and one of -- if not the first -- in the U.S. Instead, it's been postponed again to either May, June or July. The judge proposed three potential dates in his response issued Wednesday morning.

"While it may be that Mr. Whited and his lawyer do not have COVID-19, it may also be one or both of them do. Whether they do or not misses the point," the letter from the Ohio Association of Criminal Defense Lawyers (OACDL) states. "The point is this: there is no justification for holding a non-essential jury trial in the midst of a pandemic with a lawyer who has been ordered to quarantine following contact with a known carrier of the virus.

"The OACDL is not suggesting judges should hold no trials during this health crisis. There are likely circumstances in which trials must (be) held during this pandemic, but this was not one of them."

**Tracy Leturgey**