UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>Defendants. | **Civil Action No. 2:16-cv-00287-cr** |

### DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S SUBMISSION IN ADVANCE OF TELEPHONIC STATUS CONFERENCE

The Court has set this case to begin a month-long jury trial in Burlington, Vermont on July 1, 2020. Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC (together "DFA") have filed an emergency motion to reconsider that Order and to reschedule the trial for a date when COVID-19 presents less of a risk to the health and safety of Vermont jurors, witnesses, the Court and its staff, other trial participants, and Vermonters generally. That motion is fully briefed and we understand that the Court will hear argument on the matter by telephone on June 3, 2020.

The Court has also scheduled a status conference in the case for June 3, 2020. We expect that the Court, should it deny the motion to reschedule the trial, will wish to address with the parties some of the logistical and practical concerns inherent in holding a jury trial at this time. The risks, complications, and procedural hurdles to conducting a massive and lengthy jury trial amidst this on-going health emergency are staggering. The stakes are too high to proceed at this time. That becomes that much more clear when considering what would be involved in any plan thorough

enough to ensure the trial will not needlessly put lives at risk. There are many aspects necessary to consider in attempting to formulate such a plan—and at this late date, less than a month before trial, it is simply not possible to devise, much less implement, a plan that will pass muster. In order to facilitate consideration of concerns that would need to be thoroughly addressed before any trial can proceed, DFA respectfully submits the following list of topics for discussion.

*   *   *

I. **QUARANTINE-RELATED ISSUES**

  A. Must out-of-state attorneys, other trial team members, and witnesses self-quarantine upon arrival in Vermont, and for how long? Can they use public lodging to do so?

  B. The Fourth of July holiday begins three days after jury selection. Will the Court instruct jurors and other trial participants that they cannot leave the state for the holiday?

  C. If jurors or other trial participants do leave the state for the holiday weekend, must they self-quarantine upon return before attending trial?

  D. Will the Court require any kind of acknowledgement by jurors or other trial participants that they will not engage in holiday activities that would potentially lead to greater risk of exposure to COVID-19 (*e.g.*, no parties or other activities with more than 10 people present, no exemption from social distancing, etc.)?

  E. During trial, will jurors be permitted to leave Vermont or interact with individuals who have come from out-of-state?

  F. Will witnesses, attorneys, and other trial team members be permitted to leave Vermont and return during trial?

  G. Will witnesses, attorneys, and other trial team members be permitted to meet their families in person during trial if those family members are coming from out-of-state? Will those individuals be exempted from quarantine requirements?

II. **JUROR SUMMONS AND SELECTION**

  A. **Juror Summons and Questionnaire**

    1. How many jurors will be summoned to ensure an adequate juror pool?

    2. When will the Court send out juror summonses?

      3.     Will the summonses include any special instructions regarding COVID-19?

      4.     Will the juror questionnaire include any special questions because of COVID-19?

      5.     What, if any, efforts has the Court taken to reassure prospective jurors about their safety, *e.g.*, the recommendations in the Vermont Supreme Court's Long-Term Planning Committee's Ramp-Up Report?[1]

      6.     What will jurors be told if they call-in to ask about the safety of appearing in response to the summons?

      7.     If jurors have recently traveled out-of-state or are otherwise subject to local quarantine or self-isolation requirements, will the jurors be instructed not to appear?

**B.**     **Juror Orientation**

      1.     Will potential jurors be told during orientation (or at some other time) about the large number of trial team members and witnesses that will be attending this trial from out-of-state, and the particular states and metropolitan areas involved (*e.g.*, San Francisco, Washington, D.C., Boston, Chicago)?

      2.     How many jurors will be seated for orientation, and under what social-distancing conditions?

      3.     Will the Court permit attorneys to attend the juror orientation, as the Court instructed during the November 2019 pretrial conference.[2] If so, how will social distancing be maintained?

      4.     Will the Court permit the parties to attend the juror orientation, as the Court instructed during the November 2019 pretrial conference.[3] If so, how will social distancing be maintained?

---

[1]     *See* Mot. to Recons. Ex. 2, Vermont Supreme Court, Long Term Planning Committee: Ramp-Up Report at 12 (May 13, 2020), ECF No. 194-2, https://www.vtbar.org/UserFiles/files/COVID%2019/Long%20Term%20Planning%20Committee%20Ramp-Up%20Report%20(5-13-20).pdf ("A vigorous education program for potential jurors and the public at large, which includes the Judiciary's recognition of the need to keep jurors safe and the steps we are taking to do so should be undertaken. This should include press releases, public service announcements and other strategies to underscore the vital role jurors play in our justice system. . . . The message should be sent that when jurors are ultimately summoned, it is being done after full consideration and implementation of Vermont Department of Health and CDC guidelines and social distancing will be observed during their term of service.").

[2]     Hr'g Tr. 22:6-7, Nov. 14, 2019, ECF No. 141.

[3]     *Id.*

3

C. **Juror Selection**

1. How will the physical process of juror selection work? For example, where will the *venire* of prospective jurors be physically located?

2. The Court previously instructed that "[w]e will have this entire jury box filled, and we'll have a row of jurors in front of it, and you will make your for-cause challenges to this entire group, which I call the panel, and you will make your peremptories to the first 12, which I call the box, and that has the effect of moving people into the box who you've at least preliminarily not challenged for cause."[4] How will the Court amend that procedure to take into account capacity and social-distancing requirements?

3. How many prospective jurors will be part of the *venire* and participating in *voir dire*?

4. Where will the lawyers and parties be located during *voir dire* and jury selection?

5. Will there be any limitations on attendance by the parties, counsel, and trial-team members during *voir dire* and jury selection?

6. Will there be accommodations for trial team members, including jury consultants, who are unable to attend the *voir dire* and jury selection because of issues related to COVID-19?

D. **Juror Excuses**

1. The Court previously instructed that it does "not excuse anybody unless they have a flight itinerary, a doctor's appointment, or a really compelling reason."[5] Will that still be the case?

2. What types of medical conditions or concerns will the Court accept as reasons to excuse a potential juror?

3. Will the Court accept the full list of medical conditions and physical attributes that the Centers for Disease Control and Prevention have identified as rendering a person as being "at higher risk for severe illness from COVID-19," including persons who are (i) over the age of 65; (ii) live in a nursing home or long-term care facility; (iii) have serious heart conditions; (iv) have moderate to severe asthma; (v) have severe obesity;

---

[4]  *Id.* at 25:6-11.
[5]  *Id.* at 24:3-5.

4

        (vi) have diabetes; (vii) have chronic kidney disease; (viii) have liver disease; or (ix) are immunocompromised.[6]

4. Will jurors have to disclose their sensitive medical conditions in writing, conversation on the record, or otherwise? If so, how will those sensitive conversations occur to maintain confidences?

5. Will medical professionals be excused from jury service?

6. Will individuals otherwise classified as essential workers be excused?

7. Will parents without sufficient child care because of COVID-19 closures be excused?

8. Will individuals be questioned and potentially excused because of conduct or living situations that present higher risks of COVID-19 contraction, such as living with others, living in apartment buildings or group homes, or having recently traveled out-of-state?

9. Will any of the above be considered "for cause" challenges or will the parties be obligated to use peremptory challenges for jurors who express concerns related to COVID-19 or otherwise fall into any of the categories described above?

### E. Jury Charge and Instructions

1. Will the jury be informed that numerous individuals attending trial—including trial team members, parties, and witnesses who are planning to attend trial live each day—qualify as "high risk" individuals under public health guidelines? If so, how will that communication occur?

2. Will the jury charge include any instructions regarding COVID-19?

3. Will the Court instruct jurors on what they can infer from a witness' and/or counsel's insistence on wearing special personal protective equipment?

4. Will the jury be told which witnesses' unavailability resulted from concerns regarding COVID-19?

5. Will the Court follow the process for setting jury instructions that it described during the November 2019 pretrial conference, which included the exchange of sets of colored papers?[7]

---

[6] *People Who Are at Higher Risk for Severe Illness, Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 2, 2020).

[7] Hr'g Tr. 27:19-23, Nov. 14, 2019, ECF No. 141.

### III. JURY MANAGEMENT DURING TRIAL

#### A. Juror Health Testing

1. Will jurors be tested for COVID-19 before or during trial?

    a) If testing is required, how and where would tests be performed?

    b) If testing is required, what restrictions will apply to a juror's participation in trial while awaiting test results (which we understand can take several days)?

2. Will jurors have their temperature checked at any point before or during trial?

    a) If so, how often, by whom, and where would this be done? For example, would jurors need to be temperature-tested before coming to the courthouse each day, and at the end of each day?

    b) Will the Court require all other trial attendees to engage in similar temperature testing?

    c) At what temperature would the Court tell a juror or trial participant not to come to trial?

    d) What happens if someone is scheduled to participate in the trial but is told not to come in due to an elevated temperature?

3. What is the procedure if a juror develops symptoms of COVID-19 during trial? And what specific symptoms would be involved?

#### B. Juror Physical Protections

1. Will the Court employ any physical barriers between the jurors and the rest of the courtroom (plexiglass shields, etc.)?

2. How will any protections or barriers be managed to avoid any obstruction of the jurors' ability to see exhibits and hear the Court and attorneys?

3. Where will the jurors safely deliberate?

4. How will the jurors safely exchange exhibits amongst themselves during the deliberation process?

      5.      The Court previously instructed that it would do a "pick and go" trial process,[8] is that still the plan? If so, how will that work with social distancing and courtroom presence limitations?

  **C.    Jury Movement**

      1.      Once the jury is selected, how will jurors' daily arrivals and departures be managed?

      2.      How will lunch and other breaks be handled for jurors?

**IV.    COURTHOUSE MANAGEMENT/TRIAL SET-UP**

  **A.    Management of Common Areas**

      1.      Will other in-person proceedings be permitted in the courtroom during the period when the trial is being conducted?

      2.      How will witnesses, jurors, and other trial participants access the courtroom in a timely manner with strict limits on elevator use?

      3.      How early will the courthouse open each trial day to allow for staggered arrival by trial team members/parties/witnesses/jurors/Court personnel, or how will the Court ensure safely distanced interactions with everyone arriving at the courthouse at the same time?

  **B.    Courtroom Set-Up**

      1.      How will trial set-up work with limits on elevators, particularly the freight elevator?

      2.      When will the lawyers/trial team support/set-up members be allowed access to the courtroom to set up for the trial each day?

      3.      How many people will be allowed in the courtroom at a time for set-up?

      4.      As part of the set-up process, the two sides' trial graphics technicians will need to check their connections at the same time, but will each side otherwise have separate set-ups so as to minimize shared physical contact with equipment?

      5.      How long will trial team members have in the courtroom to set-up for trial each day in advance of the majority of the attendees coming into the courtroom?

---

[8]   *Id*. at 23:5-7.

      6. How will security be handled for set-up/takedown to maintain social distancing?

      7. Will the trial teams be allowed to keep materials in the courtroom if they can be safely accessed by those present?

## V. TRIAL MANAGEMENT

### A. Courtroom Occupancy

      1. How many trial team members will be permitted in the courtroom at any given time?

      2. Where will they be located?

      3. Will there be restrictions on how many trial team members may be present from each side?

      4. If the number of attorneys present in the courtroom will be limited, what will be the process to change trial team members as needed when witnesses are switched?

      5. Will there be limits on how many clients may be in the courtroom?

      6. Will members of the public be admitted and, if so, how many?

      7. The Court previously said witnesses could remain in the courtroom after they have testified, even if they are called on rebuttal.[9] Will that still be permitted? How will that work with social distancing and courtroom capacity limitations?

### B. Interactions Within the Courtroom

      1. What are the social distancing rules within the courtroom?

      2. How will attorneys/trial team members communicate amongst themselves?

      3. How will attorneys/trial team members communicate with their clients?

      4. How will attorneys/trial team members communicate with their trial technology assistants on the "hot seat"? Will the hot seat be in the same room?

      5. Trial team members often retrieve or reference case materials brought into the courtroom. How will these materials be distanced such that trial team members can safely access them?

---

[9] *Id*. at 29:9-10.

      6.      How will conferences work during breaks while maintaining social distancing requirements?

      7.      How often during direct and/or cross examination may trial team members enter the courtroom to provide case materials, as needed, to those in the courtroom?

      8.      How will the physical exchange of materials brought inside the courtroom occur while maintaining social distancing requirements?

      9.      What limitations will be placed on individuals delivering items to the courthouse during the trial day?

**C.**    **Personal Protective Equipment ("PPE")**

      1.      What, if any, PPE will be required in the courthouse?

      2.      What, if any, PPE will be required in the courtroom?

      3.      Must all trial team members wear masks while in the courtroom?

      4.      Will all attorneys or trial team members be required to wear the same type of masks?

      5.      Can attorneys/trial team members wear clear face protectors instead of masks?

      6.      Is there a standard that must be set for facial coverings that must apply to all participants to avoid bias?

      7.      If PPE is required for attorneys, what steps will be taken to overcome the loss of ability to judge demeanor and credibility inherent in the wearing of PPE?

      8.      Will the Court provide any PPE for trial participants?

      9.      Will the parties bear any cost for PPE for the jury?

      10.     What plan exists to account for the possibility that attorneys, trial team members, jurors, witnesses, and others may have medical conditions that prevent them from wearing masks?

      11.     Are gloves required in the courtroom?

      12.     Are gloves required for the handling of materials exchanged with witnesses, the parties, the Court, or others?

      13.     Will hand sanitizers be available in the courtroom?

**D.      Length of Trial Day, Breaks, and Other Logistics**

1. Will the Court place limitations on the length of any aspect of trial as a result of COVID-19 concerns?

2. What does the Court intend for the length of the "normal" COVID-19 trial day?

3. The Court previously said there would be an hour-long lunch break, as well as morning and afternoon breaks.[10] Will those breaks still occur? How will the egress and re-entry from those breaks work with the limits on elevator use? Will the length of the breaks be extended to permit social distancing during egress and re-entry?

4. Will there be limits on how many people may use a restroom during a break?

5. From past experience, we understand the breakout rooms for the parties hold roughly eight people (though fewer if adhering to social distancing rules). Will each party be provided a larger breakout room to comply with social distancing requirements?

6. What are the limitations placed on lunches, including on their delivery?

7. Does the Court intend to conduct this as a timed trial ("on the clock")? If so, how will that timing take into account complications from social distancing requirements and other precautions and complications related to COVID-19?

**E.      Witnesses**

1. If witnesses must appear out-of-order, or in the other party's case, because of issues related to COVID-19, how will that work? Will the jury be instructed on those issues?

2. The Court said during the November 2019 pretrial conference that witnesses should remain in the hallway before they testify.[11] Will that still be the case and how will that take into account social-distancing requirements?

3. Will water be allowed in the courtroom, including on the witness stand? Will jurors and witnesses have new cups or will they have marked bottled water?

---

[10]    *Id.* at 21:2-3.
[11]    *Id.* at 29:8-9.

**F.    Courtroom Sanitation**

1. How often will the courtroom be sanitized and by what method?

2. How will the witness stand be sanitized and how often?

3. Will there be separate attorney podiums? If not, how will the attorney podium be sanitized as attorneys go back and forth using it?

4. If there is an "elmo" projector available for use, how will it be sanitized between parties' use of it?

**G.    Exhibits**

1. How will the exchange and admission of exhibits work?

2. Will the Court still require the submission of paper exhibits and materials prior to trial?

3. Will the Court still allow the use of paper exhibits and physical copies of deposition transcripts?

4. Will attorneys physically deliver exhibits and transcripts to the court reporter and/or courtroom deputy? Will the same occur for any other documents handed out during trial?

5. Must the parties approach witnesses to hand them documents (including impeachment documents)?

6. Must the parties hand paper documents (including exhibits, demonstratives, impeachment documents, and transcripts) to opposing counsel?

7. How will the Court and parties ensure the safety of such transfers?

8. How will jurors know they have safe access to all exhibits during deliberation?

**H.    Sidebars**

1. How will sidebars work while maintaining social distancing?

2. Will there be limits on the number of attorneys that may participate?

3. Will the jury be removed from the courtroom during each sidebar to avoid hearing discussions that must occur at a distance?

**I.** **Technology**

1. Is the Court planning to employ any special technology to facilitate trial? If so, will there be a Court staff technology assistant on hand to minimize disruption?

2. Will jurors have any special technology to account for concerns related to COVID-19?

3. Will attorneys use microphones so that they can be heard by socially distancing courthouse members? How will objections work?

4. Does the Court intend to require or allow any remote video/audio, and if so what planning, rules, and procedures will exist to facilitate that complicated process?

5. If the number of attorneys present in the courtroom will be limited, may the parties have an audio/video connection to attorneys/trial team members set-up in another room at the courthouse or in a remote location?

6. What are the Internet capabilities in the courtroom?

7. If there is no wireless Internet in the courtroom (which is our understanding), will the parties be permitted to use hard line Ethernet connections?

8. Is there a limit to the number of Internet hot spots the parties may bring into the courtroom?

9. Will there be time to test the audio/video components ahead of the start of trial each day and at the end of each day in preparation for the next day's witnesses?

\*   \*   \*

We recognize that this list does not contain an exhaustive treatment of the considerations that need to be addressed before proceeding to a jury trial during the on-going public health emergency. The answers to the above questions will inevitably lead to additional questions, and in this particular case we believe the discussion will lead to the conclusion that no trial can be designed at this time to adequately account for the serious risks to public and personal health.

Dated:  June 2, 2020                                  Respectfully submitted,

   /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-391-0600
Facsimile:  415-395-8095
Email:  al.pfeiffer@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:  202-637-2200
Facsimile:  202-637-2201
Email:  margaret.zwisler@lw.com
Email:  jennifer.giordano@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone:  202-663-7820
Facsimile:  202-663-7849
Email:  tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone:  802-864-9891
Email:  icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  June 2, 2020

/s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  415-391-0600
Facsimile:  415-395-8095
Email:  al.pfeiffer@lw.com