UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRETT SITTS, et al.,<br><br>    PLAINTIFFS,<br><br> v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>    DEFENDANTS. | Civil Action No. 2:16-cv-00287-cr |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2: TO PRECLUDE EVIDENCE OF ACTIVITIES, EVENTS AND COMMUNICATIONS THAT OCCURRED PRIOR TO OCTOBER 2005**

By their motion, Defendants seek to preclude literally "**all evidence of, and argument regarding, activities, events, and communications that occurred prior to October 2005**." (Motion [ECF 200] at 1) (emphasis added).  While Plaintiffs recognize that they cannot recover *monetary damages* prior to October 2005 due to the statute of limitations within the Clayton Act, 15 U.S.C. § 15b, it is well settled and black letter law that the statute of limitations is *not* a rule of evidence and does not preclude the admission of relevant evidence or argument from prior to the limitations period.  *See, e.g.*, *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699, 709-10 (1962) (pre-limitations period evidence is relevant and admissible to show existence of antitrust conspiracy).  In analyzing antitrust claims, the "duty of the jury is to look at the whole picture," and "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components." *Id.* at 699.  And, evidence of Defendants' conspiracy—even if occurring before the limitations period—is "relevant to proving the existence of the conspiracy as well as the intent, motive and method of the conspirators." *Strobl*

*v. New York Mercantile Exch.*, 582 F. Supp. 770, 774 (S.D.N.Y. 1984). Accordingly, the Court should deny Defendants' motion.

## ARGUMENT

Defendants contend that Plaintiffs intend to introduce a "litany of factual assertions" as detailed in their complaint relating to "conduct from the 1990s and early 2000s"—giving the false impression that Plaintiffs intend to spend valuable trial time introducing every last piece of evidence regarding DFA's anticompetitive conduct over the past several decades. (Motion at 2). To the contrary, Plaintiffs intend to introduce evidence of Defendants' anticompetitive behavior—much of which was ***undisputed*** by Defendants—that is critical to Plaintiffs' claims and necessary to explain Defendants' intent, motivations, anticompetitive conduct and how DFA obtained its market power.[1] This evidence includes, but is not limited to:

- Simple background information on the formation of DFA (beginning in 1998);

- The consent decree entered into by DFA's predecessor with the Department of Justice in *United States v. Mid-America Dairymen, Inc.*, 1977 WL 1425, at * 1 (W.D. Mo. 1977) (the "1977 Consent Decree") prohibiting non-solicitation agreements and supply agreements with a term greater than one year, which were called out in DFA's own Antitrust Guidelines;

- Evidence of DMS's outsourcing agreement with Suiza (2001), Crowley (2002), Dean (2003), and Hood (2004). These and other outsourcing agreements remained in effect until at least 2017 and culminated with the 2017 Independent Plan—whereby the independent farmers

---

[1] This same evidence was relied upon by the Court in denying Defendants' motion for summary judgment. *See* Order on Summary Judgment ("SJ Order") [ECF 130] at 5 (formation and ownership), 7 (outsourcing agreements), 12-16 (non-solicitation), 17 (payments in exchange for agreements not to compete), 17-23 (outsourcing agreements), 23-25 (full supply agreements), 27-28 (conflict of interest), 29, n.13 (payments to former executives).

2

and cooperatives (who were marketing through DMS per these outsourcing agreements) were forced to join DFA as members;

- Evidence of DFA's agreements to convert independent producers to DFA membership or requirement for them to use DMS (early 2000s). This agreement culminated with the 2017 Independent Plan (discussed above), through which approximately 650 independent farmers were forced to join DFA;

- Non-solicitation agreements between DFA and Mt. Joy (2000), St. Albans (2002), NFO (2002), Land O'Lakes (2003), and Maryland & Virginia (2005), which continue through today;

- Full-supply agreements between DMS and processors such as Kraft (for ten years, beginning in 2003) and Farmland (for four years, beginning in July 2005). Each of these agreements contain terms longer than one year and, therefore, violate both DFA Antitrust Guidelines and the 1977 Consent Decree. DFA continues to use long term full supply agreements (coupled with "most favored nation" clauses) to block access to the processors and suppress overall prices in the market. Indeed, in 2017, DFA entered into a new two-year full supply agreement with Dean's Lansdale, PA plant, which violated the *Allen* settlement (in addition to DFA's own Antitrust Guidelines and the 1977 Consent Decree);

- Evidence of multimillion-dollar payments offered in exchange for agreements not to compete, such as emails and memorandum drafted by and/or sent to Greg Wickham and Rick Smith (in 2001 to 2002), both of whom are *current* DFA executives. Such payments continued during the relevant time period, including so-called "synergy" payments in exchange for the one hundred percent full supply agreement for Dean's Lansdale plant.

3

- Evidence of payoffs to certain DFA board members and area council members (between 2001 and 2005), which the Court ruled at summary judgment was "admissible evidence from which a rational jury could conclude that DFA management favored growth of its commercial operations and empire building over the interests of its farmer-members to show that "DFA management favored their own interests over those of the farmer-members." (SJ Order at 29 & 29 n.13);[2] and

- Evidence that Defendants (Rick Smith) recognized that a conflict of interest exists with respect to selling their own milk to their own manufacturing facilities (2000). This conflict of interest continues through today and violates DFA's Antitrust Guidelines (which state not to favor commercial operations over farmer pay prices).[3] In short, Defendants' anticompetitive conduct *continued* well after their purported October-2005 cutoff and, in many instances, *continues today*.

### I. Evidence Pre-Dating October 2005 is Relevant to Prove the Existence of an Antitrust Conspiracy

As this Court has previously recognized, the United States Supreme Court has cautioned against "dismembering" an antitrust conspiracy. *Cont'l Ore Co.*, 370 U.S. at 699; SJ Order at 45. Yet, this is precisely what Defendants (again) try to do here, arguing that the all evidence prior to October 2005 is "not necessary or relevant to the analysis of DFA's post-October 2005 conduct and its impact on the relevant market." (Motion at 2). In other words, Defendants seek to dismantle Plaintiffs' conspiracy case by precluding Plaintiffs from offering any evidence that

---

[2] Defendants filed a separate motion *in limine* concerning the improper payoffs to Herman Brubaker (DFA chairman of the board) and Buckey Jones (area council member). *See* ECF 202. Plaintiffs incorporate their opposition to that motion by reference, which will be filed on June 4, 2020.

[3] This is a non-exhaustive list of evidence Plaintiffs intend to rely on at trial.

4

shows how DFA obtained its market power or its intent and motivation for entering into this conspiracy—which are fundamental to and critical building blocks of Plaintiffs' Section 1 and conspiracy claim. Precluding this evidence based on an arbitrary cutoff date, however, would literally leave the story half told—only confusing the jurors with pieces of evidence that do not tell the complete story.

By their motion, Defendants want to have a draconian cutoff based on the limitations period of **all evidence** prior to October 2005. This position ignores the fact that the "statute of limitations is a defense . . ., not a rule of evidence . . . [it] has no bearing on the admissibility of evidence." *U.S. v. Bruno*, 2009 WL 2601249, at * 4 (N.D.N.Y. Aug. 21, 2009) (internal citations omitted); *see also Sir Speedy, Inc. v. L&P Graphics, Inc.*, 957 F.2d 1033, 1037 (2d Cir. 1992) (internal citations omitted); *Univac Dental Co. v. Dentsply Intern. Inc.*, 268 F.R.D. 190, at 199 (M.D. Pa. 2010) (denying motion *in limine* since defendant's motion "fundamentally misconstrues the role of the statute of limitations"). Not only does this position violate the Supreme Court's admonitions in *Cont'l Ore*, but it is contrary to the Rules of Evidence, which expressly favors "the admission of potentially probative proof in all of its forms." *Univac*, 268 F.R.D. at 197 (citing Fed. R. Evid. 402).

Indeed, the Supreme Court and courts within the Second Circuit have repeatedly recognized that pre-limitations period evidence is relevant and admissible to prove the existence of an antitrust conspiracy, as evidence of a defendant's market power, and to show a defendant's intent and motivation for engaging in anticompetitive conduct. *See, e.g.*, *Cont'l Ore Co.*, 370 U.S. at 709-10 (trial court erred in excluding evidence on relevancy grounds because it was "clearly material" to conspiracy and monopolization claims); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 296 (2d Cir. 1979) ("We hold, therefore, that a purchaser suing a

monopolist for overcharges paid within the previous four years may satisfy the conduct prerequisite to recovery by pointing to anticompetitive actions taken before the limitations period."); *Applera Corp. v. MJ Research, Inc.*, 349 F. Supp. 2d 338, 353 (D. Conn. 2004) ("[O]therwise unactionable conduct may nonetheless be relevant as evidence of the intent of the entity charged with monopolistic conduct."); *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1168-69 (S.D.N.Y. 1986) ("[T]he history of how a monopolist achieved its position is relevant."); *Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770, 774 (S.D.N.Y. 1984) ("[I]t is well established that evidence of conspiracy, even if occurring before or after plaintiff's damages period, is relevant to proving the existence of the conspiracy as well as the intent, motive and method of the conspirators.").[4]  This also is consistent with how courts analyze criminal conspiracies.  *See, e.g.*, *United States v. Chin*, 2 F. Appx 75, 77 (2d Cir. 2001) ("[T]here is no requirement that all of the government's evidence fall within the time period charged in the indictment, providing it is relevant to the charges."); *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) ("In any event, otherwise relevant evidence is not rendered inadmissible because it relates to events falling outside the time frame alleged in an indictment."); *United States v. Saneaux*, 365 F. Supp. 2d 493, 505 (S.D.N.Y. 2005) ("This

---

[4] Courts outside the Second Circuit have reached the same conclusion.  *See, e.g.*, *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 211 (3d Cir. 1983) ("The Supreme Court has held that evidence of a conspiracy relating to events occurring prior to the period for which damages are sought is probative of the question whether an antitrust violation has occurred."); *Klein v. American Luggage Works, Inc.*, 206 F. Supp. 924, 936 (Del. 1962), *rev'd on other grounds*, 323 F.2d 797 (3d Cir. 1963) ("[T]he formative stages and details of the agreement comprising the alleged conspiracy may long antedate the conduct pursuant thereto which results in the alleged invasion of plaintiff's rights. Evidence pertaining to such matters is admissible."); *see also Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 75-76 (1911) (considering evidence of defendants' activities eleven years prior to the enactment of the Sherman Act to determine monopolistic intent); II Areeda & Hovenkamp, Antitrust Law, ¶ 310c6 (2000) at 147 ("The factfinder should be permitted to consider the entire sum of unlawful exclusionary practices and their impact.").

evidence is admissible to prove an overt act in furtherance of the charged conspiracy. It is of no moment that this conduct falls outside the five-year statute of limitations for conspiracies."). Indeed, as one court explained, it is an "abuse of discretion for the trial judge to strictly limit the proof solely to the period of the statute of limitations and prevent the presentation of evidence relating to events which were part of the continuing violation but occurred outside the statute of limitations period." *Univac*, 268 F.R.D. at 199.

In short, Defendants' attempt to preclude Plaintiffs from offering evidence relating to conduct pre-dating October 2005 is just another attempt to break or "dismember" the conspiracy.[5] The jury is entitled to understand Defendants' motivation for entering the conspiracy, the entire story of Defendants' conduct and, ultimately, what led to Defendants' monopsonist power in the market.

## II. Evidence Pre-Dating October 2005 Is Not Unfairly Prejudicial

Defendants next argue that the value of pre-October 2005 evidence "is outweighed by the very real danger that such evidence might confuse or mislead the jury, unduly prejudicing DFA." (Motion at 2-3). Defendants contend that they will be unfairly prejudiced because "many DFA employees and executives from that timeframe have since retired, changed jobs, or in some instances, passed away." *Id.* at 3. To the contrary, the critical participants (including but not limited to Rick Smith, Greg Wickham, Brad Keating, Alan Bernon, and Sharad Mathur) continue

---

[5] The cases upon which Defendants rely—both of which are outside the Second Circuit—are inapposite. Specifically, the claims in *Babin v. Plaquemines Par.*, 2019 WL 5540245 (E.D. La. Oct. 25, 2019) and *Chavez v. Arancedo*, 2018 WL 4599585, at * 3 (S.D. Fla. Sept. 24, 2018) were for violations of the Fair Labor Standards Act—not antitrust conspiracy claims. The proffered evidence had no relevance as to whether the defendants failed to pay overtime wages (*Babin*) or whether the plaintiff's earnings fell below the minimum wage (*Chavez*) during the limitations period. To the contrary, pre-limitations period evidence is relevant to show how a monopsonist "achieved" its position and monopolistic intent. *See, e.g., U.S. Football League*, 634 F. Supp. at 1168-69.

7

to be employed by DFA and have been deposed in both this case and in *Allen*.[6]  Other witnesses (including but not limited to former DFA CEO Gary Hanman), moreover, were deposed in *Allen*. Simply put, the fact that some of the events occurred "15 or more years ago," does not, in and of itself, make the evidence "unfairly prejudicial."

Under Federal Rule of Evidence 403, the Court retains broad discretion to exclude evidence if its probative value is "***substantially*** outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403 (emphasis added).[7] Thus, in order to exclude evidence under Rule 403, it is Defendants' burden to show that the evidence "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged," or that it "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *McGinnis*, 2015 WL 5643186, at * 15 (internal citations omitted). Defendants make no attempt to meet their burden.

As noted herein, Plaintiffs intend to introduce evidence pre-October 2005 that demonstrates how Defendants came to acquire its monopsony power and their anticompetitive actions taken in support of the conspiracy. All of this evidence is highly probative of Plaintiffs' claims in this case. *See Cont'l Ore*, 370 U.S. at 709-10. Thus, the importance of the pre-October 2005 evidence far outweighs the so-called danger of the "prejudice" of any alleged "faded" memories.[8] Such evidence should not be excluded.

---

[6] Messrs. Smith, Wickham and Keating are being called as live witnesses at trial.

[7] "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *S.E.C. v. McGinnis*, 2015 WL 5643186, at * 14 (D. Vt. Sept. 23, 2015) (Reiss, J.).

[8] While Defendants contend that "memories have likely faded [and] recollections have become less reliable" and "DFA employees and executives from that timeframe have since retired, changed jobs, or in some instances, passed away," many of the facts Plaintiffs intend to introduce

## CONCLUSION

For the reasons set forth herein, the Court should deny Defendants' motion *in limine* to preclude evidence of activities, events, and communications that occurred prior to October 2005 (ECF 200).

|  |  |
|---|---|
| | Respectfully Submitted, |
| | PLAINTIFFS, |
| | By their attorneys, |
| | */s/ Dana A. Zakarian* |
| | William C. Nystrom |
| | Joel G. Beckman |
| | Dana A. Zakarian |
| | Elizabeth A. Reidy |
| | NYSTROM BECKMAN & PARIS LLP |
| | One Marina Park Drive, 15th Fl. |
| | Boston, Massachusetts  02210 |
| | (617) 778-9100 |
| | jbeckman@nbparis.com |
| | wnystrom@nbparis.com |
| | dzakarian@nbparis.com |
| | ereidy@nbparis.com |
| Dated: June 3, 2020 | *Admitted Pro Hac Vice* |
| | |
| | Gary L. Franklin, Esq. |
| | PRIMMER PIPER EGGLESTON & CRAMER PC |
| | 150 South Champlain Street |
| | P.O. Box 1489 |
| | Burlington, VT  05402-1489 |
| | (802) 864-0880 |
| | gfranklin@primmer.com |

---

from the pre-October 2005 time period are memorialized in deposition testimony (for example, Hanman's deposition was taken in 2009 and again in 2011).  Similarly, many of Defendants' current executives were participants in the relevant conduct—Messrs. Smith, Wickham and Keating, to name a few.  In short, Defendants' claims that memories have "faded" or that witnesses are no longer available is completely lacking in support.

**CERTIFICATE OF SERVICE**

      I, Dana A. Zakarian, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 3rd day of June 2020.

                                          */s/ Dana A. Zakarian*