UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRET SITTS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC. and<br>DAIRY MARKETING SERVICES, LLC,<br><br>    Defendants. | Civil Action No. 2:16-cv-00287-cr |

**REPLY IN SUPPORT OF DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S MOTION *IN LIMINE* NO. 1: TO PRECLUDE EVIDENCE AND ARGUMENT BASED ON INADMISSIBLE HEARSAY TESTIMONY FROM GARRET SITTS AND WILLIAM SWALLOW**

**REDACTED VERSION FILED PUBLICLY PURSUANT TO PROTECTIVE ORDER**

After a decade of litigation, dozens of depositions, and hundreds of thousands of documents reviewed, plaintiffs' proof of threats to Order 1 farmers is one witness repeating a truck-stop-restaurant conversation he overheard, between people he did not recognize, that did not reveal any actual threats, and that did not involve Order 1.  As that witness—Mr. Swallow—described it, he got a passing glance at three diners as he walked to his lunch booth, the diners were in the middle of a conversation he did not understand because he ▓▓▓▓▓▓▓▓▓▓," and after Mr. Swallow eavesdropped for a moment, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."[1]  Plaintiffs seek to admit Mr. Swallow's retelling of the brief, out-of-context, statements he heard as admissions *by Dairy Marketing Services, LLC* ("DMS") upon which the jury could rely to find DMS liable for violating the Sherman Act, even though the diners' identities, job titles, and employers remain unclear to this day.  Respectfully, the Court should exclude the retelling of those out-of-court statements as inadmissible hearsay that have no relevance to the trial and would be unfairly prejudicial to Dairy Farmers of America, Inc. ("DFA").  *See* Fed. R. Evid. 802, 403.

## DISCUSSION

### I.  MR. SWALLOW'S RECOUNTING OF A LUNCH-BOOTH CONVERSATION HE OVERHEARD IS INADMISSIBLE HEARSAY

There is no dispute that Mr. Swallow's retelling of a lunch-booth conversation he eavesdropped on is inadmissible hearsay, unless some hearsay exception applies.  Plaintiffs rely on the carve-out for statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  But plaintiffs fail to lay a sufficient foundation to satisfy any of the three requirements for this hearsay exclusion, including "establishing '(1) the existence of the agency relationship, (2) that the statement was

---

[1]   Ex. A, W. Swallow Dep. 19:5-20:1, *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-00230 (D. Vt. Jan. 19, 2011) ("Swallow Dep."), attached to Plaintiffs' Opposition to DFA's Motion *in Limine* No. 1, ECF No. 219-1.

made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.'" *Maric v. Reinauer Transp. Cos.*, 397 F.3d 120, 129 (2d Cir. 2005) (citation omitted). Indeed, to look at the facts surrounding Mr. Swallow's testimony is to be confronted, again and again, by all of the indicia of unreliability that characterize classic hearsay evidence and that warrant exclusion here.

### A. Plaintiffs Have Not Shown The Existence of Any Agency Relationship Between The Truck-Stop Declarant And DFA or DMS

Plaintiffs' reliance on Federal Rule of Evidence 801(d)(2)(D) fails at the first step because plaintiffs cannot show the existence of an agency relationship between the main declarant that Mr. Swallow says he overheard and DMS or DFA. To this day, the identities, employers, and job titles of the individuals Mr. Swallow listened-in-on remain a mystery. Mr. Swallow did not know or recognize the diners.[2] The diners never described themselves as working for DMS or DFA.[3] Mr. Swallow did not observe them on-the-job or working in any way. In fact, Mr. Swallow barely saw the diners at all. He described getting only a passing glimpse of them as he walked to his own lunch booth: "████████████████████████████████████████

████████████████████████████████████████"[4]

Mr. Swallow speculated from the DMS t-shirt and reference to dairymen that the diner doing most of the talking worked for DMS. But that unsupported inference is not enough to qualify the speaker as an agent of a party opponent whose statements can be imputed to DMS. There are many other reasons why a man with a DMS t-shirt might be discussing dairymen. By way of

---

[2]   *Id.* at 22:5-8 ████

[3]   *Id.* at 27:7-12 ████

[4]   *Id.* at 16:21-17:2.

example, he could have obtained the DMS t-shirt from a second-hand store; he could have been a milk-hauling contractor employed by a third-party company that has no involvement in this case—this conversation did take place at a truck stop after all; or he could have been a former DMS employee, or even a farmer who marketed milk through DMS, with no contemporaneous agency relationship with DMS or DFA. The possibilities are endless. Without any representation by the speaker that he worked for DMS or DFA, without any clarity on his identity, and without any observation of him at a DMS or DFA work-site or performing any work whatsoever, there is no adequate basis to treat the speaker's statements as anything other than classic hearsay that must be excluded under the law. *See Farganis v. Town of Montgomery*, 397 F. App'x 666, 668 (2d Cir. 2010) (finding uncertainty of a declarant's identity weighs against agency hearsay exception).

The cases plaintiffs rely upon to urge the Court to infer an agency relationship from the weak circumstantial evidence here—a logo on a t-shirt—are nothing like the situation before this Court. *See* Opp'n at 5. The declarants in all of the cases plaintiffs cite were actually at their places of employment and were demonstrably acting within the scope of employment at the time when they made statements directly to the witness about that employment. These are the kinds of statements that courts find appropriate to admit under Rule 801(d)(2)(D). In *Yepez v. 44 Court Street LLC*, for example, customers in a convenience store had conversations with unidentified employees about the store's wheelchair access. Mem. of Law in Supp. of Mot. in Limine at 14-15, *Yepez v. 44 Court Street LLC*, No. 1:13-cv-00758 (E.D.N.Y. Jan. 21, 2014), ECF No. 50. Similarly, in *Smith v. Pathmark Stores, Inc.*, a customer who had fallen in a Pathmark supermarket was approached by an employee wearing a Pathmark uniform and claiming responsibility for the slippery floor. 485 F. Supp. 2d 235, 238-39 (E.D.N.Y. 2007). And in *O'Neal v. Etsy*, the court admitted a witness's testimony about statements by a police officer where the witness had called

3

a specific police officer's stationhouse phone number, the call was redirected to a man who "identified himself as one of the partners of the arresting officer," and that speaker went on to discuss events during a recent arrest. 637 F.2d 846, 850-52 (2d Cir. 1980).[5] The facts in this case are inapposite. The unknown speaker whom Mr. Swallow thinks he overheard did not identify himself as a DMS or DFA employee. The conversation did not occur at a DMS or DFA farm or place of business. And the statements were not made to Mr. Swallow.

Plaintiffs' contention that Mr. Swallow nonetheless "later learned" that the speaker worked for DMS is false. The allegation that Mr. Swallow spoke with a farmer an hour or two later who guessed at the diners' identities proves nothing at all and, in fact, adds another layer of hearsay to the problem.[6] The farmer with whom Mr. Swallow says he spoke (Mr. Fisher) has offered no testimony here, nor could he say anything relevant: Mr. Fisher was not at the truck stop, did not hear the conversation take place, and did not see any of the diners. The second-hand report of his speculation about the speakers' identities is useless as an evidentiary matter. Mr. Fisher would only have been able to guess at the diners' identities based on Mr. Swallow's extremely generalized description of them—a description that could fairly apply to a substantial portion of the population.[7] Mr. Swallow could not even recall how he described the diners to Mr. Fisher.[8] Even worse, it is undisputed that Mr. Fisher's speculation as to the identity of one of the diners, based

---

[5] The out-of-circuit cases plaintiffs cited have the same factual scenario. In *Aumand v. Dartmouth Hitchcock Medical Center*, a declarant standing near a nurse's station in a hospital and who spoke to the witness about a patient's technical, medical condition was deemed to likely be on the hospital's medical staff. 611 F. Supp. 2d 78, 93-94 (D.N.H. 2009). And in *Davis v. Mobil Oil Exploration*, a declarant instructing a group of subcontractors during a worksite-safety meeting was deemed to likely work for the subcontractors' employer. 864 F.2d 1171, 1173 (5th Cir. 1989).

[6] See Ex. A, Swallow Dep. 30:14-18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[7] See id. at 25:21-26:4. Mr. Swallow described the main declarant as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Id. at 23:21-22.

[8] Id. at 26:5-7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4

on Mr. Swallow's generic description of the people he glimpsed (whatever it was), was simply wrong.[9] And there is no reason to believe Mr. Fisher's speculation was any more accurate with respect to the other two diners. Mr. Fisher's speculative statements are not merely out-of-court hearsay, they are untestable. DFA was precluded from deposing Mr. Fisher or subjecting his speculation to cross-examination because Mr. Fisher's religion prohibits him from testifying. Opp'n at 3 n.3. The bottom line is that plaintiffs have not even attempted to argue that Mr. Fisher's out-of-court statements meet a hearsay exception. Yet plaintiffs nonetheless rely upon Mr. Fisher's statements to Mr. Swallow to establish the truth of the assertion that an agency relationship existed between the unknown diner and DMS. Plaintiffs' position is absurd.

### B. Plaintiffs Have Not Established That A Truck-Stop Lunch Conversation Was "Made During The Course" Of Any Agency Relationship

Plaintiffs' reliance on the agency-hearsay-exception fails for the additional reason that plaintiffs have not shown the diner's statements were made "during the course" of any agency relationship with DMS or DFA. *Maric*, 397 F.3d at 129. Plaintiffs provide no explanation how statements made during a truck-stop lunch amidst what Mr. Swallow said ▮ ▮"[10] could be imputed to DMS or DFA. There is no indication the individuals were working while enjoying their truck-stop fare. There were no farmers participating in the conversation and no cows were present to be inspected.[11] This type of lunch-break chit-chat does not carry the gravitas of an on-the-job statement and should not be imputed to an employer, as other decisions make clear. The court in *Moody v. Township of Marlboro*, for example, rejected

---

[9]   *Id.* at 23:8-17 ▮

[10]  *Id.* at 19:7-10.
[11]  *Id.* at 27:16-17 ▮

5

the use of the agency-hearsay-exception to admit an attorney's "informal conversation" during a break in a deposition because "[e]xtrajudicial statements made by an attorney in casual conversation are typically not admissible against his client as an admission under Rule 801(d)(2)(D)." 885 F. Supp. 101, 104 (D.N.J. 1995); *see also Starling v. Cronin*, 2002 WL 23896, at *2 (N.D. Ill. Jan. 7, 2002) (refusing to apply the 801(d)(2)(D) exception to an attorney's "casual statements" to a police officer "in the hallway of the courthouse" because the "statements were made on behalf of himself . . . rather than on behalf of his clients"). There is simply no basis to conclude that any lunch-time statements Mr. Swallow reportedly overheard were within the course of any agency relationship with DMS or DFA so as to qualify for an exception to the hearsay rules.

    **C.    Plaintiffs Have Not Shown That The Diner's Statements Were Within The Scope Of Any Agency Relationship**

Lastly, plaintiffs' reliance on Rule 801(d)(2)(D) fails because plaintiffs have not demonstrated that the statements "relate[] to a matter within the scope of the agency." *Maric*, 397 F.3d at 128. Of course, "not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950-51 (7th Cir. 1998). There is no evidence that the alleged speaker at the truck stop, even if he did work for DMS, had any authority to take the action Mr. Swallow claims to have overheard. Field inspectors do not have authority to ▇▇▇ hauling contracts. And a DMS field inspector would never falsely submit a health code violation, let alone have authority to do so. Mr. Swallow's own testimony demonstrates that the purported DMS employee did not appear to be implementing any corporate policy of DMS or DFA,[12] did not appear to be following "▇▇▇"[13]

---

[12]    *Id.* at 28:14-18 ▇▇▇

[13]    *Id.* at 28:20-29:1 ▇▇▇

6

and had not "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉."[14] Because there is no evidence that the alleged speaker had direct authority or "significant participa[tion] in the decision-making process that is the subject matter of the statement," his statements do not qualify as a party admission under 801(d)(2)(D). *Holleman v. Art Crating Inc.*, 2014 WL 4907732, at *25 (E.D.N.Y. Sept. 30, 2014); *Taylor v. Potter*, 2004 WL 1811423, at *18 (S.D.N.Y. Aug. 16, 2004) (refusing to apply 801(d)(2)(D) where declarants "were not supervisors or significant participants in the decisions"); *Daughtry v. New York*, 2015 WL 2454115, at *4-5 (E.D.N.Y. Feb. 23, 2015) (rejecting use of 801(d)(2)(D) that would render the city "accountable for the statements of any of its employees who assisted in a police investigation, no matter how tangentially involved, and regardless of which agency they work for").

## II. THE COCONSPIRATOR EXCEPTION IS IRRELEVANT AND INAPPLICABLE

Plaintiffs also inexplicably ask the Court to admit the hearsay testimony of the man wearing the Land O'Lakes shirt pursuant to the Rule 801(d)(2)(E) coconspirator exception. *See* Opp'n at 2.[15] Because Mr. Swallow's testimony about statements by the man wearing the DMS shirt are inadmissible for the reasons set forth herein, and because the purported Land O'Lakes employee's statements would be irrelevant and unintelligible standing alone, the Court need not consider plaintiffs' coconspirator argument. In any event, that argument would fail for at least two reasons.

First, the evidence of the identity and employment of the man wearing the Land O'Lakes shirt is too weak. That man never made a statement regarding Land O'Lakes. He never said

---

[14]   *Id.* at 29:8-11 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

[15]   Importantly, plaintiffs do not rely upon this Rule as a basis to admit Mr. Swallow's retelling of any supposed DMS or DFA employee's out-of-court statements. Nor could plaintiffs make that argument, because Rule 801(d)(2)(E) is limited to statements made by a party's coconspirator, not made by the party or its employees.

anything about the nature of his job.[16] And even Mr. Swallow admitted that Mr. Fisher misidentified this man, and Mr. Swallow had no idea who the man was.[17]

Second, the coconspirator exception does not apply because there is no evidence that the man in the Land O'Lakes shirt made any statements "in furtherance" of any alleged conspiracy between DFA and Land O'Lakes. Fed. R. Evid. 801(d)(2)(E). The man's alleged statements consisted of asking what the diner in the DMS shirt "▇▇▇▇" if farmers attempted to leave, and following-up with, "▇▇▇▇".[18] The man in the Land O'Lakes shirt did not make any "▇▇▇▇."[19] There was no indication the farmers being discussed were Land O'Lakes farmers or were attempting to join Land O'Lakes.[20] And there is no evidence that anyone from DFA, DMS, or Land O'Lakes actually carried out any threats.[21] The requirement that a statement be in furtherance of a conspiracy "is not satisfied by a conversation such as the one here, which amounted to no more than idle chatter." *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980).

### III. THESE DECADE-OLD OUT-OF-COURT STATEMENTS ARE MISLEADING AND UNFAIRLY PREJUDICIAL

Mr. Swallow's recount of what he allegedly overheard at the truck-stop diner and his speculation as to the speakers' identities and the meaning of their conversation should also be

---

[16] See Opp'n at 3 (quoting the out-of-court statements plaintiffs seek to admit from this man).
[17] Ex. A, Swallow Dep. 23:13-17 ▇▇▇▇

[18] See Opp'n at 3.
[19] Ex. A, Swallow Dep. 30:2-3 ▇▇▇▇.

[20] *Id.* at 31:6-9 ▇▇▇▇

[21] *Id.* at 30:4-13 ▇▇▇▇

excluded under Rule 403. Mr. Swallow's testimony has no relevance to this trial. Plaintiffs explain that they intend to rely upon Mr. Swallow's testimony to "argue that Defendants have threatened farmers, including those who try to leave DFA or DMS, in an effort to maintain their monopsony power in Order 1." Opp'n at 6. But Mr. Swallow's testimony does not support that argument at all. There are at least three insurmountable gaps in plaintiffs' relevance theory.

First, Mr. Swallow's testimony does not show that any farmer was actually threatened. Even plaintiffs' characterization of the truck-stop gossip would only show one milk inspector boasting over lunch about actions *he might take* if some unidentified farmers "█████."[22] Mr. Swallow has no evidence that any threats were actually carried out.[23] If there was a vast conspiracy to threaten farmers, plaintiffs should have proof of actual threats. They have none.

Second, contrary to plaintiffs' suggestion, Mr. Swallow's testimony does not relate to Order 1 at all. Only a slice of southern Pennsylvania is in Order 1, and Mr. Swallow confirmed that nothing regarding the conversation he overheard related to Order 1. The truck stop was not in Order 1. The farmer that supposedly identified the man with the DMS shirt was not in Order 1. And the east central Pennsylvania area that Mr. Swallow assumed the diners were talking about was not in Order 1.[24] Thus, even if the diner carried through on his braggadocio (which there is no evidence of), his actions are outside of the geographic market in this case and are irrelevant. *See State of New York v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 787-88 (S.D.N.Y. 2019) (granting motion *in limine* on Rule 403 grounds to exclude evidence outside the relevant market).

---

[22]    *Id.* at 18:2-19:4.
[23]    *Id.* at 30:4-13.
[24]    *Id.* at 44:19-45:15. *See also* Ex. 1, Northeast Milk Marketing Area—Order 1 Map (Jan. 12, 2011), attached to the concurrently filed declaration of Alfred C. Pfeiffer Jr. Mr. Swallow marked the location of Mr. Fisher's farm with a red dot. *See* Ex. A, Swallow Dep. 44:22-3.

9

Third, there is no evidence that this truck-stop conversation related to any of the actual plaintiffs involved in this trial. As the Court is aware, plaintiffs have designated 20 plaintiffs whose claims are at issue in this first trial. Mr. Swallow had no idea which farmers the diners were discussing, let alone whether the conversation related to any of the specific plaintiffs whose claims are at issue in this case. If any of the 20 plaintiffs experienced a threat, they should present that claim at trial so that it may be subjected to cross-examination, rather than relying on speculative and unsubstantiated second-hand chit-chat that took place outside of Order 1.

For the same reasons that Mr. Swallow's testimony is irrelevant to the 20 plaintiffs involved in this trial, it would be misleading, confusing, and unfairly prejudicial to present this evidence to the jury. It would be hugely prejudicial to imply that some widespread policy of intimidation existed based on a nearly-decade-old transcript when the out-of-court statements show no such thing, and DFA has no way to identify any of the out-of-court declarants or the farmers being discussed to discredit the hearsay testimony. Respectfully, the Court should not allow this trial to devolve into relying on truck-stop gossip by unidentified speakers, when there are 20 farmers who should be available and willing to take the witness stand and testify if they contend they have been threatened in any way.

## **CONCLUSION**

For the foregoing reasons, DFA respectfully requests that the Court grant its motion to exclude the admission of Mr. Swallow's out-of-court statements at trial. Because plaintiffs have represented that they will no longer rely on or attempt to present at trial the challenged testimony of Mr. Sitts, DFA agrees that aspect of its motion is now moot.

Dated:  June 17, 2020

Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 17, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

    Joel G. Beckman, Esq. (jbeckman@nbparis.com)
    Gary L. Franklin, Esq. (gfranklin@primmer.com)
    William C. Nystrom, Esq. (wnystrom@nbparis.com)
    Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
    Dana A. Zakarian, Esq. (dzakarian@nbparis.com)


Dated:  June 17, 2020                         /s/ Alfred C. Pfeiffer Jr.
                                                       Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                                       LATHAM & WATKINS LLP
                                                       505 Montgomery Street, Suite 2000
                                                       San Francisco, CA 94111
                                                       Telephone: 415-391-0600
                                                       Facsimile: 415-395-8095
                                                       Email: al.pfeiffer@lw.com