# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**REPLY IN SUPPORT OF DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE OF ACTIVITIES, EVENTS, AND COMMUNICATIONS THAT <u>OCCURRED PRIOR TO OCTOBER 2005</u>**

Defendants Dairy Farmers of America, Inc., and Dairy Marketing Services, LLC (collectively, "DFA"), respectfully submit this reply in support of their Motion *in Limine* No. 2. In that motion, DFA argued that the Court should preclude evidence of, and argument regarding, activities, events, and communications that occurred prior to October 2005 because such evidence is outside the statute of limitations applicable to plaintiffs' claims and is therefore irrelevant. Further, even if such ancient material were relevant, introduction of a substantial amount of evidence from before October 2005 would only serve to confuse and mislead the jury and unfairly prejudice DFA. *See* Fed. R. Evid. 403.

Plaintiffs' opposition confirms their intent to misuse outdated evidence at trial. Plaintiffs have revealed a list containing just a portion of the old evidence they intend to rely upon that stretches nearly three-pages long. *See* Opp'n to Mot. *in Limine* No. 2 at 2-4, ECF No. 220 ("Opp'n"). Many of the materials on plaintiffs' list are independently inadmissible for reasons set-out in separate motions *in limine*; but the antiquated nature of that evidence is an independent reason to exclude it.[1] Plaintiffs' opposition also confirms their intended use of other pre-2005 evidence in ways that are irrelevant to their conspiracy claims, conflict with the Court's ruling in *Allen*, and that would be confusing and unfairly prejudicial.

Plaintiffs' opposition also suggests that they intend to seek damages for alleged agreements entered into prior to October 2005, simply because those agreements "continue" into the limitations period. Opp'n at 4-7. The law does not allow this, as this Court previously explained in the *Allen* case: absent tolling, plaintiffs may only recover for injuries flowing from overt acts

---

[1]     *See* DFA's Mot. *in Limine* No. 3, ECF No. 202 (addressing evidence regarding supposed payments to a DFA director and area council member); DFA's Mot. *in Limine* No. 4, ECF No. 204 (addressing evidence of DFA's national operations); DFA's *in Limine* No. 5, ECF No. 208 (addressing evidence of a consent decree, DFA's settlements, and DFA's internal antitrust guidelines).

within the limitations period, and it is well-established that agreements entered into before 2005 cannot constitute such overt acts for damages purposes, nor can the continuation or renewal of those agreements during the limitations period.

Finally, to the extent that plaintiffs claim to offer this non-actionable conduct for some other purpose, their approach raises serious problems for the jury. The Court recognized this when it held that a "single trial involving all 116 Plaintiffs poses a real threat of juror confusion and spillover of evidence that may prejudice Defendants and deprive them of a fair trial." *Sitts v. Dairy Farmers of Am., Inc.*, 2020 WL 2092719, at *5 (D. Vt. May 1, 2020). The pre-2005 conduct that plaintiffs seek to admit poses similar concerns of evidence spillover, juror confusion, and unfair prejudice. Respectfully, the Court should exclude it.

## I.   EVIDENCE OF CONTRACTS ENTERED INTO BEFORE OCTOBER 2005 THAT MERELY "REMAINED IN EFFECT" AFTER THAT DATE ARE IRRELEVANT, UNFAIRLY CONFUSING, AND PREJUDICIAL

It is now clear from plaintiffs' opposition that they believe agreements entered into prior to October 2005 are relevant if those agreements continued or were renewed after 2005. Most problematically, plaintiffs plainly intend to introduce pre-October-2005 agreements and conduct to the jury as evidence that DFA allegedly engaged in an array of overt acts in furtherance of an alleged illegal conspiracy—one of the elements of plaintiffs' Section 1 claim—and to argue to the jury that these specific pre-October-2005 contracts (and their subsequent renewal) resulted in damages to the plaintiffs from 2005 to 2017. Plaintiffs argue that it is of no moment that the agreements began before the limitations period because, due to the "continuing violation" doctrine, Opp'n at 7, those agreements continued into the period during which plaintiffs seek to recover for the alleged conspiracy. Plaintiffs rely on that "continuing violation" theory to support the admission of "outsourcing agreement[s] with Suiza (2001), Crowley (2002), Dean (2003), and Hood (2004)," and other pre-limitations outsourcing agreements that, in plaintiffs' words,

"remained in effect until at least 2017."  Opp'n at 2.  That is also plaintiffs' relevance theory for two "full-supply agreements" that began in 2003 and July 2005,[2] and allegedly continued into the limitations period.  Opp'n at 3.  Plaintiffs' continuation argument, however, directly conflicts with the proper application of the continuing violation doctrine, and with this Court's ruling in *Allen*, which held that plaintiffs "cannot rely on the annual renewal of the Dean-DFA supply agreement as an overt act within the limitations period."  *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 351 (D. Vt. 2010).

Plaintiffs' relevance theory arises from a misunderstanding of the statute of limitations doctrine for Sherman Act claims, specifically when a claim "accrues," such that the statute of limitations begins to run.  As this Court has recognized, "if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date."  *Id.* at 347 (citation omitted).  For the pre-2005 contracts plaintiffs have identified, the alleged initial "adverse impact" occurred at the time of the contract's formation.  Indeed, plaintiffs themselves have repeatedly argued throughout this case that they were injured by DFA's conduct as early as 2000, or whenever DFA allegedly first "conspired" with other processor-entities in Order 1.  That is when the claim "accrued," and, as the Court held in *Allen*, "[i]n the absence of a continuing violation, these acts cannot form the basis of Plaintiffs' antitrust claims."  *Id.* at 348; *see also US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("[W]e think of the performance of a contract as a manifestation of the 'overt act,'

---

[2]     Assuming, without conceding, that plaintiffs can receive the benefit of tolling during the pendency of the *Allen* class action, the statute of limitations cut-off would be four years before the *Allen* plaintiffs filed their original complaint on October 8, 2009.  *See* Class Action Compl., *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-00230-cr (D. Vt. Oct. 8, 2009), ECF No. 1.  Thus, this July 2005 agreement precedes the statute of limitations cut-off of October 8, 2005.

the decision to enter the contract, rather than an independent overt act of its own."); *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 296 F.3d 657, 670 (8th Cir. 2002) (affirming exclusion of evidence of damages from policies and actions that "cannot support the inference of a section 2 violation" (citations omitted)); *Talavera-Velazquez v. State Ins. Fund Corp.*, 2009 WL 1407988, at *4-6 (D.P.R. May 19, 2009) (excluding evidence of pre-limitations-period discrete acts that could not form part of a "continuing violation").

    While plaintiffs' opposition incants the words, plaintiffs fail to recognize that "continuing violation" is a term of art.  That phrase does not mean that a contract merely continued into the statute of limitations period, as plaintiffs suggest.  Instead, a "continuing violation" requires "an overt act which (1) is a new and independent act that is **not merely a reaffirmation of a previous act**; and (2) inflict[s] new and accumulating injury on the plaintiff." *Allen*, 748 F. Supp. 2d at 350 (citation omitted) (emphasis added).  It is blackletter law, and the Court's holding in *Allen*, that the mere renewal or continuance of an earlier contract is not a "continuing violation;" it is merely a reaffirmation of the prior contract.  *Id.* at 350-51 ("The weight of authority rejects this approach, holding that renewal of an existing agreement falls squarely within the 'reaffirmation' exception to the continuing violation doctrine."); *see also Madison Square Garden, L.P. v. Nat'l Hockey League*, 2008 WL 4547518, at *10 (S.D.N.Y. Oct. 10, 2008) ("Under any meaningful definition of 'reaffirmation,' though, a 'renewal' of policies in existence since 2004 qualifies.").  That is why the Court ruled that the *Allen* plaintiffs "cannot rely on the annual renewal of the Dean-DFA supply agreements as an overt act within the limitations period."  748 F. Supp. 2d at 351.  The same is true here.  Even if a contract caused injury after 2005, that injury is not recoverable if the contract began before October 2005 and was merely renewed or continued, as plaintiffs claim these

agreements were.  Opp'n at 3-4.  Thus, both the pre-2005 formation of those contracts, and their continuance past 2005 are non-actionable and therefore of no relevance to plaintiffs' claims.

If the Court were to exclude that evidence, it would not, contrary to plaintiffs' assertion, amount to "dismembering" plaintiffs' claims.  *See* Opp'n at 4-7.  Rather, it ensures that the jury does not base a verdict on evidence that is legally incapable of proving a required element of plaintiffs' Sherman Act claim, or giving rise to recoverable damages.  Courts exclude such time-barred evidence of non-recoverable conduct because admitting it would risk jury confusion and unfairly prejudice the defendant.  *See, e.g.*, *Albert v. N.Y.C. Sch. Constr. Auth.*, 99 F. App'x 306, 309-10 (2d Cir. 2004) (affirming exclusion of report containing information from outside the statute of limitations "[g]iven the low probative value and high potential for confusion and prejudice").  The only way to avoid this jury confusion and potential prejudice to DFA is to preclude evidence of the non-recoverable pre-2005 conduct altogether, for both the pre- and post-2005 periods.  The Court should exclude the outsourcing agreements with Suiza, Crowley, Dean, and Hood, as well as the supply agreements with Kraft and Farmland that plaintiffs identified in their opposition, Opp'n at 2-3,[3] because they are time-barred and irrelevant to plaintiffs' claims.

## II.   PLAINTIFFS' ADDITIONAL EVIDENCE PRE-DATING OCTOBER 2005 IS IRRELEVANT TO THE EXISTENCE OF AN ANTITRUST CONSPIRACY WITHIN THE STATUTE OF LIMITATIONS, AND CANNOT BE USED TO PROVE PLAINTIFFS' CLAIMS

Plaintiffs' abbreviated argument in support of the remainder of its list of old evidence is equally flawed.  As a number of cases cited by plaintiffs hold, "[a] suggestion that the evidence is too old goes to its relevance and to its weight."  *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992); *United States v. Bruno*, 2009 WL 2601249, at *4 (N.D.N.Y. Aug. 21,

---

[3]     DFA reserves its right challenge any other contracts entered prior to October 2005 that plaintiffs may attempt to admit evidence of at trial.

2009) (same); *see also* Opp'n at 5.  While "[a]ny question as to the weight to be accorded [evidence] is a matter for the jury," *Sir Speedy*, 957 F.2d at 1038, the threshold inquiry—whether the evidence is relevant to begin with—"is a question of law to be decided by the trial judge, who ultimately will make the final determination if proffered evidence tends to prove or disprove a matter 'properly provable in the case,'" *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) (quoting Fed. R. Evid. 401 advisory committee note).  "Irrelevant evidence is inadmissible."  Fed. R. Evid. 402.

In their opposition, plaintiffs argue that evidence of alleged actions dating back 15 to 20 years—or more—should be presented to the jury to prevent confusion resulting from "pieces of evidence that do not tell the complete story."  Opp'n at 5.  Plaintiffs offer a number of examples of the type of outdated information that they seek to present to the jury, along with the claim that much of "Defendants' anticompetitive behavior" is "***undisputed*** by Defendants."  Opp'n at 2 (emphasis in original).  This is simply untrue and demonstrates plaintiffs' desire to use outdated evidence to confuse current issues.  While DFA does not dispute that a predecessor entity entered into a consent decree with the Department of Justice in 1977 or that its own Antitrust Guidelines prohibit non-solicitation agreements and supply agreements with fluid milk processors with a term greater than one year, DFA vehemently disputes that such actions constitute "anticompetitive behavior."[4]  More importantly, plaintiffs have not shown how these facts are relevant, let alone "critical to Plaintiffs' claims and necessary to explain Defendants' intent, motivations, anticompetitive conduct and how DFA obtained its market power."  Opp'n at 2.  Plaintiffs provide no explanation, nor can they.  Hence, this evidence is irrelevant, and it cannot be admitted.

---

[4]     DFA submitted a separate motion *in limine* concerning plaintiffs' misuse of DFA's antitrust guidelines, *see* ECF No. 208, and DFA incorporates those arguments by reference.

The remainder of plaintiffs' list fares no better.  Plaintiffs do not identify what alleged wrongful conduct is the claimed source of DFA's "market power," and even plaintiffs admit that some of the events they seek to introduce were not predatory conduct.  For example, DFA has entered into various outsourcing and full supply agreements, but plaintiffs' own expert stated that such agreements are not necessarily anticompetitive.[5]  Even if plaintiffs are correct that DFA committed the alleged acts, plaintiffs bear the burden of showing that such outdated acts have any tendency to make a fact more or less probable than it would be without the evidence, and that the fact they seek to prove is of consequence in determining the action.  Fed. R. Evid. 401.  They have failed to meet these requirements.[6]

## III.   EVEN IF THE COURT DEEMS PRE-OCTOBER 2005 EVIDENCE RELEVANT, ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE LIKELIHOOD OF CONFUSING OR MISLEADING THE JURY, THEREBY UNDULY PREJUDICING DFA

Even if any of the outdated evidence that plaintiffs intend to present to the jury were arguably relevant, these pre-October 2005 allegations should be excluded as unduly prejudicial.  Because even if there are employees and executives from the pre-October 2005 time period available, such persons will have limited recall as to the precise events and surrounding facts that took place 15 or more years ago, which makes any such evidence of limited probative value.  *See In re Roger Rahrig, Jr.*, 373 B.R. 829, 835 (Bankr. N.D. Ohio 2007) ("[T]he passage of time is

---

[5]     E. Elhauge Dep. 245:21-23, Nov. 6, 2018 ("Q.  You're not offering the opinion that all full supply agreements are anticompetitive, are you?  A.  No."), available at Exhibit 1 accompanying Margaret M. Zwisler's March 6, 2019 Declaration, ECF No. 116-1.

[6]     In support of their position that this Court should not "dismember" their claim of antitrust conspiracy, plaintiffs primarily rely on *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699, (1962).  *See* Opp'n at 4-7.  However, the decision in *Continental Ore* provides direction as to how to address damages.  Specifically, when awarding damages, courts should not treat "claims as if they were five completely separate and unrelated lawsuits."  370 U.S. at 698-99.  Plainly, DFA, through its motion *in limine*, is not seeking such relief.  Plaintiffs' claims are not, and cannot be, based on the outdated evidence that is the subject of the instant Motion.

notorious for diminishing the quality of a testifying witness' memory, and thus the probative value of such evidence."). That value is substantially outweighed by the very real danger that such evidence may confuse or mislead the jury, thereby unduly prejudicing DFA. *See Babin v. Plaquemines Par.*, 2019 WL 5540245, at *3 (E.D. La. Oct. 25, 2019) (holding that precluding evidence from outside the relevant time period "will ensure that the jury focuses solely on" the appropriate evidence).

Plaintiffs' only argument in opposition to this degradation of evidence (and, by extension, the evidence's probative value) is that some percipient witnesses continue to work at DFA and have previously been deposed. *See* Opp'n at 7-8. However, not all witnesses called live will have been subjected to prior depositions and, further, the existence of prior deposition records does nothing to bring back those who have passed away or have memories that are impaired by health or the substantial passage of time. As such, the fact remains that the Court should hold that the risk that the testimony reflects a distorted memory is so great that the probative value of the testimony is destroyed.

<u>**CONCLUSION**</u>

For the foregoing reasons, DFA respectfully requests an order *in limine* precluding all evidence of, and argument regarding, activities, events, and communications that occurred prior to October 2005.

Dated:  June 17, 2020

Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  June 17, 2020

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com