**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>   **Plaintiffs,**<br><br>v.<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>   **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 3: TO PRECLUDE EVIDENCE OF PAYMENTS TO THE INDIVIDUALS <u>HERMAN BRUBAKER AND BUCKEY JONES</u>**

Although plaintiffs must prove at trial that Dairy Farmers of America, Inc., and Dairy Marketing Services, LLC (collectively "DFA") violated the Sherman Act via an alleged conspiracy and monopsony to suppress farmer pay prices in Order 1, the majority of plaintiffs' evidence has nothing to do with those claims. Over and over again, plaintiffs have placed at the forefront of their case examples of DFA's business decisions or one-off occurrences from decades past, which, in plaintiffs' view, demonstrate that DFA's conduct was ill-advised or improper—irrespective of whether any of that evidence demonstrates a violation of the antitrust laws.

This particular motion addresses the most egregious example of this pattern. Plaintiffs do not articulate any connection between the more than 15-year-old unauthorized payments involving DFA's former Chief Executive Officer ("CEO"), Gary Hanman, to Herman Brubaker and Buckey Jones (two of DFA's own farmers and not alleged co-conspirators) and the purely regional allegations that plaintiffs make about anticompetitive conduct in Order 1. That is because there is no connection. Plaintiffs simply want the jury to conclude that DFA must have done something wrong in Order 1 because 15 years ago someone did something improper elsewhere. The Rules of Evidence do not permit this.

Recognizing that there is no credible argument that this evidence is relevant to any element of their Sherman Act claims, plaintiffs seek refuge in their favorite catchall fallback argument: anything that DFA has ever done anywhere that plaintiffs do not like is relevant and thus admissible to prove that DFA does not operate for the "mutual benefit" of its members and therefore is not entitled to any Capper-Volstead Act protections. That is not the law. As discussed in detail in DFA's separate Motion *in Limine* No. 9, ECF No. 234 ("MIL No. 9"), no court has ever found that a duly-formed cooperative can be stripped of its status as a Capper-Volstead protected entity—and that the thousands of farmers who belong to that cooperative as member-

owners, (including *some of the plaintiffs themselves*), may be exposed to antitrust liability and treble damages for the mere act of marketing their raw milk through the cooperative that they own—based upon a plaintiff's subjective belief that certain isolated events (including the rogue acts of a former employee) were not "for the benefit" of the cooperative's members.  Indeed, to articulate the argument is to reject it.  This Court should deny plaintiffs' invitation to commit clear error by allowing this erroneous and unsupported legal theory to go to the jury.

## **DISCUSSION**

**I.     PLAINTIFFS HAVE NOT ESTABLISHED ANY CONNECTION BETWEEN THE PAYMENTS TO MR. BRUBAKER AND MR. JONES AND THE PURELY REGIONAL ORDER 1 CONSPIRACY THAT THEY ALLEGE**

Plaintiffs spend relatively little time in their Opposition trying to establish that these unauthorized payments between 2001 to 2005—which were disclosed, recouped, and resolved in full more than a decade ago—are relevant to prove any element of their conspiracy or monopsony claims under the Sherman Act.  They muster only two halfhearted theories.  First, they say that Mr. Brubaker signed Mr. Hanman's employment agreements with DFA before 2005, and that, in plaintiffs' view, that employment agreement was a bad deal for farmers.  Without a shred of evidence in support, plaintiffs then speculate wildly that Mr. Hanman arranged for payments to Mr. Brubaker and Mr. Jones that were "payoffs" to "look[] the other way."  Pls.' Opp'n to DFA's Mot. *in Limine* No. 3 at 2-3, ECF No. 225 ("Opp'n").  What, precisely, Mr. Brubaker and Mr. Jones, were looking the other way *from,* plaintiffs never say:  there is not an iota of evidence that Mr. Brubaker or Mr. Jones had any knowledge of, or involvement in, the conduct that plaintiffs claim injured them in Order 1 from 2005 to 2017.  Nor is there anything at all in the record to support plaintiffs' claim that the payments to Mr. Brubaker or Mr. Jones were *quid pro quo* payoffs for anything, much less something supposedly anticompetitive directed at Order 1.

2

Second, plaintiffs argue that the payments to Mr. Brubaker and Mr. Jones support their allegation that DFA had the economic motivation to prioritize commercial investing over farmer pay prices.  Opp'n at 3.  But there is no evidence that Mr. Brubaker or Mr. Jones played any role in DFA's commercial investments or alleged "empire building;" indeed, the acquisitions that plaintiffs complain about in this case almost entirely occurred after 2010, when Mr. Brubaker and Mr. Jones were retired or long-gone from DFA and when Rick Smith—not Gary Hanman—served as DFA's CEO.  Nor do plaintiffs explain how private, one-off payments to two individual farmers are probative of DFA's desire to grow its commercial operations.  That plaintiffs must resort to rampant speculation (verging on outright mischaracterization of the record) to articulate any logical link between the payments to Mr. Brubaker and Mr. Jones and the claims in this case, proves that this evidence is irrelevant to any material fact for the jury and cannot survive Federal Rule of Evidence 402.

II. **EVIDENCE OF DECADES-OLD UNAUTHORIZED PAYMENTS ARRANGED FOR BY A SINGLE, FORMER DFA EMPLOYEE CANNOT PROVE THAT DFA FAILED TO OPERATE FOR THE MUTUAL BENEFIT OF ITS MEMBERS**

Plaintiffs' indefensible theory regarding DFA's Capper-Volstead Act immunity provides even less justification for admitting this evidence.  Plaintiffs apparently believe that they can ask the jury to strip DFA's 14,000 farmer-members (including some of the plaintiffs) of their Capper-Volstead Act immunity—upon which they depend to market their milk—on the basis of plaintiffs' subjective judgment about whether Mr. Hanman's role arranging for payments to Mr. Brubaker and Mr. Jones benefitted DFA's farmers.  But this unprecedented legal theory finds no support in the law.  To the contrary, as DFA's related motion *in limine* explains at length, in the nearly 100 years that have passed since Congress enacted the Capper-Volstead Act, no court has ever even suggested that a duly-formed agricultural cooperative, operated for the purpose of handling, processing, preparing for market, and marketing its members' farm products, can be

stripped of the Capper-Volstead Act's protections by faulting management's business judgment or by pointing to the rogue action of an individual employee or member. *See* MIL No. 9.[1]

The "mutual benefit" provision in the Capper-Volstead Act instead requires an objective inquiry into an association's structure and exists to ensure the Act only protects agricultural associations that are organized according to objective cooperative principles, rather than corporations where profits inure to stockholders. *Id.* at 2, 3-11. Plaintiffs' attempt to transform the "mutual benefit" provision from an objective inquiry into a subjective and open-ended assessment of a cooperative's business decisions and the individual acts of its employees and members is unprecedented and unworkable, and any such approach would harm the very farmers Congress intended to protect. *Id.* Plaintiffs' made-up "mutual benefit" theory is not a valid basis to admit the improper payments evidence.

### III.  PLAINTIFFS CANNOT DISPUTE THAT EVIDENCE OF PAYMENTS TO MR. BRUBAKER AND MR. JONES IS CLASSIC PROPENSITY EVIDENCE PROHIBITED BY RULE 404(B) AND/OR UNDULY PREJUDICIAL UNDER RULE 403

Plaintiffs' attempt to sidestep Federal Rules of Evidence 403 and 404(b) is equally flawed. According to plaintiffs, the payments to Mr. Brubaker and Mr. Jones do not qualify as impermissible propensity evidence under Rule 404(b) or otherwise violate Rule 403 because they are "inextricably intertwined" with plaintiffs' claim that DFA did not operate for the mutual benefit of its members under the Capper-Volstead Act. But this is wrong too. Plaintiffs' Capper-Volstead Act argument itself depends on an unsupported legal theory that cannot be submitted to the jury—therefore it cannot justify the admission of evidence that is otherwise excludable.

---

[1]  DFA incorporates by reference all of the arguments in that motion here.

Moreover, this Court has already held that "[w]here it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *S.E.C. v. McGinnis*, No. 5:14-cv-6, 2015 WL 5643186, at *11 (D. Vt. Sept. 23, 2015) (Reiss, J.) (citation omitted). And the burden is on plaintiffs to establish they are using Rule 404(b) evidence for a permissible purpose. *Cf. United States v. Scott*, 677 F.3d 72, 78-79 (2d Cir. 2012) (dispelling introducing party's arguments for admissibility of the evidence); *Hynes v. Coughlin*, 79 F.3d 285, 290-93 (2d Cir. 1996) (same).

Plaintiffs fail to meet that burden in their Opposition. Although they argue that evidence of Mr. Hanman's payments to Mr. Brubaker and Mr. Jones shows DFA's "motive" to violate the Sherman Act, this is mere pretext. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (holding that the district court abused its discretion by admitting "propensity evidence in sheep's clothing" (citation omitted)); *Hynes*, 79 F.3d at 292 (excluding disciplinary records where defendants' stated the proffered evidence was not to show plaintiffs' propensity for violence, but— irrespective of defendants' "lip service to the proper principle"—it was clear the evidence was improper character evidence). Unauthorized payments, in 2001, to farmers who had no involvement in DFA's commercial investments from 2005 onward cannot prove anything about DFA's alleged motive, intent, or plan "to favor [] its commercial investments over the interests of its farmers." Opp'n at 7. Nor is there a shred of evidence connecting these long-resolved events to DFA's alleged "empire-building" anywhere, much less in Order 1. Courts routinely reject similar attempts to disguise improper "propensity" evidence as offered for a "proper" purpose under Rule 404(b). *See Hynes*, 79 F.3d at 290-91 (noting that "where there is no tenable basis for contending that there was an issue such as intent or knowledge, it is error to admit [other acts evidence]"); *Scott*, 677 F.3d at 79 ("We have, however, emphasized that [the] inclusionary rule is

not a carte blanche to admit prejudicial extrinsic act evidence when, as here, it is offered to prove propensity." (citation omitted)).[2]  The Court should do so here.

Plaintiffs plainly want to offer evidence of these payments to suggest to the jury that because one former DFA employee did something improper more than 15 years ago all other DFA employees must have a similar "bad" character and must have committed the Sherman Act violations that plaintiffs allege.  Neither Rule 404(b) nor Rule 403 permits this.

## IV.  THE COURT DID NOT ALREADY DECIDE THE ADMISSIBILITY OF THIS EVIDENCE AT SUMMARY JUDGMENT

Plaintiffs urge the Court to deny DFA's motion on the grounds that it already decided the admissibility of this evidence at summary judgment.  But this is incorrect.  DFA did not move to exclude evidence of the two payments in its summary judgment motion, nor did it address the relevance or admissibility of that evidence at all—indeed, it had no opportunity or reason to do so.[3]  DFA raised purely legal arguments at summary judgment that required no holding from the Court as to the relevance or admissibility of any evidence that plaintiffs now allege demonstrates DFA's motive to favor its commercial investments over the interests of its farmers.  Indeed, when

---

[2]  Plaintiffs' cases are inapposite because they all concern permissible uses of Rule 404(b) evidence as such uses relate *to the conduct charged*.  That is not the case here.

[3]  Courts are clear that defendants retain their rights to challenge the admissibility of evidence at trial irrespective of whether the Court relied upon that evidence at summary judgment.  *See Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, No. 09-14444, 2019 WL 1326035, at *4-6 (E.D. Mich. Mar. 25, 2019) (citing Fed. R. Civ. P. 56(c) 2010 advisory committee notes) (finding that plaintiffs' evidence could be considered at summary judgment and defendants did not object to the admissibility of the evidence at the summary judgment stage as provided for under Fed. R. Civ. P 56(c)(2), but "[t]hat does not mean . . . that Defendants cannot object to the use of the [evidence] at trial").  It is the job of the Court to view the evidence in the light most favorable to the non-movant at summary judgment and draw all inferences in plaintiffs' favor.  Fed. R. Civ. P. 56.  Because certain challenges to the admissibility of evidence—including but not limited to challenges under Rule 403—depend upon weighing evidence in a manner at odds with the Rule 56 standards, it cannot be the case that a court's reliance on evidence at summary judgment precludes a defendant from subsequently objecting to that evidence at trial.

DFA responded to the gratuitous 81-page statement of facts that plaintiffs submitted in violation of the Local Rules, DFA told the Court that it could "assume (solely for purposes of this motion) that all 145 of plaintiffs' purported 'facts' are genuinely in dispute" because those purported "facts" had no bearing on the purely legal arguments that DFA had made.[4]  Accordingly, the admissibility of evidence concerning unauthorized payments to two former DFA members was never before the Court during summary judgment and thus was never actually decided at that time.[5]

## CONCLUSION

For the foregoing reasons, DFA respectfully requests that the Court grant its motion *in limine* to exclude any evidence or argument related to any unauthorized payments to Mr. Brubaker and Mr. Jones.

---

[4]  *See* DFA's Resp. to Pls.' "Concise Statement of Disputed Material Facts" at 2, ECF No. 115-1.

[5]  *Raskin v. Wyatt Co.*, which plaintiffs cite in their brief, is inapposite.  125 F.3d 55, 66 (2d Cir. 1997).  The parties in that case hotly contested the admissibility of a key document in their summary judgment filings and the district court subsequently ruled on that issue as part of its Rule 56 decision.  That case has no bearing on the situation here, where the admissibility of the evidence at issue here was not previously before the Court.

Dated: June 18, 2020                                   Respectfully submitted,

 /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 18, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

    Joel G. Beckman, Esq. (jbeckman@nbparis.com)
    Gary L. Franklin, Esq. (gfranklin@primmer.com)
    William C. Nystrom, Esq. (wnystrom@nbparis.com)
    Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
    Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated: June 18, 2020

        /s/ *Alfred C. Pfeiffer Jr.*
        Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
        LATHAM & WATKINS LLP
        505 Montgomery Street, Suite 2000
        San Francisco, CA 94111
        Telephone: 415-391-0600
        Facsimile: 415-395-8095
        Email: al.pfeiffer@lw.com