UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4: TO PRECLUDE ARGUMENT OR EVIDENCE OF DFA'S CONDUCT AND/OR DECISION-MAKING OUTSIDE OF THE NORTHEAST**

Plaintiffs' Opposition sidesteps the fundamental basis of Dairy Farmers of America LLC's ("DFA") motion to exclude evidence of its purely national organization. Plaintiffs do not even try to explain how things like DFA's national corporate income, commercial operations, expenditures, and executive compensation could establish that DFA engaged in a conspiracy to suppress milk prices only in Order 1 but not in other geographic regions of the country. That is because they cannot. Plaintiffs' theory of the case—*i.e.*, that DFA conspired to lower farmer pay prices in Order 1 but not elsewhere—is fundamentally at odds with evidence about the things that DFA does on a nationwide basis. The same conduct cannot be just fine in, say, Orders 6, 30, 32, and elsewhere, but somehow evidence a conspiracy or "motive" to suppress pay prices in Order 1. Because this purely national information has nothing to do with the regional theory that plaintiffs are pursuing, they clearly have an ulterior motive for wanting to introduce it: they want to confuse the jury about how milk marketing actually works in this country, prejudice the jury against DFA for being a large organization, or both. All of this information is inadmissible under both Federal Rules of Evidence 402 and 403.

I. **PLAINTIFFS CONCEDE THAT EVIDENCE OF DFA'S NATIONAL ORGANIZATION IS IRRECONCILABLE WITH THEIR THEORY OF THE CASE**

    A. **DFA's National Level Operations Cannot Explain DFA's Motive To Violate The Antitrust Laws In Order 1 But Not Elsewhere**

Plaintiffs do not dispute that their entire case depends on the idea that DFA engaged in a conspiracy to suppress farmer pay prices and obtain a monopsony in Order 1, *but did not do so anywhere else in the country*. Indeed, plaintiffs' only "evidence" that DFA suppressed farmer pay prices in Order 1—a required element of their Sherman Act claims—is a number their expert purportedly reached by comparing pay prices in Order 1 (where plaintiffs allege a conspiracy) to

pay prices in Order 32, *where plaintiffs insist there was no antitrust violation.*[1] The importance of this fact cannot be overstated. Plaintiffs' whole theory of the case depends on the fact that DFA did not violate the antitrust laws nationally (and especially not in Order 32).

Plaintiffs' decision to structure their case this way has consequences for the upcoming trial. Plaintiffs' Opposition proves the point. Plaintiffs say that evidence of DFA's national operations, corporate wealth, and expenditures (including but not limited to expenditures for executive compensation) is relevant because it demonstrates, as a general matter, that DFA had an incentive to suppress farmer pay prices and bolster corporate profits at farmers' expense. But that argument goes nowhere.[2] Evidence of DFA's national organization and decision-making can only plausibly support plaintiffs' claims if it tends to indicate that DFA was motivated to suppress farmer pay prices in Order 1 but *not* in other geographic regions like Order 32, where, ironically, DFA has its national headquarters. The evidence here does no such thing; in fact, quite the opposite.

DFA's motion seeks specifically to exclude evidence and argument relating to DFA's national operations, national wealth, and national expenditures that plaintiffs have put at the

---

[1] Ex. 1, Expert Rpt. of Einer R. Elhauge ¶ 53, Oct. 3, 2018 ("Elhauge Initial Rpt.") ("The relevant geographic market is the raw milk pooled in the Northeastern area defined by Federal Milk Marketing Order 1.") (exhibits referenced herein refer to the May 19, 2020 Declaration of Alfred C. Pfeiffer Jr. , ECF No. 205); *id.* ¶ 4 ("Defendants have engaged in a multifaceted conspiracy with processors and other cooperatives to reduce competition, acquire monopsony power, and suppress raw milk prices in the market for raw milk sales in Order 1."); *id.* ¶ 234 (arguing that plaintiffs can "**demonstrate the effect of the alleged conduct [in Order 1] on raw milk prices**" in Order 1 by comparing "**prices or margins *in the violation market [to] prices or margins in related non-violation markets*" (emphasis added) (citation omitted)); *id.* (comparing over-order premiums in Order 1 with over-order premiums in Order 32, which includes parts of Illinois, Iowa, Nebraska, South Dakota, Colorado, Kansas, Missouri and Oklahoma); *id.* ¶¶ 236-37, 241 (arguing that Order 32 is the appropriate yardstick because "**it is not alleged to have suffered from collusive conduct**") (emphasis added).

[2] In any event, it is simply false that DFA ever possessed such a motive. DFA's operations and expenditures are designed to increase the size of the milk check, not diminish it.

2

forefront of their case. This includes but is not limited to evidence relating to the size of DFA's national corporate income; the extent of DFA's national commercial operations; the cost of DFA's national headquarters in Kansas City; the amount of money DFA spends on overhead and administrative costs for its national organization; the amount of DFA's executive compensation for top employees; and the distribution of patronage dividends across the entirety of DFA's national organization.³ *None* of this evidence explains an alleged economic motivation to suppress farmer pay prices only in Order 1; as plaintiffs concede, this evidence relates to facts at the national level or in other geographic regions where DFA's members live, farm, and own processing plants. Plaintiffs have never even articulated a cogent rationale for why this non-Order 1 evidence would tend to show an Order 1 specific conspiracy.

Nor does it matter, as plaintiffs argue, that DFA's commercial operations are run at a national level (a fact DFA never disputes), or that DFA entered into supply agreements with certain processor customers that covered multiple areas of the country, including Order 1. *See* Opp'n to Mot. *in Limine* No. 4 at 5-7, ECF No. 226 ("Opp'n"). To the extent this evidence could explain any of DFA's "economic motives" with respect to farmer pay prices (and it cannot), it could only

---

³      Contrary to plaintiffs' assertion, DFA's motion properly identified the evidence that DFA requests that the Court exclude for purposes of this Motion. *See* Motion *in Limine* No. 4 at 4-5 & nn. 5-9, 11, ECF No. 204 (identifying the evidence in Plaintiffs Statement of Disputed Fact paragraphs 102-105, 114 and accompanying notes, for exclusion). Among other things, this evidence includes: DFA's expenditures for and the features of its national corporate headquarters located in Kansas City; the compensation of DFA's national-level executives and employees who are based in Kansas City and elsewhere outside of Order 1 and who currently have little day-to-day role in DFA's local operations in the Northeast; the corporate overhead and administrative costs of DFA's national organization; the yearly income and accounting of DFA's national commercial organization; and the calculation and distribution of patronage dividends across the entirety of DFA's national organization.

3

demonstrate incentives that existed for DFA *everywhere* and in *all* areas where it does business – which is directly contrary to plaintiffs' chosen Order 1 theory.

Plaintiffs are thus left with a problem they cannot resolve: their only argument for the relevance of evidence concerning DFA's national organization sits fundamentally at odds with the theory upon which their case depends—that DFA did not conspire or violate the Sherman Act on a national level (or in the geographic area where its national headquarters are located). Plaintiffs apparently ask the Court to simply overlook this contradiction and let them have it both ways at trial. The Court should not do so. If plaintiffs intend to prove that DFA's conduct resulted in an anticompetitive effect in Order 1 by comparing Order 1 pay prices to pay prices in a "non-violation" market—*i.e.*, the Midwest geographic region covered by Order 32—they cannot rely upon "evidence" of DFA's alleged "motive" to engage in a conspiracy in Order 1 that directly conflicts with that theory, or worse, invites the jury to engage in rampant speculation about why DFA would be motivated to violate the antitrust laws in Order 1 only.[4] Because plaintiffs' efforts to rely on evidence relating to DFA's national organization cannot be reconciled with their proposed geographic market, proof of impact, and theory of an anticompetitive effect in Order 1, the Court should exclude this evidence as irrelevant to any issue in this case.

### B. Plaintiffs' Argument For The Admissibility Of DFA's National Evidence Is At Odds With The Law

Plaintiffs' argument for the admissibility of DFA's national-level evidence is also unsupported by the law. According to plaintiffs, evidence of DFA's national organization should be admitted, regardless of whether it pertains specifically to the relevant geographic market in this case (or conforms to plaintiffs' alleged proof of competitive injury and impact), because it explains DFA's motive, writ large, to suppress farmer pay prices irrespective of location. But plaintiffs do

---

[4] *See* Ex. 1, Elhauge Initial Rpt. ¶¶ 234, 236-37, 241, ECF No. 205.

not cite a single case in support of this argument. This is for good reason. Evidence of a party's conduct outside the relevant geography often will be theoretically relevant to that party's motives, intent, and course of conduct in an antitrust case. Yet courts consistently draw the line at admitting evidence outside of the appropriate geographic market in complex antitrust actions like this one. *See generally Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380, 397 (10th Cir. 1985) (concluding that district court erred by permitting a party to introduce evidence of the opposing party's conduct outside of the relevant geographic market for the case); *cf. State of New York v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 787-88 (S.D.N.Y. 2019) (excluding evidence of defendant's conduct outside of the relevant geographic market for the case because such evidence would result in time-consuming mini-trials and undue delay that outweighed the evidence's probative value); *Connecticut Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 324 F. Supp. 3d, 293, 312 (D. Conn. 2018) (warning that plaintiffs inexplicably sought to rely on evidence of defendant's business from outside the geographic market that plaintiffs alleged in the case). In doing so, courts have repeatedly recognized the risk of jury confusion and undue prejudice that could arise from the introduction of such evidence, and found that these risks outweighed any probative value. Plaintiffs never address these cases in their opposition, nor do they cite a single case to the contrary. Because the principles expressed by the case law apply equally here, the Court should grant DFA's motion.

## II. THE LAW PRECLUDES PLAINTIFFS' ARGUMENT THAT DFA DID NOT OPERATE FOR THE MUTUAL BENEFIT OF ITS MEMBERS UNDER THE CAPPER VOLSTEAD ACT

Plaintiffs' fallback position is even more untenable. According to plaintiffs, evidence relating to DFA's national organization and conduct is also relevant to this case because it "directly refute[s] any contention by DFA that it acts for the mutual benefit of its members" pursuant to the Capper-Volstead Act. Opp'n at 6. Plaintiffs apparently believe that they can ask the jury to strip

5

DFA's 14,000-plus farmer-members of their Capper-Volstead Act immunity—upon which they depend to market their milk—on the basis of plaintiffs' subjective judgment about the wisdom of DFA's business decisions, and whether those business decisions benefitted farmers. But this novel legal theory—which plaintiffs have pushed repeatedly in their filings and upon which plaintiffs base much of their case—finds no home in the law. To the contrary, as DFA's related Motion *In Limine* No. 9 To Preclude Evidence And Argument That DFA Is Not An Agricultural Cooperative Operated For The Mutual Benefit Of Its Members Under The Capper-Volstead Act, ECF No. 234, explains at length, in the nearly 100 years that have passed since Congress enacted the Capper-Volstead Act, no court has so much as hinted that a duly-formed agricultural cooperative, operated for the purpose of handling, processing, preparing for market, and marketing its members' farm products, can be stripped of the Capper-Volstead Act's protections by faulting management's business judgment or the operations of its national organization. *See id.* at 2. The "mutual benefit" provision in the Capper-Volstead Act instead requires an objective inquiry into an association's structure, and exists to ensure the Act only protects agricultural associations that are organized according to objective cooperative principles, rather than corporations where profits inure to stockholders. *Id.* at 3, 4-11.

Plaintiffs' attempt to transform the "mutual benefit" provision from an objective inquiry into a subjective and open-ended assessment of a cooperative's business decisions is unprecedented and unworkable, and any such approach would harm the very farmers Congress intended to protect. *Id*. Because plaintiffs' theory that evidence of DFA's national organization proves that DFA did not operate for the mutual benefit of its members for Capper-Volstead Act purposes is wholly unsupported by any legal precedent, anywhere, it cannot be submitted to the jury at all—

6

much less provide any justification for the admissibility of evidence relating to DFA's national conduct. *Id*.

### III. EVIDENCE OF DFA'S SIZE, WEALTH, AND EXECUTIVE COMPENSATION SHOULD BE EXCLUDED UNDER RULE 403

Plaintiffs are also wrong that evidence of DFA's size, wealth, and executive compensation is admissible under Federal Rule of Evidence 403. Evidence of corporate wealth and executive compensation only survives scrutiny under Rule 403 when that evidence has some rational ability to prove some fact of importance, and otherwise logically supports the plaintiffs' theory of the case. None of the cases cited by plaintiffs suggests otherwise. *See* Opp'n at 8-10 (citing cases). But that is not the case here, where plaintiffs have no explanation why DFA's national-level conduct explains why DFA engaged in a conspiracy in Order 1 (but not elsewhere). Absent any plausible claim that this evidence is relevant, plaintiffs do not contest that DFA's organizational wealth or the compensation of its employees can *only* serve to prejudice DFA and inflame the jury. This is precisely what Rule 403 prohibits. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, No. MDL 1657, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (granting defendant's motion *in limine* to exclude evidence of defendant Merck's assets and profitability, and its employees' compensation and financial decisions, as irrelevant and unduly prejudicial); *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 216, 517-18 (D.P.R. 2008) (granting motion to bar evidence of party's compensation package); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (granting motion to bar evidence of "wealth and lifestyle" of defendant's CEO because evidence was irrelevant and unfairly prejudicial).

Because evidence regarding the size of DFA's annual income and retained earnings, administrative expenditures, and employee compensation would be enormously and unfairly

7

prejudicial to DFA, while lacking any plausible relevance for plaintiffs' Order 1-specific claims, all such evidence and argument should be excluded pursuant to Rule 403.

## IV. PLAINTIFFS ARE WRONG THAT THE COURT ALREADY ADMITTED EVIDENCE OF DFA'S NATIONAL ORGANIZATION FOR TRIAL

In lieu of valid arguments for why evidence of DFA's national organization is admissible at trial, plaintiffs revert to the claim that the Court already ruled on the issues implicated here during the summary judgment stage of this case. Opp'n at 5-6. That is wrong. DFA did not move to exclude evidence of DFA's national organization in its summary judgment motion, nor did it address the relevance or admissibility of that evidence at all—indeed, it had no opportunity or reason to do so.[5] DFA raised purely legal arguments at summary judgment that required no holding from the Court as to the relevance or admissibility of any evidence that plaintiffs now allege demonstrates DFA's motive to suppress farmer pay prices in Order 1. Indeed, when DFA responded to the gratuitous 81-page statement of facts that plaintiffs submitted in violation of the Local Rules, DFA told the Court that it could "assume (solely for purposes of this motion) that all 145 of plaintiffs' purported 'facts' are genuinely in dispute" because those purported "facts" had no bearing on the purely legal arguments that DFA had made.[6] Accordingly, the admissibility of

---

[5] Courts are clear that defendants retain their rights to challenge the admissibility of evidence at trial irrespective of whether the Court relied upon that evidence at summary judgment. *See Compressor Eng'g Corp. v. Mfs. Fin. Corp.*, No. 09-14444, 2019 WL 1326035, at *4-*6 (E.D. Mich. Mar. 25, 2019) (citing Fed. R. Civ. P. 56(c) 2010 advisory committee notes) (finding that plaintiffs' evidence could be considered at summary judgment and defendants did not object to the admissibility of the evidence at the summary judgment stage as provided for under Fed. R. Civ. P 56(c)(2), but "[t]hat does not mean . . . [the] Defendants cannot object to the use of the [evidence] at trial."). It is the job of the Court to view the evidence in the light most favorable to the non-movant at summary judgment and draw all inferences in plaintiffs' favor. Fed. R. Civ. P. 56. Because certain challenges to the admissibility of evidence—including but not limited to challenges under Rule 403—depend upon weighing evidence in a manner at odds with the Rule 56 standards, it cannot be the case that a court's reliance on evidence at summary judgment entirely precludes a defendant from subsequently objecting to that evidence at trial.

[6] *See* DFA's Resp. to Pl.s' "Concise Statement of Disputed Material Facts" at 2, ECF No. 115-1 (Mar. 6, 2019).

8

evidence concerning DFA's national organization and decision-making was never before the Court during summary judgment, and thus, was never actually decided at that time.[7]

## CONCLUSION

For these reasons and those set forth above, the Court should grant DFA's motion.

---

[7] *Raskin v. Wyatt Co.*, which plaintiffs cite in their brief, is inapposite. 125 F.3d 55, 66 (2d Cir. 1997). The parties in that case contested the admissibility of a key document in their summary judgment filings and the district court subsequently ruled on that issue as part of its Rule 56 decision. That case has no bearing on the situation here, where the admissibility of evidence at issue here was not previously before the Court.

9

Dated:  June 18, 2020 Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (*pro hac vice* pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 18, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

  Joel G. Beckman, Esq. (jbeckman@nbparis.com)
  Gary L. Franklin, Esq. (gfranklin@primmer.com)
  William C. Nystrom, Esq. (wnystrom@nbparis.com)
  Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
  Dana A. Zakarian, Esq. (dzakarian@nbparis.com)
  Michael Paris, Esq. (mparis@nbparis.com)


Dated:  June 18, 2020          /s/ Alfred C. Pfeiffer Jr.
                  Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                  LATHAM & WATKINS LLP
                  505 Montgomery Street, Suite 2000
                  San Francisco, CA 94111
                  Telephone: 415-391-0600
                  Facsimile: 415-395-8095
                  Email: al.pfeiffer@lw.com