## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and**<br>**DAIRY MARKETING SERVICES, LLC,**<br><br>       **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING**
**SERVICES, LLC'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 5: TO**
**EXCLUDE THE 1977 CONSENT DECREE, DFA'S SETTLEMENTS,**
**AND DFA'S INTERNAL ANTITRUST GUIDELINES**

In their Opposition to Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC's (collectively "DFA") Motion *in Limine* No. 5: To Exclude the 1977 Consent Decree, DFA's Settlements, and DFA's Internal Antitrust Guidelines, ECF No. 229 ("Opp'n"), plaintiffs offer three purported reasons to admit evidence regarding supposed violations of the 1977 Consent Decree, the *Allen* Settlement, and DFA's own internal Antitrust Guidelines to establish Sherman Act liability: (1) to demonstrate "intent to monopsonize"; (2) to show that DFA "obtained its monopsony power through predatory means"; and (3) to identify DFA's "knowledge of the anticompetitive nature of their conduct."[1]  But these are not separate arguments; they are just three ways of saying the same thing:  that DFA *knew* (*i.e.*, intended) that conduct proscribed by this evidence violated the antitrust laws (*i.e.*, that it was "predatory").   However framed, all of plaintiffs' arguments are based on the same faulty assumption:  that the 1977 Consent Decree, the *Allen* Settlement, and DFA's Antitrust Guidelines proscribe conduct that is itself a violation of the Sherman Act.  But that is not so.  Both the 1977 Consent Decree and *Allen* Settlement are third-party agreements that DFA (or its predecessor) negotiated with the U.S. Department of Justice and class plaintiffs, respectively, to resolve lawsuits.   Nothing in those agreements purports to impose the same obligations on DFA as the Sherman Act.  *See* DFA's Mot. *in Limine* No. 5 at 10-13, ECF No. 208 ("MIL No. 5").  Similarly, DFA's Antitrust Guidelines discourage perfectly legal conduct that may give rise to even the *appearance* of impropriety.  *Id.*

---

[1]     Opp'n at 2-3.  Plaintiffs argue that DFA's other settlements "simply prove[] Plaintiffs' allegations and do[] not raise Rule 403 concerns."  Opp'n at 13-14.  However, this argument fails to provide any real support for the admissibility of DFA's other settlements.  None of the other settlements resulted in a judgment on the merits; at most, they indicate that, at some prior time, some other parties brought allegations against DFA.  Yet plaintiffs clearly seek to use these former (and long-since resolved) legal proceedings to paint DFA as a serial wrongdoer and prejudice the jury against DFA.  This would be improper, and the Court should exclude any such evidence or related argument under Federal Rules of Evidence 403 and 404(b).

The 1977 Consent Decree is inadmissible for the independent reason that Section 5(a) of the Clayton Act prohibits its use for any purpose, and plaintiffs are simply incorrect (and find no support in the law) when they read that prohibition narrowly.  Further, to the extent that there is any marginal relevance to this evidence, none of plaintiffs' arguments provides a legitimate excuse for plaintiffs to mislead and confuse the jurors by inviting them to conclude DFA has violated the antitrust laws because of conduct that plaintiffs claim is a violation of some *other* agreement or guideline.  And none provides a reason for the Court to permit the lengthy, irrelevant, and prejudicial sideshow regarding the 1977 Consent Decree, the *Allen* Settlement, and DFA's Antitrust Guidelines that plaintiffs appear to want.  Contrary to plaintiffs' assertions, this Court's summary judgment order did not address the admissibility of any of this evidence, but it should do so now and exclude it.

I.    **DFA'S ALLEGED VIOLATIONS OF THE 1977 CONSENT DECREE, *ALLEN* SETTLEMENT, AND ANTITRUST GUIDELINES DO NOT DEMONSTRATE INTENT, KNOWLEDGE, OR PREDATORY CONDUCT AND WOULD CONFUSE THE JURY AS TO THE APPLICABLE LAW**

A.    **The 1977 Consent Decree, *Allen* Settlement, And Antitrust Guidelines Are Not A Proxy For The Law**

All three of plaintiffs' arguments for admitting evidence that DFA allegedly violated the 1977 Consent Decree, *Allen* Settlement, and Antitrust Guidelines – namely that such evidence shows (1) DFA's "intent"; (2) that DFA allegedly achieved its monopsony power through "predatory" means; and (3) that DFA "knew" its conduct was anticompetitive – are built on a faulty premise.  In order for an agreement or guideline to show intent or knowledge that something is unlawful, it actually has to proscribe conduct that is unlawful.  But, as plaintiffs admit, the 1977 Consent Decree, *Allen* Settlement, and Antitrust Guidelines do not proscribe conduct that is unlawful; therefore, DFA's knowledge of what these documents prohibit is irrelevant to its knowledge of what the antitrust laws prohibit or its intent to violate them.  For the same reason,

DFA's guidelines or agreements cannot be evidence of *predatory* conduct, unless what they prohibit is unlawful or predatory.  Plaintiffs are simply seeking to substitute a different standard for what they have to prove under the antitrust laws, and attempting to usurp the Court's role as the proper source of the legal standard that the jury must apply to DFA's conduct.

Plaintiffs' argument that they are using the 1977 Consent Decree, *Allen* Settlement, or Antitrust Guidelines to show that DFA "intentionally engaged in conduct . . . that it knew was anticompetitive," Opp'n at 7, 13, has already been considered and rejected by the court in *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV 208, 2011 WL 2749579 (E.D. Tenn. July 14, 2011).  Although plaintiffs claim that their argument stands in "stark contrast" to that made by the plaintiffs in *Southeastern Milk*,  Opp'n at 11 n.11, the plain language of that opinion makes clear that the court in *Southeastern Milk* rejected precisely the argument plaintiffs make here:

> As best the Court can tell, plaintiffs argue that proof of a violation of the consent decree by DFA would establish that, when defendants took the complained of actions, ***they knew the acts were anticompetitive because of the consent decree***.  Yet the consent decree contained no finding or admission that these acts were anti-competitive or illegal under the Sherman Act.

*In re SE Milk Antitrust Litig.*, 2011 WL 2749579, at *8 n.13 (emphasis added).

Plaintiffs' true purpose for seeking to introduce this evidence is clear:  plaintiffs seek to argue that a violation of the 1977 Consent Decree, the *Allen* Settlement, or the Antitrust Guidelines (none of which occurred) is anticompetitive conduct proscribed by the antitrust laws.  Nothing in those agreements purports to track, or imposes the same obligations on DFA as, the Sherman Act.  Proof that DFA violated a consent decree or the *Allen* Settlement would thus not prove a Sherman Act violation; it would prove only a *consent decree* or *settlement agreement* violation.  *See Paul M. Harrod Co. v. A. B. Dick Co.*, 194 F. Supp. 502, 504 (N.D. Ohio 1961) ("Such [antitrust

consent] decrees do not necessarily reflect the prohibitions of the antitrust laws but may . . . frequently enjoin performance of acts lawful in themselves.").

As made clear in *Southeastern Milk* and *Paul M. Harrod Co.*, a consent decree can prohibit conduct that is legal under the antitrust laws. *Id.* It is not clear how allegedly failing to comply with a consent decree that prohibits lawful conduct, a private settlement agreement between DFA and third parties, or antitrust guidelines that advise against lawful conduct when it gives rise to even the appearance of impropriety would show knowledge that the proscribed conduct is unlawful. The Court should reject plaintiffs' pre-textual justifications for admitting the 1977 Consent Decree, *Allen* Settlement, and Antitrust Guidelines.

### B. Because This Evidence Is Not Relevant To Knowledge Or Intent, It Is Improper Propensity Evidence And Must Be Excluded

Plaintiffs' argument that the 1977 Consent Decree should be admitted for context ignores the substantial prejudicial effect this propensity evidence would cause. *See* Opp'n at 10. The Second Circuit has admonished courts to exclude prior bad act evidence cloaked in the sheep's clothing of proving knowledge and intent, when the true purpose is to provide impermissible propensity evidence. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009). That is precisely what plaintiffs attempt to do here.

The cases plaintiffs rely on to argue in favor of admitting the 1977 Consent Decree for context do not change the analysis.[2] The consent decree referenced in *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) and *Biovail Corp. International v. Hoeschst Aktiengesellschaft*, 49 F. Supp. 2d 750 (D.N.J. 1999) is markedly different than the 1977 Consent Decree. Indeed, the *Cardizem* and *Biovail* consent decree terms include the statement that the

---

[2]     *See* Opp;n at 10, 10 n.10. Moreover, these cases are inapposite because none of them considered or decided whether an antitrust consent decree would be admissible at a trial.

purpose of the order's requirement "is to remedy the lessening of competition."  Hoechst AG: Proposed Consent Agreement To Aid Public Comment, 60 Fed, Reg. 49,609, 49, 611 (Sept. 25, 1995).  In stark contrast, the 1977 Consent Decree's provision limiting the term of milk sales agreements includes the limitation that nothing "shall be construed to limit or affect the application of the antitrust laws to Milk Sales Agreements."  *United States v. Mid-Am. Dairymen, Inc.*, No. 73 CV 681-W-1 1977 WL 1425, at *3-4 (W.D. Mo. 1977).  There is no language that the conduct proscribed addresses or remedies the lessening of competition.  *Alvord-Polk, Inc. v. F. Schumacher & Co.* also fails to provide support because plaintiffs in that case did not seek to argue that the defendant violated the consent decree, as plaintiffs do here.  37 F.3d 996 (3d Cir. 1994).

## C.    Plaintiffs' Argument Relies On An Incorrect Definition Of Intent

Even if plaintiffs were correct that this evidence has some relevance to DFA's "intent" that is distinguishable from "knowledge," plaintiffs' argument misunderstands the kind of intention relevant to this inquiry.   Unlike the securities-fraud cases upon which plaintiffs rely,[3] civil Sherman Act violations do not require scienter or knowledge of illegality.  *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 805 Intent Requirement in Attempt Cases (4th ed. 2020 Supp.) ("The relevant intent, insofar as it is separately required, is the intent to 'monopolize,' which means to dominate a market so as to be able to obtain higher prices.").  Plaintiffs also attempt to conflate the meaning of "intent" by citing to criminal antitrust cases, which is a different standard than civil antitrust actions.[4]  It should

---

[3]      Opp'n at 8 n.7.

[4]      *See In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2017 WL 895582, at *5 (E.D. Pa. Mar. 6, 2017) ("While 'a defendant's state of mind or intent is an element of a criminal antitrust offense' the 'general rule' is that a civil antitrust offense can be 'established by proof of *either* an unlawful purpose *or* an anticompetitive effect.'" (quoting *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 436 n.13 (1978)).  The cases cited by plaintiffs, Opp'n at 8 n.6, all deal with criminal intent in the antitrust context.  Further, none of the cases cited by plaintiffs here addresses

come as no surprise that plaintiffs fail to cite a single case from the private antitrust context holding that allegations of consent decree violations are somehow relevant to the kind of "intent" to monopolize or monopsonize that is required under the Sherman Act.

To be clear, the "intent" requirement of attempted monopsonization is the intent to become a monopsonist through exclusionary conduct—an element that is in no way illuminated by the evidence plaintiffs seek to admit. *See, e.g.*, *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1163 n.22 (9th Cir. 2003) ("intent to monopolize," for purposes of § 2 attempted monopolization claim, means "intent to control prices or destroy competition in a relevant market"); *see also Belfiore v. New York Times Co.*, 826 F.2d 177, 183 (2d Cir. 1987) (defining intent as the intent to achieve a monopoly). The key question of intent becomes whether DFA's intention in entering agreements with processors or other cooperatives was for the purpose of excluding competitors or for legitimate business purposes. *See McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 243 (1980). Whether DFA's agreements violated the 1977 Consent Decree, *Allen* Settlement, or DFA's own Antitrust Guidelines (they do not) provides no support for whether DFA intended to exclude competitors to create a monopsony.

### D.    Rule 403 Precludes The Introduction Of DFA's Antitrust Guidelines

Plaintiffs contend that they seek to use DFA's Antitrust Guidelines to show DFA's knowledge and intent, but this argument has already been rejected by multiple courts. DFA's Antitrust Guidelines present impermissible legal conclusions and a significant risk that a jury will be misled about the scope and requirements of the Sherman Act. Plaintiffs are simply wrong where they assert[5] that the court admitted into evidence certain sections of defendants' internal antitrust

---

the admission of a consent decree for the purpose of showing intent. Instead, in the cases on which plaintiffs rely, the courts permitted prior bad acts evidence for a limited purpose.

[5]    *See* Opp'n at 13 n.14.

compliance policies in *MM Steel, LP v. Reliance Steel & Aluminum Co.,*  No. 4:12-CV-1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013).  There, the defendants sought to exclude evidence or reference "to their internal antitrust compliance policies."  *Id.*  The *MM Steel* court granted this motion because such policies "'present legal conclusions as to the scope and meaning of the Sherman Act that would undermine the Court's role as the jury's sole source of law applicable to this case' and also 'present a significant risk that the jury will be misled as to the Sherman Act's proper scope and interpretation.'"  *Id.* (quoting *United States v. North*, 2007 WL 1630366, at *1 (D. Conn. June 5, 2007)).  In *North*, the court excluded the portions of the antitrust policy that defendant specifically sought to exclude and identified that the defendant could assert at trial an objection to other portions that purport to describe what conduct violates federal antitrust laws. 2007 WL 1630366, at *1 (D. Conn. June 5, 2007).  Indeed, plaintiffs have failed to identify a single case where a company's internal antitrust policy has been fully admitted into evidence.[6]

Plaintiffs' argument that the *North* court excluded only portions of the defendant's antitrust compliance policy is academic at best.  The portions that plaintiffs seek to use in this case are the sections that describe DFA's legal obligations – the very portion excluded by the *North* court.  For example, plaintiffs intend to seek to admit testimony regarding the antitrust policy's description of "Prohibited Conduct." [7]  This is the precise type of evidence that the *North* and *MM Steel* courts

---

[6]     For example, in *J & M Distriuting, Inc. v. Hearth & Home Technologies, Inc.*, the court excluded certain information contained in the policies because it was irrelevant and could potentially confuse the jury. No. 13-CV-72 (SRN/TNL), 2015 WL 144797, at *2-3 (D. Minn. Jan. 12, 2015).  The court also issued a limiting instruction with regard to the guidelines. *Id.*  Further, in *In re Linerboard Antitrust Litigation*, the court merely considered internal antitrust compliance policies in the context of a summary judgment motion without considering whether Rule 403 should apply.  504 F. Supp. 2d 38, 41, 58 n.13 (E.D. Pa. 2007).

[7]     *See* Ex. 1, Pls.' Trial Ex. 2 (DFA DATA03-0880772-98 at DFA DATA03-0880793-95); Ex. 2, S. Mathur Dep. 34:1-13, June 27, 2018.  Exhibits referenced herein refer to the concurrently filed June 23, 2020 Declaration of Alfred C. Pfeiffer Jr.

excluded because it "present[s] legal conclusions as to the scope and meaning of the Sherman Act" and "significant risk that the jury will be misled as to the Sherman Act's proper scope and interpretation." *North*, 2007 WL 1630366, at *1. This Court should exclude DFA's policy on the same basis.

## II.   CLAYTON ACT § 5 PROHIBITS THE ADMISSION OF THE 1977 CONSENT DECREE REGARDLESS OF PLAINTIFFS' PRE-TEXTUAL JUSTIFICATIONS

Plaintiffs do not – and cannot – effectively refute the fact that the 1977 Consent Decree does not qualify for admission under Clayton Act § 5(a). Instead, plaintiffs incorrectly assert that Clayton Act Section 5(a) is limited to contexts when plaintiffs seek to use a consent decree as *prima facie* evidence. *See* Opp'n at 7. But this position is refuted by the cases DFA cited in its motion, which demonstrate that courts exclude consent decrees under § 5(a) when plaintiffs seek to argue that a defendant's violation of a consent decree shows anticompetitive conduct. Contrary to plaintiffs' explanation of *Control Data Corp. v. IBM Corp.*, Opp'n at 7 n.5, the court excluded an antitrust consent decree under Clayton Act § 5(a) when a plaintiff did not assert an independent cause of action pursuant to the consent decree, but instead asserted that the defendant's violation of a consent decree showed a monopolistic practice. 306 F. Supp. 839, 844-46 (D. Minn. 1969). The court rejected plaintiff's attempt to base an antitrust action off a violation of a consent decree, calling it "perhaps a distinction without a difference [to a private cause of action based upon a consent decree]." *Id.* at 844. Similarly, in *Cinema Service Corp. v. Twentieth Century-Fox Film Corp.*, the plaintiff sought to use a consent decree to show, *inter alia*, that dealings "'which violate the decree are necessarily contracts in restraint of trade outlawed by § 1 of the Sherman Act.'" 477 F. Supp. 174, 178 (W.D. Pa. 1979) (quoting plaintiffs' argument). The court rejected this approach, holding that it "is well settled that a consent judgment in a civil case, or any evidence thereof, is not admissible in a treble damage action. . . . Such evidence can have no real purpose

except to prejudice the defendant before a jury." *Id.* (citations omitted).  Plaintiffs do not even attempt to distinguish *International Shoe Machine Corp. v. United Shoe Machine Corp*., 315 F.2d 449, 459 (1st Cir. 1963), and plaintiffs' attempts to distinguish the clear weight of authority on this topic is unavailing.[8]

The cases cited by plaintiffs do not change this analysis.  In *Crouse-Hinds Co. v. InterNorth, Inc.*, the court considered whether to admit evidence of a prior consent decree in a private plaintiff action involving a merger brought under Section 7 of the Clayton Act.  518 F. Supp. 413 (N.D.N.Y. 1980).  The plaintiff in *Crouse-Hinds* did not seek treble damages; instead, the plaintiff sought an injunction prohibiting the defendant from acquiring the plaintiff, and the court explicitly noted that its decision in that case was affected by "the unique demands made upon the Court by Section 7."  *Id*. at 415.[9]

## III.  THE ADMISSIBILITY OF EVIDENCE AT TRIAL WAS NOT AN ISSUE ACTUALLY DECIDED ON SUMMARY JUDGMENT

Finally, as DFA has pointed out elsewhere,[10] plaintiffs are flatly wrong that this Court already decided issues of admissibility for trial, including whether the 1977 Consent Decree, *Allen* Settlement, or Antitrust Guidelines are admissible during the jury trial.  DFA did not move to

---

[8]     *See* Opp'n at 7 n.5.  For example, in *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, the court held that a prior action "ended in a consent decree, the admission of which is expressly excluded by Section 5(a)."  No. 86-0386, 1992 WL 212230, at *18 (M.D. Pa. July 31, 1992), *aff'd in relevant part, rev'd in part*, 998 F.2d 1224, 1247 (3d Cir. 1993).

[9]     The other cases cited by plaintiffs are also inapposite.  Opp'n at 7.  In *In re National Ass'n of Music Merchants, Musical Instruments & Equipment Antitrust Litigation*, the court permitted plaintiffs to refer to a consent decree as well as government investigations for the purpose of meeting the *Twombly* plausibility standard to survive a motion to dismiss.  MDL No. 2121, 2011 WL 3702453, at *1 (S.D. Cal. Aug. 22, 2011).  In *United States v. General Dynamics Corp.*, 258 F. Supp. 36, 62-63 (S.D.N.Y. 1966) and *Vitagraph, Inc. v. Perelman*, 95 F.2d 142, 146 (3d Cir. 1936), the court did not evaluate whether Clayton Act § 5(a) precluded the introduction of prior consent decrees.

[10]     *See* Reply in Supp. of Mot. in *Limine* No. 4 at 8-9, ECF No. 252.

exclude evidence of the 1977 Consent Decree, *Allen* Settlement, or Antitrust Guidelines (or violations thereof) in its summary judgment motion, nor did it address the admissibility of that evidence at all.[11]   DFA raised purely legal arguments at summary judgment that required no holding from the Court as to the relevance or admissibility of any evidence.  Indeed, when DFA responded to the gratuitous 81-page statement of facts that plaintiffs submitted, DFA told the Court that it could "assume (solely for purposes of this motion) that all 145 of plaintiffs' purported 'facts' are genuinely in dispute" because those purported "facts" had no bearing on the purely legal arguments that DFA had made.[12]   Accordingly, the admissibility of the 1977 Consent Decree, *Allen* Settlement, or Antitrust Guidelines was never before the Court during summary judgment, and thus, was never actually decided at that time.

## IV.   CONCLUSION

For the foregoing reasons, DFA respectfully requests that the Court grant its motion *in limine* to exclude the 1977 Consent Decree, DFA's Settlements, and DFA's Antitrust Guidelines.

---

[11]    Courts are clear that defendants retain their rights to challenge the admissibility of evidence at trial irrespective of whether the Court relied upon that evidence at summary judgment.  *See Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, No. 09-14444, 2019 WL 1326035, at *4-6 (E.D. Mich. Mar. 25, 2019) (citing Fed. R. Civ. P. 56(c) 2010 advisory committee notes) (finding that plaintiffs' evidence could be considered at summary judgment and defendants did not object to the admissibility of the evidence at the summary judgment stage as provided for under Fed. R. Civ. P 56(c)(2), but "[t]hat does not mean . . . the Defendants cannot object to the use of the [evidence] at trial.").  Because certain challenges to the admissibility of evidence—including but not limited to challenges under Rule 403—depend upon weighing evidence in a manner at odds with the Rule 56 standards, it cannot be the case that a court's reliance on evidence at summary judgment precludes a defendant from subsequently objecting to that evidence at trial.

[12]    *See* DFA's Resp. to Pl.s' "Concise Statement of Disputed Material Facts" at 2, ECF No. 115-1 (Mar. 6, 2019).

Dated: June 23, 2020

Respectfully submitted,

 /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W.  Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated: June 23, 2020

/s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com