# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRET SITTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,<br><br>Defendants. | Civil Action No. 2:16-cv-00287-cr |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 6: TO PRECLUDE EVIDENCE AND ARGUMENT RELATING TO <u>NATIONAL DAIRY HOLDINGS LP</u>**

In Motion *in Limine* No. 6, ECF. No 210 ("MIL No. 6"), Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC (collectively "DFA") ask the Court to preclude evidence and argument regarding National Dairy Holdings LP ("NDH") to prevent an irrelevant, prejudicial, and confusing sideshow.  Plaintiffs appear to oppose the motion on the grounds that they very much welcome the show.

Under the guise of presenting "history," plaintiffs seek to submit cherry-picked facts and allegations, ostensibly for the purpose of establishing that NDH's pre-2005 activity purportedly supported DFA's acquisition of a monopsony in Order 1, and this supposedly resulted in depressed prices, for which plaintiffs seek to recover damages.  *See* Pls' Opp. to Defs' Mot. *In Limine* No. 6, ECF No. 228 ("Opp'n").

Plaintiffs have no explanation for the fact that, although it is uncontested that NDH did not exist in the Northeast after 2004, plaintiffs have named NDH as a co-conspirator in this case; have purportedly measured the supposed "effect" of DFA's alleged conspiracy with NDH from 2005 to 2017 on farmer pay prices in Order 1; and are now asking the jury to award them damages based on a purported conspiracy between DFA and NDH from 2005 to 2017.  Plaintiffs apparently hope that by ignoring this problem altogether in their Opposition, the Court will not force them to account for this inconsistency that undermines their own theory of the alleged conspiracy (and its supposed effect on farmer pay prices from 2005 to 2017).  Nor do plaintiffs explain how they can recover damages for any supply agreement entered into between DFA and NDH before 2005; indeed, as set forth in DFA's separate Motion *in Limine* No. 2, ECF No. 200 ("MIL No. 2"), and reply thereto, ECF No. 243, the continuing violation legal theory—and this Court's holding in *Allen v. Dairy Farmers of America, Inc.*, 748 Supp. 323 (D. Vt. 2010)—are clear that the

continuation of a contract entered before the limitations period cannot constitute an overt act from which a plaintiff can collect damages during the limitations period of the case.

Instead, plaintiffs pretend that the only role they envision for NDH-evidence to play at trial is one of providing "background" and "context" for plaintiffs' other allegations about DFA. This is simply false. Regardless, the Federal Rules of Evidence prevent the use of information where the danger of its use substantially outweighs the probative value it adds. *See* Fed. R. Evid. 403. Plaintiffs' tortured tale of NDH is not relevant to plaintiffs' claims in Order 1, and the prejudice of allowing such information is clear. Not only will this evidence invite the jury to award liability and damages on a legally impermissible ground, but introducing this evidence puts DFA in a bind: DFA must either allow insinuation to confuse and mislead the jury, or waste the Court's time and resources putting years of NDH's national actions in context—context that itself is totally irrelevant to plaintiffs' claims. Neither outcome is acceptable under the Rules of Evidence. The Court should grant DFA's MIL No. 6.

## **DISCUSSION**

Even if the Court were to accept that plaintiffs intend to abandon at trial their claim of injury from 2005 to 2017 from a conspiracy between DFA and NDH—an entity that did not exist in Order 1 after 2004—plaintiffs intend to use the "history" of NDH for improper purposes. Plaintiffs explain they are entitled to present history and assume this entitles them to present history without consideration of prejudice, value, markets, remoteness, or even temporal consistency. *Cf. Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 (1962) ("We do not mean that a trial court may not place reasonable limits upon such evidence or set a reasonable cut-off date, evidence before which point is to be considered too remote to have sufficient probative value

to justify burdening the record with it."). What is missing is how that "history" has a tendency to make *a fact of consequence more or less probable*. *See* Fed. R. Evid. 401.

The 2008 payment to Allen Meyer to purchase his ownership interest in NDH is one example. Plaintiffs do not dispute that NDH stopped operating in Order 1 in 2004. Plaintiffs do not dispute that the payment to Allen Meyer was made in 2008.[1] However, plaintiffs argue that the 2008 payment is relevant because it shows that "DFA paid the other NDH owners for allowing it to control the company." Opp'n at 8. Plaintiffs do not explain how a 2008 business decision to pay Allen Meyer for his ownership interest in a company that did not operate in Order 1 after 2004 makes it more or less probable that DFA acquired a monopsony or suppressed the prices of raw milk in the Northeast after 2005. Indeed, as DFA stated in its MIL No. 6, there is *no authority* for plaintiffs' apparent belief that they may recover under the antitrust laws if DFA's business decisions do not comport with plaintiffs' personal views about what constitutes a good business deal. *See* MIL No. 6 at 9-10.

The same problems are found in plaintiffs' attempt to use evidence of DFA's 2001 discussions with the U.S. Department of Justice ("DOJ") regarding non-Order-1 plants. Plaintiffs do not dispute that the plants DFA acquired out of the Suiza / Dean merger were not in Order 1, or that DFA's promises regarding "most favored nation" clauses applied to plants outside the Northeast. *See id*. at 6-7. Yet, plaintiffs argue that this information is "highly probative of Defendants' knowledge that its actions are anticompetitive," with zero regard for the promises actually made or relevant markets to which those promises applied. *See* Opp'n at 8. Plaintiffs do

---

[1] Plaintiffs' only other evidence with respect to the Meyer payment seems to be that, in their opinion, the book value of Mr. Meyer's shares was "worthless." *See* Pls.' Statement of Disputed Material Facts in Supp. of Opp'n to Defs.' Mot. for Summ. J. ¶ 114, ECF No. 102 (quotation omitted).

3

not explain how DFA's actions in 2001 with regard to plants outside the Northeast make it more or less probable that DFA suppressed prices to farmers in the Northeast.[2] As DFA explained in its MIL No. 6, nothing in DFA's statements to, or various discussions with, the DOJ serve as a substitute for the applicable legal standards against which plaintiffs' claims must be measured, nor are they probative as to whether any particular "most favored nation" clause is anticompetitive. *See* MIL No. 6 at 7.

As plaintiffs concede, Federal Rule of Evidence 403 bars evidence that would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Opp'n at 9-10 (quoting *S.E.C. v. McGinnis*, 2015 WL 5643186, at *14 (D. Vt. Sept. 23, 2015) (Reiss, J.)). In fact, this is plaintiffs' strategy: cherry pick irrelevant, alleged events from the "history" of NDH, present them without context, and use conjecture to bridge the gaps. There is simply no other explanation for plaintiffs' desire to present the purchase of an ownership interest in a company that does not operate in Order 1 (and has not since 2004), or discussions with the DOJ that have no connection to the facts in the Northeast.

The Federal Rules of Evidence prevent the waste of time and resources related to the presentation of irrelevant and prejudicial information. Should plaintiffs be permitted to present such evidence of NDH, DFA would have no choice but to provide the jury with context of: what NDH was; the Suiza / Dean merger; why DOJ was involved; what DFA agreed to; why it was limited to plants outside Order 1; NDH's operations nationwide; NDH's operations before 2004,

---

[2] In footnote 9 of their Opposition, plaintiffs insist that they are not asking the jury to decide whether DFA violated a promise to DOJ. Opp'n at 10 n.9. But that is exactly what plaintiffs have argued. *See, e.g.*, Op. & Or. at 20, Sept. 27, 2019, ECF No. 130 ("Professor Elhauge opines that DFA violated each of these concessions [to the DOJ]."). Further, plaintiffs intend for the jury to then decide that if DFA violated a promise to DOJ in some other context, DFA must have violated the Sherman Act in Order 1. This is precisely the improper purpose prohibited by the Federal Rules of Evidence.

after 2004, and in 2008; how DFA and NDH made business decisions; how, when, and why the Meyer payment was made; and the lack of relevance of all this evidence to the Northeast. And all of this would consume the Court and the jury's time with a needless sideshow, even though none of the NDH evidence is relevant to plaintiffs' antitrust claims.[3]

Plaintiffs cite the United States Supreme Court in *Continental Ore* for the proposition that "the jury is entitled to 'look at the whole picture and not merely at the individual figures in it.'" Opp'n at 7 (quoting *Cont'l Ore*, 370 U.S. at 698-99). The irony is that plaintiffs want to present the jury with individual figures—irrelevant events, taken out of context and ripe for insinuation—without presenting the "whole picture" to which the jury is entitled. Plaintiffs have demonstrated that the evidence and argument they intend to present regarding NDH is irrelevant and unduly prejudicial.

## **CONCLUSION**

For these reasons, the Court should grant Defendants' Motion *in Limine* No. 6.

---

[3] Defendants note that plaintiffs incorporate by reference their Opposition to Defendants' Motion *in Limine* No. 2, ECF No. 220, in which plaintiffs reveal which pre-2005 information is necessary to their claims. Plaintiffs did not include NDH as part of that filing. Two explanations jump out: 1) that NDH is not actually relevant to plaintiffs' claims; and/or 2) that contrary to their assertions, plaintiffs intend to spend significantly more time on pre-2005 evidence than they tell the Court. As described in DFA's MIL No. 2 and reply thereto, the Sherman Act's four-year statute of limitations and the continuing violation doctrine bar plaintiffs from a finding of liability for any claim that accrued before October 2005, even if the conduct at issue continued after that date. *See* Reply in Supp. of DFA's Mot. *in Limine* No. 2 at 2-5, ECF No. 243. Plaintiffs' inability to base their claims on these pre-limitations-period acts further undermines the relevance of this evidence and worsens the confusion and prejudice that would result from presenting it to the jury.

5

Dated: June 23, 2020                               Respectfully submitted,

 /s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 23, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

    Joel G. Beckman, Esq. (jbeckman@nbparis.com)
    Gary L. Franklin, Esq. (gfranklin@primmer.com)
    William C. Nystrom, Esq. (wnystrom@nbparis.com)
    Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
    Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated: June 23, 2020

                                                    /s/ *Alfred C. Pfeiffer Jr.*
                                                    Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                                    LATHAM & WATKINS LLP
                                                    505 Montgomery Street, Suite 2000
                                                    San Francisco, CA 94111
                                                    Telephone: 415-391-0600
                                                    Facsimile: 415-395-8095
                                                    Email: al.pfeiffer@lw.com