# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE DEPOSITION DESIGNATIONS OF MIDLAND FARMS, INC. AND <u>CLOVERLAND FARMS DAIRY</u>**

**<u>EVIDENTIARY HEARING REQUESTED</u>**

**REDACTED VERSION FILED PUBLICLY PURSUANT TO PROTECTIVE ORDER**

The Court should reject plaintiffs' baseless attempt to exclude evidence that disproves a key component of their case.  In 2011, the parties in *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-cv-00230 (D. Vt.) ("*Allen*"), deposed representatives from the third-party milk processors, Cloverland Farms Dairy ("Cloverland") and Midland Farms ("Midland"), which purchased raw milk from dairy farmers in Order 1 during the relevant periods of this litigation.  **Both** *Allen* parties questioned these witnesses at length, and the ensuing testimony revealed that Cloverland and Midland vigorously competed against Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC ("DMS") (collectively, "DFA") as buyers for dairy farmers' raw milk in Order 1— on both price and quality—during the years for which plaintiffs claim damages.  This testimony goes to the heart of this case, and it directly refutes one of plaintiffs' main arguments:  that Order 1 farmers lacked options for their milk apart from DFA, and thus, could not escape the purported anticompetitive effects of any alleged conspiracy or monopsony.  Plaintiffs unsurprisingly want to keep this damaging (to their case) testimony from the jury, but their attempt to paint the sworn testimony of Mr. Cella (Cloverland) and Mr. Haseotes (Midland) as inadmissible hearsay is wrong as a matter of law.

Under Federal Rule of Evidence 804(b)(1), DFA's designation of Midland's and Cloverland's testimony constitutes "former testimony" that is admissible as an exception to the hearsay rules.  Rule 804(b)(1) does not—as plaintiffs suggest—predicate the admissibility of Mr. Cella's and Mr. Haseotes' testimony on whether each individual plaintiff here had a personal opportunity to cross examine Mr. Cella or Mr. Haseotes in *Allen*.  The test for the admissibility of former testimony under Rule 804(b)(1) is (1) whether Mr. Haseotes and Mr. Cella are unavailable

to testify at the upcoming trial (they are)[1] and (2) whether plaintiffs' "***predecessor in interest***" in *Allen*—that is, the class—had "an opportunity and similar motive to develop [Mr. Cella's and Mr. Haseotes' testimony in that case] by direct, cross, or redirect examination."   Fed. R. Evid. 804(b)(1).

The *Allen* class did.  Every plaintiff in this case belonged to the *Allen* class until settlement, and the ability of the Cloverland / Midland testimony to prove that processors that are not alleged conspirators competed against DFA as buyers of raw milk in Order 1 was every bit as relevant to the conspiracy and monopsony claims in *Allen* as it is to the exact same claims here.  That is why both parties invoked the Midland / Cloverland testimony when arguing summary judgment in *Allen:*  it is highly probative of whether DFA eliminated competition for buyers of farmers' raw milk in Order 1.  Plaintiffs' argument that Class Counsel were not similarly motivated to develop this testimony regarding farmer options ignores the case law on Rule 804(b)(1); the record in *Allen*; and the deposition transcripts themselves, which include cross-examinations by Class Counsel on this very issue.  The Court should deny plaintiffs' motion.

## ARGUMENT

**I.    THE MIDLAND AND CLOVERLAND DEPOSITION TESTIMONY SATISFIES THE 804(b)(1) HEARSAY EXCEPTION**

**A.    The *Allen* Class Was Plaintiffs' Predecessor In Interest Because The Class Shared A Similar Motive To Test The Deponents' Testimony Regarding Farmers' Options for Selling Raw Milk In Order 1**

In urging the Court to find that Mr. Cella's (Cloverland) and Mr. Haseotes' (Midland) testimony is inadmissible hearsay, plaintiffs argue that the class in *Allen* was not their predecessor

---

[1]    Plaintiffs do not dispute that the designees in the Midland and Cloverland depositions are unavailable under Rule 804(a)(5), because they do not fall under the Court's subpoena power. Thus, this Opposition will focus on the other elements of Rule 804(b)(1).

in interest under Rule 804(b)(1) because Class Counsel lacked a similar motive to develop Midland's and Cloverland's testimony regarding the extent to which those companies competed against DFA for farmers in Order 1 during the relevant years of the case, and thus, provided alternative options for farmers selling their milk. This is wrong.

In defining a predecessor in interest for purposes of Rule 804(b)(1), courts embrace a "realistically generous [approach] over one that is formalistically grudging[.]" *Fed. Hous. Fin. Agency v. Merrill Lynch*, 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014) (quoting *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)). To qualify as a predecessor in interest, a previous party need only possess a "like motive to develop the testimony about the same material facts" as the present party. *Constr. Tech., Inc. v. Cybermation, Inc.*, 1996 WL 376601, at *1 (S.D.N.Y. Apr. 30, 1996) (quoting *Clay against Johns–Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir. 1983)). As the Supreme Court itself has made clear, a "'similar motive' does not mean [an] 'identical motive.'" *U.S. v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). Rather, the predecessor in interest and present party need only share "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *U.S. v. DiNapoli*, 8 F.3d 909, 914-15 (2d Cir. 1993).

That standard is readily satisfied here. In the upcoming trial in this case, DFA will introduce Midland's and Cloverland's testimony to prove that, among other things, these processors competed against DFA as buyers in Order 1, on both price and quality, and provided farmers with viable options for selling their milk outside of an alleged conspiracy or monopsony.[2]

---

[2]     *See* Ex. 1, J. Cella Dep. 22:8-21, *Allen* (Feb. 28, 2011) ("Cella Dep.") (explaining that Cloverland competes for independent farmers in the Northeast and noting that ██████████████ ████████████████████████████████████████████████" to Cloverland's competitors, including cooperatives ████████ ; *id.* 23:22-25:8 (adding that ████████████

This should hardly come as "news" to plaintiffs—it is precisely how DFA used this testimony in *Allen*.[3] Plaintiffs' motivations to rebut that testimony are thus identical to those possessed by the class. Indeed—contrary to plaintiffs' inexplicable assertion—the issue of whether independent processors like Midland and Cloverland (whom plaintiffs have not identified as co-conspirators) competed against DFA for farmers in Order 1 was not "peripheral" to *Allen*: it was central to that case. *See* Pls.' Mot. *in Limine* to Exclude at 3, ECF No. 239 ("Pls.' Mot."); Op. & Or. on Defs.' Mot. for Summ. J. at 16, *Allen* (June 11, 2014), ECF No. 525 (recognizing DFA's claim that "non-conspiring processors . . . present[ed] new and additional options for dairy farmers seeking to escape the alleged conspiracy); *id.* at 23 (discussing plaintiffs' contrary "evidence that dairy farmers did not readily shift their cooperative or processor affiliations, . . . [and] evidence that there were no more competitive options available.").

---

; Ex. 2, D. Haseotes Dep. 23:5-24:13, *Allen* (Mar. 9, 2011) ("Haseotes Dep.") (explaining that Midland competed against other buyers of milk in Order 1 and observing that "if [Midland] needed to adjust our payment structure or services that we offer to the producer" in order to retain those suppliers in the face of competition, it "would do so accordingly for the producer"). Exhibits referenced herein refer to the concurrently filed July 1, 2020 Declaration of Alfred C. Pfeiffer Jr. Full versions of the deposition transcripts can be found at Exhibits 4-5 to DFA's Notice of Deposition Designations for Trial, ECF Nos. 266-4 and 266-5.

[3]      *See, e.g.*, Mem. of P. & A. in Supp. of Mot. by Defs. for Summ. J. at 4, 45, *Allen* (Feb. 11, 2014), ECF No. 483 (explaining that

" and arguing that

"); Statement of Undisputed Facts in Supp. of Defs.' Mot. for Summ. J. ¶ 49, *Allen v* (Feb. 11, 2014), ECF No. 484 (

); *id.* ¶ 55

("

).

That is why class plaintiffs spent pages of their summary judgment filings disputing the fact that farmers in Order 1 had competitive alternatives to DFA—and why they explicitly addressed the testimony from Midland and Cloverland in making this argument. *See* Pls.' Separate Statement of Facts in Supp. of Opp'n to Defs.' Mot. for Summ. J. § I(A), *Allen* (Mar. 17, 2014), ECF No. 488 (arguing that " ████████████████████████████████████████ ████████ "); *see also, e.g.*, Pls.' Resp. to Defs.' Statement of Undisputed Facts ¶¶ 41-68, *Allen* (Mar. 17, 2014), ECF No. 488 ("SOF Resp.") (arguing that processors including Queensboro, **Cloverland, Midland**, Oakhurst, Elmhurst, and Byrne were not viable options for farmers in Order 1) (emphasis added); *see id.* ¶¶ 48, 53-56.

Plaintiffs' conspicuous failure to mention this extensive history from *Allen* is unsurprising: it defeats any argument that the class plaintiffs in *Allen* were not similarly motivated to cross-examine or disprove Midland's and Cloverland's testimony about the competition they provided DFA as buyers for raw milk in Order 1, and the options they provided Order 1 farmers. Because the class and opt-out plaintiffs shared an identical motive for rebutting this testimony, the class was the present plaintiffs' "predecessor in interest" for purposes of the Rule 804(b)(1) analysis— and the Midland and Cloverland deposition testimony is admissible at the upcoming trial.[4]

---

[4]    Nor does it matter, that, according to plaintiffs, Class Counsel did not "have to deal with individualized defenses or many of the arguments that Defendants have asserted in this case." Pls.' Mot. at 1.  DFA's individualized defenses relate to the required element of impact, and turn on the unique, individualized circumstances of each plaintiff's own farm and the ways in which those circumstances affected his or her personal ability to bargain for higher premiums based on factors like farm size, milk quality, and proximity to processors.  The Midland and Cloverland testimony here is relevant to a different issue—the extent to which DFA's alleged misconduct prevented other buyers of raw milk, like Cloverland or Midland, from competing with DFA and serving as a viable alternative for farmers.  As such, this testimony ultimately relates to whether a conspiracy or monopsony violation occurred at all under Section 1 or Section 2 of the Sherman Act.  This was an issue the *Allen* class was equally motivated to pursue regardless of the absence of individualized defenses in the class action.

**B.     Case Law Dictates That The Midland and Cloverland Testimony Is Admissible Under Rule 804(b)(1)**

The case law supports this conclusion.  Federal courts, including those in this Circuit, have not hesitated to find the "similar motive" requirement of Rule 804(b)(1) satisfied in cases involving far weaker links between a current party and its predecessor in interest than those demonstrated here.  In *Lloyd v. American Export Lines, Inc.*, for example, the Third Circuit found that two entirely separate entities pursuing different causes of action in different venues shared a similar motive to develop testimony on a particular event of common interest.  580 F.2d 1179, 1186-87 (3d Cir. 1978).  *Lloyd* centered on an altercation between two crewmembers, Frank Lloyd and Roland Alvarez, on the ship SS Export Commerce.  *Id.* at 1181.  Following the event at issue, the Coast Guard conducted a disciplinary hearing against Lloyd, at which Lloyd testified about the altercation.  Alvarez subsequently sued the ship, Export, in federal court for negligence and unseaworthiness, for failing to protect him from Lloyd despite Export's knowledge of Lloyd's history of dangerous activity.  *Id.*  Lloyd was unavailable to testify in the civil case, and the district court refused to admit his testimony from the Coast Guard proceeding under Rule 804(b)(1).  *Id.* at 1182-84.  Reversing, the Third Circuit found that the Coast Guard investigating officer who cross-examined Lloyd in the disciplinary hearing was a predecessor in interest to the private plaintiff, Alvarez, and thus, Lloyd's testimony was admissible in the later civil suit under Rule 804(b)(1).  *Id.* at 1185-86.  Though the investigating officer and Alvarez sought different outcomes and pursued different causes of action, they shared a similar motive to develop Lloyd's testimony because they shared a "basic interest" of "determining culpability . . . for the same condemned behavior."  *Id.* at 1186.  The Third Circuit rejected the district court's "strict view" of Rule 804(b)(1) and called for a new trial because "the excluded evidence [was] of such potential importance."  *Id.* at 1182, 1185.

Similarly, in *Zola v. Gordon,* two defendants faced civil allegations of misappropriation, fraud, and forgery.  1993 WL 247821, at *4 (S.D.N.Y. June 30, 1993).  Those same two parties had previously faced criminal charges in a separate proceeding involving a larger group of defendants and different underlying causes of action, including a single count of conspiracy and 107 counts of filing false tax returns.  Despite these significant differences between the criminal and civil actions, the court found that criminal defendants in the first case were predecessors in interest to the defendants in *Zola* for purposes of Rule 804(b)(1), for testimony relevant to topics that overlapped in each litigation.  In reaching this conclusion, the court rejected defendants' argument that the theories and issues in the two cases were too dissimilar to warrant admission of large swaths of testimony from the criminal case in the subsequent civil case.  1993 WL 247821, at *4 (further reasoning that the "minimal amount of cross-examination" by the defendants in the criminal action "does not shed any light upon the question of similarity of motivation").  Because the two cases enjoyed a small set of common allegations—that plaintiffs paid defendants artificially inflated prices and relied upon a third party to further their scheme—the court found the similar motive requirement satisfied for substantial portions of the testimony at issue, and admitted the relevant criminal-case testimony from the first action against the defendants in the civil case under Rule 804(b)(1).  1993 WL 247821, at *4-8.

The principles governing *Lloyd* and *Zola* apply even more strongly here.  Because the issue of whether Midland and Cloverland were viable options for farmers' milk was central in both *Allen* and the instant case, the class in *Allen* had a similar motive as plaintiffs here to develop testimony on the issue, and the *Allen* class is plaintiffs' predecessor in interest with respect to this issue.  The Midland and Cloverland testimony is thus admissible pursuant to Rule 804(b)(1).

**C.**     **Class Counsel Had A Full Opportunity To Test The Deponents' Testimony Regarding Farmers' Options for Selling Milk**

Plaintiffs' argument that they lacked an opportunity to examine Midland and Cloverland regarding their role as competitors to DFA is similarly unavailing.  The relevant question is not whether each individual plaintiff here had a unique opportunity to cross examine these witnesses in *Allen* or whether the attorneys in *Sitts* personally participated in drafting Federal Rule of Civil Procedure 30(b)(6) topics for these entities.  The question is whether the *class* had ample opportunity to examine Mr. Cella and Mr. Haseotes on the relevant topic—whether Midland and Cloverland competed as buyers against DFA and served as options in Order 1 for plaintiffs' raw milk outside of DFA.  It plainly did.  Plaintiffs complain that had they "been able to attend and cross-examine at these depositions, they would have probed whether these processing plants were actual options for independent farmers."  Pls.' Mot. at 3 n.1.  But *that is precisely what Class Counsel did in Allen*.[5]  In fact, class plaintiffs cross-examined Midland and Cloverland regarding farmers' options fully and incorporated those witnesses' ensuing testimony into the class's subsequent summary judgment pleadings to dispute DFA's claim that Cloverland, Midland, and various other processors serve as viable options for independent farmers in Order 1.  *See* SOF Resp. ¶¶ 41-68.  This is all the "opportunity" that Rule 804(b)(1) requires.  To the extent the current plaintiffs would have preferred the class to question the witnesses differently, that is irrelevant to the Rule 804(b)(1) inquiry.  *See DeLuryea v. Winthrop Labs.*, 697 F.2d 222, 227 (8th Cir. 1983) (plaintiff's counsel's "decision to limit cross-examination" during a workers compensation hearing did not "bar use of the former testimony" during a products liability action years later, "even

---

[5]     *See, e.g.*, Ex. 2, Haseotes Dep. 49:2-20, 51:17-22, 55:3-57:22, 74:18-77:6 (exploring Midland's supply, capacity, and solicitation of farmers in the Northeast); *see, e.g.*, Ex. 1, Cella Dep. 76:3-77:15, 78:3-79:20 (probing Cloverland's efforts and abilities to effectively compete against other buyers for farmers' raw milk).

though [plaintiff] might later have desired fuller cross-examination"); *id.* (finding sufficient opportunity under Rule 804(b)(1) where counsel asked a single, on-topic question and noting that "[o]pportunity and motivation to cross-examine are the important factors, not the actual extent of cross-examination."). Indeed, plaintiffs do not cite a single case to the contrary. Because Class Counsel had ample opportunity to test the deponents' testimony regarding independent farmers' options for selling their milk in Order 1—and did just that—the Rule 804(b)(1) test is more than satisfied for Mr. Cella's and Mr. Haseotes' testimony here.[6]

## II.   THE PROBATIVE VALUE OF THE MIDLAND AND CLOVERLAND TESTIMONY VASTLY OUTWEIGHS ANY PREJUDICE TO PLAINTIFFS

Plaintiffs' Rule 403 argument also fails. According to plaintiffs, the Court should exclude the deposition testimony of Midland and Cloverland at trial under Rule 403 "because Plaintiffs never had an opportunity to cross-examine" the deponents. Pls. Mot. at 3 n.1. But this is not the law, which requires only that plaintiffs' predecessor in interest (the class) had an opportunity to depose Midland and Cloverland. Plaintiffs again fail to cite a single case to support their position.

Regardless, the highly probative value of the Midland and Cloverland testimony far outweighs any prejudice to plaintiffs. In illuminating farmers' options for their milk in Order 1— and the competition between Midland, Cloverland, and DFA during the damages period in the case—this testimony goes to the core of plaintiffs' monopsony claims, which depend upon a theory

---

[6]     Plaintiffs also argue that class counsel did not have a sufficient opportunity to cross examine Midland's representative, Mr. Haseotes, because that deposition was suspended early. But that ignores what happened:  the class plaintiffs suspended the deposition of Mr. Haseotes solely over a dispute about Mr. Haseotes' ability to provide his lay opinion of the merits of plaintiffs' antitrust claims against DFA. By that point in the deposition, the class plaintiffs had already completed an examination of Mr. Haseotes on the only topic that is relevant here:  the details of whether or not and how Midland competed against DFA for farmers and / or constituted a viable alternative option for farmers in Order 1. This outcome of the deposition thus has no bearing on whether the class enjoyed an ample opportunity to examine the witness on the relevant issue for Rule 804(b)(1) purposes here; it did.

that DFA excluded other potential buyers for raw milk in Order 1.  Mr. Haseotes, the Midland representative, testified, for example, that Midland competed vigorously against DFA for independent farmers during the years of the case, including on the basis of price and quality.[7] Similarly, Mr. Cella, the Cloverland representative, testified that, among other things, Cloverland sourced ███████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████.[8]  Precluding this testimony would deprive the jury of highly relevant evidence regarding farmers' options for selling their milk.  The Rule 403 balancing test does not support this outcome.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion *in Limine* to preclude DFA from introducing the designated deposition testimony of Midland and Cloverland, and the Court should admit the testimony under Rule 804(b)(1).[9]  DFA also respectfully requests that the Court schedule a hearing on this motion.

---

[7]    *See, e.g.*, Ex. 2, Haseotes Dep. 11:21-12:1 (testifying that Midland sources 100% of its raw milk from independent farmers); *id.* 15:19-16:6; *id.* 16:7-12, 16:18-20 (identifying DMS, Elmhurst, and Agri-Mark as Midland's competitors for purchases of raw milk); *id.* 23:5-20, 24:1-13 (explaining that "if [Midland] needed to adjust our payment structure or services that we offer to the producer" in order to retain those suppliers in the face of competition, it "would do so accordingly for the producer."); *id.* 34:2-19 (confirming that Midland competed against other buyers for farmers on the basis of price and quality).

[8]    *See, e.g.*, Ex. 1, Cella Dep. 10:3-7; *id.* 11:5-13; *id.* 11:14-12:7; *id.* 22:8-21 (explaining that "█████████████████████████████████████████" to Cloverland's competitors, including ██████████████████████████████████ *id.* 23:22-25:8 (adding that Cloverland ███████████████████████████████████████████████████████████████████████████████

[9]    Federal Rule of Civil Procedure 32(a) also provides independent grounds for admitting the deposition testimony, under an analysis similar to that of Federal Rule of Evidence 804(b)(1) and for the same primary reasons that this evidence is admissible under Rule 804(b)(1).  *See* Fed. R.

Dated: July 1, 2020                        Respectfully submitted,

                                           /s/ *Alfred C. Pfeiffer Jr.*
                                           Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                           Sarah M. Ray (admitted *pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           505 Montgomery Street, Suite 2000
                                           San Francisco, CA 94111
                                           Telephone: 415-391-0600
                                           Facsimile: 415-395-8095
                                           Email: al.pfeiffer@lw.com
                                           Email: sarah.ray@lw.com

                                           Margaret M. Zwisler (admitted *pro hac vice*)
                                           Jennifer L. Giordano (admitted *pro hac vice*)
                                           Molly M. Barron (admitted *pro hac vice*)
                                           LATHAM & WATKINS LLP
                                           555 Eleventh Street, NW, Suite 1000
                                           Washington, DC 20004
                                           Telephone: 202-637-2200
                                           Facsimile: 202-637-2201
                                           Email: margaret.zwisler@lw.com
                                           Email: jennifer.giordano@lw.com
                                           Email: molly.barron@lw.com

                                           W. Todd Miller (admitted *pro hac vice*)
                                           BAKER & MILLER PLLC
                                           2401 Pennsylvania Avenue, NW, Suite 300
                                           Washington, DC 20037
                                           Telephone: 202-663-7820
                                           Facsimile: 202-663-7849
                                           Email: tmiller@bakerandmiller.com

                                           Ian P. Carleton
                                           SHEEHEY FURLONG & BEHM P.C.
                                           30 Main Street, P.O. Box 66
                                           Burlington, VT 05402
                                           Telephone: 802-864-9891
                                           Email: icarleton@sheeheyvt.com

                                           *Counsel for Defendants Dairy Farmers of*
                                           *America, Inc. and Dairy Marketing Services,*
                                           *LLC*

---

Civ. P. 32(a)(1)(A), (a)(8); *see generally Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*, 2014
WL 798385, at *1 (describing independence of and similarity between Fed. R. Civ. P. 32(a)(8)
and Fed. R. Evid. 804(b)(1) standards and analyses).

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and the below parties via email.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated: July 1, 2020

/s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com