# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>    **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE DEFENDANTS FROM ARGUING THAT PLAINTIFFS OR OTHER FARMERS WILL ULTIMATELY BE RESPONSIBLE FOR PAYING ANY JUDGMENT**

Plaintiffs' motion *in limine* seeks to prevent Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC (collectively, "DFA") from telling the jury the facts about DFA's structure that are necessary in order to correct the false narrative that plaintiffs intend to spin. Plaintiffs intend to mislead the jury into believing that DFA is some faceless corporate conglomerate, when the reality is that this case is, quite literally, farmers suing farmers. DFA has the right to ensure that the jury understands the true nature of the parties in this case.

Although plaintiffs' motion—which seeks to prohibit DFA from in any way "arguing or otherwise insinuating" that DFA's own farmer-members would ultimately be responsible for paying any judgment—seems narrow on its face, it actually could have broad implications. Pls.' Mot. *in Limine* at 1, ECF No. 238 ("Mot."). The practical effect of plaintiffs' motion is to prevent the jury from fully appreciating that this case is about a group of dairy farmers unhappy with (among other things) supply agreements, processor investments, and payment decisions that a much larger group of dairy farmers (DFA's farmer-members) approved and often encouraged. Even though this case is dairy farmers against other dairy farmers, plaintiffs seek to frame this case as small farmers taking on a large corporation consisting only of professional managers. To further that characterization, plaintiffs have repeatedly tried to disassociate DFA from its farmer-members in a transparent effort to overcome what their own expert called a "natural question" arising from plaintiffs' allegations: why would a cooperative consisting of, owned by, and governed by dairy-farmers conspire to suppress its own raw milk prices?[1] The answer is, it would not and it did not, as DFA will show at trial. But to paper over the implausibility of their claims, plaintiffs have tried to prevent DFA from contesting, in any meaningful way, what plaintiffs call "DFA Corporate"—

---

[1] See Expert Report of Einer R. Elhauge ¶ 126 (Oct. 3, 2018), available at ECF No. 147-1 ("Elhauge Rpt.").

a fictitious entity that allegedly hoards money that it does not share with its farmer-members and over which its farmers have no control.  Plaintiffs intend to portray DFA as having "deep pockets," to contrast that image with cherry-picked examples of struggling farmers, and to encourage the jury to reallocate money from "DFA Corporate" to these plaintiffs, while actively implying that someone other than DFA's farmer-members will somehow pay the freight.  That is not so, and the Court should not allow plaintiffs to pretend that it is.

The Court should allow DFA to present evidence that DFA is not some faceless corporate entity, but is instead a group of dairy farmers who will be injured by and are opposed to the relief that plaintiffs seek.  To be clear, plaintiffs have chosen their David vs. Goliath narrative to put the true nature and structure of DFA and the role of its farmer-members squarely at issue in the trial.  As a result, DFA cannot be precluded from telling the jury the truth that its farmers own, direct, and control the cooperative and own all its assets and liabilities.  The Court should deny plaintiffs' motion.

## DISCUSSION

**I.  PLAINTIFFS HAVE OPENED THE DOOR TO EVIDENCE THAT DFA'S FARMER-MEMBERS ARE OPPOSED TO AND WOULD BE HARMED BY THE AWARD OF A VERDICT TO PLAINTIFFS AND THUS SUCH EVIDENCE IS PLAINLY RELEVANT**

DFA does not presently intend to question those plaintiffs who are DFA members about the fact that they would effectively injure themselves and their cooperative if they prevail in this lawsuit (even though that is unequivocally true).  However, DFA does intend to, and must be allowed to, confront the false narrative plaintiffs have created that this lawsuit attacks only some corporate entity that is disassociated from its farmer-members; that the jury should penalize DFA for generating profits while some farmers struggled and should redistribute those profits to these plaintiffs; and that DFA's farmer-members would be unaffected by that outcome.  DFA can present

that testimony from its own farmer-members, including farmers who were actually involved in (and in multiple cases drove) the decision-making that these plaintiffs now criticize, who view those decisions as benefiting their interests as farmers, and who vehemently reject plaintiffs' narrative and requested relief. Plaintiffs have opened the door to that evidence in myriad ways. Such evidence is therefore relevant, and the jury should be permitted to hear it from DFA's own farmer-members. *See United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986) (affirming decision to admit evidence where "attorney opened the door to the admission of this fact in his opening to the jury"); *United States v. Markle*, 2005 WL 8158392, at *5 (W.D.N.Y. July 6, 2005) (concluding that counsel "opened the door" to the admission of certain evidence because of the impression he "attempted to create" in opening statement), *aff'd on other grounds*, 628 F.3d 58 (2d Cir. 2010).

### A. The Testimony Of DFA's Farmer-Members Rebuts Plaintiffs' Characterization That This Case Is About Farmers Versus "DFA Corporate"

Through their suggestion that only some fictitious entity they call "DFA Corporate" would bear the burden of any judgment, plaintiffs made relevant evidence about who would ***actually*** bear the burden. Plaintiffs do not like the fact that DFA is farmer-owned, and farmer-run. And they do not like that DFA's all-farmer board of directors and all-farmer Northeast Area Council approved and encouraged many of the investments, supply agreements, and decision that plaintiffs are challenging in this case. Those inconvenient facts conflict with plaintiffs' attempts to portray DFA as a large, faceless corporation. So, plaintiffs have attempted to dehumanize DFA and instead portray it as an impersonal "DFA Corporate,"[2] and argue that "DFA management focuses on commercial investing at the expense of farmer pay prices."[3] Plaintiffs' framing of the case at summary judgment is a preview into what the Court can expect at trial: "Plaintiffs are 116 dairy

---

[2] *See, e.g.*, Pls.' Mot. to Compel Prod. of Docs. at 4, 7, ECF No. 50 ("Mot. to Compel").
[3] *See* Pls.' Separate Concise Statement of Disputed Material Facts in Opp'n to Summ. J. ¶ 101, ECF No. 102 (citing Expert Report of Einer R. Elhauge ¶ 135 (Oct. 3, 2018)).

3

farmers located in the Northeast. Many are family farms that have been operating for generations. Defendant Dairy Farmers of America ('DFA') is the largest dairy cooperative in the United States, the fourth largest dairy company in the world, and the world's largest milk handler."[4]

By building their case upon a narrative that DFA, its policies, and (as described below) its finances are separate and apart from its dairy farmer-members, plaintiffs have opened the door to the rebuttal narrative. That rebuttal narrative includes testimony from DFA's farmers-members who supported the policies that this small group of plaintiffs are challenging. Further, these DFA farmer-members oppose the relief plaintiffs seek because it would negatively impact the dairy industry as a whole, the dairy industry in the Northeast, and DFA's dairy farmer-members who live there. *See King v. Cole's Poultry, LLC*, 2017 WL 4084056, at *2 (N.D. Miss. Feb. 7, 2017) (declining to preclude evidence of the effect a plaintiff's verdict would have on "the poultry industry as a whole, the poultry industry in Mississippi, or the effect an adverse judgment would have on [defendant] and the entire poultry industry").

### B. The Testimony of DFA's Farmer-Members Rebuts Plaintiffs' Characterization Of The Flow Of Money Within DFA

Plaintiffs have also put at issue how revenues flow within DFA and, in particular, how such revenues reach DFA's farmer-members. Time and time again, plaintiffs have suggested that DFA's revenues navigate some circuitous route around DFA's farmer-members and into plaintiffs' imagined "DFA Corporate." Plaintiffs have repeatedly declared that DFA's revenues are "not shared" with its farmer-members.[5] DFA must be permitted to confront those falsehoods at trial,

---

[4] Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 4, ECF No. 109 ("Opp'n to Summ. J.") (footnote omitted).

[5] *See, e.g.*, Opp'n to Summ. J. at 11 (plaintiffs misrepresenting that "DFA keeps most of its processing profits and does *not* share them with the farmers" (emphasis in original)); Pls.' Mot. to Compel at 4 (plaintiffs again misrepresenting that DFA uses revenues "to empire build (thereby generating more nonmember business earnings that are *not* shared with the farmers) and to enrich

4

when plaintiffs continue to propagate them there. *See In re Tableware Antitrust Litig.*, 2007 WL 781960, at *2-3 (N.D. Cal. Mar. 13, 2007) (denying motion to "preclude evidence of or reference to any adverse consequences to defendants that could result from a judgment" where plaintiffs' "storyline involves reference to defendants' present financial standing, yet plaintiffs' vague motion threatens to cut-short this vital evidence"). The evidence necessary to combat plaintiffs' false narrative includes showing how DFA's revenues flow to its farmer-members in the form of premiums, patronage dividends, and other benefits, as well as how DFA's farmer-members share in the expenses, such as investments to create and preserve markets for their milk, and how the farmer-members would be adversely affected by having to pay this small group of plaintiffs.

     **C.**    **DFA's Farmer-Members' Testimony Is Necessary To Rebut Plaintiffs' Suggestion That DFA Has "Deep Pockets"**

Plaintiffs characterize their case as farmers versus a corporation and suggest that there is an unshared pool of "DFA Corporate" money in order to invoke the improper inference that DFA has the capacity to satisfy a large judgment and, even worse, that the jury *should* use their verdict power to redistribute that money to suffering small farmers. Plaintiffs previewed the tale they seek to present to the jury in their summary judgment briefing, where plaintiffs argued that, "in 2016, farmers were struggling financially because of record low milk prices. Families that had been dairy farming for generations were going out of business and DFA was providing its members information on suicide hot lines. By contrast, DFA posted the highest earnings in its history."[6] That mischaracterization of events has nothing to do with plaintiffs' conspiracy or monopsonization claims. Instead, plaintiffs advance that narrative to suggest to the jury that it

---

DFA Corporate and its executives" (emphasis in original)); *see also* Elhauge Report ¶ 148 ("I am highlighting that the spending and compensation exhibited by DFA's management, especially when sharply contrasted with recent farmer struggles, illustrates a classic tenet of the principal-agent problem . . . .").

[6]    Opp'n to Summ. J. at 11-12 (citation omitted).

5

should use the power of its verdict to reallocate money from DFA to plaintiffs. Plaintiffs and their attorneys have advanced the same haves-vs.-have-nots narrative in a New York Times article[7] and are staging to do the same thing at trial. For example, in their selection of 20 plaintiffs for trial, plaintiffs included high-earning farmers whose volumes would permit this group to drive up the potential damages award, but did not list as trial witnesses any of the multiple plaintiffs who each generated well over $20 million dollars in dairy farming revenue during the at-issue period (including one plaintiff that generated over $60 million). Instead plaintiffs cherry-picked smaller farmers to testify. Here, again, where plaintiffs are raising and explicitly encouraging an inference that DFA is a "deep pocket" that can afford to satisfy a judgment and that it could do so without affecting farmers, DFA must be permitted to rebut that improper inference with testimony from its own farmer-members, who are the ones that would actually suffer if plaintiffs prevail.

## II. THE FACT THAT A PLAINTIFFS' JUDGMENT WILL HARM FARMERS UNDERMINES PLAINTIFFS' AFFIRMATIVE CASE

In addition to being necessary to rebut the mischaracterizations and improper inferences plaintiffs seek to introduce at trial, evidence regarding the impact of a plaintiffs' verdict is also directly relevant to plaintiffs' ability to prove their conspiracy allegations. There is a foundational, "general rule that an antitrust theory needs to 'make economic sense.'" *Avaya, Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 402-04 (3d Cir. 2016) (internal alteration and citation omitted). And DFA is permitted to present evidence that the "factual context renders [plaintiffs'] claims implausible." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiffs' antitrust theory—that a farmer-owned dairy cooperative, comprised entirely of dairy-farmer members (the majority of which operate small family farms), and governed by elected

---

[7] *See* David Yaffe-Bellany, *America's Dairy Farmers Are Hurting. A Giant Merger Could Make Things Worse.*, N.Y. Times, Dec. 13, 2019, https://www.nytimes.com/2019/12/11/business/dean-foods-dairy-farmers-antitrust.html.

committees of those farmer-members—would endeavor to lower prices paid to themselves suffers from a glaring implausibility.  As the Court has acknowledged, "it ordinarily would make no economic sense for a cooperative such as DFA to inflict harm on its own members."[8]  The fact that the very farmer-members who voted for and encouraged the policies plaintiffs put at issue would be negatively affected by a finding that those policies were illegal further adds to the implausibility of plaintiffs' claims.  That evidence undermines affirmative elements of plaintiffs' case, including whether the challenged polices and business decisions were implemented with the intent to monopsonize, were pursuant to any conspiracy, or negatively impacted any dairy farmers at all.  Thus, this evidence is relevant, even if plaintiffs unexpectedly change course and do not open the door in the manner described in the prior Section.

Plaintiffs cite to two cases to refute the relevance of the effect of a judgment; however, these cases have no bearing on the admissibility of evidence in an antitrust case.  First, *Santrayall v. Burrell* does not relate to the effect of a judgment at all and, instead, discusses the admissibility of the plaintiff's copyright infringement, which is immaterial to the scenario here.  993 F. Supp. 173, 177 (S.D.N.Y. 1998).  Second, *Mendez v. Unitrin Direct Property & Casualty Insurance* was not an antitrust dispute either; it was an insurance litigation.  622 F. Supp. 2d 1233 (M.D. Fla. 2007).  That case is even further afield because the "judgment" being discussed was not the judgment that the jury was deciding, but instead related to the "underlying judgment" for the wrongful death lawsuit that preceded the insurance lawsuit.  *Id.* at 1241.

---

[8]  Op. & Order on Defs.' Mot. for Summ. J. at 47, ECF No. 130.

### III. THERE IS NOTHING UNFAIR ABOUT THIS LINE OF TESTIMONY AND QUESTIONING

Plaintiffs' reliance on Federal Rule of Evidence 403 is unavailing. The relevant evidence about DFA's structure, finances, and ownership is not remotely outweighed by any claimed prejudice. Fed. R. Evid. 403. The one concern that plaintiffs present is a non-issue.

Plaintiffs argue that, despite the evidence's relevance, it "might cause the jury to decide the case on an improper basis—*i.e.*, by refusing to find Defendants liable because any judgment would be foisted onto the Plaintiffs and/or other DFA dairy farmers." Mot. at 3. Plaintiffs attempt to draw an analogy to cases where litigants argue "to the jury that insurance premiums or taxes could increase as a result of the judgment." *Id*. at 4. However, in the cases plaintiffs cite, the courts were concerned about the potential prejudice of suggesting that the jury itself had a direct financial stake in the outcome of the case—specifically, that the *jury's* taxes or insurance premiums would increase as a result of any award. For example, in *City of Springfield v. Thompson Sales Co.*, the question for the jury was the value of property that the city had condemned. 71 S.W.3d 597 (Mo. 2002). The court took issue that the city's counsel made a statement that "did not merely suggest that tax money would be used to pay the award, but actually appeared to suggest that *the jurors* taxes would be raised to pay the award." *Id.* at 601 (emphasis added). As the court explained, "such remarks necessarily have the effect of making the jurors tax conscious and are designed to 'operate upon the selfinterest *of such taxpayers*.'" *Id.* at 600 (emphasis added) (citation omitted). Plaintiffs cite other cases relying on the same logic that it is improper to cause "*jurors* to believe that they possess an indirect pecuniary interest in the outcome of the case." *Baxter v. Anderson*, 2018 WL 259918, at *7 (M.D. La. Jan. 2, 2018) (emphasis added).[9] Evidence of how

---

[9] *See also Data Treasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *12 (E.D. Tex. Feb. 26, 2010) (addressing statement "that the *members of the jury themselves* would be subsidizing the Defendants in any way for a verdict in [Plaintiff's] favor" (alteration in original)

8

a verdict might affect DFA farmer-members creates no risk that jurors will endeavor to protect *their own* pocketbooks (the scenario in plaintiffs' cases). Thus, there is no cause for concern about the potential prejudice that plaintiffs raise.[10]

## IV.   DFA'S TRIAL STRATEGY WAS NOT SET IN STONE IN 2014

Plaintiffs suggest that the Court should consider that, in 2014, DFA's prior counsel (who is now retired from the practice of law) stated in the *Allen* litigation[11] that DFA had no intention of "suggesting that the jury should not award damages because farmers would be responsible for paying any judgment." *See* Mot. at 1. Of course, there is no legal basis (and plaintiffs present none) to argue that prior trial strategy binds DFA's presentation of its defense in this different case, with different counsel, more than six years later.[12] Clearly, plaintiffs themselves do not feel bound by the decisions of the class plaintiffs' counsel in that case. And there are ample practical reasons why DFA has chosen to take a different approach now. Unlike the *Allen* class action, which involved thousands of dairy farmers in the Northeast, this case involves only 20 plaintiffs, many

---

(emphasis added)); *Miami Beach Texaco v. Price*, 433 So. 2d 1227, 1228 (Fla. 3d 1983) (discussing "rhetorical comments" that "may likely have caused the jurors to place themselves in the position of the Defendants and to conclude that *their* insurance premiums would be increased if they found for [plaintiffs]" (emphasis added)).

[10]     Plaintiffs' "cf." citation to *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994), *see* Mot. at 3, does not change the analysis. That case did not involve Rule 403 or a question of what evidence is admissible at trial. Instead, *Hampton Hardware* addressed whether a defendant could send letters to putative class members to discourage them from joining a proposed class action. *Id.* at 633. The court decided to prohibit that discouragement based on Federal Rule of Civil Procedure 23, and the "policy in favor of having litigation in which common interests, common questions of law or fact prevail, disposed of where feasible in a single lawsuit." *Id.* (citation omitted). Neither of those factors has any bearing on the application of Rule 403 or what evidence the jury should be permitted to hear in a federal antitrust trial.

[11]     *Allen v. Dairy Farmers of America, Inc.*, No. 5:09-cv-00230 (D. Vt.)

[12]     The Court did not rule on the relevant motion *in limine* in the *Allen* case because the parties moved for an expedited preliminary approval of a proposed settlement shortly after the motion was fully briefed. *See Allen*, No. 09-cv-230 (D. Vt. July 1, 2014), ECF No. 568; *see also* Minute Entry, *Allen*, No. 09-cv-230 (D. Vt. Jan. 29, 2015), ECF No. 631 ("denying as moot all Motions *in Limine*").

of whom appear to have been hand-selected to testify because of their small size in order to accentuate plaintiffs' improper narrative that pits small farmers against "DFA Corporate." Plaintiffs have repeatedly attempted to foster this contrast, to encourage the jury to penalize DFA for a perceived juxtaposition between DFA's "highest earnings" and "record low" milk prices (all of which happened after the *Allen* case), and to suggest that a plaintiffs' verdict would be uniformly good for dairy farmers. DFA should be permitted to confront plaintiffs' false narrative head-on with evidence from its own dairy farmer-members who will testify that they vehemently disagree with plaintiffs' characterization of DFA's actions and that the relief plaintiffs are requesting will harm dairy farmers. Those farmers too should have a voice in this trial.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion.

Dated:  July 1, 2020

Respectfully submitted by:

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com

*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and served the below parties via email. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)

Dated:  July 1, 2020

/s/ Alfred C. Pfeiffer Jr.
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com