# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and<br>DAIRY MARKETING SERVICES, LLC,**<br><br>      **Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

## DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S OBJECTIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (collectively "DFA") respectfully submit their objections to Plaintiffs' Proposed Jury Instructions, ECF No. 275 ("Pls.' Proposed Instr.").

As a preliminary matter, DFA objects to plaintiffs' Proposed Jury Instructions to the extent they omit substantive guidance required by the claims presented.  For example, plaintiffs' proposed instructions do not include any instructions related to the statute of limitations, disaggregation of damages, or how to analyze cooperatives and their agents.  In the absence of proposed instructions on these issues from plaintiffs, the Court should adopt DFA's proposed instructions on these issues without modification, including DFA's Proposed Jury Instruction Nos. 16-18, 45, and 48, ECF No. 276-1 ("DFA's Proposed Jury Instr.").

DFA also objects to the jury instructions that plaintiffs did propose on the grounds specified below.

I.     **OBJECTIONS THAT APPLY TO MULTIPLE PROPOSED INSTRUCTIONS**

**Multiple Instruction Objection 1:    Objection To Each and Every Proposed Instruction Based On Plaintiffs' Failure To Address Each Plaintiff's Individual Burden Of Proof On Each Claim.** DFA objects to each and every instruction to the extent that it fails to instruct the jury that each of the 20 separate plaintiffs in this trial has the burden to prove every element of his claims against DFA, and that the jury must consider those 20 claims separately. As this Court has already recognized multiple times, this case is not a class action and the plaintiffs may not try it as one; they may not attempt to prove the claims of all 20 plaintiffs on a representative basis. *See* Op. & Or. Granting in Part Defs.' Mot. to Sever Claims for Trial at 11, ECF No. 191; Mar. 27, 2020 Hr'g. Tr. 18:3-12, ECF No. 189 (Reiss, J.) ("I do feel that there's traction that you can't both not have a class action and have all the benefits of a class action where you just have class representatives or a few plaintiffs testifying and that's how damages are calculated for the class."); *cf. Ulysse v. Waste Mgmt. Inc. of Fl.*, 2013 WL 11327137, at *4-5 (S.D. Fla. Sept. 13, 2013), *aff'd*, 645 F. App'x 838 (11th Cir. 2016); *Hofmann v. EMI Resorts, Inc.*, 2010 WL 9034908, at *2-3 (S.D. Fla. July 21, 2010); *Thompson v. Sanderson Farms, Inc.*, 2006 WL 2559852, at *2, 4-6 (S.D. Miss. Sept. 1, 2006).

By referring to the 20 plaintiffs in the upcoming trial as a collective entity called "plaintiffs," plaintiffs' proposed instructions improperly invite the jury to find that if one plaintiff has satisfied his burden of proof against DFA, all or any of the other plaintiffs have also met their burdens of proof as well.

These instructions thus run afoul of well-established law that the jury must evaluate each plaintiff's claim on its own individual merits and may not improperly blur or merge one plaintiff's claims with another. *See Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 320 (5th Cir. 1978) (explaining that impact is a required element of a Section 1 claim and it must be decided separately

for each plaintiff); *cf. Garber v. Randell*, 477 F.2d 711, 716-17 (2d Cir. 1973) (explaining that in cases involving multiple parties, the claims and defenses of each party may not be impermissibly merged into one another so as to deprive each party of their due process right to have their case decided on its own merits).

DFA therefore requests that the Court instruct the jury in accordance with DFA's Proposed Jury Instruction No. 15 and instruct the jury that *each* plaintiff has the burden to prove *each* element of the claims addressed by the Instructions of Law, and each claim must be considered separately and on its own merits.  Because none of plaintiffs' proposed instructions draw this necessary distinction, if the Court is inclined to use any of the plaintiffs' proposed instructions, then each such instruction must be edited appropriately.  DFA will be happy to propose appropriate conforming edits for any of the plaintiffs' proposed instructions that the Court is inclined to give.

**Multiple Instruction Objection 2:  Objection To Proposed Instruction Nos. 4, 6, and 28 Based On Plaintiffs' Misleading Description Of DFA As A "Corporation" and DMS As A "Limited Liability Company."**  DFA objects to plaintiffs' description of DFA as a "corporation" as incomplete and unduly suggestive, to the extent that it fails to properly identify DFA as a dairy cooperative.  Rather than a for-profit corporation (as plaintiffs seek to insinuate), DFA is a member-owned agricultural cooperative legally organized under Chapter 17, Article 16 of the Kansas Cooperative Marketing Act and, as Defendants will show, operated in accordance with the Capper-Volstead Act, 7 U.S.C. § 291.  To the extent that the Court uses any of plaintiffs' proposed jury instructions, they should be edited to properly reference DFA's cooperative status.  DFA also objects as incomplete and misleading to plaintiffs' description of DMS as a limited liability company.  DMS is a "marketing agency in common" that was formed by multiple dairy cooperatives under the auspices of the Capper-Volstead Act for the purpose of jointly marketing

their members' raw milk. The Capper-Volstead Act expressly authorizes agricultural cooperatives to form marketing agencies in common of this type. *See* 7 U.S.C. § 291. To the extent that the Court uses any of plaintiffs' proposed jury instructions, any reference to DMS as a limited liability company should be edited to include this necessary context as reflected in DFA's own Proposed Instruction Nos. 16-18.

**Multiple Instruction Objection 3: Objection To Proposed Instruction Nos. 8-11, 18-19, 21, 23, and 30-32 Based On Plaintiffs' Failure To Describe DFA's Positions And Attempt To Bolster Plaintiffs' Positions.** Plaintiffs' proposed instructions include several standalone instructions that describe their contentions in detail, while omitting or mischaracterizing DFA's response. *See, e.g.*, Pls.' Proposed Instr. Nos. 8, 9, 21, 23, 30-32. Relatedly, certain of plaintiffs' proposed instructions improperly ascribe weight to certain evidence and allegations by plaintiffs, or ask the jury to adopt plaintiffs' interpretation of evidence in place of their own judgment. *Id.* Additionally, plaintiffs' proposed market definition instructions characterize plaintiffs' position but fail to address DFA's contentions to the effect that plaintiffs' proposed market definitions are unreliable and cannot carry plaintiffs' burdens. *See, e.g., id.* at Nos. 10, 11, 18, 19.

Jury instructions must provide a "complete and accurate framework within which counsel could argue their view of the facts." *Noel v. Artson*, 641 F.3d 580, 588-89 (4th Cir. 2011). The Court is not required to argue a party's contentions for it, *id.*, or to provide an unbalanced presentation of the facts. *See, e.g.*, *Uhlig LLC. v. Shirley*, 2012 WL 2923242, at *19 (D.S.C. July 17, 2012) (refusing to give instructions that were "unbalanced and unnecessarily buttressed Defendants' position"); *Dranchak v. Akzo Am., Inc.*, 1993 U.S. Dist. LEXIS 12566, at *6-7 (N.D. Ill. Sept. 9, 1993) (refusing party's request to give instructions that "unduly emphasize[d] defendant's version of the facts").

Each plaintiff is free to argue his own positions before the jury.  But the Court should not make arguments for plaintiffs in the jury instructions, or advance an unbalanced presentation.  To the extent that this Court uses any proposed instruction by plaintiffs that purports to present their position on a legal issue, DFA requests the opportunity to revise that instruction to fairly and accurately describe DFA's position as well.

**Multiple Instruction Objection 4:**  **Objection To Proposed Instruction Nos. 10-13, 17-23, 26, and 29 Based On Plaintiffs' Failure to Propose Proper Instructions Regarding Relevant Antitrust Markets.**  Plaintiffs' proposed instructions fail to properly instruct the jury regarding each plaintiff's burden to prove a relevant product and geographic market for this case. Instead, plaintiffs simply ask the Court to accept plaintiffs' position on a contested element of their claims, for which they bear the burden of proof, and to ignore DFA's contrary contentions.  The Court should not do so.  DFA contests both definitions, for the reasons set forth in DFA's Proposed Jury Instruction Nos. 26 and 27, incorporated by reference herein, and it is therefore not possible for the Court to instruct the jury that the relevant product and geographic market are simply as plaintiffs assert.  Instead, this is a disputed question of fact that the jury must resolve.  *See, e.g.*, *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (characterizing market definition as "a deeply fact-intensive inquiry"); *Sitts v. Dairy Farmers of Am., Inc.*, 276 F. Supp. 3d 195, 203 (D. Vt. 2017) ("Defining a relevant market is a fact-dependent inquiry . . . ."); *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 34 (S.D.N.Y. 2016) ("Market definition 'is a highly factual one best allocated to the trier of fact.'" (citation omitted)).

DFA also objects to plaintiffs' proposed relevant market instructions because plaintiffs omit without justification the entire legal analysis—as set forth by the Model Jury Instructions in Civil Antitrust Cases at A-108, A-113 (Am. Bar. Ass'n 2016) ("ABA Model Jury Instr.") and

monopsony/buyer-conspiracy case law—that a jury must undertake in order to determine whether each plaintiff has proven by a preponderance of the evidence that a relevant product and geographic market exist. *Id.* Because these elements remain contested for trial, the Court must instruct the jury as to the proper legal framework for assessing a relevant antitrust market, as set forth by the applicable ABA Model Jury Instructions and DFA's Proposed Jury Instruction Nos. 26 and 27.

**Multiple Instruction Objection 5:** **Objection To Proposed Instruction Nos. 3-14, 28-29, 31-35 Based On Plaintiffs' Improper Attempt To Establish A Section 1 or Conspiracy to Monopsonize Claim And Seek Damages Without Having To Prove The Single Overarching Conspiracy That They Allege**. Plaintiffs' proposed instructions for their Section 1 claims suggest that a jury could find that DFA and DMS violated Section 1 by engaging in multiple, separate conspiracies rather than the single conspiracy that plaintiffs allege. For example, plaintiffs' Proposed Instruction No. 5 describes plaintiffs' claims as involving "a conspiracy or agreement with other cooperatives to restrain trade" AND "conspiracies or agreements with other processors to restrain trade." Pls.' Proposed Instr. No. 5. Similarly, plaintiffs' Proposed Instruction No. 8 describes plaintiffs' claims as involving three kinds of separate agreements.

As set forth in DFA's Proposed Jury Instruction No. 22, each plaintiff contends that DFA and other alleged conspirators were all members of a single conspiracy to lower farmers' pay premiums in Order 1 below the premiums that they otherwise would have received absent an alleged conspiracy, and to eliminate competition between buyers or potential buyers of raw milk. Indeed, this Court specifically recognized that this is the theory that each plaintiff has chosen to pursue. *See* Op. & Or. Granting in Part & Denying in Part Defs.' Mot. for Summ. J. at 42, ECF No. 130 ("Summ. J. Or.") ("Plaintiffs here do not allege several conspiracies"). As a result, the

jury may judge whether DFA engaged in an illegal conspiracy in violation of Section 1 or Section 2 only on the basis of the single conspiracy claim that each plaintiff has pursued in this case. Proof of several separate conspiracies is not proof of the single, overall conspiracy alleged by each plaintiff against DFA in this case, unless one of the several conspiracies which is proven is the single conspiracy which each plaintiff here alleges. *See* Model Jury Instructions in Criminal Antitrust Cases*, B-109 (Am. Bar Ass'n 2009) (collecting cases); *cf. Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 706-07 (1962) (explaining that component pieces of a single conspiracy must not be analyzed piecemeal).

As set forth in DFA's Proposed Jury Instruction No. 23, none of the plaintiffs may now pursue any theory of Section 1 or conspiracy-to-monopsonize liability premised on multiple separate conspiracies, because DFA has never had fair notice of any such theory or the opportunity to take discovery about it. Plaintiffs concede that they intend to rely on their expert witness, Professor Elhauge, to prove the essential element of antitrust impact for each and every plaintiff. But he, too, based his analysis on a single conspiracy, and he did not purport to analyze the competitive effects of any individual components of that conspiracy. Expert Report of Einer R. Elhauge ¶ 4, Oct. 3, 2018, ECF No. 94-2 ("Defendants have engaged in a multi-faceted conspiracy with processors and other cooperatives . . . ."); *see also* E. Elhauge Dep. 54:7, Nov. 6, 2018, ECF No. 94-1 ("I mean, it's an overarching conspiracy."). It is too late for any plaintiff—through Professor Elhauge or otherwise—to attempt to identify what the multiple separate conspiracies might be at this point in the litigation, and it would be unfair and unduly prejudicial to DFA for the Court to instruct the jury that it can premise any Section 1 or conspiracy-to-monopsonize liability on the existence of multiple separate conspiracies apart from the single conspiracy theory that each plaintiff has pursued throughout the case.

Moreover, because no plaintiff has ever disclosed the number of, details of, or participants in any supposed separate individual conspiracies involving DFA, DFA remains unable to propose any instruction directed at these supposed separate conspiracies.  If the Court permits plaintiffs to pursue any theory of Section 1 or conspiracy-to-monopsonize liability based upon multiple alleged conspiracies, it must instruct the jury as to each separate alleged conspiracy, as well as do the following:  define the alleged participants in the conspiracy and the nature of the supposed agreement; explain to the jury how to assess the particular conduct at issue and the proper standard of review for each agreement (including but not limited to whether the conduct falls outside of the statute of limitations period or is protected by the Capper-Volstead Act); and explain to the jury how to assess impact for each plaintiff from the alleged separate conspiracies.  To the extent that this Court uses any proposed instruction by plaintiffs that derives from a "multiple separate conspiracies" theory of Section 1 or conspiracy-to-monopsonize liability, DFA requests the opportunity to raise additional objections and instructions once plaintiffs identify and define the specific individual conspiracies they intend to pursue, as set forth above and in DFA's Proposed Jury Instruction No. 23.

**<u>Multiple Instruction Objection 6</u>:  Objection To Proposed Instruction Nos. 15-30 Based On Plaintiffs' Failure To Instruct The Jury That Only Predatory Conduct By DFA Can Give Rise To A Section 2 Claim In Light Of The Second Circuit's Decision in *Fairdale Farms v. Yankee Milk Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).**  Plaintiffs' proposed instructions for their Section 2 claims repeatedly suggest that a finding that DFA engaged in "anticompetitive" conduct is sufficient to prove DFA's liability.  But this characterization fails to account for the Second Circuit's decision in *Fairdale Farms v. Yankee Milk Inc.*, which makes it clear that only

predatory conduct by DFA will give rise to liability under these circumstances.  635 F.2d 1037, 1043 (2d Cir. 1980); *see also* Summ. J. Or. at 34-35, 54, ECF No. 130.

As set forth in DFA's Proposed Jury Instruction No. 35 (which DFA incorporates herein), because this case involves an agricultural cooperative, once DFA establishes its *bona fides* as a cooperative association as contemplated by the Capper-Volstead Act, 7 U.S.C. § 291, federal law shields certain activities from antitrust liability, and limits the type of anticompetitive acts the jury can rely upon to determine whether DFA willfully acquired or maintained monopsony power in a relevant antitrust market.  *Id.*  It is not a violation of the Sherman Act, for example, for the members of an agricultural cooperative to carry out the legitimate objectives of their association, which follow naturally from their attempts to achieve unity of effort and the voluntary elimination of competition among themselves.  *Id.*  After DFA establishes its qualification for Capper-Volstead Act protection, each plaintiff must thereafter prove that DFA acquired or maintained its monopsony power through predatory acts that excluded or destroyed competition from other buyers of raw milk, and not from conduct that DFA is lawfully permitted to engage in under the Capper-Volstead Act.  *See Fairdale Farms*, 635 F.2d at 1043; Summ. J. Or. at 55, ECF No. 130 ("In the instant case, Plaintiffs must go one step further and establish that Defendants' monopsony power is derived from predatory acts.").  Accordingly, DFA cannot be found liable for monopsony power that results from acts such as the voluntary formation, growth and combination of agricultural cooperatives, or from its ownership or operation of processing plants, but only for the acquisition of monopsony power by other, predatory means that exclude competition between buyers of raw milk.  Plaintiffs' instructions omit this necessary legal context that the jury must be allowed to consider in deciding each plaintiff's Section 2 claims, and DFA objects to them on this basis.

**Multiple Instruction Objection 7:   Objection To Proposed Instruction Nos. 31-35 Based On Plaintiffs' Failure To Instruct the Jury On The Applicable Statute of Limitations.**

Plaintiffs' proposed instructions fail to properly instruct the jury regarding the fact that damages are not recoverable under the federal antitrust acts for anticompetitive conduct occurring outside the applicable statute of limitations.  As this Court stated at the recent hearing:  "We will have jury instructions and a verdict form that make it clear that there needs to be actionable conduct within the limitations period ***and that damages are based on a particular time period and no other***." July 21, 2020 Hr'g Tr. 20:23-21:1, ECF No. 282 (emphasis added).  Plaintiffs' proposed instructions do not even mention the statute of limitations, much less provide any guidance to the jury for how to determine when it began to run, or how to assess injury in fact, causation, or disaggregation of damages for pre-limitation conduct continuing into the limitations period.

As set forth in DFA's Proposed Jury Instruction No. 45 (which DFA incorporates herein), the statute of limitations for the antitrust laws does not permit recovery of damages for any injuries sustained by any of the plaintiffs prior to October 8, 2005.  Further, in determining whether any conduct by DFA injured any of the 20 plaintiffs, the jury may only consider overt acts taken by DFA after October 8, 2005, that are new and independent acts that are not merely a reaffirmation of a previous act and that inflict new and accumulating injury on the plaintiff.  *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 350 (D. Vt. 2010).  Contracts that DFA entered into before October 2005 cannot form the basis of any claim for injury and damages by any plaintiff in this case, regardless of whether those contracts continued or were renewed after October 8, 2005. Instead, the jury must determine whether an overt act that injured a plaintiff occurred after October 8, 2005, and may only determine that the statute of limitations (and thus, any recoverable damages)

commenced at that time.  Plaintiffs' proposed instructions omit these parameters, and DFA objects to them on this basis.

## II.   ADDITIONAL SPECIFIC OBJECTIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

**Objections To Plaintiffs' Proposed Jury Instruction No. 1**:  DFA does not assert any specific objections to this proposed jury instruction beyond plaintiffs' failure to address each plaintiff's individual burden of proof on each claim as set forth in Multiple Instruction Objection 1, *supra* pp. 2-3.

**Objections To Plaintiffs' Proposed Jury Instruction No. 2**:  In addition to Multiple Instruction Objection 1, *supra* pp. 2-3, DFA also objects to this proposed instruction as an inaccurate statement of the law.  The statement that "Plaintiffs claim that Defendants have a monopsony over the raw Grade A milk market in Order 1," Pls.' Proposed Instr. No. 2, does not describe a valid claim as a matter of law because it is well-established that only an illegal monopsony, willfully acquired through predatory acts, can give rise to a viable claim against a Capper-Volstead qualified cooperative, like DFA.  *See Fairdale Farms Inc. v. Yankee Milk, Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).  Mere monopsony power, if lawfully acquired, does not violate the antitrust laws; indeed, a monopsonist may compete aggressively without violating the antitrust laws, as long as it does not use predatory means to achieve its competitive goals.  *Id.*  Because it suggests otherwise, plaintiffs' Proposed Instruction No. 2 is wrong as a matter of law.

DFA also objects to this instruction as incomplete to the extent it purports to describe the claims in this case.  This instruction does not provide enough information regarding the claims to provide sufficient background to the jury as it receives the more substantive instructions.  In place of plaintiffs' Proposed Instruction No. 2, DFA requests that the Court give DFA's Proposed Jury Instruction No. 14.

**Objections To Plaintiffs' Proposed Jury Instruction No. 3**:  DFA does not assert any specific objections to this proposed instruction beyond plaintiffs' failure to address each plaintiff's individual burden of proof on each claim as set forth in Multiple Instruction Objection 1, *supra* pp. 2-3, and plaintiffs' improper attempt to establish a Section 1 claim and seek damages without having to prove the single overarching conspiracy that they allege as set forth in Multiple Instruction Objection 5, *supra* pp. 6-8.

**Objections To Plaintiffs' Proposed Jury Instruction No. 4**:  In addition to Multiple Instruction Objections 1, 2 and 5, *supra* pp. 2-4, 6-8, DFA also objects to this proposed instruction because it misleadingly suggests that the jury could find a conspiracy between DFA and DMS, since it uses those entities as examples of "corporations or limited liability companies."  This Court has already held that DFA and DMS are incapable of conspiring with each other.  *See* Summ. J. Or. at 3, ECF No. 130 ("Because of their corporate structure, Defendants are considered a single entity for purposes of Plaintiffs' claims.").  DFA also objects to this instruction because it permits the jury to find a conspiracy based upon a finding of a commitment to a common scheme, when applicable law requires that conspiracy participants share a "conscious commitment to a common scheme designed to achieve an unlawful objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted).

**Objections To Plaintiffs' Proposed Jury Instruction No. 5**:  DFA does not assert any specific objections to this proposed jury instruction beyond those set forth in Multiple Instruction Objection 1, *supra* pp. 2-3, and plaintiffs' improper attempt to establish a Section 1 claim and seek damages without having to prove the single overarching conspiracy that they allege as set forth in Multiple Instruction Objection 5, *supra* pp. 6-8.

**Objections To Plaintiffs' Proposed Jury Instruction No. 6:**  DFA does not assert any specific objections to this proposed jury instruction beyond those set forth in Multiple Instruction Objection 1, *supra* pp. 2-3, plaintiffs' misleading description of DFA as a "corporation" as set forth in Multiple Objection Instruction 2, *supra* pp. 3-4, and plaintiffs' improper attempt to establish a Section 1 claim and seek damages without having to prove the single overarching conspiracy that they allege as set forth in Multiple Instruction Objection 5, *supra* pp. 6-8.

In place of plaintiffs' Proposed Instruction No. 6, DFA also requests that the Court give DFA's Proposed Jury Instruction Nos. 16-18.

**Objections To Plaintiffs' Proposed Jury Instruction No. 7:**  In addition to Multiple Instruction Objections 1 and 5, *supra* pp. 2-3, 6-8, DFA also objects to this proposed instruction as incomplete because plaintiffs have omitted without justification the first five paragraphs of the relevant Model Instruction on this issue.  *See* ABA Model Jury Instr. at A-21.

**Objections To Plaintiffs' Proposed Jury Instruction No. 8:**  In addition to Multiple Instruction Objections 1, 3 and 5, *supra* pp. 2-8, DFA also objects that this proposed instruction is unnecessary and irrelevant as a stand-alone instruction because it simply reiterates plaintiffs' allegations and their view of the evidence in this case, while providing no guidance to the jury regarding the law that it must apply.  The effect of an instruction like this is to ascribe weight to plaintiffs' allegations about the nature of DFA's conduct, and, in doing so, suggest to the jury that it adopt plaintiffs' interpretation of evidence in place of their own judgment.  For example, plaintiffs' proposed instruction asserts without support that DFA's standard, vertical full-supply agreements between itself and its processor-customers at different levels of the supply chain constitute "agreements not to compete" between DFA and its "competitors."

This is improper.  Jury instructions are supposed to provide the legal framework within which the parties may argue their view of the facts.  They are not the proper place for the parties to argue their view of the case; nor is the Court required to argue a party's contentions for it, or to provide an unbalanced presentation of the allegations and facts.  As a result, it would be error to present plaintiffs' unsupported and inaccurate argument to the jury under the guise of an instruction or law regarding unreasonable restraints of trade.

DFA also objects to this proposed instruction because it suggests that plaintiffs intend to pursue a Section 1 theory predicated on at least three separate conspiracies—despite the fact that no plaintiff has ever pled or articulated any Section 1 theory of liability based on multiple separate conspiracies, and they are foreclosed from doing so at this point in the case.  *See* DFA's Multiple Instr. Objection 5, *supra* pp. 6-8.  In any event, plaintiffs' instruction is impermissibly vague. Although it alleges that DFA engaged in a conspiracy "to coerce farmers or who were independent farmers or belonged to other cooperatives to join DFA," Pls.' Proposed Instr. No. 8, plaintiffs never identify what specific agreement(s) DFA supposedly entered into pursuant to this so-called conspiracy, nor the separate entities DFA allegedly formed them with.  Indeed, DFA has no idea what this statement refers to and is therefore unable to propose any revised instructions of law directed at this alleged conspiracy, whatever it is.  For these reasons, DFA requests that this Court disregard plaintiffs' Proposed Instruction No. 8 in its entirety.

**Objections To Plaintiffs' Proposed Jury Instruction No. 9**:  In addition to Multiple Instruction Objections 1, 3, and 5, *supra* pp. 2-8, DFA also objects to this proposed instruction because it is not an accurate statement of the law.  Each plaintiff's Section 1 conspiracy claim is subject to the rule of reason, and each plaintiff must therefore show that any alleged conspiracy in this case constituted an unreasonable restraint of trade resulting in substantial competitive harm

within a relevant antitrust market.  *See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543, 546 (2d Cir. 1993).  Plaintiffs' contention that the alleged conspiracy in this case constitutes a *per se* restraint that obviates any need to prove anticompetitive harm in a relevant antitrust market is both wrong as a matter of law and foreclosed as a practical matter by both this Court's findings in the *Allen* litigation, 2014 WL 2610613 (D. Vt. June 11, 2014), and the Sixth Circuit's holding in *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262 (6th Cir. 2014).

In *Allen*, this Court expressly rejected plaintiffs' contention that the alleged single conspiracy in that case constituted "a *per se* unlawful agreement among horizontal competitors not to compete for the purchase of raw milk from dairy farmers."  *Allen*, 2014 WL 2610613, at *4-5. In doing so, the Court correctly concluded that plaintiffs' Section 1 claim—the same claim that plaintiffs are pursuing here—involved "both horizontal and vertical restraints of trade [involving DFA] many of which are not *per se* violations of the antitrust laws."  *Id.* at *5 (citing *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 206 (S.D.N.Y. 2014) ("The presence of even this significant horizontal dimension, alongside a vertical one, does not trigger per se review.")).

This conclusion is fully borne out by the realities of this case.  DFA's full supply and outsourcing agreements with processor-customers, for example, constitute vertical arrangements between participants at different levels of the supply chain—in that DFA is the supplier of milk selling to distributor-customers such as Dean Foods ("Dean"), HP Hood, Kraft and Chobani—that a jury must analyze under the rule of reason pursuant to binding Supreme Court precedent.  *See, e.g.*, *Cont'l TV Inc. v. GTE Sylvania*, 433 U.S. 36, 58 (1977) (vertical relationship between a supplier and its customer was properly analyzed under the rule of reason); *see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc*., 551 U.S. 877, 893, 899 (2007) (explaining that the rule of

reason governs vertical price restraints); *United States v. Apple*, 791 F.3d 290, 313-14 (2d Cir. 2015) (same).  This is true even where the relationship between DFA and its customers contains both horizontal and vertical components.  *Cf.*, *Beyer Farms Inc. v. Elmhurst Dairy Inc.*, 142 F. Supp. 2d 296, 304-05 (E.D.N.Y. 2001) (agreements between processor and customers who were also competitors must be judged as to the effect on competition rather than subjected to per se treatment).

Indeed, that was the holding of the Sixth Circuit in *In re Southeastern Milk Antitrust Litigation*, which correctly observed that DFA's alleged agreements with Dean in that case were "substantial[ly] vertical" and therefore had to be governed by the rule of reason.  739 F.3d at 272-73.

To the extent plaintiffs allege that DFA *also* engaged in horizontal restraints with other cooperatives, that does not change the analysis.  *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962) (explaining that the component parts of a single conspiracy must not be analyzed piecemeal and the conduct underlying a single, overarching conspiracy must be viewed as a whole); *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 206 (S.D.N.Y. 2014) ("The presence of even this significant horizontal dimension, alongside a vertical one, does not trigger *per se* review.").  Plaintiffs allege that DFA conspired with other cooperatives to share information regarding each other's pay premiums and not to solicit each other's farmers, but it is well-settled that these types of horizontal conduct are not automatically assessed *per se* and must be judged according to their effect on competition—particularly where, like here, the alleged conduct is ancillary to the cooperatives' involvement in a lawful joint venture like DMS or other lawful joint conduct, like milk swaps.  *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("[E]xchange of price data and other information among competitors does not invariably

have anticompetitive effects . . . .  For this reason, we have held that such exchanges of information do not constitute a *per se* violation of the Sherman Act."); *Todd v. Exxon Corp.*, 275 F.3d 191, 198-99 (2d Cir. 2001); *see also Texaco Inc. v. Dagher*, 547 U.S. 1, 6 (2006) (holding that it is not *per se* illegal under Section 1 of the Sherman Act for the participants to a joint venture to set the prices at which it sells its products even if the agreement is otherwise a horizontal arrangement); *Rothery Storage & Van. Co. v. Atlas Lines*, 792 F.2d 210, 229-30 (D.C. Cir. 1986) (horizontal customer divisions are not governed *per se* when they are ancillary to a joint venture type relationship that increases the group's efficiency).  Any alleged agreements between DFA and other cooperatives that plaintiffs contend comprise part of the alleged conspiracy thus must be analyzed based on their effect on competition.

Because plaintiffs' request for *per se* review is wholly unsupported by the relevant case law,[1] DFA requests that this Court disregard plaintiffs' Proposed Instruction No. 9 in its entirety.

**Objections To Plaintiffs' Proposed Jury Instruction No. 10**:  In addition to Multiple Instruction Objections 1, 3, 4, and 5, *supra* pp. 2-8, DFA also objects to this proposed instruction to the extent it parses the different aspects of the single conspiracy that each plaintiff in this case alleges, and improperly suggests to the jury that it need only analyze a discrete portion of the alleged conspiracy pursuant to the rule of reason—namely, DFA's alleged vertical relationships with its customers, including the full supply and outsourcing agreements that are at issue in this case.  Each plaintiff has pursued a single conspiracy theory, and the effect of that conspiracy on

---

[1]     Plaintiffs cite the Ninth Circuit's decision in *In re Musical Instruments and Equipment Antitrust Litigation*, but that case does not support their claim.  798 F.3d 1186 (9th Cir. 2015). There, plaintiffs' argument for *per se* treatment depended entirely upon their allegation that the single overarching conspiracy that they were pursuing was a hub-and-spoke conspiracy.  Of course, plaintiffs have expressly disclaimed their intent to pursue a hub-and-spoke conspiracy at trial and indeed, this Court correctly held at summary judgment that plaintiffs are unable to prove such a Section 1 claim as a matter of law.  *See* Summ. J. Or. at 43, ECF No. 130.

competition in the relevant market must be viewed in its entirety and not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962) (explaining that component pieces of a single conspiracy must be not analyzed piecemeal and the alleged conduct underlying the single conspiracy must be viewed as a whole).

DFA also objects to the first sentence in the second paragraph, which instructs the jury to "determine whether the challenged restraints [at issue] were reasonable." Pls.' Proposed Instr. No. 10. This is not the law. It is each plaintiff's burden to prove that any challenged restraint by DFA was *unreasonable*; it is not DFA's ultimate burden to prove that any challenged restraint was *reasonable*. ABA Model Jury Instr. at C-3. Plaintiffs' proposed instruction distorts this inquiry and improperly suggests that DFA bears the burden of proof on this element where it does not. DFA also objects to the extent that plaintiffs fail to identify a proper antitrust market, as set forth in DFA's Proposed Jury Instruction Nos. 26 and 27, incorporated herein.

In place of plaintiffs Proposed Instruction No. 10, DFA requests that the Court give DFA's Proposed Jury Instruction No. 24 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 11:** In addition to Multiple Instruction Objections 1, 3, 4 and 5, *supra* pp. 2-8, DFA also objects to this proposed instruction as incomplete and an improper deviation from the ABA Model Jury Instruction that sets forth the appropriate analysis governing the rule of reason and whether each plaintiff has met its burden to prove that DFA's alleged conduct actually harmed competition. *See* ABA Model Jury Instr. at C-5. Specifically, plaintiffs' proposed instruction omits without explanation the following language from the model instruction:

- Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition;

- It is plaintiff's burden to prove the existence of the relevant market. If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff has also proven that the challenged restraint has a substantial harmful effect on competition in that market;

- A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

*Id.* (omitted from the first, second, and third paragraphs, respectively, of plaintiffs' proposed instruction).

This language provides useful guidance to the jury in assessing whether each plaintiff has met his burden to prove that any challenged restraint by DFA resulted in competitive harm in a relevant antitrust market. It also provides a helpful explanation regarding the benefits of competition, which the jury may rely upon to assess whether any alleged restraint resulted in competitive harm. The Court should instruct the jury that it can rely on this language and information in assessing whether plaintiffs have met their burden to prove that any of DFA's alleged conduct resulted in any competitive harm within a relevant antitrust market.

DFA also objects to plaintiffs' instruction to the extent that it is not an accurate statement of the law. Because the claims in this case sound in monopsony, not monopoly, DFA's market share is properly measured as a percentage of the amount of its *purchases* of raw milk in the relevant market divided by the purchases by all other buyers included in that market. To the extent that plaintiffs' instruction—and namely, the second sentence of the fourth paragraph—suggests to the jury that DFA's market power may be judged as a percentage of products *sold* in the relevant antitrust market, this is not a correct statement of law. *See generally Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (explaining that in a monopsony case, the "market is comprised of

*buyers* who are seen by sellers as being reasonably good substitutes" (emphasis added) (quoting Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy & Monopsony*, 76 Cornell L. Rev. 297, 297-301, 308 (1991))).

In place of plaintiffs' Proposed Instruction No. 11, DFA requests that the Court give DFA's Proposed Jury Instruction No. 28 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 12**:  In addition to Multiple Instruction Objections 1, 4, and 5, *supra* pp. 2-3, 5-8, DFA also objects to this proposed instruction as incorrect on the law.  The statements that the "burden is on Defendants to prove that the challenged restraints benefitted competition" and ***"[i]n conducting this inquiry, you should consider whether Defendants could have achieved the procompetitive objectives without the challenged restraints***," Pls.' Proposed Instr. No. 12 (emphasis added), improperly conflate the various steps of the rule of reason analysis and suggest that DFA bears the burden to prove not only that the challenged restraints benefitted competition, but also that DFA could have achieved such procompetitive benefits without engaging in the challenged restraints.  This is not correct. Both the Second Circuit and the ABA Model Jury Instructions are clear that, if DFA meets its burden to show that the challenged restraints benefitted competition, the burden shifts back to the plaintiffs to prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition.  *See* ABA Model Jury Instr. at C-8; *see also Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) (explaining that, if defendant establishes procompetitive benefits, "the burden shifts back to plaintiff for it to demonstrate that any legitimate collaborative objectives proffered by defendant could have been achieved by less restrictive alternatives, that is, those that would be less prejudicial to competition as a whole").  Plaintiffs' proposed instruction distorts this

inquiry and also improperly suggests to the jury that DFA bears the burden for key portions of the rule of reason analysis where it does not.

DFA also objects to the entire third paragraph of plaintiffs' instruction.  As explained in DFA's Objections to Plaintiffs' Proposed Jury Instruction No. 11, *supra* pp. 18-20, the ABA Model Jury Instructions clearly define for the jury what constitutes the classic benefits of competition:  lower prices to consumers, increased output, or higher product quality.  *See* ABA Model Jury Instr. at C-5.  This guidance—which plaintiffs inexplicably and improperly omitted from their Proposed Instruction No. 11—allows the jury to accurately assess whether the challenged restraints in this case in fact benefitted competition as DFA alleges, as part of the rule of reason analysis.  Rather than provide the jury with this uncontroversial—and unquestionably correct—definition of the benefits of competition, plaintiffs instead propose that the jury be instructed that:

> You should not consider claimed justifications [for the challenged restraints] that are pretextual, which means a justification which is false or not the real reason.  You should also not consider a justification that is speculative.  You should also not consider benefits that are unrelated to competition.  In other words, a business justification is only valid if it relates directly or indirectly to the enhancement of consumer welfare.  Thus, pursuit of efficiency and quality control might be a legitimate reason, but the desire to maintain a monopsony market share or thwart the entry of competitors is not.  It is Defendants' burden to prove that the procompetitive justifications that they have offered are the real "nonpretextual" reasons for the restraint.

Pls.' Proposed Instr. No. 12.

Unsurprisingly, plaintiffs' proffered language is nowhere to be found in the ABA Model Jury Instructions.  Not only is this instruction unnecessary, but it improperly insinuates—without justification—that DFA's reasons for engaging in any alleged conduct in this case were pre-textual, speculative, and false.  This is wrong for multiple reasons.  First, plaintiffs' instruction improperly suggests that DFA must affirmatively *disprove* that any procompetitive justifications

for its conduct were pre-textual.  But this is not the case, and the Court should reject plaintiffs' attempt to saddle DFA with a higher burden of proof than the law imposes.  Moreover, the instruction transparently seeks to pass off plaintiffs' opinions about DFA's motives and intent as a legal standard that the jury must accept and apply in deciding DFA's liability.  The Court should not present plaintiffs' one-sided contentions to the jury under the guise of a legal instruction.

In place of plaintiffs' Proposed Instruction No. 12, DFA requests that the Court give DFA's Proposed Jury Instruction No. 28 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 13:**  In addition to Multiple Instruction Objections 1, 4, and 5, *supra* pp. 2-3, 5-8, DFA also objects to this proposed instruction because the statement, "[i]f the competitive harm does not substantially outweigh the non-pretextual competitive benefits, then the challenged restraints are not unreasonable," Pls.' Proposed Instr. No. 13, (a) is difficult even to follow and (b) improperly suggests to the jury that DFA's proffered justifications for any challenged conduct are pre-textual.  This is improper for the reasons set forth in DFA's Objections to Plaintiffs' Proposed Jury Instruction No. 12, *supra* pp. 20-22.  *See also* ABA Model Jury Instr. at C-8.  If the Court chooses to adopt any aspect of plaintiffs' Proposed Instruction No. 13, DFA requests that the Court strike the word "pre-textual" from that instruction.  DFA also objects to the extent that plaintiffs fail to identify a proper antitrust market, or properly instruct the jury regarding how to undertake this analysis, as set forth in DFA's Proposed Jury Instruction Nos. 26 and 27, incorporated herein.

In place of plaintiffs' Proposed Instruction No. 13, DFA requests that the Court give DFA's Proposed Jury Instruction No. 28 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 14**:  In addition to Multiple Instruction Objections 1 and 5, *supra* pp. 2-3, 6-8, because this element of plaintiffs' claims is not in dispute, DFA proposes to eliminate plaintiffs' Proposed Instruction No. 14 as unnecessary.

**Objections To Plaintiffs' Proposed Jury Instruction No. 15**:  In addition to Multiple Instruction Objections 1 and 6, *supra* pp. 2-3, 8-9, DFA also objects to this proposed instruction because the statement that "a monopsony is a type of restraint of trade under Section 1," Pls.' Proposed Instr. No. 15, is wrong as a matter of law.  First, Section 1 and Section 2 claims are legally distinct.  A Section 1 violation requires an agreement between two or more distinct legal entities.  Wholly unilateral conduct, like monopsony, cannot give rise to a Section 1 violation. Second, plaintiffs' instruction wrongly suggests to the jury that the mere existence of a monopsony is illegal.  To the contrary, that would not be true even outside the context of agricultural cooperatives.  And in that specific setting, as set forth in DFA's Objections to Plaintiffs' Proposed Instruction No. 2, *supra* p. 11, only an illegal monopsony, willfully acquired through predatory acts, can give rise to a viable claim against a Capper-Volstead qualified cooperative, like DFA. *See Fairdale Farms Inc. v. Yankee Milk, Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).  Mere monopsony power, if lawfully acquired, does not violate the antitrust laws; indeed, a monopsonist may compete aggressively without violating the antitrust laws, as long as it does not use predatory means to achieve its competitive goals.  *Id.*  Because it suggests otherwise, plaintiffs' instruction is wrong as a matter of law.

If the Court adopts any portion of plaintiffs' proposed instruction, the Court should strike the statement above.  In place of plaintiffs' Proposed Instruction No. 15, DFA requests that the Court give DFA's Proposed Jury Instruction No. 32 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 16**:  In addition to Multiple Instruction Objections 1 and 6, *supra* pp. 2-3, 6-8, DFA also objects to this proposed instruction because it contains a wrong and incomplete statement of the law.  Monopsony power is the power to control prices, reduce inputs, and/or exclude competition as a buyer in a relevant antitrust market.  *See, e.g.*, *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007).  Plaintiffs' instructions fails to include all aspects of this definition.  The Court should adopt DFA's Proposed Jury Instruction No. 33 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 17:**  In addition to Multiple Instruction Objections 1, 4, and 6, *supra* pp. 2-3, 5-6, 8-9, DFA also objects to this proposed instruction because, as set forth in its objections to the above instruction, *supra* p. 24, monopsony power is the power to control prices, reduce inputs, and/or exclude competition as a buyer in a relevant antitrust market.  *See, e.g.*, *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007).  To the extent that plaintiffs' instruction fails to include all aspects of this definition—and instead focuses exclusively on DFA's alleged ability to control prices in a relevant antitrust market—it is incomplete and the Court should adopt DFA's Proposed Jury Instruction No. 33 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 18**:  In addition to Multiple Instruction Objections 1, 3, 4, and 6, *supra* pp. 2-6, 8-9, DFA also objects to this proposed instruction as incomplete because plaintiffs have no basis to deviate from the ABA Model Jury Instruction on relevant product market.  ABA Model Jury Instr. at A-108.  Plaintiffs' proposed instruction omits without justification the entire legal analysis that a jury must undertake in order to determine whether the plaintiffs have met their burden to prove by a preponderance of the

evidence that a relevant product market exists.  *Id.*  Because this element remains contested, plaintiffs' instruction cannot be given to the jury.

Finally, DFA objects to this instruction as an inaccurate statement of the law.  As explained in DFA's Proposed Jury Instruction No. 26, a relevant product market in a monopsony case must be "composed of that set of *buyers* or potential *buyers* who are seen by sellers as being reasonable substitutes for each other."  DFA Proposed Jury Instr. No. 26 (emphases added); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (explaining that in a monopsony case, the "market is comprised of *buyers* who are seen by sellers as being reasonably good substitutes" (emphasis added) (quoting Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy & Monopsony*, 76 Cornell L. Rev. 297, 297-301, 308 (1991))).  Plaintiffs' proposed instruction is legally wrong because it does not reference any set of buyers whatsoever.

In place of plaintiffs' Proposed Instruction No. 18, DFA requests that the Court give DFA's Proposed Jury Instruction No. 26 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 19**:  In addition to Multiple Instruction Objections 1, 3, 4, and 6, *supra* pp. 2-6, 8-9, DFA also objects to this proposed instruction as incomplete because plaintiffs have no basis to deviate from the ABA Model Jury Instruction on relevant geographic product.  ABA Model Jury Instr. at A-113.  Plaintiffs' proposed instruction omits without justification the entire legal analysis that a jury must undertake in order to determine whether the plaintiffs have met their burden to prove by a preponderance of the evidence that a relevant geographic market exists.  *Id.*  Because this element remains contested, plaintiffs' instruction cannot be given to the jury.

In place of plaintiffs' Proposed Instruction No. 19, DFA requests that that Court give DFA's Proposed Jury Instruction No. 27.

**Objections To Plaintiffs' Proposed Jury Instruction No. 20:**  In addition to Multiple Instructions Objections 1, 4, and 6, *supra* pp. 2-3, 5-6, 8-9, DFA also objects to this proposed instruction because it depends upon the wrong legal standard for assessing each plaintiff's Section 2 claim for monopsony.   A jury may consider whether plaintiffs have direct evidence of a defendant's monopsony power—as opposed to determining the existence of monopsony power on the basis of "indirect evidence" like market share and market trends—in "case[s] in which plaintiff has introduced direct evidence of [monopsony] power . . . such as evidence of what prices would have been in a competitive market and [monopsony] level prices and/or evidence that a defendant has restricted output to [monopsony] levels."  *See* Notes to ABA Model Jury Instr. at A-121.  No plaintiff has presented such evidence of DFA's unilateral monopsony level pricing power here.  Instead, plaintiffs' expert presented only one regression model, which purported to quantify all aspects of the alleged *conspiracy* in the case, without quantifying anything about DFA's alleged independent monopsony level pricing power.  *See, e.g.*, DFA's Reply in Supp. of Mot. to Exclude at 8 & n.28, ECF No. 174.  Furthermore, no plaintiff has presented evidence that DFA had the ability to (or did) restrict raw milk purchases; to the contrary, it is undisputed that raw milk production in Order 1 tended to increase for much of the relevant case period.  There is therefore no basis for the Court to give the "direct proof" model instruction regarding the existence of monopsony power in this case.

DFA further objects to the statement that "a firm is a monopsonist if it can profitably lower or maintain prices for a significant period of time, below competitive levels," Pls.' Proposed Instr. No. 20, because it excludes language from the ABA Model Jury Instruction that prices must remain "substantially" below competitive levels.  *See* ABA Model Jury Instr. at A-121 ("More precisely,

a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.").

Moreover, the statement that "Plaintiffs can meet their burden by showing that Defendants have the ability to reduce or control the prices or otherwise reduce competition in the relevant market," Pls.' Proposed Instr. No. 20, deviates from the model instructions and omits that the ability to reduce or control prices in and of itself is not evidence of monopsony power, if resulting prices (and/or competition levels) are not below competitive levels. *See* ABA Model Jury Instr. at A-121 ("Plaintiff has the burden of proving that defendant has the ability to [dictate] the prices that it charges for goods or services in the relevant market *[below] competitive levels*." (emphasis added)).

Finally, plaintiffs' statement that each plaintiff may prove unilateral monopsony power under Section 2 of the Sherman Act by showing that DFA has monopsony power "by itself or with its coconspirators" is wrong as a matter of law. It is well established that direct evidence of monopoly power depends on what the "defendant has the power to do **by itself**—that is, **without the assistance of**, and despite competition from, any existing or potential competitors." *Id.* (emphases added); *see also, e.g.*, *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 235 (E.D.N.Y. 2009) ("[D]istrict courts in this and other districts have uniformly held or approved the view that allegations of a 'shared monopoly' do not state a claim under section 2 of the Sherman Act." (citation omitted)); *Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.*, 312 F. Supp. 2d 379, 397 (E.D.N.Y. 2004) ("With respect to plaintiffs' claims of actual or attempted monopolization, the Second Circuit has specifically indicated that it will not entertain arguments based on a 'shared monopoly' theory of liability."); *see also In re Southeastern Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 728 (E.D. Tenn. 2011) (rejecting plaintiffs' attempt to aggregate

market power to show monopsony power because it "flies in the face of clear Sixth Circuit precedent" (citations omitted)).  The Court should reject plaintiffs' attempt to adopt a contrary legal standard.

For these reasons, DFA requests that the Court discard plaintiffs' Proposed Instruction No. 20 in its entirety.  Because plaintiffs have already conceded at summary judgment that they intend to rely on "indirect" evidence to prove DFA's alleged monopsony power at trial—including but not limited to evidence of DFA's alleged market share and market trends—any instruction on DFA's alleged monopsony power must consider these factors.  *See* Pls.' Rev. Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. at 28-30, ECF No. 109 ("Pls.' Opp'n to Summ. J.") (urging the Court to find a dispute of material fact regarding plaintiffs' Section 2 claims based on evidence relating to DFA's market share and market trends).

**Objections To Plaintiffs' Proposed Jury Instruction No. 21**:  In addition to Multiple Instruction Objections 1, 3, 4, and 6, *supra* pp. 2-6, 8-9, DFA also objects to the statement that plaintiffs "are not required to prove monopsony power using both methods, so you only need to reach this second method if you find that Plaintiffs did not prove monopsony power through direct evidence," Pls.' Proposed Instr. No. 21, for the reasons set forth in DFA's Objections to Plaintiffs' Proposed Jury Instruction No. 20, *supra* pp. 26-28,  incorporated and reasserted herein.  No plaintiff has ever pursued a theory of DFA's monopsony power based on the "direct proof" method, and there is no direct evidence of DFA's monopsony power in the case that would allow them to do so now.  The jury, therefore, may not disregard evidence of DFA's market share and market trends in assessing whether each plaintiff has proved that DFA has monopsony power.

DFA further objects to this instruction as incomplete and an improper deviation from the ABA Model Jury Instructions.  First, in directing the jury to the factors it may consider in assessing

DFA's alleged monopsony power, plaintiffs inexplicably omit that the jury may consider "entry and exit by other companies," ABA Model Jury Instr. at A-115, and instead instruct the jury only that it may consider the "history of plant closures" in this case.  This one-sided formulation of the proper analysis is unsupported by the law or the record.  DFA intends to present evidence at trial showing that purchasers of raw milk, including milk plants, have entered any relevant market during the period of this case.  The Court should not permit plaintiffs to distort the appropriate inquiry regarding monopsony power by focusing exclusively on companies exiting the market.

Second, the statement that "[a]n increasing market share may strengthen an inference that a company has monopsony power, particularly when that company has a high market share," Pls.' Proposed Instr. No. 21, deviates from the ABA Model Jury Instructions in a manner that favors plaintiffs and unduly prejudices DFA.  This instruction omits model instruction language that presents the countervailing proposition that "a decreasing share might show that a company does not have monop[sony] power."  ABA Model Jury Instr. at A-115.  Any instruction should contain this countervailing statement.

DFA further objects to this instruction as incomplete and misleading to the extent it omits that the jury's consideration of monopsony power must relate to DFA's ability *as a buyer* to control prices or exclude competition among buyers.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) ("the market is not the market of competing sellers but of competing buyers" (quoting Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy & Monopsony*, 76 Cornell L. Rev. 297, 324 (1991))).  Without this clarification, the instruction as-is will risk resulting in substantial juror confusion—the jury, for example, could easily misconstrue the invitation to consider "whether there are barriers to entry into the relevant market" as referring to any barriers to entry in *producing* raw Grade A milk (as a dairy farmer), compared to purchasing it, or barriers to entering the

downstream market of selling processed milk products.  Similarly, plaintiffs' separate statement that the jury "should determine Defendants' market share as a percentage of *sales* of raw Grade A milk in the relevant market" is incorrect for a related reason (emphasis added).  This is a monopsony, not monopoly, case and the relevant market share therefore consists of DFA's share as a *buyer*, not as a *seller*.  *See generally Todd*, 275 F.3d at 202.  The Court should reject any instruction that conflates these concepts.

In place of plaintiffs' Proposed Instruction No. 21, DFA requests that the Court give DFA's Proposed Jury Instruction Nos. 33 and 34.

**Objections To Plaintiffs' Proposed Jury Instruction No. 22:**  In addition to Multiple Instruction Objections 1, 4, and 6, *supra* pp. 2-3, 5-6, 8-9, DFA also objects to this proposed instruction because it suggests that "anticompetitive" conduct by a Capper-Volstead qualified cooperative, like DFA, in general would violate Section 2 of the Sherman Act, as opposed to predatory conduct within the meaning of *Fairdale Farms v. Yankee Milk Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).

DFA also objects to plaintiffs' statement that anticompetitive acts include acts that have the effect of excluding the efforts of other companies to compete for *customers* within the relevant market.  Because this case sounds in monopsony, the appropriate inquiry is whether DFA engaged in any acts that exclude competition between *buyers*—not sellers—of raw milk.

Finally, DFA objects to this instruction to the extent that plaintiffs fail to identify a proper antitrust market, or properly instruct the jury regarding how to undertake this analysis, as set forth in DFA's Proposed Jury Instruction Nos. 33 and 34, incorporated herein.

Instead of plaintiffs' Proposed Instruction No. 22, DFA requests that the Court give DFA's Proposed Jury Instruction No. 35.

**Objections To Plaintiffs' Proposed Jury Instruction No. 23**:  DFA does not assert any additional specific objections to this proposed instruction beyond those set forth in Multiple Instruction Objections 1, 3, 4, and 6, *supra* pp. 2-6, 8-9.

DFA requests that the Court discard plaintiffs' Proposed Instruction No. 23 in its entirety. The instruction provides no guidance on the relevant law, and instead presents an inaccurate and one-sided account of plaintiffs' contentions in a manner that creates the prejudicial, confusing, and false impression that the enumerated actions would constitute "anticompetitive or predatory conduct" if proven.  In the alternative, DFA requests the opportunity to revise that instruction to fairly and accurately describe DFA's position as well.

**Objections To Plaintiffs' Proposed Jury Instruction No. 24**:  DFA does not assert any additional specific objections to this proposed instruction beyond those set forth in Multiple Instruction Objection 1, *supra* pp. 2-3, and in Multiple Instruction Objection 6, *supra* pp. 6-8, that this instruction does not properly instruct the jury on the law under *Fairdale Farms v. Yankee Milk Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).

**Objections To Plaintiffs' Proposed Jury Instruction No. 25**:  DFA does not assert any additional specific objections to this proposed instruction beyond those set forth in Multiple Instruction Objection 1, *supra* pp. 2-3, and in Multiple Instruction Objection 6, *supra* pp. 6-8, that this instruction does not properly instruct the jury on the law under *Fairdale Farms v. Yankee Milk Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).

**Objections To Plaintiffs' Proposed Jury Instruction No. 26**:  In addition to Multiple Instruction Objections 1, 4, and 6, *supra* pp. 2-3, 5-6, 8-9, DFA also objects to this proposed instruction because it omits without explanation language that makes clear that each plaintiff bears the burden to prove a relevant market for his Section 2 attempt to monopsonize claim—the same

as with his other Section 2 claims against DFA.  The omission of that language creates the confusing, unduly prejudicial and inaccurate impression that each plaintiff need not meet his burden on these elements in order to prove an attempted monopsony claim against DFA.  *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 100 (2d Cir. 1998) ("Attempted monopolization requires some degree of market power.  In considering the likelihood of achieving monopoly power, we employ the same concept of market power as that used in a completed monopolization claim, *i.e.*, one which considers the defendant's relevant market share in light of other market characteristics, including barriers to entry.").  This is not correct.

In place of plaintiffs' Proposed Instruction No. 26, DFA requests that the Court give DFA's Proposed Jury Instruction No. 39.

**Objections To Plaintiffs' Proposed Jury Instruction No. 27**:  DFA does not assert any additional specific objections to this proposed instruction beyond those set forth in Multiple Instruction Objections 1 and 4, *supra* pp. 2-3, 5-6, and in Multiple Instruction Objection 6, *supra* pp. 8-9, that this instruction does not properly instruct the jury on the law under *Fairdale Farms v. Yankee Milk Inc.*, 635 F.2d 1037, 1043 (2d Cir. 1980).

**Objections To Plaintiffs' Proposed Jury Instruction No. 28**:  In addition to Multiple Instruction Objections 1, 2, 5, and 6, *supra* pp. 2-4, 6-9, DFA further objects to the statement in subparagraph 2 that plaintiffs may satisfy the second element of their conspiracy to monopsonize claims by proving that "Defendants specifically intended that *one of the parties to the agreement* would obtain or maintain monopsony power."  Pls.' Proposed Instr. No. 28 (emphasis added).  This statement advances a legal theory of the case that no plaintiff has ever previously pled or identified to DFA.  As plaintiffs' numerous pleadings throughout this case have made clear, each plaintiff contends that "DFA specifically intended that ***it*** *would obtain or maintain monopsony power*" in

the relevant market.  DFA Proposed Jury Instr. No. 41 (emphases added); *see, e.g.*, Pls.' Revised First Am. Compl. ¶ 250, ECF No. 29 ("Defendants and the Co-Conspirators willfully conspired with the intent that DMS, as controlled by DFA, (or, to the extent that they are alter egos, DMS and DFA) would acquire, maintain and exploit monopoly/monopsony power I [sic] the raw Grade A milk market in the Northeast."); Pls.' Opp'n to Summ. J. at 8, ECF No. 109 ("The full supply and outsourcing agreements are intended *to give DFA control* over the independent farmers' milk." (emphasis added)); *id.* at 5 (arguing that supply and outsourcing agreements "secured monopsony power *for Defendants* because they controlled access to processors" (emphasis added)).

As a result, the jury may judge whether DFA engaged in an illegal conspiracy to monopsonize only on the basis of the claim that each plaintiff has pursued in this case.  Because no plaintiff has ever pursued a theory of liability that DFA or its alleged co-conspirators specifically intended that any entity other than DFA would obtain monopsony power for purposes of a Section 2 conspiracy to monopsonize claim, plaintiffs are foreclosed from asserting such a theory at trial.

DFA further objects to this instruction as incomplete and because it improperly deviates from the ABA Model Jury Instructions.  Plaintiffs assert that "[i]n considering Plaintiffs' claim for conspiracy to monopsonize, you may also aggregate the market share of the coconspirators in evaluating whether Defendants have monopsony power."  Pls.' Proposed Instr. No. 28.  The relevant model instruction includes no such language and of course, there are many factors that the jury may consider in assessing whether DFA possessed monopsony power for purposes of a conspiracy to monopsonize claim.  The Court should not present this one-sided assessment of the analysis to the jury.  To the extent the Court adopts any portion of plaintiffs' Proposed Instruction No. 28, DFA requests the opportunity to revise that instruction to ensure that it contains a complete

set of factors that the jury may consider in deciding DFA's alleged monopsony power for purposes of that discrete claim.

In place of plaintiffs' Proposed Instruction No. 28, DFA also requests that the Court give DFA's Proposed Jury Instruction No. 41.

**Objections To Plaintiffs' Proposed Jury Instruction No. 29:**  In addition to Multiple Instruction Objections 1, 4, 5, and 6, *supra* pp. 2-3, 5-9, DFA also objects to this proposed instruction because, as with plaintiffs' Proposed Instruction No. 28, it alleges that "Defendants specifically intended *that the members of the conspiracy*" would acquire or maintain monopsony power, rather than DFA.  Pls.' Proposed Instr. No. 29 (emphasis added).  As described in DFA's Objections to Plaintiffs' Proposed Jury Instruction No. 28, *supra* pp. 32-33, no plaintiff has ever pursued a theory of liability under Count I that DFA or its alleged co-conspirators specifically intended that any entity other than DFA would obtain monopsony power.  As a result, it is too late for any plaintiff to pursue such a theory now.

In place of plaintiffs' Proposed Instruction No. 29, DFA requests that the Court give DFA's Proposed Jury Instruction Nos. 42-43 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 30**:  In addition to Multiple Instruction Objections 1, 3, and 6, *supra* pp. 2-5, 8-9, DFA objects to this proposed instruction in its entirety.

As DFA has previously explained, the jury must be instructed about the existence of the Capper-Volstead Act and the fact that it expressly authorizes qualifying organizations to act together in associations to collectively process, prepare for market, handle, and market their products.  *See generally* July 21, 2020 Hr'g Tr. 106:14-107:22; *see also* 7 U.S.C. § 291.  The Court has stated that it "agree[s] with defendants that the jury needs to be told both in jury instructions

and through the presentation of evidence that the defendants are allowed to engage in certain agreements with the blessing of Congress under the Capper-Volstead immunity." July 21, 2020 Hr'g Tr. 131:3-7. As part of this statutory protection, qualifying agricultural cooperatives are legally permitted (1) to own and operate plants to process the farmers' agricultural products (here, raw milk), (2) to have marketing agencies in common such as DMS for the purposes of marketing raw milk, and (3) to make the necessary contracts and agreements to effect such purposes. *See* 7 U.S.C. § 291.

The jury must understand this legal framework in order to assess whether DFA's alleged conduct in this case—including its various agreements with other cooperatives—constitutes an unreasonable restraint of trade for purposes of each plaintiff's Section 1 claim. The jury must also have this legal context in order to assess whether any of DFA's alleged conduct—including its ownership and operation of processing plants—constitutes "predatory acts" for purposes of establishing a Section 2 violation. DFA provided this legal framework to the jury through DFA's Proposed Jury Instruction Nos. 17, 18, 29, and 35. These are the proper instructions that the jury should receive regarding DFA's affirmative defense, and they relate to the only questions the jury may decide: whether DFA has shown that the Capper-Volstead Act immunizes DFA's specific alleged conduct in this case, or whether that conduct can give rise to an antitrust violation under normal legal principles.

While DFA acknowledges that it has the affirmative obligation to prove that it qualifies for Capper-Volstead Act protections and intends to do so, it is DFA's position that, ultimately, there will be nothing for the jury to decide on this question. That is because, when the Act is properly interpreted, there can be no genuine dispute that DFA satisfies the necessary objective criteria

regarding the structure of its organization.  To qualify for the Capper-Volstead Act's protections, DFA must show that:

- Its membership is limited to persons engaged in the production of agricultural products (in this case, raw milk);

- DFA does not deal in the products of non-members to an amount greater in value than such as are handled by it for members;

- No member of DFA is allowed more than one vote because of the amount of stock or membership capital he may own, OR, DFA does not pay dividends on stock or membership capital in excess of 8% per annum; and

- DFA is operated for the mutual benefit of its members as producers.

*See* 7 U.S.C. § 291.

At trial, DFA will meet its burden and prove by undisputed evidence that it satisfies each of these four requirements.  Because the existence of DFA's Capper-Volstead Act *bona fides* will not raise any disputed question of fact for the jury to consider and resolve, pursuant to Federal Rule of Civil Procedure 50(a), the Court should determine that DFA has established the existence of its affirmative defense as a matter of law.  Because the jury will not be asked to decide any question of fact regarding whether DFA qualifies for Capper-Volstead Act immunity, there should be no reason for the Court to instruct the jury about the burden of proof for the defense or the Act's objective prerequisites.  Instead of asking the jury to decide *whether* DFA has met the statutory requirements of the Capper-Volstead Act, the proper course will be for the Court to instruct the jury that it is required to *accept* that DFA is a qualified cooperative and then explain *how* the Sherman Act applies to a cooperative that has established it is entitled to the Act's protections.

As set forth in DFA's own proposed jury instructions, DFA does not contend that the Capper-Volstead Act immunizes it from liability for the three specific types of anticompetitive

conduct that plaintiffs allege.[2]  But it is critical that the jury understand that, because of DFA's status as a qualified cooperative, the jury cannot rely on certain of DFA's conduct to find that it violated the Sherman Act.  Specifically, the jury must understand that it cannot find DFA liable based on (1) its ownership and operation of plants to process its and other farmers' raw milk, (2) its formation of marketing agencies in common, such as DMS, for the purpose of marketing raw milk, and (3) its having made necessary contracts and agreements to effect such purposes.

Plaintiffs' Proposed Instruction No. 30 is legally wrong.  Although plaintiffs correctly acknowledge that DFA's Capper-Volstead defense implicates two very different analytical questions—(1) whether DFA meets the threshold qualifications under the Act, and (2) whether DFA's *conduct* at issue in this case can give rise to a Sherman Act violation despite DFA otherwise qualifying for Capper-Volstead Act protection—the first half of plaintiffs' Proposed Instruction No. 30 improperly conflates these two issues.

For example, on the first question—*i.e.*, the threshold showing necessary to establish qualification under the Act—plaintiffs ask the Court to instruct the jury to determine whether DFA's members are producers of agricultural products (*i.e.*, farmers) by assessing "the nature of

---

[2]     According to plaintiffs' Proposed Jury Instructions, these three types of alleged anticompetitive agreements are:

> (1) agreements with other cooperatives not to compete for farmers' milk, including but not limited to, agreements not to solicit each other's members and to share pay prices;

> (2) agreements with processors not to compete for farmers' milk, including but not limited to outsourcing and long term supply agreements that coupled with most-favored nations pricing and kickbacks for non-competition; and

> (3) agreements to coerce farmers or who were independent farmers or belonged to other cooperatives to join DFA.

Pls.' Proposed Instr. No. 8; *see also id.* at No. 23.

DFA's activities" and the "degree of integration of its members."  Pls.' Proposed Instr. No. 30.

And plaintiffs want the Court to tell the jurors in connection with the element that the Act "does

not protect milk processors."  *Id.*  But that is wrong as a matter of law, on two levels.  First, the

"activities" in which DFA collectively engages, and the degree to which members are involved in

those "activities," have no bearing on the straightforward statutory question of whether the

*members* themselves are dairy farmers.  The only relevant statutory question is whether DFA's

*members* themselves are engaged in the production of raw milk.  The fact that *DFA*, the

organization, processes milk—which the Act expressly allows cooperatives to do—does not

transform the individual *members* of DFA from being dairy farmers into being milk processors.  If

that were so, no cooperative that processes the agricultural products of its members could qualify

for the protections of the Act.  Second, the instruction incorrectly suggests that milk processing as

an activity is not protected under the Act.  But that is not so.  Indeed, countless cooperatives in the

United States are also processors ***because the statute expressly permits that activity.***[3]  7 U.S.C. §

291 (emphasis added).  Whether the types of activities in which *DFA* supposedly engaged are

immunized under the Act is an entirely separate question from whether it has made a threshold

showing that its members are actually dairy farmers.

Similarly, as part of this first threshold question, plaintiffs wrongly ask the Court to instruct

the jury that "in order for DFA to claim protection under Capper-Volstead [as a qualifying

organization in the first instance], it is DFA's burden to establish [that] . . . [i]t is involved in the

---

[3]     Nor could plaintiffs argue that "too much processing" by the cooperative transforms members from farmers into processors.  The Act itself (in parts that plaintiffs do not mention) sets forth how to determine "how much processing is too much."  For example, "the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members."  7 U.S.C. § 291.  In other words, any cooperative that is processing a greater value of product from non-members than from its members would not be qualified under the Act.

processing, preparing for market, handling or marketing of the agricultural products of its members"[4] and that with respect to this requirement "the Capper-Volstead Act . . . does not authorize [cooperatives] to profit from [the ownership of their legally-permitted processing plants] at the expense of their own members." Pls.' Proposed Instr. No. 30.  But this reflects a fundamental misunderstanding of the different components of the Capper-Volstead Act.  Whether DFA's collective conduct constitutes the kind of "processing, preparing for market, handling or marketing of the agricultural products of its members" activity that the Act immunizes goes to the question of whether DFA's alleged behavior in this case constitutes an unreasonable restraint of trade or predatory conduct for purposes of giving rise to a Sherman Act violation.  It is not relevant to the threshold question of whether DFA's organization qualifies it as the kind of association that Congress wanted to protect.  Plaintiffs' careless drafting would improperly blur the two questions in a way that would result in clear error if presented to the jury.

Similarly, plaintiffs' proposed instruction informs the jury that "Plaintiffs contend that DFA does not act for the mutual benefit of its members"; "DFA maintains that it does"; and "[t]his is a question for you to decide"; it never once, however, provides the jury with any guidance or standard for determining whether DFA is operated for the mutual benefit of its members within the meaning of the Act and the law.  Pls.' Proposed Instr. No. 30.  As DFA has explained at length in its briefings for its Motion *in Limine* No. 9, plaintiffs' suggestion—which would transform the mutual benefit inquiry into a wholly subjective and standard-less review into how DFA operates its member-owned processing assets and the wisdom of its various business decisions—is unworkable, wholly unsupported by the law, and would harm the very farmers it ostensibly seeks

---

[4]      As stated, this is another misstatement of the law.  The Act expressly permits cooperatives to handle products produced by non-members, so long as they do not handle non-members' products to an amount greater in value than members' products.  *Id.*

to protect.  DFA's Mot. *in Limine* No. 9 at 3-14, ECF No. 234.  The Court should reject this approach.

In the event the Court does not conclude that DFA has met its burden to prove its Capper-Volstead defense at the Rule 50(a) stage and concludes that it must instruct the jury regarding DFA's threshold qualification as a Capper-Volstead Act-protected entity, DFA proposes the following instruction, to follow DFA's Proposed Jury Instruction No. 18:

\* \* \* \*

### DFA's Proposed Jury Instruction:  Capper-Volstead Act - Qualifications

There are four main requirements that a cooperative like DFA must meet in order to qualify as the type of entity entitled to the protections afforded by the Capper-Volstead Act.  *See* 7 U.S.C. § 291.  DFA has the burden of proving that each of these requirements are met.

First, the cooperative must limit its membership to persons engaged in the production of agricultural products (in this case, milk).  *Id.*  This simply means that all of DFA's voting members must be dairy farmers engaged in the production of raw milk and no processor not also engaged in the production of raw milk may be a member of DFA.  *See generally Case-Swayne Co., Inc. v. Sunkist Growers, Inc.*, 389 U.S. 384, 394-96 (1967); *Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816 (1978).  The fact that DFA itself owns processing plants does not defeat this requirement, so long as no non-farming processors are themselves DFA members.  *Nat'l Broiler Mktg.*, 436 U.S. at 824-25.

Second, the cooperative must not deal in the products of non-members to an amount greater in value than such as are handled by it for members.  7 U.S.C. § 291.  If DFA shows that the value of its annual business done with or on behalf of its members exceeds the value of its annual business done with or on behalf of non-members, this requirement has been satisfied.  *See*

*generally In re: Processed Egg Prods. Antitrust Litig.*, 322 F. Supp. 3d 599, 600-04 (E.D. Pa. 2018).

Third, either (a) no member of the cooperative may be allowed more than one vote because of the amount of stock or membership capital he may own, or (b) the cooperative may not pay dividends on stock or membership capital in excess of 8% per annum.  7 U.S.C. § 291.

And finally, a cooperative must be operated for the mutual benefit of the members thereof, as such producers.  *Id.*  The key word in this provision is "mutual."  This requirement is designed to ensure that DFA is structured in such a way that all of DFA's farmer-members share in the benefits and burdens of owning the cooperative.  Evidence that DFA's farmer-members all participate in the results of the cooperative and *mutually* share in the highs and lows of DFA's ownership—the profits and the losses of it—is evidence that DFA is operated for the mutual benefit of its members.  This does not mean that all members must equally benefit from any decision by DFA or that every decision by DFA must benefit every member.  *See Bell v. Fur Breeders Agric. Coop.*, 348 F.3d 1224, 1235 (10th Cir. 2003) (noting that a cooperative's decisions could not be expected to "always benefit every individual member").  It is enough that all of DFA's members mutually obtain, or share in, the returns that accrue to DFA's members as producers from DFA's collective marketing of their products (here, raw milk).

* * * *

If the Court determines that it must instruct the jury regarding DFA's threshold qualifications under the Act, DFA requests that it give the proposed instruction above, and then combine that proposed instruction with DFA's Proposed Jury Instruction Nos. 17, 18, 29, and 35. DFA requests that the Court discard plaintiffs' Proposed Instruction No. 30 in its entirety.

**<u>Objections To Plaintiffs' Proposed Jury Instruction No. 31</u>**:  In addition to Multiple Instruction Objections 1, 3, 5 and 7, *supra* pp. 2-4, 6-8, 10-11, DFA also objects to this proposed instruction because it is wrong in the event that plaintiffs ultimately intend to pursue a Section 1 or conspiracy-to-monopsonize claim based on multiple separate conspiracies.  As set forth above, plaintiffs may not pursue any theory of liability against DFA based on multiple separate alleged conspiracies (instead of the single overarching conspiracy theory that they have pursued to date) at this point in the case.  In the event the Court permits them to do so, however, the statement that "plaintiffs can rely on the aggregate effect of the alleged conspiracy" in proving the existence of antitrust injury is wrong as a matter of law for purposes of any plaintiff's Section 1 claim.  *See* Pls.' Proposed Instr. No. 31.  To the extent this Court's ruling on summary judgment holds otherwise, DFA respectfully maintains this ruling is incorrect for the reasons set forth during the summary judgment process and by DFA's Proposed Jury Instruction No. 23.  *See generally* DFA's Mem. in Supp. of Mot. for Summ. J. at 4-11, ECF No. 92; DFA's Reply in Supp. of Mot. for Summ. J. at 1-7, ECF No. 115.

Plaintiffs are incorrect that "plaintiffs can rely on the aggregate effect of the alleged conspiracy" for an additional reason.  *See* Pls.' Proposed Instr. No. 31.  As this Court has previously recognized, "many of the acts that Plaintiffs allege caused them injury took place more than four years prior to the filing of Plaintiffs' initial Complaint.  In the absence of a continuing violation, these acts cannot form the basis of Plaintiffs' antitrust claims." *Allen v. Dairy Farmers of Am., Inc*., 748 F. Supp. 2d 323, 348 (D. Vt. 2010); *see also Allen v. Dairy Farmers of Am., Inc*., 2014 WL 2610613, at *24-26 (D. Vt. June 11, 2014).  Plaintiffs do not assert a continuing violation.  July 21, 2020 Hr'g Tr. 72:25-73:6 (Reiss, J.:  "I know your evidence seeks to present this was going on before the limitations period and it's going on during it, but I didn't think you

were strictly making a continuing violations argument." Zakarian, D.: "We're not, your honor."). Plaintiffs' instruction fails to provide any guidance or meaningful basis for the jury to determine whether any "injury in fact" occurred prior to or after October 8, 2005. Nor does it provide any basis to disaggregate the time-barred conduct from any post-limitations conduct for purposes of determining which was a material cause of plaintiffs' injury. In place of plaintiffs' Proposed Instruction No. 31, DFA requests that the Court give DFA's Proposed Just Instruction Nos. 44 and 45 instead.

**Objections To Plaintiffs' Proposed Jury Instruction No. 32**: In addition to Multiple Instruction Objections 1, 3, 5, and 7, *supra* pp. 2-4, 6-8, 10-11, DFA also objects to this proposed instruction in its entirety. First, the instruction simply reiterates plaintiffs' proposed method for proving injury and damages for every plaintiff in the case, while providing no guidance to the jury regarding the law that it must apply in deciding the elements of impact and damages. The effect of an instruction like this is to ascribe undue weight to plaintiffs' theory of the case regarding the alleged effect of DFA's purported conduct. This is improper. Jury instructions are supposed to provide a "complete and accurate framework within which counsel could argue their view of the facts." *Noel v. Artson*, 641 F.3d 580, 588-89 (4th Cir. 2011). They are not the proper place for the parties to argue their view of the case; nor is the Court required to argue a party's contentions for it, *id.*, or to provide an unbalanced presentation of the allegations and facts, as plaintiffs do here. *See, e.g.*, *Uhlig LLC. v. Shirley*, 2012 WL 2923242, at *19 (D.S.C. July 17, 2012) (refusing to give instructions that were "unbalanced and unnecessarily buttressed defendants' position"); *Dranchak v. Akzo Am., Inc.*, 1993 U.S. Dist. LEXIS 12566, at *6-7 (N.D. Ill. Sept. 9, 1993) (refusing party's request to give instructions that "unduly emphasize[d] the defendant's version of the facts"). It would be error to present plaintiffs' proposed instruction to the jury for this reason.

Moreover, plaintiffs' proposed instruction mischaracterizes DFA's position; it incorrectly instructs the jury on the nature of the inquiry it must undertake in deciding whether each plaintiff has met its burden to prove injury and damages; and improperly suggests that the jury must place dispositive weight on either side's expert testimony, when unequivocally, it need not.  All of this is wrong.

First, plaintiffs' instruction states:

> Both sides have presented you with expert testimony to assist you in determining what, if any, antitrust impact or damages were sustained by Plaintiffs.  It is for you to decide whether to accept or reject the experts' testimony.  The verdict slip will ask you questions concerning your findings on whether there was market wide suppression.

Pls.' Proposed Instr. No. 32.  In doing so, plaintiffs (yet again) try to suggest that the jury's analysis of whether each plaintiff has proven impact and damages can be reduced to a binary, "yes or no" question about whether the jury accepts Professor Elhauge's regression.  But the jury has no legal duty "to decide whether to accept or reject the experts' testimony," *id.*, as a zero-sum proposition, and the verdict will not require any such decision with respect to individual expert testimony.

To the contrary, in deciding whether each plaintiff has proven impact, the jury is entitled to consider a wide array of evidence—expert and otherwise—in analyzing whether each plaintiff received lower pay premiums than he otherwise would have because of something illegal that DFA allegedly did.  Depending on what happens at the Federal Rule of Civil Procedure 50(a) stage, the expert regression in this case may be merely one piece of that evidence that the jury may consider in reaching its decision.

In the event the jury is permitted to consider the regression at all, it will be entitled to place whatever weight on this expert evidence / regression as it sees fit, and this decision may vary from plaintiff to plaintiff.  It is entirely possible in that circumstance, for example, that the jury could accept the plaintiffs' expert's regression as persuasive evidence of impact for some plaintiffs, but

not for others.  It could, for example, find the regression dispositive of impact as to Thomas Clark due to the circumstances of Mr. Clark's farm and the options available to him for marketing his milk, while at the same time refusing to award the regression any weight in deciding Donald Hymer's claim for impact, due to the realities of Mr. Hymer's business and the prices he received for his milk.  And it could give the regression some, but not dispositive, weight as to Eric Visser in light of his own, unique circumstances.  The "one-size-fits-all" approach that plaintiffs seek to force upon the jury simply does not exist.

Second, the instruction mischaracterizes DFA's own position on each plaintiff's injury and damages claims by suggesting incorrectly to the jury that DFA's defense to these elements amounts solely to a rebuttal of Professor Elhauge's contentions and depends entirely on contrary analysis from DFA's own experts.  But as plaintiffs are well aware, DFA intends to defend against each plaintiff's claim of impact and damages on an individualized basis by introducing factual, non-expert evidence from its own witnesses (as well as evidence elicited from the individual plaintiffs through cross examination) regarding the individualized circumstances of each plaintiff's farm.  This factual, non-expert evidence will show that no plaintiff in this case received lower pay premiums than they otherwise would have due to DFA's alleged conduct.  Plaintiffs' attempt to reduce DFA's defense on impact and damages to a battle of the experts is misleading, one-sided, incorrect, and unduly prejudicial to DFA.

The reality is that the expert evidence in this case simply cannot be treated as automatically dispositive of injury and damages in the way that plaintiffs suggest.  Because plaintiffs' proposed instruction improperly ascribes this evidence undue weight and importance—while insinuating that the jury need not give equal consideration or weight to other important, non-expert evidence that is probative of injury and damages—it is wrong as a matter of law and wholly incompatible

with the ABA Model Jury Instructions, which instruct the jury to undertake a holistic view of the evidence in deciding whether plaintiffs have met their burden on both elements of this claims.  Nor should the verdict form require the jury to decide whether it "accepts or rejects" any expert evidence in this case.  The viability of plaintiffs' expert analysis is not an ultimate question that the jury must decide; it is merely one piece of evidence that it may consider—or not—in deciding whether plaintiffs have met their burden on the required elements of their claim.  It would be error for the Court to instruct the jury otherwise.

DFA requests that the Court discard plaintiff's Proposed Instruction No. 32 in full.

**Objections To Plaintiffs' Proposed Jury Instruction No. 33**:  In addition to Multiple Instruction Objections 1, 5, and 7, *supra* pp. 2-3, 6-8, 10-11, DFA also objects to this proposed instruction because it fails to inform the jury that it may only award compensatory damages and may not award punitive damages or attorneys' costs and fees.  *See* ABA Model Jury Instr. at B-304.  Through these omissions, plaintiffs' proposed instruction invites the jury to render a legally erroneous award of damages that are not recoverable under the antitrust laws in this case.

Second, this instruction fails to instruct the jury that each plaintiff has the "burden of showing that his or her injuries were caused by DFA's alleged violations, as opposed to any other factors."  DFA's Proposed Jury Instr. No. 48.  That omission is particularly important in this case, where each plaintiff's theory of damages requires disaggregating elements of that plaintiff's milk payments that are controlled by the Government or influenced by other market factors that are not alleged to have been affected by the allegedly unlawful conduct in this case.

Finally, as discussed above, this instruction fails to instruct the jury that it may not award damages for any adverse impact felt by a plaintiff before October 8, 2005, or for damages that

flowed from any acts occurring before October 8, 2005.  *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 339-40 (1971).

In place of plaintiffs' Proposed Instruction No. 33, DFA requests that the Court give DFA's Proposed Jury Instruction Nos. 45, 46, and 48.

**Objections To Plaintiffs' Proposed Jury Instruction No. 34**:  DFA does not assert any additional specific objections to this proposed instruction beyond those set forth in Multiple Instruction Objections 1, 5, and 7, *supra* pp. 2-3, 6-8, 10-11.

**Objections To Plaintiffs' Proposed Jury Instruction No. 35**:  In addition to Multiple Instruction Objections 1, 5, and 7, *supra* pp. 2-3, 6-8, 10-11, DFA also objects to this proposed instruction as irrelevant and unnecessary because DFA and DMS are the only defendants in the case (and, because DMS is DFA's agent, they are a single entity under the law).  The Court should thus discard plaintiffs' Proposed Jury Instruction No. 35 in its entirety.

Dated:  August 5, 2020                    Respectfully submitted,

                                          /s/ *Alfred C. Pfeiffer Jr.*
                                          Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                          Sarah M. Ray (admitted *pro hac vice*)
                                          LATHAM & WATKINS LLP
                                          505 Montgomery Street, Suite 2000
                                          San Francisco, CA 94111
                                          Telephone:  415-391-0600
                                          Facsimile:  415-395-8095
                                          Email:  al.pfeiffer@lw.com
                                          Email:  sarah.ray@lw.com

                                          Margaret M. Zwisler (admitted *pro hac vice*)
                                          Jennifer L. Giordano (admitted *pro hac vice*)
                                          Molly M. Barron (admitted *pro hac vice*)
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW, Suite 1000
                                          Washington, DC 20004
                                          Telephone:  202-637-2200
                                          Facsimile:  202-637-2201
                                          Email:  margaret.zwisler@lw.com
                                          Email:  jennifer.giordano@lw.com
                                          Email:  molly.barron@lw.com

                                          W. Todd Miller (admitted *pro hac vice*)
                                          BAKER & MILLER PLLC
                                          2401 Pennsylvania Avenue, NW, Suite 300
                                          Washington, DC 20037
                                          Telephone:  202-663-7820
                                          Facsimile:  202-663-7849
                                          Email:  tmiller@bakerandmiller.com

                                          Ian P. Carleton
                                          SHEEHEY FURLONG & BEHM P.C.
                                          30 Main Street, P.O. Box 66
                                          Burlington, VT 05402
                                          Telephone:  802-864-9891
                                          Email:  icarleton@sheeheyvt.com

                                          *Counsel for Defendants Dairy Farmers of America,*
                                          *Inc. and Dairy Marketing Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)
Jason M. Turner, Esq. (jason.turner4@usdoj.gov)
Shapleigh Smith, Jr., Esq. (ssmith@dinse.com)
Marvin Beshore, Esq. (mbeshore@johnsonduffie.com)


Dated:  August 5, 2020                          /s/ *Alfred C. Pfeiffer Jr.*
                                                Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
                                                LATHAM & WATKINS LLP
                                                505 Montgomery Street, Suite 2000
                                                San Francisco, CA 94111
                                                Telephone:  415-391-0600
                                                Facsimile:  415-395-8095
                                                Email:  al.pfeiffer@lw.com