UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRETT SITTS, et al.,<br><br>          PLAINTIFFS,<br><br>     v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>          DEFENDANTS. | Civil Action No. 2:16-cv-00287-cr |

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRETT SITTS, et al.,<br><br>        PLAINTIFFS,<br><br>   v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>        DEFENDANTS. | Civil Action No. 2:16-cv-00287-cr |

**PLAINTIFFS' PROPOSED SPECIAL VERDICT SLIP**

**COUNT I – CONSPIRACY TO MONOPSONIZE (SHERMAN ACT SECTION 2)**

1. Did Defendants combine or conspire with other cooperatives or processors to monopsonize the conventional raw Grade A milk market in Order 1?

    _____       _____
    Yes                           No

    (If your answer is "Yes," please proceed to the next question. If your answer is "No," please proceed to question 7)

2. Did Defendants engage in predatory conduct (*i.e.*, acts intended to restrain competition) in furtherance of the combination or conspiracy?

    _____       _____
    Yes                           No

    (Please proceed to the next question)

3. Between 2005 and 2017, did Defendants commit an overt act (predatory or non-predatory) in furtherance of the combination or conspiracy?

    _____       _____
    Yes                           No

    (If your answer is "Yes," please proceed to the next question. If your answer is "No," please proceed to question 7)

4. Did the combination or conspiracy suppress the over-order premiums for conventional raw Grade A milk in the *entire market* of Order 1?

   _____         _____
   Yes                          No

   (Please proceed to the next question)

5. Defendants have asserted Capper-Volstead immunities as an affirmative defense to this claim. To qualify for Capper-Volstead immunities, DFA must operate for the mutual benefit of its members as producers of conventional raw Grade A milk. Do you find that DFA operates for the mutual benefit of its members as producers of conventional raw Grade A milk?

   _____         _____
   Yes                      No

   (If your answer is "Yes" to this question *and* you answered "No" to question 2 (*i.e.*, you found that combination or conspiracy did *not* use predatory acts) then please proceed to question 7. If you answered "No" to question 4, please proceed to question 7. Otherwise, please proceed to the next question)

6. How much did the combination or conspiracy suppress the over-order premiums for conventional raw Grade A milk in Order 1?

   $_____ per cwt.

   (Please proceed to the next question)

### COUNT II – ATTEMPTED MONOPSONY (SHERMAN ACTION SECTION 2)

7. Did Defendants attempt to monopsonize the conventional raw Grade A milk market in Order 1?

   _____         _____
   Yes                        No

   (If your answer is "Yes," please proceed to the next question. If your answer is "No," please skip questions 8 and 9, and proceed to question 10)

8. Did Defendants attempt to monopsonize suppress the over-order premiums for conventional raw Grade A milk in the *entire market* of Order 1?

   _____         _____
   Yes                        No

2

(If your answer is "Yes" please proceed to the next question. If your answer is "No," please skip question 9 and proceed to question 10)

9. How much did the conspiracy to monopsonize suppress the over-order premiums for conventional raw Grade A milk in Order 1?

    $_____ per cwt (this will be the same amount as your answer to question 6).

(Please proceed to the next question)

### **COUNT III – MONOPSONY (SHERMAN ACTION SECTION 2)**

10. Did Defendants willfully acquire or maintain monopsony power in the conventional raw Grade A milk market in Order 1?

    _____           _____
    Yes                      No

    (If your answer is "Yes," please proceed to the next question. If your answer is "No," please proceed to question 15)

11. Did Defendants engage in predatory conduct (*i.e.*, conduct intended to restrain competition) to acquire or maintain their monopsony power?

    _____           _____
    Yes                      No

    (Please proceed to the next question)

12. Did Defendants use their monopsony power to suppress the over-order premiums for conventional raw Grade A milk in the *entire market* of Order 1?

    _____           _____
    Yes                      No

    (If you answered "No" please skip question 13 and proceed to question 15. If you answered "Yes" please proceed to the next question)

13. Defendants have asserted Capper-Volstead immunities as an affirmative defense to this claim. To qualify for Capper-Volstead immunities, DFA must operate for the mutual benefit of its members as producers of conventional raw Grade A milk. Do you find that DFA operates for the mutual benefit of its members as producers of conventional raw Grade A milk? (If you answered question 5, your answer should be the same)

    _____           _____
    Yes                      No

If you answered "Yes" to questions 13 (*i.e.*, you found that Defendants have Capper-Volstead immunities) *and* you answered "No" to question 11 (*i.e.*, you found that Defendants did *not* engage in predatory acts, then please skip question 14 and proceed to question 15. Otherwise, please proceed to question 15.

14. How much did Defendants use of their monopsony power suppress the over-order premiums for conventional raw Grade A milk in Order 1?

    $_____ per cwt. (this will be the same amount as your answers to question 6 and 9)

(Please proceed to the next question)

## COUNT IV – CONSPIRACY TO RESTRAIN TRADE (SHERMAN ACT SECTION 1)

15. Defendants have asserted Capper-Volstead immunities as an affirmative defense to this claim. To qualify for Capper-Volstead immunities, DFA must operate for the mutual benefit of its members as producers of conventional raw Grade A milk. Do you find that DFA operates for the mutual benefit of its members as producers of conventional raw Grade A milk? (If you answered questions 5 or 13, your answer should be the same)

    _____          _____
    Yes                  No

    If you answered "No" to this question, then you must answer "Yes" to question 16 because without Capper-Volstead immunities, DMS is itself an agreement, combination, or conspiracy to restrain trade. If you answered "Yes" to this question then please answer question 16.

16. Do you find by a preponderance of the evidence that Defendants participated in a conspiracy, combination, or agreement to restrain trade in the conventional raw Grade A milk market in Order 1?

    _____          _____
    Yes                  No

    (If your answer is "Yes," please proceed to the next question. If your answer is "No," please skip questions 17 and 18, and proceed to question 19)

17. Do you find by a preponderance of the evidence that the conspiracy to retrain trade suppressed the over-order premiums for conventional raw Grade A milk in the *entire market* of Order 1?

    _____          _____
    Yes                  No

4

(If your answer is "Yes" please proceed to the next question. If your answer is "No," please proceed to question 19)

18. How much did the conspiracy to restrain trade suppress the over-order premiums for conventional raw Grade A milk in Order 1?

   $_____ per cwt. (this will be the same amount as your answers to question 6, 9 and 14)

(Please proceed to the next question)

5

**DAMAGES**

If you answered either question 6, 9, 14, or 18, please answer question 18. Otherwise, please proceed to question 20.

19. Please state the amount of damages that you award to each plaintiff by multiplying the price suppression per cwt (your answer to questions 6, 9, 14 or 18) by the total amount of cwts of conventional raw Grade A milk produced by each Plaintiff (as set forth below).

| Plaintiff | Price Suppression per cwt (from your answers to questions 6, 9, 14, or 18) | Total cwts of milk produced during damages period | Damages Awarded (= price suppression X total cwts produced) |
|---|---|---|---|
| Victor Barrick | | 1,355,076.97 | $ |
| Logan Bower | | 1,743,209.45 | $ |
| Mark and Dwight Brandenburg | | 1,455,484.65 | $ |
| Thomas Clark | | 430,867.89 | $ |
| Gerry DeLong | | 1,293,496.59 | $ |
| Mark and Barbara Dulkis | | 14,164.00 | $ |
| Glen Eaves | | 2,614,947.46 | $ |
| Richard Gantner | | 98,471.92 | $ |
| Stefan and Cindy Gieger | | 138,661.24 | $ |
| Scott and Gail Hymers | | 149,279.30 | $ |
| Randy and Lynette Inman | | 51,551.97 | $ |
| John and Frank Lamport | | 341,323.76 | $ |
| Russell and Diane Maxwell | | 128,548.80 | $ |
| Walt Moore | | 2,776,976.97 | $ |
| Michael Nissly | | 875,339.87 | $ |
| Calvin Roes | | 183,175.57 | $ |
| Bradley Rohrer | | 1,693,982.49 | $ |
| Donald T. and Donald M. Smith | | 324,569.76 | $ |
| Judy and Ken Tompkins | | 350,207.72 | $ |
| Mark and Eric Visser | | 497,421.35 | $ |

(Please proceed to the next question)

6

## **INJUNCTIVE RELIEF**

20. Should the Court enjoin Defendants from entering into new full supply agreements with a milk processor in Order 1?

    _____                    _____
    Yes                                         No

    (Please proceed to the next question)

21. Should enjoin Defendants from entering into agreements with other cooperatives or processors not to compete for farmers' milk in Order 1?

    _____                    _____
    Yes                                         No

    (Please proceed to the next question)

22. Should the Court order Defendants to divest raw Grade A milk processing plants necessary to restore competition in Order 1?

    _____                    _____
    Yes                                         No

    (Please proceed to the next question)

23. Should the Court order Defendants to divest raw Grade A milk balancing plants necessary to restore competition in Order 1?

    _____                    _____
    Yes                                         No

    (Please sign the verdict slip and return)

_____
Foreperson
Date: _____

7