UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| GARRETT SITTS, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>DAIRY FARMERS OF AMERICA, INC., and DAIRY MARKETING SERVICES, LLC,<br><br>DEFENDANTS. | Civil Action No. 2:16-cv-00287-cr |

**PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO FILE BRIEF OF THE *AMICI CURIAE***

Plaintiffs oppose National Council of Farmer Cooperatives' ("NCFC"), National Cooperative Business Association's ("NCBA") and CoBank, ACB's ("CoBank") (collectively, the "DFA Proxies") motion for leave to file a brief as *amici curiae* responding to the Statement of Interest filed by the United States of America on July 27, 2020 [ECF 285].  As detailed below, the DFA Proxies' motion should be denied because they amount to nothing more than partisan "friends" of Defendants, offering no unique insights or assistance to the Court.  Indeed, DFA is a member of NCFC and the same executives who directed DFA's antitrust violations (Rick Smith and Greg Wickham) sit on its board of directors.  In short, this purported "*amicus* brief" is a transparent attempt by Defendants to have purported "neutral" parties counterbalance the Department of Justice's outright rejection of Defendants' legal arguments on Capper-Volstead.

**ARGUMENT**

This Court is afforded "broad discretion in deciding whether to accept *amicus* briefs." *Jamaica Hosp. Med. Ctr., Inc. v. United Health Group, Inc.*, 584 F. Supp. 2d 489, 497 (E.D.N.Y 2008) (denying motions).  "The usual rationale for *amicus curiae* submissions is that they are of

aid to the court and offer insights not available from the parties." *Citizens Against Casino Gambling in Erie Cty. v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007). The "circumstances under which an *amicus* brief is considered 'desirable,'" however, are quite "limited." *Id.* In particular:

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case . . . or when the amicus has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide. Otherwise, leave to file an amicus brief should be denied.

*United States v. Hunter,* 1998 WL 372552, at * 1 (D. Vt. June 10, 1998) (citing *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)) (denying motion because the *amici's* argument was "ably set forth by Defendant's counsel in his briefing"); *Jamaica Hosp.*, 584 F. Supp. 2d at 497 (same).

The purpose of *amicus* briefs is to "serve" the Court as "an objective, neutral, dispassionate 'friend of the Court.'" *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991); *Hunter*, 1998 WL 372552, at * 1 ("The term "amicus curiae" means friend of the court, not friend of a party.") (internal citations omitted). However, where *amici* do not "come as a 'friend of the court'"—*i.e.*, "objective, dispassionate, neutral"—motions for leave to file an *amicus* brief should be denied:

> Rather than seeking to come as a "friend of the court" and provide the court with an objective, dispassionate, neutral discussion of the issues, it is apparent that the [*amici*] has come as an advocate for one side, having only the facts of one side at the time. In doing so, it does the court, itself and fundamental notions of fairness a disservice. Chief Judge Aldrich cautioned in *Strasser v. Doorley, supra,* that it "may be thought particularly questionable" for the court to accept an *amicus* when it appears that the parties are well represented and that their counsel do not need supplemental assistance and where the joint consent of the parties to the submission by the *amicus* is lacking.

*Gotti*, 755 F. Supp. at 1159 (citing *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970));

*Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011) ("[T]he partiality of an *amicus* is a factor to consider in deciding whether to allow participation.").

### I. The DFA Proxies Are Not Friends of this Court—They Are Friends of Defendants

The DFA Proxies are not "objective, dispassionate [or] neutral." *Gotti*, 755 F. Supp. at 1159. Indeed, as evidenced by their proposed *Amici* Brief, they are incredibly passionate and far from objective or neutral:

> We cannot overstate the significance of these ripple-effect liability concerns. If Capper-Volstead exempt status is subject to currently unarticulated internal financial and operational criteria under the guise of the mutual benefit test, all cooperatives and all farmer-members of cooperatives will face an antitrust risk of unknown metes and bounds and untold magnitude. The court should not accept the invitation to go down this road.

DFA Proxies' Brief [292-1] at 14; *id.* at 13 ("This antitrust risk is literally an economic life-and-death matter for the great majority of individual cooperative members and for most cooperatives.").

Moreover, the DFA Proxies are clearly friends of DFA. Indeed, DFA is a member of NCFC and its biggest contributor from 2004 to the present—contributing over $100,000 (or $10,000 per year), with individual DFA executives contributing additional funds. *See* Exhibit A.[1]  Both Rick Smith (CEO) and Greg Wickham (CFO)—executives who personally directed and participated in the anticompetitive conduct at issue—sit on the board of directors of NCFC. *See* Exhibit B.

---

[1] The DFA Proxies state that DFA "has not made any ***direct*** monetary contribution to fund the preparation or submission of the *amicus* brief." (DFA Proxies' Motion [ECF 292] at 1 n.1) (emphasis added). This comment begs the questions: were there *direct* contributions by DFA executives? Or indirect contributions by DFA?

3

Similarly, CoBank has provided funding to DFA—Wickham has even recognized that "CoBank is a longtime financial partner for DFA." *See* Exhibit C.  CoBank, meanwhile, has praised DFA as one of "the premier milk marketing cooperatives in the nation." *Id.*  And, contrary to DFA Proxies' contention (DFA Proxies' Motion at 2), Michael Marley sits on (or sat on, as recently as 2020) the Board of Directors for both CoBank and DFA, Southwest Council. *See* Exhibit D.

Counsel for the DFA Proxies (Marvin Beshore), moreover, has represented DFA in countless matters throughout the country and has otherwise repeatedly acted on DFA's behalf.[2] *See, e.g.*, *Northwest Independent Milk Producers Association*, Case No. 1:03cv00700 (Mar. 28, 2003) (on behalf of intervening defendants (DFA)); *Dairy v. Veneman*, Case No. 02-3422 (7th Cir. 2003) (on behalf of intervening defendants (DFA)); *Dairylea Co-op. Inc. v. Pennsylvania Milk Marketing Bd.*, 3 A.3d 712 (Pa. Comm. Ct. 2010) (on behalf of petitioners (DFA) for review of the Milk Marketing Board Order); *White Eagle Co-op Assoc. v. Johanns*, 508 F. Supp. 2d 664 (N.D. Ind. 2007) (on behalf of defendants/intervenors (DFA)); *Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778 (D.D.C. 2006).[3]

---

[2] The DFA Proxies further state that "Mr. Beshore is not currently engaged to represent DFA on any matters."  (DFA Proxies' Motion at 2).  As recently as April 2020, Mr. Beshore was engaged on behalf of certain cooperatives, marketing agencies and associations, of which DFA was a member.  *See, e.g.*, Letter from M. Beshore to USDA (Apr. 27, 2020), *available at:* https://www.ams.usda.gov/sites/ default/files/media/DairyFormalHearingRequest.pdf.  Mr. Beshore's biography, moreover, states that he "***presently*** serves as counsel to the Pennsylvania Association of Dairy Cooperatives," Exhibit E (emphasis added), which includes DFA.

[3] In fact, Mr. Beshore has been identified as a "lawyer for DFA" in articles.  *See* Andrew Martin, *He Sells Milk for Half the Price You Pay. The Feds Want to Stop Him.  Why?* (Feb. 19, 2006), *available at:* https://www.chicagotribune.com/news/ct-xpm-2006-02-19-0602190391-story.html; *see also In re: Milk in California*, Docket No. 15-0071 (U.S.D.A.), Comments by DFA (June 19, 2017), *available at*: https://www.reginfo.gov/public/do/DownloadDocument?objectID= 76124100; *In the Matter of Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas*, Docket No. AO-368-832 (U.S.D.A.), Brief for DFA (Aug. 2, 2004), *available at*:

Such partisan interest is improper for an *amicus curiae* status and the Court should deny such status here, where it is apparent that the DFA Proxies are simply advocating for Defendants. *See, e.g.*, *S.E.C. v. Bear, Stearns & Co. Inc.,* 2003 WL 22000340, at * 5 (S.D.N.Y. Aug. 25, 2003*)* ("Conferring *amicus* status on such partisan interests is inappropriate."); *Sequa Corp. v. Gelmin*, 1999 WL 33301666, at * 1 (S.D.N.Y. Dec. 22, 1999) (rejecting *amicus* brief because *amici* were "so firmly upon the side of Defendants that they [were] almost acting as an additional advocate"); *Long Island Soundkeeper Fund, Inc. v. New York Athletic Club,* 1995 WL 358777, at * 1 (S.D.N.Y. June 14, 1995) ("Denial of leave to appear as *amicus* in a situation such as this, in which the applicant appears to have its own particular interests in the outcome of the litigation, is far from unprecedented."); *Goldberg v. City of Philadelphia*, 1994 WL 3698755, at * 1 (E.D. Pa. July 14, 1994) ("When an organization seeking leave to appear as *amicus curiae* is perceived to be an advocate for one of the parties to the litigation, leave to appear *amicus curiae* should be denied.").

## II.     The DFA Proxies' Motion for Leave Does Not Meet the Limited Circumstances in Which *Amicus* Briefs Are "Desirable"

*First*, it is undisputed that Defendants are competently represented. *Hunter*, 1998 WL 372552, at * 1.  Indeed, Defendants have filed at least three briefs with the Court on the Capper-

---

http://www.dairyprogramhearing.com/getfilef85cf85c.pdf?dDocName=STELDEV3102563; *In re: Milk in the Pacific Northwest Marketing Area*, Docket No. AO-368-A24 (U.S.D.A.), Post Hearing Brief Submitted by DFA (Jan. 23, 2002), *available at:* http://dairyprogramhearing.com/getfilecb81cb81.pdf?dDocName=STELPRD3107302; *In the Matter of Milk in the Northeast and Other Marketing Areas*, Docket No. AO-14-869 (U.S.D.A.), Post-Hearing Brief Submitted by DFA (July 14, 2000), *available at:* https://www.ams.usda.gov/sites/default/files/media/DYBLMBeshoreIIIVHearing2000.pdf; Letter Submitting DFA's and DMS's Statement to the Pennsylvania Milk Marketing Board (Feb. 10, 2017), *available at*: https://www.mmb.pa.gov/Public%20Hearings/F2017/ Documents/DFA-DMS%20letter.pdf; Letter to USDA on behalf of DFA (Feb. 25, 2009), *available at*: https://www.ams.usda.gov/sites/default/files/media/Michigan%20Milk%20Producers%20Association,%20Inc.%20and%20Dairy%20Farmers%20of%20America,%20Inc.%20.pdf.

5

Volstead Act and the meaning of "mutual benefit." [ECF Nos. 234, 274 & 290]. Courts routinely deny motions for leave to file *amicus* briefs where the parties are "adequately and competently represented." *See, e.g.*, *Soos v. Cuomo*, 2020 WL 3488742, at * 13 (N.D.N.Y. June 26, 2020) ("The competence and skill of plaintiffs' counsel obviates the need for additional input."); *Long Island,* 1995 WL 358777, at * 1 (denying motion for leave to file *amicus* brief); *United States v. Ahmed,* 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992) (denying leave to appear as *amicus* where defendant's "interests are adequately represented by counsel").

*Second*, the DFA Proxies have not set forth any "interest in some other case that may be affected by the decisions in the present case." *Hunter*, 1998 WL 372552, at * 1 (emphasis added). Instead, the DFA Proxies assert that the "DOJ's implied construction **could** have far-reaching consequences and impact cooperatives." (DFA Proxies' Motion at 2, 5) (emphasis added). The DFA Proxies further assert that they have an interest in "ensuring that farmers' rights to collectively market under antitrust laws are applied in a manner that appropriately reflects the realities of their day-to-day business." (*Id.* at 5). This partisan and general "interest" in the interpretation of Capper-Volstead is insufficient to warrant *amici* status. *See Granillo v. FCA US LLC*, 2018 WL 4676057, at * 5 (D.N.J. Sept. 28, 2018) ("The potential amici must show more than simply a generalized interest in all cases of a similar subject matter.") (internal citations omitted); *Sciotto v. Marple Newtown School Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999) ("[T]he Trust is merely a trade association with a generalized interest in all cases related to school district liability and insurance. This is not the kind of special interest that warrants amicus status."); *Community Assoc. for Restoration of the Environment, Inc. v. Cow Palace, LLC*, 2015 WL 12868223, at * 1 (E.D. Wash. Jan. 14, 2015) (denying motion where "amici contend this

Court's decision may have potential ramifications" because the "Court's decision, which hinges on the specific facts of the case at hand, is limited to [defendant's] operations").

*Third*, the DFA Proxies have not identified any "unique information or perspective . . . beyond the help that lawyers for the parties are able to provide." *Hunter*, 1998 WL 372552, at * 1.  Indeed, **the proposed *amicus* brief is virtually identical to and rehashes the same arguments set forth by Defendants** in their motion in *limine* [ECF 234], their reply to their motion in *limine* [ECF 274], their response to the Statement of Interest [ECF 290], and their argument during the July 21, 2020 motions *in limine* hearing.  *See Gotti*, 755 F. Supp. at 1158 ("I am troubled by the fact that a comparison of the memorandum of law submitted by the defendants and the memorandum proposed to be submitted by the [*amici*] reveals that the [*amici*] cites no significant case not cited or discussed by the defendants and fails to cite or discuss several significant cases that are to be found in the defendants' brief.").  Both Defendants and the *Amici* outline the history of the Capper-Volstead Act, the threshold requirements necessary to obtain Capper-Volstead status, analyze the meaning of "mutual benefit" citing most of the same cases, and make the same argument that the Court and jury should not "second-guess" DFA's business decisions (*compare* DFA Proxies' Brief at 8 *with* MIL No. 9 at 11, 13).  Moreover, both point to the "dire" effects that stripping DFA of its Capper-Volstead immunity would have (*compare* DFA Proxies' Brief at 12-14 *with* MIL No. 9 at 11-13, Reply to MIL No. 9 at 7-9 *and* Response to DOJ at 8-10).   Thus, because the DFA Proxies do not have a unique perspective, their motion should be denied.  *See, e.g.*, *Bear, Stearns*, 2003 WL 22000340, at * 5 (rejecting proposed *amici* who did not have a "unique point of view that [was] not available to the Court from the parties in the underlying action"); *United States v. El-Gabrowny*, 844 F. Supp. 955, 957

n.1 (S.D.N.Y. 1994) (denying motion to file amicus brief where proposed submissions did not offer "any argument or point of view not available from the parties themselves").

In short, the DFA Proxies do not meet the standards necessary to warrant *amici* status. As such, their motion for leave must be denied.

## CONCLUSION

For the reasons set forth herein, the Court should deny the DFA Proxies' motion for leave to file an "*amicus*" brief.

Respectfully Submitted,

PLAINTIFFS,

By their attorneys,

*/s/ Dana A. Zakarian*
William C. Nystrom
Joel G. Beckman
Dana A. Zakarian
Elizabeth A. Reidy
NYSTROM BECKMAN & PARIS LLP
One Marina Park Drive, 15th Fl.
Boston, Massachusetts  02210
(617) 778-9100
jbeckman@nbparis.com
wnystrom@nbparis.com
dzakarian@nbparis.com
ereidy@nbparis.com
*Admitted Pro Hac Vice*

Dated: August 7, 2020

Gary L. Franklin, Esq.
PRIMMER PIPER EGGLESTON & CRAMER PC
150 South Champlain Street
P.O. Box 1489
Burlington, VT  05402-1489
(802) 864-0880
gfranklin@primmer.com

**CERTIFICATE OF SERVICE**

I, Dana A. Zakarian, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 7th day of August 2020.

*/s/ Dana A. Zakarian*