**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| **GARRET SITTS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DAIRY FARMERS OF AMERICA, INC. and DAIRY MARKETING SERVICES, LLC,**<br><br>**Defendants.** | **Civil Action No. 2:16-cv-00287-cr** |

**DEFENDANTS DAIRY FARMERS OF AMERICA, INC. AND DAIRY MARKETING SERVICES, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OFFER OF PROOF REGARDING EXECUTIVE COMPENSATION**

**REDACTED VERSION FILED PUBLICLY PURSUANT TO PROTECTIVE ORDER**

During the July 21, 2020 hearing regarding pretrial motions *in limine*, the Court granted in part and denied in part Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC's (collectively "DFA") Motion *in Limine* No. 7, ECF No. 211, which sought to preclude evidence and argument of executive compensation. The Court held that some evidence relating to executive compensation may be relevant, provided that the compensation evidence was directly tied to the alleged conspiracy. *See* July 21, 2020 Hr'g Tr. 90:25-93:24, ECF No. 282. In order to more accurately assess the admissibility of plaintiffs' proffered evidence, the Court required plaintiffs to submit an offer of proof delineating the specific compensation evidence plaintiffs plan to present at trial. *Id.* at 93:8-12 ("I'm going to ask that the plaintiffs provide an offer of proof under seal as to each of these individuals as to what they specifically seek to introduce in terms of compensation and -- because this is not the most relevant evidence of the conspiracy."). The Court suggested it would revise its ruling based upon the content of plaintiffs' proffer. *Id.* at 93:21-24 ("I may revise

my ruling based on what I see, but I'll have a better idea of what plaintiffs plan to present and how much of it should be admissible consistent with the Court's ruling."). Now that plaintiffs have made their offer of proof, it is all-the-more apparent that the Court's ruling should prohibit the specific evidence plaintiffs seek to introduce because plaintiffs have no basis to connect DFA executive compensation to the conspiracy alleged. DFA renews its objection to plaintiffs' offer of proof in its entirety on the grounds that it is irrelevant, and its introduction at trial would serve only to inflame and mislead the jury.[1]

## ARGUMENT

### I. PLAINTIFFS' PROFFERED EVIDENCE IS IRRELEVANT BECAUSE PLAINTIFFS FAIL TO LINK ANY OF THE EVIDENCE TO THE ALLEGED CONSPIRACY

Plaintiffs' proffered executive compensation evidence is irrelevant. The law is clear—and this Court agreed—that executive compensation is only relevant when it is directly tied to the success of the alleged conspiracy. *See* July 21, 2020 Hr'g Tr. 91:3-5 (finding that courts "allow evidence of executive compensation ***when there is a link between that compensation and the alleged conspiracy***." (emphasis added)); *id.* at 86:16-19 (noting the Court's intention to "fashion a ruling so that it captures what [plaintiffs] think is important to show motive and intent ***without just flashing large numbers in front of the jury unconnected to any kind of mechanism in the conspiracy***" (emphasis added)); *see also United States v. Ferguson*, 2007 U.S. Dist. LEXIS 87842, at *3-6 (D. Conn. Nov. 30, 2007) (permitting evidence of defendant's deferred compensation plan because it was directly linked to the success of the alleged scheme, but barring evidence of defendant's salary and bonuses because there was no link to the alleged scheme).

---

[1] DFA fully incorporates herein the arguments made in its Reply in Support of Motion *in Limine* No. 7, ECF No. 259.

Plaintiffs fail to provide this required link. In the entirety of plaintiffs' offer of proof, they only purport to tie a single element of executive compensation—bonuses—to the alleged conspiracy. Pls.' Offer of Proof Re Executive Compensation at 5, ECF No. 291 ("Pls.' Offer of Proof"). Plaintiffs do not, however, proffer any evidence that actually connects bonuses to the conspiracy they allege. Plaintiffs do not and cannot provide a single record citation for their assertion that these executives' bonuses were linked in any respect to "the volume of milk sold by DFA" and "the profitability of DFA's commercial operations." *Id.*[2] Plaintiffs do not even attempt to tie the other components of compensation—*i.e.*, salary, "perks," allowances, and retirement benefits—to the alleged conspiracy. Plaintiffs' silence as to these components highlights their complete irrelevance to the claims at issue in this case.

At this stage in the litigation, plaintiffs' failure of proof is fatal to the admissibility of this evidence. With no evidence establishing a plausible link between the proffered executives' compensation and the alleged conspiracy, the Court should exclude this evidence as irrelevant and prejudicial.

---

[2] Plaintiffs' Offer of Proof states that evidence for a link between bonuses and the conspiracy will be presented "through the live testimony of Rick Smith, Greg Wickham and/or Brad Keating." Pls.' Offer of Proof at 5. In fact, Mr. Smith and Mr. Wickham said just the opposite during their depositions in this case. *See* Ex. 1, G. Wickham Dep. 282:9-283:1, Aug. 23, 2018 ("G. Wickham Dep.") [redacted] Ex. 2, R. Smith Dep. 188:20-189:1, Aug. 30, 2018 [redacted] Nor did Mr. Keating's testimony support any link between his bonus calculation and the alleged conspiracy. Exhibits herein refer to the concurrently filed August 21, 2020 Declaration of Alfred C. Pfeiffer Jr.

## II. IF PERMITTED AT TRIAL AT ALL, EXECUTIVE COMPENSATION EVIDENCE SHOULD NOT BE DISAGGREGATED

### A. If the Court Allows Evidence of Executive Compensation, It Must Be Presented As An Aggregated Total Across The Six Identified Individuals

Even if the proffered evidence were relevant and otherwise admissible at trial (it is not, as confirmed by plaintiffs' own offer of proof), at most, it should be presented to the jury as a generalized, total number aggregated across the six identified individuals. During the July 21, 2020 hearing, the Court contemplated permitting a "[g]eneral explanation" of executive compensation. July 21, 2020 Hr'g Tr. 92:21-23; *see also id.* at 92:20-21 ("I'm unlikely to have W-2s placed in front of the jury."). In fact, following DFA's argument that there was absolutely no need to provide detailed information about each executive's compensation to the jury should the Court remain inclined to allow compensation evidence, the Court confirmed that it was "not persuaded that exact numbers are necessary." July 21, 2020 Hr'g Tr. 92:3-4 . As discussed above, the Court ruled that executive compensation is only relevant to the extent that plaintiffs can establish a direct link between the method by which these individuals are compensated and the conspiracy alleged in this case. *See* July 21, 2020 Hr'g Tr. 91:3-5. Plaintiffs have not met this burden, but even if they had, exact dollar amounts are unnecessary for making this type of argument, and courts routinely preclude such evidence. *See, e.g.*, *One Source Envtl., LLC v. M + W Zander, Inc.*, 2014 WL 5090855, at *5 (D. Vt. Oct. 9, 2014) (finding that while the ***method*** of calculating compensation may be relevant, the "dollar or Euro amount" of individuals' salary was not) (emphasis added)).

To the extent any executive compensation information will be presented to the jury despite plaintiffs' failure to tie it to the conspiracy, the Court should only allow aggregate compensation paid to these six executives after October 8, 2005. In no event should plaintiffs be permitted to introduce evidence of specific compensation paid well outside the limitations period. For example,

plaintiffs are attempting to dredge up years-old compensation evidence for Mr. Hanman, dating back to 1998. Compensation that Mr. Hanman was paid in 1998, more than seven years before the limitations period began, is of no legal relevance to whether a conspiracy existed after October 2005. Such evidence would serve only to inflame and prejudice the jury against DFA. Any aggregate compensation figure must be limited to the amounts paid to these six executives within the damages period.

**B. Presenting Component Pieces Of Each Executive's Compensation Is Inflammatory And Contrary To The Court's Instructions**

Not only have plaintiffs improperly disaggregated the total compensation of the six executives, they have improperly disaggregated the component pieces of the compensation of *each individual executive*. This component breakdown is plainly inflammatory, and goes far beyond the information that would appear in a W-2, which the Court indicated would not be allowed. Instead, the Court explicitly indicated that any evidence of compensation should be presented as a "total compensation" figure. July 21, 2020 Hr'g Tr. 92:6-8.

There is no basis for admitting the component pieces of compensation of any of the individual executives, who are not named defendants in this matter, especially where there is *no* evidence that any of the component pieces is linked to the alleged conspiracy. *Cf.* July 21, 2020 Hr'g Tr. 80:13-20 (finding potential relevance in what DFA generally pays to "major decision-makers" but noting that "the scope of discovery is broader than what might be admissible at trial, and I'm not really interested in invading people's privacy"). As this Court recognized, compensation evidence "alone by no means would prove plaintiffs' claims" and is not to be a "major focus in the case." July 21, 2020 Hr'g Tr. 93:8-18 ("So, for example, if [a DFA executive] is extremely highly compensated and there is no other evidence of any alleged anticompetitive acts, ***it would prove nothing***." (emphasis added)). Providing a dollar-for-dollar component

breakdown of each executive's compensation would be a waste of time and even more irrelevant and inflammatory than the already improper disaggregation of compensation figures across the six individuals. *See One Source*, 2014 WL 5090855, at *5 (finding dollar amount of compensation irrelevant); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009) (same).

## III. PLAINTIFFS' PROFFERED EVIDENCE OF DFA'S GENERAL RETIREMENT BENEFITS IS IRRELEVANT, MISLEADING, AND OUTSIDE THE SCOPE OF THE COURT'S ORDER

Plaintiffs' attempt to introduce the six employees' retirement plan contributions or to discuss DFA's retirement benefits generally poses a problem beyond the lack of connection to the alleged conspiracy. Even if plaintiffs' proffered evidence were relevant (it is not), the retirement benefits evidence as presented can only serve to confuse and mislead the jury. Plaintiffs fail to present an accurate description of DFA's retirement plans, even though plaintiffs' counsel has questioned DFA executives repeatedly during deposition about the various plans offered to DFA employees. For example, plaintiffs seek to introduce to the jury evidence of a "defined benefit plan," but plaintiffs have offered no evidence that any of the six identified executives belonged to this plan. In fact, DFA de-activated that plan in 2004, over a year before the limitations period in this case commenced. Plaintiffs also seek to introduce evidence of "DFA funded" deferred compensation. Pls.' Offer of Proof at 4. Again, plaintiffs misrepresent the evidence. Although DFA offers its employees the option to defer a portion of his or her compensation and receive it upon retirement, that option is available to all employees whose salary is over a certain threshold, and is available to numerous employees beyond the six identified individuals. Furthermore, although plaintiffs refer to the deferred compensation program as "funded" by DFA, it is entirely self-funded for those who contribute, each individual determines how much (if any) compensation

to defer, and DFA offers no matching program for these deferred amounts.[3] Finally, DFA offers a "defined contribution plan," which is DFA's standard 401(k) program, including both an employer matching component for all eligible employees, and additional employer contributions for higher-salary employees. As the Court is well aware, 401(k) programs are both regulated and capped by the Internal Revenue Service. Contrary to plaintiffs' presentation of the evidence, there is nothing nefarious about DFA's regulated 401(k) program, nor have they identified any way in which the amount of it is linked to the alleged conspiracy.

The potential prejudicial misuse of this information is apparent from plaintiffs' offer of proof. Plaintiffs apparently intend to suggest to the jury that the $21 million dollars that DFA contributed to its employees' retirement plan in 2016 was only applicable to the six identified executives. *See* Pls.' Offer of Proof at 4 n.1. In fact, that $21-million-dollar figure that plaintiffs cite is the total value of the employer matching contribution to *all of DFA's eligible employees* in 2016, which Mr. Wickham testified was any full-time, non-union employee, totaling around 3,000 individuals that year. *See* Ex. 1, G. Wickham Dep. 245:18-246:18; *see also* DFA's 2016 Financial Report at 23, 27, attached as Tab 4 to Pls.' Offer of Proof. And the accompanying suggestion that DFA's retirement contributions of $21 million to all eligible employees in 2016 was "more than the total cash distribution to *all* DFA members that year" is simply wrong. *See* Pls.' Offer of Proof at 4 n.1. In 2016, DFA paid over $7.6 ***billion*** to its members in the form of payments for raw milk

---

[3] Furthermore, any and all deferred compensation is reflected in the gross compensation numbers in the charts DFA created in response to plaintiffs' interrogatories, attached as Tab 1, Exhibit A to Plaintiffs' Offer of Proof. There is therefore no legitimate basis for separately presenting deferred compensation amounts. *See* discussion *supra* Part II.

alone. *See* DFA's December 2016 Financial Statements Index at 3, attached as Exhibit B, Tab 92 to Pls' Mem. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 102.

There is no proper basis for plaintiffs to tell the jury about the total amount of DFA's 401(k) program for all eligible employees (even if they did it accurately). Plaintiffs have never argued that DFA's retirement matching program serves as an incentive for its non-union employees to collectively conspire to suppress raw milk pay prices in Order 1. Such an argument would explicitly apply to thousands of employees beyond the six executives contemplated by this Court's ruling. July 21, 2020 Hr'g Tr. 86:9-10 (noting that it was "doubtful" that the Court would even allow plaintiffs to offer compensation evidence as to ***ten*** executives). DFA's total retirement contributions for all employees in any given year are irrelevant to the allegations in this case, and plaintiffs should not be permitted to introduce this evidence at trial.

## CONCLUSION

For the foregoing reasons, DFA renews its objections to plaintiffs' offer of proof in its entirety, and DFA respectfully requests that the Court revise its ruling to bar all evidence of executive compensation at trial as irrelevant and unrelated to the conspiracy. If the Court finds plaintiffs' proffered evidence is relevant, DFA respectfully requests that the Court require plaintiffs to present the evidence at trial in general and aggregate terms.

Dated: August 21, 2020

Respectfully submitted,

/s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Sarah M. Ray (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com
Email: sarah.ray@lw.com

Margaret M. Zwisler (admitted *pro hac vice*)
Jennifer L. Giordano (admitted *pro hac vice*)
Molly M. Barron (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
Email: margaret.zwisler@lw.com
Email: jennifer.giordano@lw.com
Email: molly.barron@lw.com

W. Todd Miller (admitted *pro hac vice*)
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20037
Telephone: 202-663-7820
Facsimile: 202-663-7849
Email: tmiller@bakerandmiller.com

Ian P. Carleton
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, P.O. Box 66
Burlington, VT 05402
Telephone: 802-864-9891
Email: icarleton@sheeheyvt.com
*Counsel for Defendants Dairy Farmers of America, Inc. and Dairy Marketing Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2020, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system and via email. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Joel G. Beckman, Esq. (jbeckman@nbparis.com)
Gary L. Franklin, Esq. (gfranklin@primmer.com)
William C. Nystrom, Esq. (wnystrom@nbparis.com)
Elizabeth A. Reidy, Esq. (ereidy@nbparis.com)
Dana A. Zakarian, Esq. (dzakarian@nbparis.com)
Jason M. Turner, Esq. (jason.turner4@usdoj.gov)
Shapleigh Smith, Jr., Esq. (ssmith@dinse.com)
Marvin Beshore, Esq. (mbeshore@johnsonduffie.com)

Dated: August 21, 2020

/s/ *Alfred C. Pfeiffer Jr.*
Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415-391-0600
Facsimile: 415-395-8095
Email: al.pfeiffer@lw.com