UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 SEP -2  PM 5: 25

CLERK
BY_____
DEPUTY CLERK

GARRETT AND RALPH SITTS, LEON          )
ATWELL, VICTOR BARRICK, DANIEL         )
BAUMGARDER, WILLIAM BOARD,             )
GEORGE BOLLES, ROGER BOLLES, ANDY      )
BOLLINGER, THOMAS BOLLINGER,           )
LOGAN BOWER, DWIGHT                     )
BRANDENBURG, BERNARD                    )
BROUILLETTE, THOMAS BROUILLETTE,       )
AARON BUTTON, HESTER CHASE,            )
THOMAS CLARK, THOMAS                    )
CLATTERBUCK, PAUL CURRIER, GERRY       )
DELONG, PETE AND ALICE DIEHL, MARK     )
DORING, MARK AND BARBARA DULKIS,       )
GLEN EAVES, MIKE EBY, WILLIAM          )
ECKLAND, DOUG ELLIOT, JAMES            )
ELLIOT, WENDALL ELLIOTT, MICHAEL       )
FAUCHER, DAVID AND ROBIN FITCH,        )
DUANE AND SUSAN FLINT, JOSEPH          )
FULTS, RICHARD GANTNER, STEFAN         )
AND CINDY GEIGER, WILLIAM GLOSS,       )
JOHN GWOZDZ, DAVID AND LAURIE          )     Case No. 2:16-cv-00287
GRANT, JIM AND JOYCE GRAY, DENNIS      )
HALL, ROGER AND JOHN HAMILTON,         )
NEVIN AND MARLIN HILDEBRAND, JAKE      )
AND HARLEN HILLYERD, RICHARD AND       )
TERRI HOLDRIDGE, PAUL HORNING,         )
TERRY AND ROBERT HUYCK, DONALD         )
SCOTT HYMERS, TERRY INCH, RANDY        )
AND LYNETTE INMAN, THEODORE            )
JAYKO, JACK KAHLER, JAMES AND          )
TERESA KEATOR, JIM AND SHARON          )
KEILHOLTZ, GEORGE KEITH, LEE AND       )
ELLEN KLOCK, MIKE AND LISA             )
KRAEGER, FRED LACLAIR, TIM LALYER,     )
FRANK AND JOHN LAMPORT, CORRINE        )
LULL, CHARLES AND GRETCHEN MAINE,      )
THOMAS AND DEBORA MANOS, FRED          )
MATTHEWS, RUSSELL MAXWELL,             )
GERRY MCINTOSH, STEPHEN MELLOTT,       )
JOHN AND DAVID MITCHELL, THOMAS        )
MONTEITH, WALT MOORE, RICHARD          )
AND SHEILA MORROW, DEAN MOSER,         )
MELISSA MURRAY AND SEAN QUINN,         )
THOMAS NAUMAN, CHARLES NEFF,           )

DAVID NICHOLS, MICHAEL NISSLEY,        )
LOU ANN PARISH, DANIEL PETERS,         )
MARSHA PERRY, CAROLYN AND DAVE         )
POST, JUDY LEE POST, SCOTT             )
RASMUSEU, BRIAN REAPE, DAVID AND       )
LYNETTE ROBINSON, BRIAN AND LISA       )
ROBINSON, CALVIN ROES, BRADLEY         )
ROHRER, PAUL AND SARAH                 )
ROHRBAUGH, ROBERTA RYAN, SCOTT         )
AND LIN SAWYER, S. ROBERT SENSENIG,    )
THOMAS AND DALE SMITH, DALE AND        )
SUSAN SMITH, DENNIS SMITH, DONALD      )
T. AND DONALD M. SMITH, ROGER AND      )
TAMMY, SMITH, TODD SNYDER,             )
RICHARD SOURWINE, DANNY                )
SOURWINE, RANDY SOWERS, SHANE          )
STALTER, GEORGE AND SHIRLEY            )
STAMBAUGH, TRACY STANKO, STEPHEN       )
SOURWINE, RICHARD SWANTAK,             )
GEORGE AND PATRICIA THOMPSON,          )
JEREMY THOMPSON, KEN AND JUDY          )
TOMPKINS, DANIEL VAUGHN, MARK          )
VISSAR, ERIC WALTS, EDWARD             )
WALLDROFF, GERALD WETTERHAHN,          )
JR., EUGENE WILCZEWSKI, STEVE          )
WILSON,                                )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )
                                       )
DAIRY FARMERS OF AMERICA, INC.,        )
and DAIRY MARKETING SERVICES,          )
LLC,                                   )
                                       )
            Defendants.                )

## ENTRY ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE AND ARGUMENT BASED ON TESTIMONY FROM GARRETT SITTS AND WILLIAM SWALLOW
(Doc. 197)

Plaintiffs are dairy farmers who allege anticompetitive and conspiratorial conduct by Defendants Dairy Farmers of America, Inc. ("DFA") and Dairy Marketing Services, LLC ("DMS") (collectively, "Defendants") in violation of the Sherman Act, 15 U.S.C. §§ 1-2. Pending before the court is Defendants' motion in limine number 1, which seeks to preclude Plaintiffs from introducing certain purported hearsay testimony from Plaintiff Garrett Sitts and nonparty witness William Swallow at trial. (Doc. 197.) Defendants filed their motion on May 20, 2020, and Plaintiffs responded on June 3, 2020. Defendants replied on June 17, 2020. The court held a hearing on the parties' motions in limine on July 21, 2020, at which time it took the present motion under advisement.

Plaintiffs are represented by Dana A. Zakarian, Esq., Elizabeth A. Reidy, Esq., Gary L. Franklin, Esq., Joel G. Beckman, Esq., Michael Paris, Esq., and William C. Nystrom, Esq. Defendants are represented by Alfred C. Pfeiffer, Jr., Esq., Elyse M. Greenwald, Esq., Ian P. Carleton, Esq., Jennifer L. Giordano, Esq., Margaret M. Zwisler, Esq., Molly M. Barron, Esq., Sarah M. Ray, Esq., and W. Todd Miller, Esq.

As an initial matter, Plaintiffs represent that "Mr. Sitts is not a plaintiff in this trial . . . and Plaintiffs do not intend to have him testify . . . in this trial." (Doc. 219-2 at 2.) Consequently, Defendants' motion to preclude evidence and argument based on testimony from Mr. Sitts is hereby DENIED AS MOOT.

Defendants seek to preclude Plaintiffs from introducing deposition testimony that Mr. Swallow gave in *Allen v. Dairy Farmers of America*. Pursuant to Fed. R. Evid. 804, a declarant's former testimony is not subject to exclusion as hearsay if the declarant is unavailable as a witness and the party against whom the testimony is offered had "an opportunity and similar motive" to cross-examine the declarant. Fed. R. Evid. 804(a)-(b). Defendants do not challenge Plaintiffs' assertion that Mr. Swallow is unavailable or dispute that they had an opportunity and similar motive to cross-examine Mr. Swallow in *Allen* as they have in this action. As a result, Mr. Swallow's deposition testimony is admissible pursuant to Fed. R. Evid. 804. Defendants nonetheless challenge the admission of Mr. Swallow's testimony which they characterize as inadmissible hearsay and which they further assert should be excluded pursuant to Fed. R. Evid. 403 because

3

the risk of undue prejudice and confusing and misleading the jury substantially outweighs the evidence's probative value.

In his deposition, Mr. Swallow, a livestock nutritionist, described a conversation that occurred between two men and a woman eating lunch at the Penn 80 truck stop in Milton, Pennsylvania at the Limestoneville exit of Route 80 in October or late September, 2009. Mr. Swallow testified that when he arrived at the truck stop at approximately 11:30 a.m., the restaurant was not noisy and "there weren't many people there at all." (Doc. 219-1 at 24:9-10.)

When he entered the truck stop restaurant, Mr. Swallow sat down in a booth with his dining companion, Eric Moser. At a nearby table occupied by the two men and one woman, he "glanced down [and] noticed DMS on a shirt and Land O' Lakes on another one, and that was about the extent of it." *Id.* at 16:22-17:2. The woman in the group he observed was Caucasian, "probably [in her] 40s[,]" and "might have had curly hair." *Id.* at 16:15-18. The man wearing a Land O' Lakes shirt was also Caucasian, with a "skinnier build" and "probably in his mid to late 40s[,]" *id.* at 17:6-7, dressed in a button-down shirt that Mr. Swallow thought was blue in color and had a Land O' Lakes logo which Mr. Swallow recognized from his work for his dairy producer clients. The man wearing the DMS shirt was "a shorter, sort of heavy-set" Caucasian man in his late forties to early fifties. *Id.* at 23:21-22.

As Mr. Swallow joined Mr. Moser, Mr. Moser "motioned to [Mr. Swallow] to be quiet due to the conversation that was going on behind [him]." *Id.* at 15:14-16. Mr. Swallow recalled the part of the conversation he overheard as follows:

> The gentleman from DMS was discussing to the gentleman from Land O' Lakes that there was a group of – group of dairymen that wanted to leave DMS and go to a – another cooperative, and he made the comment that – he said that he didn't want to see that happen and he wasn't going to let it happen. The gentleman from Land O' Lakes asked what he was going to do about it. He – the gentleman from DMS said that he would threaten the dairy farmers with health code violations if they tried to leave. The gentleman from Land O' Lakes said, what if that doesn't work? The gentleman from DMS stated that he would threaten the milk haulers with – by voiding the contract to haul their milk.

4

*Id.* at 18:13-19:4.

Mr. Swallow testified that the conversation was about "a group of dairymen in central Pennsylvania" (Doc. 219-1 at 20:7-8) and noted that the woman "did not say a word." *Id.* at 19:7. In reaction to the overheard conversation, Mr. Swallow said to Mr. Moser, "I can't believe I just heard that[,]" to which Mr. Moser replied, "I can't either." *Id.* at 25:2-5.

Mr. Swallow acknowledged that he did not know the identity of any of the speakers at the time of the conversation and that the conversation participants did not identify themselves by name. According to Mr. Swallow, he recounted the conversation to a dairy producer client whose farm was located eight to ten miles from the truck stop "within an hour or two." *Id.* at 30:18. The client[1] purportedly identified the man in the DMS shirt and the woman as DMS milk inspectors by name. Mr. Swallow initially testified that he did not recall the individuals' names as identified by his client, but then stated:

> I think the one name is Lisa Van Horn, Van something or other. I think the gentleman from DMS, I think his name was Houck. The gentleman from Land O' Lakes I was under the impression was a Baum. Turned out that is not who was there. The gentleman from Land O' Lakes was someone different. I do not know who that was.

*Id.* at 23:10-17.[2]

Mr. Swallow testified that "[t]he gentleman from DMS was discussing his clients, his customers that were threatening to leave" and believed the speaker used the term "customers[.]" *Id.* at 28:8-13. The dairy producer who allegedly identified the individuals did so based upon the physical description provided by Mr. Swallow. Mr. Swallow believed his client identified the gentleman from DMS as his milk inspector in Bloomsburg, which is in central Pennsylvania.

---

[1] Mr. Swallow testified to the first and last name of the dairy producer who allegedly identified the participants, stating he was reluctant to provide identifying information because the dairy producer's "religion prohibits him from being involved in court appearances [and] legal testimony." (Doc. 219-1 at 21:16-17.)

[2] The deposition transcript notes that the names in this excerpt are spelled phonetically.

When asked if he had "any information about whether any individual from DMS actually threatened any farmer with potential health violations[,]" Mr. Swallow testified that he did not. (Doc. 219-1 at 30:4-7.) He was similarly unaware of any individual from any other cooperative or organization issuing health code violations to coerce farmers, or making threats to do so. However, Mr. Swallow identified by first and last name a milk hauler whose contract he believed had been terminated because he was "looking at switching" to "a Maryland/Virginia co-op." *Id.* at 39:5-6. He noted that "when you work in the dairy industry, it's a small industry, you hear everything." *Id.* at 39:15-17.

Mr. Swallow contacted an attorney, George Farah, identified in a "Dairy Alert through Dairy Herd Management" which "mentioned a legal case involving dairymen in Vermont versus DMS, DFA and Dean Foods." *Id.* at 33:5-8. Because the "[i]nformation sounded pertinent to the case," he talked to Mr. Farah for approximately thirty minutes. *Id.* at 33:9. Mr. Farah asked Mr. Swallow for a verbal statement and followed it with a written summary which Mr. Swallow signed. He also talked to Martin Beshore, an attorney who was representing one of Mr. Swallow's clients in an unrelated lawsuit. Mr. Swallow also identified by name a dairyman who ships to Land O' Lakes to whom he relayed the overheard conversation "maybe a day or two later." *Id.* at 31:21-22.

During his deposition, counsel for Defendants showed Mr. Swallow a map of Pennsylvania with shading to represent the portion of the state that falls within Federal Milk Marketing Order 1. Mr. Swallow indicated that his hometown of Milton, Pennsylvania, as well as the town in which the truck stop is located and the town in which his client's farm is located, are not within Order 1. He further testified that the "central/eastern part of Pennsylvania" "where [the DMS] guy works" is also outside of Order 1 based on the map, which did not show county boundaries. (Doc. 219-1 at 43:19-22.)

I.      **Conclusions of Law & Analysis.**

A.      **Whether Mr. Swallow's Deposition Testimony Is An Admission By A Party-Opponent.**

A statement is not hearsay if it is "offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" Fed. R. Evid. 801(d)(2)(D). "Liberal admissibility" of evidence under this rule is warranted because "an employee is usually the person best informed about certain acts committed in the course of his employment, and . . . while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).

To render a statement by a party's agent admissible at trial, its proponent must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 129 (2d Cir. 2005) (citation omitted). Although the content of a statement alone is insufficient to prove that the speaker was a party's agent, "circumstantial evidence may establish the scope, as well as the existence, of the agency relationship." *Pappas*, 963 F.2d at 538. Plaintiffs, as the proponent of the testimony, bear the burden of establishing its admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that [preliminary factual questions] be established by a preponderance of proof.").

A declarant's apparel displaying a corporate logo may constitute evidence that he or she is employed by that company. However, the inference of employment based on a uniform or nametag is generally corroborated by other evidence, such as the declarant's physical presence in an associated place of business. *See, e.g., Davis v. Mobil Oil Expl. & Producing Se.*, 864 F.2d 1171, 1173-74 (9th Cir. 1987) (holding statement of an "unidentified Mobil company man" wearing a Mobil hard hat was properly admitted under Rule 801(d)(2)(D) where the plaintiff's "two co-workers testified unequivocally

7

that the individual . . . was a Mobil company man"); *Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238 (E.D.N.Y. 2007) (finding sufficient evidence that declarant was defendant's employee where he wore a Pathmark nametag and spoke to plaintiff in a Pathmark store).

Plaintiffs cite *Yepez v. 44 Court Street LLC*, 994 F. Supp. 2d 333, 336 (E.D.N.Y. 2014) in support of their argument that the DMS logo, in conjunction with the speaker's statements, is sufficient circumstantial evidence to sustain the conclusion that he was a DMS dairy inspector. In *Yepez*, the plaintiff alleged that a Duane Reade drugstore failed to comply with the requirements of the Americans with Disabilities Act, and sought to introduce "comments allegedly made by unidentified Duane Reade employees to the plaintiff's attendants, which were then communicated by the attendants to the plaintiff." *Id.* The court held that by "alleging that the speakers' clothing and name tag[s] indicated that the individuals were employees of Duane Reade," the plaintiff had met the requirements for admission of the testimony under Fed. R. Evid. 801(d)(2)(D). *Id.*

In this case, the declarant's shirt with a DMS logo is circumstantial evidence indicating that he was employed by DMS. The statements Mr. Swallow overheard also support a conclusion that the man in the DMS shirt was employed in the dairy industry and that he spoke about matters pertaining to his employment. The declarant referred to dairy farmers and cooperatives as well as milk hauling and represented that he would "threaten" dairy farmers with repercussions if they tried to leave their cooperative. (Doc. 219-1 at 18:21.) In addition, there is some evidence that at least one of the persons to whom the alleged DMS employee was speaking was also affiliated with the dairy industry.

Plaintiffs further rely on Mr. Swallow's testimony identifying the declarant as a DMS milk inspector. Although Mr. Swallow admitted that he lacked personal knowledge of that status, he described the man's physical appearance and purportedly learned his first and last name within an hour or two from a client who identified the man as his DMS milk inspector based on Mr. Swallow's description. The court may consider this subsequent identification, even though it is hearsay, in deciding whether the evidence is

8

admissible. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."). Mr. Swallow, who is affiliated with the dairy industry, thus provided circumstantial evidence in support of Plaintiffs' contention that the speaker who allegedly discussed threatening dairy farmers was, in fact, a DMS milk inspector.[3]

It is not the court's role to judge the credibility of a witness. Rather, it may exclude a party admission only if no rational jury could reach a conclusion that it fell within an agency relationship. *See Ricketts v. City of Hartford*, 74 F.3d 1397, 1411 (2d Cir.), *cert. denied*, 514 U.S. 815 (1996) (holding that "[t]he district court's determination that it was not satisfied that the voice on the tape was that of [defendant] . . . is inconsistent with these principles. So long as a jury is entitled to reach a contrary conclusion, it must be given the opportunity to do so."); *see also Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003) (holding that Rule 104(a) does not confer any added discretion to exclude admissible evidence and finding that "[w]here, as here, a piece of evidence rests upon a proper foundation, Rule 104(a) does not permit a trial judge to usurp the jury's function and exclude the evidence based on the judge's determination that it lacks persuasive force.").

On balance, the content and circumstances of the conversation Mr. Swallow overheard satisfy Plaintiffs' burden to show that it is "more likely than not that" Mr. Swallow overheard an admission by a party opponent admissible under Fed. R. Evid. 801(d)(2)(D). *Bourjaily*, 483 U.S. at 175; *see also Williams v. Bethel Springvale Nursing Home, Inc.*, 2018 WL 1662644, at *2 (S.D.N.Y. Apr. 5, 2018) (noting that even admissions by unidentified employees may be admissible under Rule 801(d)(2)(D) where other evidence demonstrates the existence and scope of the agency relationship).

---

[3] Neither party has produced any additional evidence to bolster or undermine the identifications by indicating whether DMS employed individuals with the names provided by Mr. Swallow's client.

**B.** **Whether Mr. Swallow's Deposition Testimony Should be Excluded Under Fed. R. Evid. 403.**

Defendants assert that even if Mr. Swallow's testimony is deemed admissible under Federal Rules of Evidence 801 and 804, it should nonetheless be excluded pursuant to Fed. R. Evid. 403 because its probative value is substantially outweighed by the risk of unfair prejudice. They note that the alleged DMS declarant made only hypothetical statements about actions he would take in the future if dairy farmers attempted to leave his cooperative. They assert that there is no evidence connecting that alleged threat to any of the Plaintiffs in this case or to any other evidence proffered by Plaintiffs. Defendants further contend that because the alleged statements do not pertain to Order 1, they are likely to confuse and mislead the jury.

Fed. R. Evid. 403 "requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006). "'Unfair prejudice' within [the context of Fed. R. Evid. 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403); *see also United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.").

The probative value of the contested evidence lies in its support for Plaintiffs' claim that Defendants used coercion to obtain and preserve their monopsony power. *See* Fed. R. Evid. 401 (providing that evidence is relevant if it tends to make a fact of consequence more or less probable). However, the purported DMS employee made only hypothetical statements about actions he would take in the future if dairy farmers attempted to leave their cooperative which are less probative of Defendants' alleged anticompetitive conduct than evidence of threats that were actually made and carried out.

*See United States v. Connolly*, 2018 WL 5023785, at *4 (S.D.N.Y. Oct. 1, 2018) (declining to admit witness testimony regarding a "hypothetical conclusion" and finding that "since there is virtually no probative value in testimony about what 'may' have happened (as opposed to what actually did happen), the balance falls heavily in favor of disallowing the testimony").

In addition, Plaintiffs have not established a connection between the statements Mr. Swallow overheard and threats against dairy farmers in Order 1. Mr. Swallow testified that the conversation he overheard occurred in an area of central Pennsylvania that does not fall within Order 1, and that neither the declarant nor the farmer client who purported to identify him as a DMS employee worked in Order 1. Mr. Swallow testified that it "did not appear to be that" DMS had a corporate policy of threatening farmers, (Doc. 219-1 at 28:18), and that he did not "have a clue if it's a regular practice of [Defendants] or not." *Id.* at 29:5-6. Statements made by a DMS employee outside of the geographic market at issue do not tend to prove that Defendants made similar threats in Order 1 in the absence of corroborating evidence. *See Golden v. Kentile Floors, Inc.*, 475 F.2d 288, 291 (5th Cir. 1973) (finding evidence did not establish antitrust liability for party whose role "was not directed toward excluding potential competitors . . . from the [relevant] market").

There is a significant risk that if presented with evidence that a DMS employee contemplated using threats to coerce dairy farmers in central Pennsylvania to benefit his employer, the jury may extrapolate from that evidence that Defendants issued similar threats in Order 1. In that event, Defendants will be unfairly prejudiced by Mr. Swallow's testimony which may "inappropriately lead the jury to" find in favor of Plaintiffs "on the basis of conduct not at issue in the trial." *Quattrone*, 441 F.3d at 186; *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (observing that evidence "is unfairly prejudicial if it . . . may cause a jury to base its decision on something other than the established propositions in the case.") (footnote, internal quotation marks, and citation omitted). Unless Plaintiffs can point to testimony or other evidence that establishes similar threats

in Order 1, Mr. Swallow's testimony may have a spillover effect that creates antipathy toward Defendants despite its scant probative value.

Because the risk of unfair prejudice and confusing and misleading the jury substantially outweighs the testimony's probative value regarding Defendants' allegedly anticompetitive conduct in Order 1, Defendants' motion to exclude Mr. Swallow's testimony pursuant to Fed. R. Evid. 403 is GRANTED.

### C.   Whether the Testimony is Admissible as a Statement By a Coconspirator in Furtherance of the Conspiracy.

Plaintiffs alternatively contend that Mr. Swallow's testimony is admissible under Fed. R. Evid. 801(d)(2)(E), which defines a statement "offered against an opposing party" and "made by the party's coconspirator during and in furtherance of the conspiracy" as "not hearsay[.]" To establish a coconspirator's statement, Plaintiffs must "show that a conspiracy existed, that both the [D]efendant[s] and the declarant participated in it, that it was in existence at the time the statement was made, and that the statement was made in furtherance of the conspiracy." *United States v. Lieberman*, 637 F.2d 95, 102 (2d Cir. 1980). The "in furtherance of the conspiracy" requirement "is designed both to assure [the statement's] reliability and to be consistent with the presumption that the coconspirator would have authorized [the statement]." *Id.* at 103. Only statements that "prompt the listener—who need not be a coconspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity" can be said to "further" the conspiracy. *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990).

In a footnote, Plaintiffs state that they "intend to prove at trial that DMS and Land O' Lakes were members of the [alleged] conspiracy." (Doc. 219-2 at 4 n.6.) Even if Plaintiffs can establish the existence of a conspiracy including both DMS and Land O' Lakes that existed at the time of the truck stop conversation, and that the statements of the purported Land O' Lakes employee were made in furtherance of the alleged conspiracy, they must further establish that those statements pertain to an alleged conspiracy in Order 1. At this juncture, Plaintiffs have not met their burden. The court

thus CONDITIONALLY GRANTS Defendants' motion to exclude Mr. Swallow's testimony.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude is GRANTED with regard to Mr. Swallow's testimony and DENIED AS MOOT with regard to Mr. Sitts's testimony.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __2nd__ day of September, 2020.

Christina Reiss, District Judge
United States District Court